## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60043 |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtor. | § | |

### EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the Court may rule.**

**Represented parties should act through their attorney.**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**Relief is requested no later than Friday, August 5, 2022 at 12:00 p.m.**

David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively, the Connecticut Families) hereby file this *Emergency Motion for Relief from the Automatic Stay* (the Emergency Motion) requesting entry of an order granting them relief from the automatic stay, for cause, under 11 U.S.C. § 362(d)(1) and Rule 4001 of the Federal Rules of Bankruptcy Procedure, and on an emergency basis under 11 U.S.C. § 105(a), Rule 9006 of the Federal Rules of Bankruptcy Procedure, and Local Rule

9013-1(i).  For nearly five years, Alex Jones has sought in every conceivable way to deny and delay the Connecticut Families' right to have a jury hear the evidence against Alex Jones and the Debtor, and to assess damages against them for intentional infliction of emotional distress, defamation, and additional torts against him and the Debtor. Liquidation of those claims in the Connecticut Superior Court, where these actions have been pending since 2018, is imminent.   Jury selection for the trial is scheduled to commence August 2, 2022.  The Connecticut Families respectfully state as follows:

## I.    INTRODUCTION

1.    The Connecticut Families are immediate family members of children and educators killed in the Sandy Hook Elementary School shooting on December 14, 2012 and one first responder to the shooting.  They are also victims of Jones's lies, which aired via his InfoWars media empire and through social media to an audience of millions. Jones told that audience that the Sandy Hook shooting was "a synthetic completely fake with actors," a "hologram," an "illusion" and "the fakest thing since the three-dollar bill," "staged" to take away their guns, and that the Sandy Hook families were "paid ... totally disingenuous" "crisis actors" who faked their loved ones' deaths.  He urged the audience to "investigate," knowing his audience would respond by cyberstalking, harassing, and threatening the plaintiffs. *See* Exs. A-C, Complaints in the three consolidated cases currently pending in Connecticut (the Connecticut Action).[1]

2.    For the second time in the past several months, the Jones Defendants seek to use the bankruptcy process to delay trial in the Connecticut Action against Jones and Free Speech Systems, LLC, the debtor and debtor- in-possession in this chapter 11 case

---

[1] Due to subsequent rulings in the Connecticut Action, and as further set forth below, these facts are now admitted by the Debtor and by Alex Jones.

(the Debtor or FSS).  The Jones Defendants' liability has been established in the Connecticut Action due to litigation tactics over the last several years so egregious that the court entered orders against Jones and the Debtor resulting in conclusive and binding determinations in favor of the plaintiffs as to the Jones Defendants' liability.[2]  *See* Exs. D-E, Connecticut Default Ruling; Connecticut Ruling Striking Notice of Defenses.[3] The Connecticut Families respectfully ask this Court to prevent Jones from, on nearly the literal eve of trial, once again delaying the adjudication of the Connecticut Action with the clear purpose of stopping that trial and the liquidation of the claims pending there.  These claims cannot be liquidated in this Court.  To waste the significant resources invested in the preparation for the Connecticut trial by both the Connecticut Families and the Debtor would be both imprudent and inefficient.

## II.    REQUEST FOR EMERGENCY CONSIDERATION

3.    Emergency consideration of this Motion is sought to prevent the Debtor and Jones from once again using the bankruptcy process to evade and derail the trial in the Connecticut Action—an action that has been pending for more than four years now—when

---

[2] Other family members of Sandy Hook families have filed state court actions in Texas that arose out of similar conduct by the Debtor and Jones (the Texas Actions).  *See Heslin, et al. v. Jones, et al.*, Cause No. D-1-GN-18-001835, in the 53rd District Court of Travis County, Texas; *Pozner, et al. v. Jones, et al.*, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; and *Fontaine v. Jones, et al.*, Cause No. D-1-GN-18-001605, in the 459th District Court of Travis County, Texas.  Liability has been established in these actions and a damages trial started in one on Monday, July 25, 2022.

