# PLAN SUPPORT AGREEMENT

This PLAN SUPPORT AGREEMENT (as the same may be amended, modified or supplemented from time to time in accordance with the terms hereof, the "Agreement") is made and entered into as of April 14, 2022 by and among the following parties (each individually a "Party" and collectively referred to as the "Parties"):

(a) Free Speech Systems, LLC, a Texas limited liability company ("FSS");

(b) Alex E. Jones, an individual residing in Texas ("AJ");

(c) InfoW, LLC,[1] a Texas limited liability company ("IW");

(d) InfoHealth, LLC,[2] a Texas limited liability company ("IWH"); and

(e) Prison Planet TV, LLC, a Texas limited liability company ("PTV").

## RECITALS

WHEREAS, IW, IWH and PTV (collectively the "Debtors" and each individually a "Debtor") intend to commence voluntary reorganization cases (the "Bankruptcy Cases") under subchapter V of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court") to affect the resolution and payment of certain claims and litigation claims through one or more chapter 11 plan(s) of reorganization;

WHEREAS, the Debtors have determined that it would be in their best interests and the interest of their creditors to implement a restructuring of their indebtedness and other obligations through the prosecution of the Bankruptcy Cases under the exclusive control of trustees to be approved by the Bankruptcy Court and funded by AJ and FSS (collectively the "Third-Party Funding Contributor[s]") as herein provided;

WHEREAS, the Parties have agreed on the terms of this Agreement and the elements of a proposed chapter 11 plan(s) for the Debtors, each as may be amended, modified, or supplemented from time to time, including any schedules and exhibits attached thereto, in each case, in accordance with the terms hereof (the "Plan");

WHEREAS, subject to the terms hereof and appropriate approvals of the Bankruptcy Court, as may be required, the following sets forth the agreement among the Parties concerning their respective obligations in connection with the Plan(s) and the Bankruptcy Cases.

---

[1] Formerly known as InfoWars, LLC
[2] Formerly known as InfoWars Health, LLC

Plan Support Agreement            Page 1

EXHIBIT 3

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound hereby, agree as follows:

### Section 1  CERTAIN DEFINITIONS

Applicable definitions contained in (i) the Bankruptcy Code; and (ii) the Litigation Settlement Trust (and associated documents) are incorporated into this Agreement except as modified in this Section 1 or except as conflicting with the defined the terms herein. The following definitions shall have the meanings as specified herein, and shall be designated, when such special definitions are applicable, with capital letters, and these definitions shall be enforceable as terms of the Agreement in conjunction with the respective matters to which they reference or define.

*"Allowed"* or *"Allowed Claim"* means a Litigation Settlement Trust Claims or Claim that is allowed: (i) in any stipulation executed by the Debtor (or the Litigation Settlement Trustees after the Confirmation Order becomes a Final Order), the Third-Party Funding Contributors and the holder of the Litigation Settlement Trust Claim; (ii) in a Final Order; or (iii) pursuant to the terms of the Plan.

*"Approved Plan Documents"* means those agreements and documents executed and or submitted in conjunction with the Plan or as a supplement to the Plan which have been approved by the Third-Party Funding Contributors.

*"Bankruptcy Cases"* means collectively or individually the cases filed by the Debtors pursuant to 11 U.S.C. §1101, *et seq*.

*"Bankruptcy Code"* means title 11 of the United States Code.

*"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan(s) pursuant to section 1191 of the Bankruptcy Code.

*"Debtor"* or *"Debtors"* shall refer individually and collectively to InfoW, LLC (XXXX), InfoHealth, LLC (XXXX), and Prison planet TV, LLC (XXXX), including any and all affiliated, predecessor, successors, assigns, agents, employees, partners, attorneys, representatives, administrators, investigators, consultants and other persons, acting or purporting to act on behalf of any of the above entities.

*"Definitive Documents"* means, with respect to the Plan(s), all material documents (including any related Bankruptcy Court orders, agreements, schedules, pleadings, motions, filings, or exhibits) that are contemplated by this Agreement and that are otherwise necessary or desirable to implement the Plan(s) and this Agreement, including (as applicable): (i) the Plan(s); (ii) Disclosure Statement(s) if ordered by the Bankruptcy Court; (iii) any other operative documents and/or agreements relating to the Plan(s) (including any documents necessary to implement the distributions contemplated thereunder); (iv) the Confirmation Order.

*"Effective Date"* means April 8, 2022.