[3] The disciplinary default rulings in this case establish the liability of both Alex Jones and the Debtor. *See, e.g.*, *Smith v. Snyder*, 267 Conn. 456, 471 (2004) (effect of default is "the conclusive establishment of liability"); *Marcus v. DuPerry*, 223 Conn. 484, 488 (1992) ("the defendant's liability had already been conclusively established by the rendering of the default"); *Abbott Terrace Health Ctr., Inc. v. Parawich*, 120 Conn. App. 78, 85 (2010) ("[E]ntry of default, when appropriately made, *conclusively determines the liability of a defendant*.") (emphasis in original).  These rulings determine that the defendants admit the facts alleged in the complaint.  *See, e.g.*, *Smith*, 267 Conn. at 464 ("[T]he entry of a default constitutes an admission by the defendant of the truth of the facts alleged in the complaint."); *DeBlasio v. Aetna Life & Cas. Co.*, 186 Conn. 398, 401 (1982) (same); *Dziedzic v. Pine Island Marina, LLC*, 143 Conn. App. 644, 645 (2013) ("As our Supreme Court has explained, the entry of a default judgment conclusively establishes the facts alleged in the plaintiff's complaint.").

the far better course is to liquidate these claims in the presently scheduled trial.  The Connecticut Action is pending in Connecticut Superior Court in the Judicial District of Waterbury, Connecticut, before the Honorable Barbara Bellis.  Judge Bellis has presided over the Connecticut Action since its inception.  Jury selection is scheduled to commence on August 2, 2022, with evidence following on September 6, 2022.  Due to great efforts by the Connecticut Families, this setting was maintained even when other entities owned and controlled by Jones recently filed bankruptcy.  Due to these efforts and those of the families in the Texas Actions, that bankruptcy was dismissed within two months of the date of its filing.[4]  Debtor's filing here, after years of litigation and timed on the eve of trial, is Alex Jones's latest effort to delay the Connecticut Families' case and necessitates emergency relief permitting the adjudication of this action to proceed.

4.      Notably, a similar emergency motion has been filed by the Debtor in regard to one of the pending Texas Actions [Dkt. No. 2].  The parties there are currently in trial, which commenced on July 25, 2022.  As Debtor recognizes with the Texas Action, relief is warranted for the Connecticut Action.  The Connecticut Families similarly seek emergency consideration of this Motion on or before 12:00 p.m. on August 5, 2022, or as soon thereafter as the Court's schedule will allow.

5.      Under 11 U.S.C. § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under Rule 9006(c)(1) of the Federal Rules of Bankruptcy Procedure, "the court for cause shown may in its discretion with or without motion or notice order the [time required by the Bankruptcy Rules] reduced."  And, under Local Rule 9013-1(i), the Court may consider

---

[4] *See In re InfoW, LLC, et al.*, Case No. 22-60020, in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division

this motion on an emergency basis.  The Connecticut Families seek relief from the automatic stay on an emergency basis to permit the jury trials in the Connecticut Action to proceed in order to determine damages and enter final judgment in a fixed amount. Enforcement of any judgment entered would be stayed as to the Debtor.  Further, the Connecticut Families respectfully request that the 14-day stay imposed by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure be waived to allow the Connecticut Families to immediately proceed in the Connecticut Action.  The Connecticut Families request this emergency relief (1) to prevent the Jones Defendants' abuse of the bankruptcy process; (2) to preserve the Connecticut Families' trial setting and protect against prejudicial delay; and (3) to promote judicial efficiency.

### III.  BACKGROUND

6.     Almost immediately after the Sandy Hook Elementary School shooting on December 14, 2012, Alex Jones (Jones) began a series of broadcasts in which he asserted that the shooting was a hoax and the Connecticut Families were crisis actors–that is, that the family members of these murdered children and educators were actors misleading the public by pretending to play the parts of grieving parents.  The Connecticut Families asserted claims against Jones and his entities in the Connecticut Action based on these actions by Jones.  In other words, the Connecticut Families are not creditors in the traditional sense to which this Court is accustomed.  They did not loan Jones money or become the victim of some fraudulent scheme designed to take their money.  Rather, they are victims of Jones's repeated falsehoods regarding them and the school shooting in which their loved ones were killed.