*"Final Order"* means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

*"Litigation"* means pending civil lawsuits, including but not limited to the following:

>Marcel Fontaine vs. Alex E., Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels, Cause No. D-1-GN-18-001605 in the 459th Judicial District Court of Travis County, Texas;

>Neil Heslin vs. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC, Cause No. D-1-GN-18-001835 in the 261st Judicial District Court of Travis County, Texas;

>Veronique de la Rosa and Leonard Pozner vs. Alex E. Jones, Inforwars, LLC, and Free Speech Systems, LLC, Cause No. D-1-GN-18-001842 in the 345th Judicial District Court of Travis County, Texas;

>Scarlett Lewis vs. Alex E. Jones, Inforwars, LLC, Free Speech Systems, LLC and Owen Shroyer, Cause No. D-1-GN-18-006623 in the 98th Judicial District Court of Travis County, Texas;

>Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division;

>William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Cause No. X06-UWY-CV-18-6046437-S in the Superios Court of Connecticut, Waterbury Division;

William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc., Cause No. X06-UWY-CV-18-6046438-S in the Superios Court of Connecticut, Waterbury Division; and

Brennan M. Gilmore v. Alexander ("Alex") E. Jones, Infowars, LLC, Free Speech Systems, LLC, Lee Stanahan, Lee Ann McAdoo a/k/a Lee Ann Fleissner, Scott Creighton, James ("Jim") Hoft, Allen B. West, Derrick Wilburn, Michelle Hickford, and Words-n-Ideas, LLC, Cause No. 3:18-cv-00017-GEC in the United States Districrt Court for the Western District of Virginia, Charlottesville Division;

together with any other pending lawsuits against any of the Parties on the Effective Date of this Agreement (collectively, the "Litigation Claims").

***"Initial Trust Funding"*** means $725,000 in cash funded to the Litigation Settlement Trust by AJ from his Exempt property upon the Effective Date of this Agreement to pay the costs of administration of the Debtors' Bankruptcy Cases and the Litigation Settlement Trust, including retention of the Litigation Settlement Trustees and retention by the Trustees of all professionals deemed necessary to accomplish the purpose of this Trust and the commitment of the Third-Party Funding Contributors to maintain for not less than 120 days after the Petition Date a balance of $200,000 after payment of all initial administrative expense retainers to newly appointed Litigation Settlement Trustees and as the only members of the Debtors acting as independent Members, together with the Debtors' professionals from time to time, to be paid directly, or thereafter maintained in the Litigation Settlement Trust for continued payment of the costs of Administration of the Litigation Settlement Trust and the Debtors' Bankruptcy Cases.

***"Litigation Settlement Trust"*** means the 2022 Litigation Settlement Trust dated effective April 1, 2022 for the benefit of the Debtors' as provided therein, including that Third-Party Funding Contributor[s] intended to facilitate and underwrite the "Payment in Full" Plan Class of Allowed Litigation Settlement Trust Claims and the Litigation Settlement Trust Beneficiaries Litigation Settlement Trust Claims, as may exist from time to time and as may be funded by the Third-Party Funding Contributors for this purpose from time to time to achieve Payment in Full.(s).

***"Litigation Settlement Trustees"*** means two individuals approved by the Bankruptcy Court to serve as Trustees of Litigation Settlement Trust who will replace the interim trustee serving in that capacity prior to the filing of the Bankruptcy Cases.

***"Litigation Settlement Trust Claims Bar Date"*** means the bar date for filing Claims or Litigation Claims in the Bankruptcy Cases established by Order of the Bankruptcy Court;

***"Litigation Settlement Trust Claims"*** means the Claims of any party arising out of or related to the Litigation Claims and evidenced by a proof of claim timely filed in the Debtors' Chapter 11 case(s).

"*Litigation Settlement Trust Claims Estimation*" means the estimation of the Litigation Settlement Trust Claims by the Bankruptcy Court in these Bankruptcy Cases pursuant to Sections 502(c) and 105 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules of Procedure.

"*Litigation Settlement Trust Beneficiary*" Means the holder of a Litigation Settlement Trust Claim.

"*Litigation Trust Expenses*" means all costs, expenses and professional fees incurred by the Litigation Settlement Trust and the Litigation Settlement Trustees during the Support Period, specifically including, but not limited to the allowed fees and expenses of the Debtors and their professionals incurred in connection with the prosecution of the Bankruptcy Cases and those incurred after the Plan Effective Date, approved by the Litigation Settlement Trustees.

"*Petition Date*" means the date upon which the earliest of the Debtors' Bankruptcy Cases was commenced as a voluntary bankruptcy case.