7.     For more than five years, Jones, through his media empire, targeted the Connecticut Families and their loved ones that were killed.  Jones and his InfoWars

"contributors" told an audience of millions that the Sandy Hook shooting was "a synthetic completely fake with actors," a "hologram," an "illusion" and "the fakest thing since the three-dollar bill," "staged" to take away their guns, and that the Sandy Hook families were "paid . . . totally disingenuous" "crisis actors" who faked their loved ones' deaths.  Jones urged the audience to "investigate," knowing his audience would respond by cyberstalking, harassing, and threatening the families.[5]

8.     The Connecticut Action has proceeded in Connecticut Superior Court for nearly four years.  From the very beginning, the Jones Defendants resisted the authority of the Connecticut Superior Court by every conceivable means.  They removed twice to the United States District Court and were remanded twice.  The Jones Defendants were sanctioned in June 2019 for repeated violations of the court's discovery orders and threatening the plaintiffs' counsel, a sanction affirmed by the Connecticut Supreme Court in *Lafferty v. Jones*, 336 Conn. 332, 374, 377 (2020) (describing Jones' course of conduct as "a whole picture of bad faith litigation misconduct").  *See* Ex. F, Connecticut Supreme Court decision.  On remand, Jones and the Debtor continued to flaunt court orders and his discovery obligations by falsely denying the existence of certain financial records, producing fabricated financial records, and simply refusing to produce analytics data concerning revenue and content distribution.  In October 2021, knowing a sanction of default was likely imminent as a result of their continued misconduct, the Jones Defendants attempted to avoid it by moving to recuse the Connecticut Superior Court

---

[5] The citations to the quotations, in the order they appear, are: Ex. A, Complaint ¶ 185 (Jones on his radio show); ¶ 223 (Jones on his radio show); ¶¶ 140-41 (non-debtor defendants Wolfgang Halbig and Jones on Jones's radio show); ¶¶ 117, 273 (Jones on his channel and at a press conference), ¶¶ 138, 149, 223 (Jones on his radio show); ¶ 295 (statement by an InfoWars "contributor" on Jones's radio show); ¶¶ 112, 120-21, 185, 197 (Jones on his channel and on his radio show).  Identical allegations appear in the complaints in the consolidated actions brought by Sherlach and Parker.  *See* Exs. B-C.

judge who presided over the case since its inception.  Ex. G, Jones Defendants' Motion to Recuse.  The state court denied the motion, finding that the Jones Defendants had not shown any "judicial bias, partiality, or impropriety."  Ex. H, Order Denying Motion to Recuse.  On November 15, 2021, the state court entered a default against the Jones Defendants, finding that the sanction was necessary "given the scope and extent of the discovery material that the defendants have failed to produce."  Ex. D, Default Ruling. The state court further ruled that because of the extensive misconduct, the default would be binding.  Ex. E, Connecticut Ruling Striking Notice of Defenses.

9.      In both the Connecticut Action and the Texas Actions, Jones and the Debtor (which again is both wholly owned by Jones and completely subject to his control)[6]

---

[6] "The court notes Mr. Jones is sole controlling authority of all the defendants."  Ex. D, Default Ruling at 16. Mr. Jones's sworn interrogatories also establish his exclusive control:

  1. Identify: a. All business organizations and/or other entities in which you have ownership and/or control

  b. The officers or members of all organizations and/or entities responsive to part (a)

  c. The shareholders or other owners of all organizations and/or entities responsive to part (a)...

  ANSWER:

  a. I, Alex Jones, have ownership and/or control of the following business organizations and/or other entities: Free Speech Systems LLC. . .

  b. I am the sole officer and member of all the organizations and/or entities responsive to part (a).

  c. I am the sole shareholder and owner of all organizations and/or entities responsive to part (a).

Ex. I, Sworn Interrogatories of Alex Jones; *see also id.* Sworn Interrogatories of FSS signed by Alex Jones. In addition, the sworn testimony of FSS's corporate representative establishes Jones's exclusive control:

  Q  Okay. All right. So, Mr. Zimmerman Free Speech Systems is owned and operated by Alex Jones, correct?

  A  That's correct.

  Q  And does he have authority over all Free Speech Systems operations?

  A  That's correct.

  Q  Okay. He is the CEO and owner?

  A  That's correct.