"*Plan(s)*" or "*Plan(s) of Reorganization*" means the chapter 11 plan(s) to be jointly proposed by the Debtors supported by the Third-Party Funding Contributors in each of the Bankruptcy Cases, that contains the same terms set forth in, and is otherwise materially consistent with this Agreement and that is an Approved Plan Document, as the same may be amended, supplemented, or otherwise modified as provided herein.

"*Plan Effective Date*" means the date on which the Plan, as confirmed, becomes effective, as defined therein.

"*Support Period*" means, with respect to any Party, the period commencing on the later of (a) the Agreement Effective Date and (b) the Petition Date and ending on the date on the earlier of (i) 180 days following the commencement date and (ii) termination of this Agreement, *provided* however that if a Confirmation Order is entered, then on and after the Effective Date the Support Period shall remain in effect for the earlier of not less than 5 years from the Plan Effective Date or until Payment in Full, or full liquidation of all available assets in the Litigation Settlement Trust, which ever first occurs.

### Section 2     The Plan(s) and the Litigation Settlement Trust Claims Estimation

The Parties agree that as soon as practical after the Petition Date, and during the Support Period that they will

    (i)     promptly file a Motion to set a Litigation Settlement Trust Claims Bar Date;

    (ii)     promptly file a Motion to Estimate all Litigation Settlement Trust Claims pursuant to Section 502(c) to determine for all purposes, except, allowance of the amount of all Litigation Claims, and shall set an Estimation Protocol to initiate and conduct such estimations.

    (iii) promptly initiate the protocol for settlement negotiations of the allowed amounts of all Litigation Settlement Trust Claims, the Plan treatment, and all related issues and matters toward a Plan Confirmation of a "Payment in Full" Plan; and

    (iv) promptly initiate and negotiate the Definitive Documents in good faith, and such Definitive Documents will be materially consistent in all respects with this Agreement, and otherwise in form and substance reasonably acceptable to the Parties, and that, upon execution, the terms and conditions set forth in this Agreement are not subject to further negotiation or change. Notwithstanding anything to the contrary herein, in no event shall the Plan or the Definitive Documents (x) increase or decrease directly or indirectly the settlement consideration or otherwise require any amount to be payable, directly or indirectly, by the Third-Party Funding Contributors or (y) change the conditions precedent for funding by the Third-Party Funding Contributors. If the Plan and the Definitive Documents satisfy the criteria in this Section 2, they will be considered the "Approved Plan Documents." This provision, however, is not intended in any way to abrogate, abridge or affect in any way the fiduciary duties and obligations of the Debtors.

    **Section 3**  **Joint Agreements**

  During the Support Period, the Parties agree to the following:

    (a) The Debtors and the Litigation Settlement Trust along with the Third-Party Funding Contributors shall jointly file and prosecute a motion to establish (x) a Litigation Settlement Trust Claims Bar Date, (y) a Litigation Settlement Trust Claims Estimation protocol, and (z) the Plan(s).

    (b) Each Party agrees to (i) support and take all reasonable actions necessary to facilitate the confirmation, implementation and consummation of, the Plan and (ii) not take any action that is inconsistent with the implementation or consummation of this Agreement or the Plan.

    (c) No Party shall:

     (i) object to, delay, or take any other action to interfere, directly or indirectly, in any respect with acceptance or implementation of the Plan(s), nor encourage any person or entity to do any of the foregoing;

     (ii) directly or indirectly seek, solicit, propose, file, support, encourage, or vote for any plan of reorganization other than the Plan;

     (iii) take any other action, including but not limited to, initiating any legal proceeding, that is materially inconsistent with, or that would prevent or delay consummation of, the Plan; and

     (iv) impede either in the Bankruptcy Court or any other court reasonable efforts to have the Plan confirmed by the Court as during the Support Period.

    **Section 4**  **Third-Party Funding Contributor Agreements**

  (a) During the Plan Support Period the Third-Party Funding Contributors shall:

Plan Support Agreement      Page 6

(i) fund the Initial Trust Funding to the Litigation Settlement Trust;

(ii) subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors, (A) deliver or cause to be delivered to the Litigation Settlement Trustees any and all documents (or copies thereof) relating to the Litigation Settlement Trust Claims, held by the Debtors, their employees, agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors, and (B) provide reasonable access to the Litigation Settlement Trustees and their advisors to such employees of the Debtors, their agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors with knowledge of matters relevant to the Litigation Settlement Trust Claims for the purpose of enabling the Litigation Settlement Trustees to fulfill their obligations under this Plan and the Litigation Settlement Trust, including the prosecution of the Litigation Settlement Trust Claims.