  Q  And does he have the authority to hire and fire anybody of his choosing?

engaged in pervasive discovery misconduct so egregious that both state courts resolved liability against Jones and the Debtor and precluded them from introducing any evidence in support of any purported defense.[7]

10.     In August 2021, the Connecticut Superior Court set the Connecticut trial date on the issue of damages only.  The first of the Texas Actions was set to commence on April 25, 2022, with others to proceed throughout the spring.  The Connecticut Action was then scheduled to commence with jury selection on August 2, 2022.

11.     Faced with imminent trials, Jones attempted to use the bankruptcy process to stall or evade the Connecticut Action and Texas Actions.  On April 17 and 18, 2022—at Jones's direction—three shell companies that Jones also wholly controls, InfoW, LLC (fka Infowars, LLC); IWHealth, LLC (fka Infowars Health, LLC); and Prison Planet TV, LLC (the IW Shell Companies)—all of which were defendants in the Connecticut Action—filed for relief under chapter 11, subchapter v, of the Bankruptcy Code.  *See In re InfoW, LLC, et al.*, No. 22-60020 (Bankr. S.D. Tex). Within hours of these chapter 11 filings, pleadings were filed to remove the Connecticut Action and Texas Actions to the United States Bankruptcy Courts for Connecticut and Texas, respectively, on the basis of "related to" jurisdiction.  The sole basis for each removal was the pending bankruptcy.

---

A   That's correct.

Q   And does he have authority to overrule any decision made by a subordinate?

A   That's correct.

Q   And he has ultimate authority over Free Speech finances?

A   That's correct.

Q   And he is not accountable to a board of directors or governing authority, correct?

A   Correct

Ex. J, FSS Dep. Jun, 24, 2021 at 89-90.

[7] *See* Exs. D-E.

The bankruptcy-based removals effectively stayed the Connecticut Action and Texas Actions in their entirety against all defendants, whether or not they were debtors in the chapter 11 case.

12.     The IW Shell Companies held no operating assets or financial assets. They had no businesses to reorganize or liquidate.  The U.S. Trustee immediately filed a motion to dismiss the case, arguing that "[t]he strategy employed here—filing bankruptcy for three non-operating members of a larger enterprise to channel and cap liability against the other, revenue-generating members of that enterprise and its owner using a bankruptcy subchapter designed to aid small, struggling businesses—is a novel and dangerous tactic that is abusive and undermines the integrity of the bankruptcy system." *In re InfoW, LLC*, Case No. 22-60020, ECF No. 50, at 2 (Bankr. S.D. Tex. Apr. 29, 2022). The U.S. Trustee also argued that "Jones and FSS hand-picked . . . three holding companies for bankruptcy as part of a scheme engineered solely to limit their own legal liability, to deny parties in interest a full accounting of their assets, and to deny individuals their day in court and imminent recovery for established liability."  *Id.* at 16.

13.     The Connecticut Families also promptly moved to dismiss the bankruptcy case as a bad faith filing.  *See In re InfoW, LLC*, Case No. 22-60020, ECF No. 36. A briefing schedule was set which would have resulted in delay and could have affected the Movants' state-court trial date.  In order to obtain immediate remand and retain their trial date, the Connecticut Families obtained dismissal of their state-court causes of action against the IW Shell Companies and were remanded from the Connecticut Bankruptcy Court to which they had been removed back to Connecticut Superior Court.

14.     Because the dismissal of the IW Shell Companies from the Connecticut Action ended the Connecticut Families' interest in the IW Shell Companies' bankruptcy, the Connecticut Families withdrew their motion to dismiss the bankruptcy.

15.     The Texas plaintiffs exited the IW Shell Companies' bankruptcy in slightly different way.  They stipulated with IW Shell Companies to a withdrawal against them in the Texas Actions and based on that stipulation obtained remand.

16.     The United States Trustee and IW Shell Companies then agreed to dismissal of the chapter 11 cases, which the bankruptcy court Judge Christopher M. Lopez ordered on June 10, 2022.