(iii) subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors or the Bankruptcy Court, upon request from the Litigation Settlement Trustees, the Third-Party Funding Contributors shall deliver current financial information, operating information, assets or account information ("Information") as reasonably needed to determine that each Third-Party Funding Contributor has the financial ability to pay Allowed Litigation Settlement Trust Claims in full, in accordance with the Plan. The Information shall be produced only under this provision, and if there is any disagreement on Information production requested, the Litigation Settlement Trustees may seek orders from any Federal Court.

(b) After the Confirmation Order becomes a Final Order and continuing until the Third-Party Funding Contributors declare that they will not Pay in Full a settlement proffered by the Litigation Settlement Trustees:

(i) From time to time thereafter, transfer to the Litigation Settlement Trust additional funds to the extent required by the Litigation Settlement Trust and the confirmed Plan to pay Litigation Trust Expenses during the Support Period.

(ii) The Plan shall provide that the Litigation Settlement Trustees shall hold a perfected lien and security interest in and to all of FSS's and all non-exempt AJ assets to secure their obligations hereunder, subject to this Section 4(b) hereof. The Litigation Settlement Trustees and the Third-Party Funding Contributors shall determine from time to time an appropriate budget for FSS to be operated properly during the Support Period and an appropriate personal budget for AJ consistent with the anticipated needs of individual contributions during the Support Period and consistent with his usual and ordinary needs. No agreed budget term or provision will waive any right to an exemption in property otherwise available to AJ and his

family. The Third-Party Funding Contributors covenant that they shall not divert, secret, hide or hinder assets subject to this agreement, other than those available to each under the agreed budgets during the Support Period prior to termination. In any Litigation relating to allegations of breach of this provision shall be brought exclusively in the bankruptcy court and shall entitle the Litigation Settlement Trustees to injunctive relief and costs.

(iii) Subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors, upon request from the Litigation Settlement Trustees, the Third-Party Funding Contributors shall deliver the current financial information, operating information, assets or account information ("Information") as reasonably needed to determine that each Third-Party Funding Contributor is maintaining operations and business sufficient to not only maintain the minimum balance in the Litigation Settlement Trust, but also to pay Allowed Litigation Settlement Trust Claims in full, in accordance with the Plan. The Information shall be produced only under this provision, and to the extent that there is any disagreement on Information production requested, the Litigation Settlement Trustees may seek orders from any Federal Court.

(iv) In accordance with the confirmed Plan, (i) transfer $2 million to the Litigation Settlement Trust, (ii) , contribute $250,000 per quarter for 20 consecutive quarters to the Litigation Settlement Trust, and contribute additional funds to the Litigation Settlement Trust as may be requested by the Litigation Settlement Trustees and agreed to by the Third-Party Funding Contributors in writing, or pursuant to an agreed budget, from time to time in accordance with the Plan to Pay in Full Allowed Litigation Settlement Trust Claims or Allowed Claims.

**Section 5** **Duration of the Agreement.**

The Agreement shall become effective on the date it is executed by all Parties, *provided*, however, that if the Agreement is not executed by the Debtors on or before 5:00 p.m. (Central Daylight Time) on April 15, 2022, or such later date as agreed by the Debtors and the Third-Party Funding Contributors (the "Expiration Date"), this Agreement shall no longer be available for acceptance by the Debtors. The Agreement will remain in effect and be irrevocable by the Parties during the Support Period. Upon implementation under the Plan, the Agreement shall remain in effect for not less than 5 years from the Plan Effective Date.

**Section 6** **Representations and Warranties.**

(a) The Third-Party Funding Contributors jointly and severally represent and warrant that the following statements are true, correct and complete as of the date hereof:

(viii) Organization and Good Standing. FSS is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas.

(ix) Authorization of Agreement. Each of the Third-Party Funding Contributors has the requisite power and authority to execute this Agreement and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement by the Third-Party Funding Contributors and the consummation by the Plan of the transaction contemplated hereby has been duly authorized by FSS' managers and no other corporate proceedings on the part of the Third-Party Funding Contributors are necessary to authorize this Agreement or to consummate the transaction contemplated hereby. This Agreement has been duly executed and delivered by the Third-Party Funding Contributors and, assuming due execution and delivery by the Debtors of this Agreement, this Agreement constitutes a valid and binding obligation of the Third-Party Funding Contributors, enforceable against the Third-Party Funding Contributors in accordance with its terms. The Third-Party Funding Contributors are prepared to consummate this Agreement immediately upon its acceptance by the Debtors.