17.     Jones and FSS are now the only remaining defendants in the Connecticut Action and Texas Actions.  *Id.*

18.     Following remand, the Connecticut Superior Court confirmed the August 2 trial date was firm.  Jury selection is scheduled to commence on that date with evidence following on September 6, 2022.  In Connecticut, the state constitution guarantees the right to individual voir dire.  *See* Conn. Const. art. I, § 19 ("The right to question each juror individually by counsel shall be inviolate.").  Unlike in Texas where a jury is impaneled in a single day, it is common for voir dire in Connecticut to span several weeks with individual jurors selected over the course of days.   Given the nature of the Connecticut Action, the trial judge allotted four weeks for jury selection.  While that time span for jury selection may be curtailed by a few days, to curtail it further risks losing the Connecticut trial date.

19.     The Texas state court, in which some original trial dates had passed, re-set the trial dates with the earliest set for July 25, 2022.

20.     With the first Texas Action currently pending and the Connecticut Action set to begin jury selection on August 2, 2022, Jones caused FSS to commence this chapter 11 case on July 29, 2022.  With its filing, FSS sought emergency relief from the automatic stay to allow the first Texas Action to continue to final judgment [Dkt. No. 2].

21.     Unless the relief requested in this Emergency Motion is granted, Jones will again have used the bankruptcy system to disrupt the Connecticut Action, frustrating a process that is ripe to proceed and needs to proceed.  The Connecticut Families' claims need to be liquidated for this bankruptcy case to progress.  That liquidation is excluded from this bankruptcy case and reserved for jury trial.  The Connecticut state court is the forum in which the Connecticut Action must proceed.

## IV.     JURISDICTION AND VENUE

22.     The Court has jurisdiction over this Emergency Motion under 28 U.S.C. §§ 157 and 1334.  This Emergency Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (G).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## V.     ARGUMENT AND ANALYSIS

23.     The Connecticut Families seek relief from the automatic stay on an emergency basis to permit the jury trial in the Connecticut Action to adjudicate their claims to final judgment; pursue collection against non-debtor defendants; and establish their rights to recover from the Debtor within the bankruptcy case.  This relief is both necessary and warranted (1) to prevent the Jones Defendants' self-serving manipulation of trial schedules through the bankruptcy process; (2) to preserve the Connecticut Families' trial setting and protect against prejudicial delay; and (3) to promote judicial efficiency.

24.     As a general rule, the filing of a bankruptcy petition operates to stay litigation involving pre-petition claims against a debtor.  *See* 11 U.S.C. § 362(a)(1) (automatically staying "any action or proceeding against the debtor that was or could have been commenced" before the filing of the petition).  However, the automatic stay can be modified, so long as an interested party can demonstrate "cause."  *See* 11 U.S.C § 362(d)(1) (stating "the court shall grant relief from the stay . . . for cause[.]").  The Bankruptcy Code does not define "cause" for lifting the stay, leaving courts to consider whether cause exists on a case-by-case basis.  *See In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998). "Cause" as used in this section "is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations."  *In re Tex. State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995). Significantly, "[t]he Fifth Circuit has recognized cause as 'any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process.'"  *In re Northbelt, LLC*, 630 B.R. 228, 284 (Bankr. S.D. Tex. 2020) (citing *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986)); *see also In re JCP Properties, LLC*, 540 B.R. 596, 614-16 (Bankr. S.D. Tex. 2015).  Given the timing of Debtor's filing and ongoing abuse of the judicial process, this factor weighs heavily in favor of lifting the stay.

25.     Further, bankruptcy courts have given meaning to the term based on a three-prong test for determining when a stay should be lifted, including: (1) whether any great prejudice to either the bankruptcy estate or the debtor will result in prosecution of the lawsuit; (2) whether the hardship to the non-debtor party by the continuation of the automatic stay outweighs the hardship of the debtor; and (3) whether the creditor has a probability of success on the merits of his or her case.  *In re Fernstrom Storage and Van*

*Co.*, 938 F.2d 731, 735 (7th Cir. 1991); *In re Robertson*, 244 B.R. 880, 882 (Bankr. N.D. Ga. 2000); *In re Bock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984).   Courts in this district have utilized this method.   *See In re Kao*, No. 15-31193-H3-13, 2015 WL 9412744, at *2 (Bankr. S.D. Tex., December 21, 2015) (citing *In re Namazi*, 106 B.R. 93 (Bankr. E.D. Va. 1989)).  Here, all three prongs weigh in favor of modifying the automatic stay to allow the Connecticut Action to proceed.