(x) Due Diligence. The Third-Party Funding Contributors have completed their due diligence, and this Agreement is not subject to a due diligence condition, *provided* that the Debtors shall continue to provide information regarding the Bankruptcy Cases and the process surrounding confirmation of the Plan(s).

(xi) No Securities; No Third-Party Financing. No securities are being issued and the obligation of the Third-Party Funding Contributors to perform under this Agreement is not conditioned on obtaining third-party financing.

(xii) Financial Capability. The Third-Party Funding Contributors have and will have upon Plan Effective Date, sufficient cash and/or cash flow available to consummate the transactions contemplated by this Agreement and the Plan.

(xiii) No Violation; Consents. The execution and delivery by the Third-Party Funding Contributors of this Agreement and the consummation of the transactions contemplated hereby do not and will not (1) violate any provision of the organizational documents of FSS, (2) violate any Order of any governmental authority to which the Third-Party Funding Contributors are bound or subject, (3) violate any applicable law, or (4) violate any legal agreements to which a Third-Party Funding Contributor is a party.

(xiv) No Third-Party Approvals Required. No regulatory or other third-party approvals, consents or filings are required to be obtained or made by the Third-Party Funding Contributors in order to consummate this Agreement, except for any such requirements, the failure of which to be obtained or made would not reasonably be expected to prevent, impede or materially delay or otherwise affect in any material respect the transactions contemplated by this Agreement.

(xv) Bankruptcy. There are no bankruptcy, reorganization or arrangement proceedings pending against, being contemplated by or, to the knowledge of the Third-Party Funding Contributors, threatened against the Third-Party Funding Contributors.

    (xvi) Representation by Counsel. The Third-Party Funding Contributors acknowledge that they have been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.

 (b) The Debtors represent and warrant that the following statements are true, correct and complete as of the date it executes this Agreement:

    (ii) Organization and Good Standing. The Debtors are limited liability companies duly formed, validly existing and in good standing under the laws of the State of Texas.

    (iii) Authorization of Agreement. The Debtors have the requisite limited liability company power and authority to execute this Agreement and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement by the Debtors and the consummation by the Debtors of the transaction contemplated hereby have been duly authorized by the managers of the Debtors and no other limited liability company proceedings on the part of the Debtors are necessary to authorize this Agreement or to consummate the transaction contemplated hereby. This Agreement has been duly executed and delivered by the Debtors and, assuming due execution and delivery by the Third-Party Funding Contributors, this Agreement constitutes a valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms.

    (iv) No Violation; Consents. The execution and delivery by the Debtors of this Agreement and the consummation of the transactions contemplated hereby do not and will not (1) violate any provision of the organizational documents of the Debtors, (2) violate any Order of any governmental authority to which the Debtors are bound or subject, or (3) violate any applicable law.

    (v) No Third-Party Approvals Required. Other than approval of the Bankruptcy Court, no order or permit issued by, or declaration or filing with, or notification to, or waiver from any governmental authority is required on the part of the Debtors in connection with the execution and delivery of this Agreement, or the compliance or performance by the Debtors with any provision contained in this Agreement, except for any such requirements, the failure of which to be obtained or made would not reasonably be expected to prevent, impede or materially delay or otherwise affect in any material respect the transactions contemplated by this Agreement.

    (vi) Representation by Counsel. The Debtors acknowledge that they have been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.

    (vii) Binding on Debtors in Possession and Reorganized Debtors. This Agreement shall become binding on the Debtors in Possession and the Reorganized Debtors upon the Bankruptcy Court approving the Agreement on a standalone basis or as the terms of the Agreement may be contained and incorporated into a Plan and a confirmation order approving this Agreement.

    (viii) The obligations and rights of the Third-Party Funding Contributors shall be as set out in the Litigation Settlement Trust and this Agreement and in the event of

Plan Support Agreement         Page 10

a conflict among such terms of either agreements, the Litigation Settlement Trust shall control.