### A.    *No great prejudice will result to the bankruptcy estate or the Debtor from prosecution of the Connecticut Action.*

26.    The Connecticut Families are personal injury tort claimants.  *See* Exs. A-C, Connecticut Families' Complaints.   Their claims require adjudication for purposes of distribution in the bankruptcy case.  That adjudication is excluded from the bankruptcy case.[8]  *See* 28 U.S.C. § 157(b)(2)(B); *see also In re Schepps Food Stores, Inc.*, 169 B.R. 374, 377 and n.3-4 (Bankr. S.D. Tex. 1994) (analyzing the exclusion of personal injury claims and scope of bankruptcy court power).   The Connecticut Families have also preserved their rights to a jury trial outside the bankruptcy case with jury selection scheduled for August 2, 2022.[9]  *See* 28 U.S.C. § 1411.  These claims exist and must be resolved.  As such, the issue before the Court is when these claims should move forward.  *See In re Fuchs*, No. 05-3595-BJH, 2006 WL 6543977, at *2-3 (Bankr. N.D. Tex. 2006) (unpublished) (finding adjudication of personal injury claims sufficient to establish cause for granting relief from the automatic stay).   Although the automatic stay currently prevents adjudication of these pending claims, the stay was not intended to indefinitely prevent

---

[8] The Connecticut Families do not consent to a final order in the bankruptcy case.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1944 (2015).

[9] The Connecticut Families do not consent to a jury trial in the bankruptcy case.  *In re Clay*, 35 F.3d 190, 191 & 198 (5th Cir. 1994)

such adjudication.  *See In re Bock Laundry Machine Co.*, 37 B.R. at 567 ("The automatic stay was never intended to preclude a determination of tort liability and the attendant damages").  Instead, "[c]ourts often grant creditors relief from the automatic stay so they can adjudicate their unliquidated claims against a debtor outside of bankruptcy court, particularly when the claims are already the subject of pending litigation." *Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.*, 852 F.3d 405, 414 (5th Cir. 2017).

27.    The Connecticut Families' claims have been pending in the Connecticut Action for four years. *See* Exs. A-C, Connecticut Families' Complaints.  These claims have been substantially investigated, litigated, and prepared for trial.  Debtor's liability has been established.  And the remaining issues to be decided are damages.  Substantial costs for litigation have already been borne, and the Jones Defendants have actively sought and received contributions from supporters to defray the costs of defending the Connecticut Action and Texas Actions.  *See* Ex. K, Dep. Jones Apr. 5, 2022 at 17:06-11; Ex. L, Dep, Jones Apr. 6, 2022 at 460:17-462:20.  There is no prejudice to the Debtor in adjudicating these claims to final judgment in the Connecticut Action, especially as the Connecticut Families' requested relief limits collection of any judgment outside the bankruptcy case to non-debtor codefendants and third parties, while reserving collection against Debtor to this bankruptcy case. *See In re Fowler*, 259 B.R. 856, 859 (Bankr. E.D. Tex. 2001).  Rather, judicial efficiency and conservation of party resources are best served by permitting adjudication in the Connecticut Action to proceed.

**B.      *The Connecticut Families' hardship under the automatic stay substantially outweighs any hardship Debtor would experience under the requested modification.***

28.    The Connecticut Families' adjudication of their claims against Debtor is dependent upon lifting the automatic stay. *See* 28 U.S.C. § 157(b)(2)(B); 28 U.S.C. § 1411.

The harm the Connecticut Families have endured is inherent in the nature of their claims. They are the immediate family members of children and educators killed in the Sandy Hook Elementary School shooting on December 14, 2012 and one first responder to the shooting. They are the victims of the Debtor and Jones's lies surrounding that event. As personal injury claimants, the Connecticut Families look to a jury trial to hold the Jones Defendants accountable for their actions in the eyes of the public; to find personal closure for the harms done them, to the extent that is possible; and to liquidate their damages. Movants have waited years for that relief and closure, delayed and frustrated by the Debtor and Jones's obstruction. Movants and their counsel have expended considerable time and expense preparing for the August 2 voir dire and September 6 trial date described above. Pretrial motions have been drafted based on current record. Witnesses have been and are being prepared. Travel arrangements have been made and parties and expert and fact witnesses' schedules have been coordinated. And these families have prepared themselves mentally for the trial. To impose the burden and cost of delay on these families is a great hardship, one that substantially outweighs any hardship of the Debtor. Bankruptcy does not relieve the Debtor of the burden of liquidating existing claims. That burden is limited given the procedural posture of the Connecticut Action. Delay will not lessen that burden. Rather, delay will increase it.