**Section 7    Covenants.**

(a)    Access to Information. The Debtors covenant and agree that prior to the Plan Effective Date and prior to termination of this Agreement pursuant to Section 8 hereof, the Debtors will permit the Third-Party Funding Contributors and their representatives to have reasonable access, during normal business hours and upon reasonable advance notice, to the books and records and senior management personnel of the Debtors pertaining to the Agreement. The Parties shall cooperate to resolve issues where such disclosure would result in violation of applicable law or would jeopardize any privilege available to the Debtors or any of their affiliates relating to such information or would cause the Debtors or any of their affiliates to breach a confidentiality obligation to which they are bound. In connection with such access, the Third-Party Funding Contributors' representatives shall cooperate with Debtors' representatives and shall use their best efforts to minimize any disruption of business. The Third-Party Funding Contributors shall indemnify, defend and hold harmless the Debtors, the Debtors' officers, directors, employees and agents from and against all liabilities asserted against or suffered by them relating to, resulting from, or arising out of, examinations or inspections made by Third-Party Funding Contributors or its representatives pursuant to this Section 7(a).

(b)    Notice; Settlements. The Debtors covenant and agree that prior to the Plan Effective Date and prior to termination of this Agreement, pursuant to Section 8 hereof, the Debtors shall (i) keep the Third-Party Funding Contributors apprised of any settlement discussions, negotiations or meetings related to Plan and the Litigation Settlement Trust Claims, and (ii) will be entitled to enter into a settlement of any Litigation Settlement Trust Claim against the Debtor(s) without the prior consent of the Third-Party Funding Contributors, but shall not be entitle to bind such Third-Party Funding Contributors except to the extent of their respective consent and agreement; provided, further, the absence of any such consent shall not impair or effect the Trustees' binding settlement(s) reached nor shall it prohibit the respective Third-Party Funding Contributors from later consenting and causing the "Payment in Full" event to entitle the Third-Party Funding Contributor to their respective "Resulting Releases."

(c)    Conduct of Business Pending the Consummation of Plan. The Debtors agree that prior to the Plan Effective Date and termination of this Agreement pursuant to Section 8 hereof, unless otherwise expressly permitted by this Agreement, the Debtors shall conduct their business in the ordinary course.

(d)    Cooperation; Consents and Filings.

(i)    From and after the date hereof and until prior to the Plan Effective Date and termination of this Agreement pursuant to Section 8 hereof, unless otherwise expressly permitted by this Agreement, the Parties shall cooperate with each other and use (and will cause their respective representatives to use) commercially reasonable efforts (1) to take, or to cause to be taken, all actions, and to do, or to cause to be done, all things reasonably necessary, proper or advisable on their part under this Agreement, applicable law or otherwise to consummate and make effective the transactions contemplated by this Agreement as promptly as practicable; (2) to obtain promptly from any person or

governmental authority any consent, order or permit required to be obtained by the Parties or any of their respective affiliates in connection with the authorization, execution, delivery and performance of this Agreement, and the consummation of the transactions contemplated hereby and thereby; (3) to promptly make all necessary filings and thereafter make any other required submissions with respect to this Agreement and prompt consummation of the transactions contemplated hereby and thereby required under any applicable law, including, without limitation, the Disclosure Statement (if required), the Plan, all documents, instruments and pleadings necessary for the approval of the Disclosure Statement (if required) and confirmation of the Plan; and (4) to provide prompt notification to the other Party hereto of any actions pursuant to clauses (1) – (3) of this Section 7(d). In addition, no Party shall take any action after the date hereof (other than any action required to be taken under this Agreement or to which the other Parties shall have granted their consent) that could reasonably be expected to materially delay the obtaining of, or result in not obtaining, any consent, order, permit, qualification, exemption or waiver from any governmental authority or other person required to be obtained prior to the effective date of the Plan; including, without limitation, the Disclosure Statement (if required), the Plan, all documents, instruments and pleadings necessary for the approval of the Disclosure Statement (if required) and confirmation of the Plan.

(ii) If permitted by applicable law and subject to any limitations on access to information provided for in Section 4(a), each party shall consult with the other parties with respect to, and provide any information reasonably requested by the other party in connection with, all material filings made with the Bankruptcy Court or any governmental authority in connection with this Agreement and the transactions contemplated hereby. If any party or any of its affiliates receives a request for information or documentary material from any governmental authority with respect to this Agreement or any of the transactions contemplated hereby, then such party shall endeavor in good faith to make, or cause to be made, as soon as reasonably practicable and, to the extent permitted by applicable law, after consultation with the other parties, an appropriate response in compliance with such request.