**C.**     ***Movants have a probability of success on the merits of their claims.***

29.     Even a slight probability of success on the merits may be sufficient to support lifting the automatic stay. *See In re The SCO Group, Inc.*, 395 B.R. 852, 859 (Bankr. D. Del. 2007). Here, liability against the Debtor is already established. All that remains is a determination of damages, which the Connecticut Families are assured to

obtain, especially as they are represented by experienced, capable attorneys in the Connecticut Action.

**D.    *Alternative factors weigh in favor of modifying the automatic stay.***

30.    Bankruptcy courts have also considered other factors[10] in determining whether to lift the automatic stay to allow litigation to proceed in another forum, including:

i.      whether relief will result in a partial or complete resolution of the issues;

ii.     lack of any connection with or interference with the bankruptcy case;

iii.    whether the other proceeding involves the debtor as a fiduciary;

iv.    whether a specialized tribunal has been established to hear the particular cause of action;

v.      whether the debtor's insurer has assumed full responsibility;

vi.    whether the action primarily involves third parties;

vii.   whether litigation in the other forum would prejudice the interests of the other creditors;

viii.  whether the judgment claim arising from the other action is subject to equitable subordination;

ix.    whether the movant's success would result in a judicial lien avoidable by the debtor;

x.     interests of judicial economy and the expeditious and economical resolution of litigation;

xi.    whether the proceedings have progressed to the point that the parties are ready for trial; and

xii.   impact of the stay on the parties and the balance of harm.

---

[10] These same factors go into the various tests used by the courts in the Fifth Circuit to determine abstention and remand.  *In re Viper Prods. & Servs., LLC*, 2022 WL 2707879, at *2.

*See In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984); *In re U.S. Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Texas 1994).  These factors need not be assigned equal weight, and only those factors relevant to the particular case need to be considered.  *Id.* (citing *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994)).  Courts have recognized that a decision to lift stay may be upheld on the ground of judicial economy alone.  *See In re Kao*, 2015 WL 9412744, at *2 (citing *In re U.S. Brass Corp.*, 176 B.R. at 13 and *In re Kemble*, 776 F.2d 802, 807 (9th Cir. 1985)).

31.     With regard to the above factors that are applicable here, liability has been determined and lifting the stay will allow the Connecticut Families to promptly liquidate their claims.  The liquidation of the Connecticut Families' damages claims in the Connecticut Action is essential to the efficient resolution of this bankruptcy case.  Based on the filings made in this Court, the Connecticut Families and the plaintiffs in the Texas Actions will be the largest creditors in this case.[11]  Having an early and final determination of these claims against the Debtor will best allow this case to progress forward.

32.     Proceeding with the Connecticut Action should not interfere with the bankruptcy case, whereas denial will result in substantial harm to the Connecticut Families.  Specifically, the Connecticut Action is ready for jury trial in the state court of Connecticut on the limited issue of damages.  Lifting the stay here will not prejudice other creditors as it merely allows the Connecticut Families to liquidate claims that already exist.  Further, the Connecticut Families have reserved collection against the

---

[11] The only other material claim, FSS's alleged PQPR Note [Dkt. 6], is subject to pending claims for fraudulent transfer in *Heslin v. Jones*, No. D-1-GN-22-001610, In the 200th Judicial District Court, Travis County, Texas.  *See* Ex. M, The Connecticut Families maintain that this supposed liability is fraudulent and made for the purpose of transferring money from the Debtor to other entities controlled by Jones.

Debtor to a claim within the administration of the bankruptcy case. As such, a judgment in the Connecticut Action will only be enforced against the Debtor in the bankruptcy case.