(g) Bankruptcy Matters. The Parties shall use commercially reasonable efforts to cooperate, negotiate, assist and consult with each other to secure the entry of an order confirming the Plan following the date hereof, and to consummate the transactions contemplated by this Agreement, including, without limitation, the Plan, all documents, instruments and pleadings necessary for the approval of a disclosure statement (if necessary) regarding the Plan and confirmation of the Plan. In the event that any order of the Court relating to this Agreement shall be appealed by any person (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to any such order), the Parties will cooperate in taking such steps to diligently defend against such appeal, petition or motion and the Parties shall use their commercially reasonable efforts to obtain an expedited resolution of any such appeal, petition or motion. The Parties shall not, without the prior written consent of the other parties, file, join in, or otherwise support in any manner whatsoever any motion or other pleading relating to a sale or plan of reorganization, other than the Plan, unless the Debtors through the Litigation Settlement Trustees determine in their business judgment their fiduciary obligations require them to do so.

**Section 8    Termination.** This Agreement shall terminate, and the obligations of the Parties shall thereupon terminate and be of no further force and effect, upon the occurrence of the earlier of the following events (each, a "Termination Event"):

(i) Upon mutual written consent of the Debtors, on the one hand, and the Third-Party Funding Contributors, on the other hand;

(ii) The Bankruptcy Cases are (a) dismissed, (b) converted to a case under chapter 7 of the Bankruptcy Code, or (c) converted into a case under Chapter 11 of Title 11 of the Bankruptcy Code other than under Subchapter V thereof;

(iii) The Bankruptcy Court enters an order appointing a trustee or examiner under chapter 11 of the Bankruptcy Code;

(iv) The Bankruptcy Court enters an order granting relief from the automatic stay imposed by §362 of the Bankruptcy Code to allow the continued litigation of a Litigation Settlement Trust Claim without the consent of the Third-Party Funding Contributors;

(v) The Debtor or the Third-Party Funding Contributors shall (a) fail to comply with any of its obligations under this Agreement (it being understood that only the non-breaching party may invoke the Termination Event), or (b) has breached any representation, warranty, covenant or agreement contained in this Agreement;

(vi) the Debtors shall withdraw (or move to withdraw) the Plan;

(vii) The Third-Party Funding Contributors have terminated participation under the Agreement, including ¶ 4(b).

(viii) The Bankruptcy Court enters an order denying confirmation of the Plan;

(ix) The Bankruptcy Court does not enter an order approving the appointment of the Litigation Settlement Trustees on or before April 30, 2022;

(ix) The Plan has not been filed with the Court on or before April 30, 2022;

(x) The Plan has not been confirmed by the Court on or before the expiration of the Support Period;

(xi) The order confirming the Plan fails to become a Final Order on or before 90 days after the expiration of the Support Period; *provided*, that the requirement for finality shall be waived as to any appeal as to which the appellant fails to obtain a stay pending appeal of the confirmation order; or

(xii) Any court of competent jurisdiction or other competent governmental or regulatory authority shall have issued an order making illegal or otherwise

restricting, preventing, or prohibiting the Plan in a way that cannot be reasonably remedied or otherwise grants relief to any party that is materially inconsistent with the Plan or this Agreement.

(xiii) The relevant court remands the Litigation Claims and lifts the automatic stay to allow the State Court to proceed to Judgment.

**Section 9** **Amendments.** This Agreement may not be modified, amended, or supplemented, except in a writing signed by all Parties.

**Section 10** **Governing Law; Jurisdiction.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas or the United States, without regard to the applicable principles of conflict of laws.

**Section 11** **Notices.** All demands, notices, requests, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered by courier service, messenger, telecopy, facsimile, or if duly deposited in the mails, by certified or registered mail, postage prepaid-return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, as follows:

*If to the Debtor, to:*

Marc Schwartz
Chief Restructuring Officer
of the Debtors
Schwartz & Associates
712 Main Street, Ste 1830
Houston, Texas 77002


With a copy to:

Kyung S. Lee
Parkins Lee & Rubio LLP
Pennzoil Place-13th Floor
700 Milam
Houston, Texas 77002
klee@parkinslee.com


*If to the Third-Party Funding Contributors:*

Free Speech Systems, LLC
To:
Law Offices of Ray Battaglia, PLLC
Attn: Ray Battaglia
66 Granburg Circle
San Antonio, Texas 78218

rbattaglialaw@outlook.com

Alex Jones
To:
Shelby A. Jordan
Jordan & Ortiz, P.C.
sjordan@jhwclaw.com

    **Section 12 Reservation of Rights.**  This Agreement is part of a proposed settlement of all disputes among the Parties.  Except as expressly provided in this Agreement or the Plan, nothing therein is intended to, or does, in any manner waive, limit, impair, or restrict the ability of the Parties to protect and preserve their respective rights, remedies, and interests, including, without limitation, any claims against any other Party.  If the transactions contemplated herein or in the Plan are not consummated, or if this Agreement is terminated for any reason, the Parties fully reserve any and all of their respective rights and remedies.  Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this Agreement and all negotiations relating hereto, shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms.