33. In contrast, ongoing delay would work great prejudice against the Connecticut Families, who have waited four years to have their claims heard by a jury only to encounter yet another effort at delay by the Jones Defendants. *See In re Fernstrom Storage & Van Co.)*, 938 F.2d at 736–37 ("A decision continuing application of the stay to IBM's action would cause it great prejudice by forcing it, in effect, to write off the expenses it incurred in litigating its case against Fernstrom to the eve of trial. Where the stayed non-bankruptcy litigation has reached an advanced stage, courts have shown a willingness to lift the stay to allow the litigation to proceed."). The Connecticut Families' claims are both in form and substance personal injury tort claims, as to which a jury trial right exists. All of the issues in the Connecticut Action are based on issues of state law. The issues involve interpretation of complex Connecticut statutes and tort law developed in Connecticut case law. As set forth above, they are entitled to adjudication outside of the bankruptcy cases and will not burden that bankruptcy court's docket.

34. Further, judicial economy favors lifting the stay given the trial posture of the Connecticut Families' claims against the Debtor in the Connecticut Action as well as their pending claims against the non-debtor defendants. The experienced Connecticut trial judge who has presided over this case for four years scheduled this jury trial date a year ago and is fully prepared to proceed with the trial, as are the parties. The most efficient use of judicial resources is to allow the Connecticut Action to proceed.

35. Finally, the Court should be mindful of comity considerations with the Connecticut state court. In that Court, the Debtor and Jones were sanctioned for their misconduct in the litigation. The matter should be adjudicated in the Connecticut court

for that reason alone.  The court in *In re Xenon Anesthesia of Texas, PLLC,* 510 B.R. 106

(Bankr. S.D. Tex. 2014), cited with approval by the Fifth Circuit in *Kipp Flores Architects, L.L.C., supra,* granted relief from the stay for the claimant to proceed with a

contempt citation in state court, stating:

> The state court has been involved in the litigation between these parties since its inception more than two years ago.  The state court case has been set for trial twice and both sides are ready to proceed to have the matter resolved.  The state court is familiar with the causes of action alleged, the parties involved, and the facts of the state court litigation.  The state court has rendered numerous rulings and orders in connection with the state court litigation.  The state court is entitled to consummate the exercise of its inherent power to punish a contemnor for improper past acts that affronted the state court's dignity and authority.

*Id.* at 110.  The Court should lift the automatic stay for cause to permit the Connecticut

Families to proceed.

## VI.    PRAYER

36.    For the reasons stated above, the Connecticut Families respectfully request

that the Court enter an order: (a) granting relief from the automatic stay to allow the

Connecticut Families to pursue their claims to judgement in the Connecticut Action;

(b) limiting collection to non-debtor third parties outside of the bankruptcy case;

(c) reserving collection against the Debtor as a claim asserted within the bankruptcy

administration; and (d) allowing the relief from the automatic stay to take effect

immediately under Bankruptcy Rule 4001(a)(3) upon the entry of an order approving this

Emergency Motion.  The Connecticut Families also request any and all other general relief

to which they may be entitled.

Respectfully submitted this 31st day of July 2022.

        /s/ Ryan E. Chapple
Ryan E. Chapple
State Bar No. 24036354
rchapple@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

and

Randy W. Williams
State Bar No. 21566850
rww@bymanlaw.com
**BYMAN & ASSOCIATES PLLC**
7924 Broadway, Suite 104
Pearland, Texas 77581
281-884-9262
**ATTORNEYS FOR WHEELER, ET AL.**

## CERTIFICATE OF ACCURACY

I hereby certify that the forgoing statements are true and accurate to the best of my knowledge and belief.  This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

       */s/ Ryan E. Chapple*
Ryan E. Chapple

## CERTIFICATE OF CONFERENCE

I hereby certify, as counsel for Connecticut Families, my firm has conferred with Debtor's counsel, and as of the filing of this Motion, Debtor's counsel has not responded to our request regarding the relief requested herein.

       */s/ Ryan E. Chapple*
Ryan E. Chapple

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Emergency Motion for Relief from the Automatic Stay has been served on counsel for Debtor, Debtor, and all parties receiving or entitled to notice through CM/ECF on this 31st day of July 2022.

_____/s/ Ryan E. Chapple_____
Ryan E. Chapple