    **Section 13 Entire Agreement.**  This Agreement, together with the Reorganization Plan, constitute the entire understanding and agreement among the Parties with regard to the subject matter hereof, and supersedes all prior agreements with respect thereto.

    **Section 14 Headings.**  The headings of the paragraphs and subparagraphs of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

    **Section 15 Successors and Assigns.**  This Agreement is intended to bind and inure to the benefit of the Parties and their respective permitted successors and assigns.

    **Section 16 Specific Performance.**  Each Party hereto recognizes and acknowledges that a breach by it of any covenant or agreement contained in this Agreement may cause the other Parties to sustain damages for which such Parties would not have an adequate remedy at law, and therefore each Party hereto agrees that in the event of any such breach the other Parties shall be entitled to seek the remedy of specific performance of such covenant and agreement and injunctive and other equitable relief in addition to any other remedy to which such Parties may be entitled, at law or in equity.

    **Section 17 Remedies Cumulative.**  All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power or remedy by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

    **Section 18 No Waiver.**  The failure of any Party to exercise any right, power, or remedy provided under this Agreement or otherwise available to it at law or in equity, or to

insist upon compliance by any other Party with its obligations hereunder, and any custom or practice of the Parties at variance with the terms hereof, shall not constitute a waiver by such Party of its right to exercise any such or other right, power, or remedy or to demand such compliance.

**Section 19** **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Agreement. Delivery of an executed signature page of this Agreement by telecopier or facsimile shall be as effective as delivery of a manually executed signature page of this Agreement.

**Section 20** **Severability.** Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction. The provisions of this Agreement shall be interpreted in a reasonable manner to effect the intent of the Parties hereto.

**Section 21** **No Third-Party Beneficiaries.** Unless expressly stated herein as to direct or indirect beneficiaries of the Litigation Settlement Trustor the Confirmed Plan, this Agreement shall be solely for the benefit of the Parties, and no other person or entity shall be a third-party beneficiary hereof.

**Section 22** **Jurisdiction and Venue:** Notwithstanding any provision herein to the contrary no action or proceeding by any Party or any third-party may be brought to determine, enforce, prohibit, enjoin, or otherwise determine any rights or obligations of any Party to this Agreement except in the United States Bankruptcy Court or the United States District Court, as the case may be, for the Division and District in which the Bankruptcy Cases have been filed.

THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Declaration or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Effective Date: April __, 2022.

**INITIAL LITIGATION SETTLEMENT TRUSTEE**

By: _____
Name: Robert Dew
Title: Initial Trustee, and as sole officer and Director of each Debtor entity
InfoW, LLC, InfoHealth, LLC,
Prison Planet TV, LLC

**THIRD-PARTY FUNDING CONTRIBUTOR ALEX JONES**

By: _____
Name:

**THIRD-PARTY FUNDING CONTRIBUTOR FREE SPEECH SYSTEMS, LLC**

By: _____
Name:
Title:

**SIGNATURES LEFT BLANK PENDNG APPOINTMENT BY BANKRUPTCY COURT ORDER**

_____
Name:
Title: Litigation Settlement Trust Trustee and Debtors' Independent Board Members

_____
Name:
Title: Litigation Settlement Trust Trustee and Debtors' Independent Board Members

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Declaration or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Effective Date: April /5 2022.

**INITIAL LITIGATION SETTLEMENT TRUSTEE**

By: *[signature]*
Name: Robert Dew
Title: Initial Trustee, and as sole officer and Director of each Debtor entity
InfoW, LLC, InfoHealth, LLC,
Prison Planet TV, LLC

**THIRD-PARTY FUNDING CONTRIBUTOR ALEX JONES**

By: *[signature: alex jones]*
Name:

**THIRD-PARTY FUNDING CONTRIBUTOR FREE SPEECH SYSTEMS, LLC**

By: *[signature: alex jones]*
Name: *[illegible]*
Title:

**SIGNATURES LEFT BLANK PENDNG APPOINTMENT BY BANKRUPTCY COURT ORDER**

_____
Name:
Title: Litigation Settlement Trust Trustee and Debtors' Independent Board Members

_____
Name:
Title: Litigation Settlement Trust Trustee and Debtors' Independent Board Members