## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **Free Speech Systems LLC,** | § | |
| | § | **Case No. 22–60043 (CML)** |
| Debtors. | § | |

---

## THE SANDY HOOK PLAINTIFFS' OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER

---

Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine (collectively, the "**Texas Plaintiffs**") and David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively, the "**Connecticut Plaintiffs**", and, together with the Texas Plaintiffs, the "**Sandy Hook Plaintiffs**",[1] creditors and parties-in-interest in the above-captioned case ("**Bankruptcy Case**"), object to, and oppose ("**Objection**") Free Speech Systems, LLC's ("**Debtor**") relief in their *Emergency Motion for an Interim and Final Orders (I) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(B) and (II) Granting Adequate Protection* ("**Cash Collateral Motion**").[2] In support hereof, the Sandy Hook Plaintiffs respectfully states as follows:

---

[1] Marcel Fontaine was not defamed relating to the Sandy Hook tragedy. Instead, he was defamed relating to the Parkland shooting. For ease of reference, however, this objection refers to all tort claimants as the Sandy Hook Plaintiffs.

[2] ECF No. 21.

## I.   PRELIMINARY STATEMENT

1.   The Sandy Hook Plaintiffs object to entry of an interim order authorizing the Debtor's use of cash collateral because the alleged creditor with a purported lien on the Debtor's cash, PQPR Holdings Limited, LLC ("**PQPR**"), is an affiliated, insider entity, whose alleged secured debt is illegitimate.  The Debtor's requested use of cash collateral is predicated on what the Sandy Hook Plaintiffs have serious reason to believe is a fabricated, allegedly secured loan from an affiliated, insider entity of the Debtor, PQPR. Further, court approval of the use cash collateral is not necessary if there is no valid debt encumbering the cash.  Therefore, the Sandy Hook Plaintiffs object to any request for relief on an interim basis that would in any way legitimize the PQPR debt or advantage PQPR, including:  (i) any grant of adequate protection to PQPR, including replacement liens or super priority administrative expense claim (especially as to avoidance actions and commercial tort claims) and (ii) any findings or stipulations regarding the validity of the alleged PQPR debt, unless PQPR can properly substantiate its substantial claim of secured debt against the Debtor. Even then, any findings should be subject to challenge.

2.   Additionally, the Sandy Hook Plaintiffs find the following aspects of the Cash Collateral Motion and proposed interim order unacceptable, and their very proposal troubling:

a.   The 13-Week Cash Flow Forecast for FSS, attached as Exhibit A to the Cash Collateral Motion (the "Budget") contains line item payments to Alex Jones, PQPR, and American Express totaling $254,556.95 during the interim period alone.  No salary should be paid to Alex Jones, let alone payments that total approximately $1.3 million over a year, until the Court is satisfied that the salary is fair and equitable under the circumstances. Any payments to insiders, such as Jones, should be limited to $10,000 total during the interim period and subject to further investigation prior to entry of a final order.

b.   The Budget contains a line item paying $250,000 titled "Repay PQPR Inventory" that to the extent it is a payment to PQPR, should not occur until the investigation into the insider relationship between PQPR and FSS and into PQPR's purported debt and lien is completed.  Additionally, the

Court should not approve the use of cash collateral on an interim basis to repay an alleged secured creditor, PQPR, until such debt is properly substantiated.

c.   Given the Sandy Hook Plaintiffs' concerns regarding the legitimacy of the underlying alleged PQPR debt, the Sandy Hook Plaintiffs request that the following language be added to the interim order:

"Nothing herein shall constitute a finding or ruling by this Court that any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes (as defined in the Motion) is valid, senior, enforceable, prior, perfected, or nonavoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including but not limited to the Debtor, any official committee appointed in the Chapter 11 Case or any other creditor, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged and disputed lien or alleged and disputed security interest held by the alleged Pre-Petition Lender in respect of the purported PQPR Notes."

3.    The Sandy Hook Plaintiffs reserve all of rights as it relates to entry of a final order authorizing the use of cash collateral, to the extent the Court deems it appropriate to hold such a hearing. These objections include, but are not limited to: (1) the lack of a line item for the subchapter V trustee's fees within the Budget; (2) to the extent an official committee is formed, an investigation budget for such committee; and (3) the lack of an appropriate customary challenge period.

4.    In sum, the Sandy Hook Plaintiffs do not believe either the Debtor or PQPR can show that a valid debt is owed to PQPR, let alone a valid secured debt, and therefore, entry of a cash collateral order on an interim basis with any adequate protection provisions is inappropriate. Any grant of adequate protection should be conditioned upon entry of a final order approving the use of cash collateral.  No findings should be made regarding the validity of PQPR's purported liens on an interim basis. Further, the Court should limit the use of the alleged cash collateral during the Interim Period solely to line items in the Budget that are necessary to enable the Debtor

to operate until a final hearing—and therefore payments to insiders should be either be outright prohibited or capped as described above.

5.      There could be a straightforward solution to the issue of interim use of cash collateral—the budget should be paired down to the essentials and cash should come from the unencumbered cash identified on page 22, footnote 6 of the Schwartz declaration.[3]

## II.      FACTUAL BACKGROUND

### A.  The Sandy Hook Plaintiffs and Fontaine sue the Jones Debtors for defamation.

6.      In 2018, the Sandy Hook Plaintiffs and Fontaine sued the Jones Debtors for defamation, among other claims, based on various lies and conspiracy theories Alex Jones espoused through his media outlet (the Defamation Cases).[4] The claims of the Sandy Hook Plaintiffs—parents and immediate family members of children and educators slain at Sandy Hook and one first responder—stem from conspiracy theories the Jones Debtors disseminated that the mass shooting was a hoax.[5] Similarly, Fontaine's claims arose from falsehoods the Jones Debtors

---

[3] *See Declaration of Marc Schwartz in Support of First Day Motions*, ECF No. 10.

[4] Cause No.: D-1-GN-18-001835; *Neil Heslin v Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC and Owen Shroyer*; In the 261st Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-18-001842; *Leonard Pozner and Veronique De La Rosa v Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC*; In the 345th Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-19-004651; *Neil Heslin v Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC*; In the 261st Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-18-006623; *Scarlett Lewis v Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC*; In the 98th Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-18-001605; *Marcel Fontaine v Infowars, LLC, Free Speech Systems, LLC and Kit Daniels*; In the 459th Judicial District Court of Travis County, Texas; Cause No. FSB-CV18-6075078-S; *Wheeler, et. al. v. Alex Jones, et al.*; In the Judicial District of Fairfield as Bridgeport, Connecticut; Cause No. FBT-CV18-6076475-S; *Sherlock et al. v. Alex Jones, et al.*; In the Judicial District of Fairfield as Bridgeport, Connecticut; and Cause No. FBT-CV18-6081366; *Parker, et al. v. Alex Jones, et al.*; In the Judicial District of Fairfield as Bridgeport, Connecticut.

[5] *See e.g., Jones v. Heslin*, No. 03-20-00008-CV, 2020 WL 4742834, at *1 (Tex. App.—Austin Aug. 14, 2020, pet. denied); *Jones v. Heslin*, No. 03-19-00811-CV, 2020 WL 1452025, at *1 (Tex. App.—Austin March 25, 2020, pet. denied); *Jones v. Pozner*, No. 03-18-00603-CV, 2019 WL 5700903, at *9 (Tex. App.—Austin Nov. 5, 2019, pet. denied); *Jones v. Lewis*, No. 03-19-00423-CV, 2019 WL 5090500, at *4 (Tex. App.—Austin October 11, 2019, pet. denied).

spread that he was the shooter responsible for murdering 17 people at a high school in Parkland, Florida.[6]

7.      Rather than accept responsibility for propagating these lies, however, Alex Jones and the Debtor continued to deflect the truth. They first tried to dismiss the defamation litigation. But the trial courts denied those attempts in part because the Jones Debtors refused to cooperate in the cases' truth-finding phase of discovery.

8.      The Debtor and Jones continued to obstruct discovery. Their repeated discovery abuses even culminated in the trial court granting default judgments for the Texas Plaintiffs and the Connecticut Plaintiffs and against the Jones Debtors on liability in September and November 2021, respectively. The Debtor filed this bankruptcy case shortly before damages against it were to be liquidated in an amount in excess of the subchapter V debt limits in one of the lawsuits currently in trial in Travis County, Texas.

## B.  THE ALLEGED PQPR DEBT

9.      Soon after Texas and Connecticut Plaintiffs filed their Defamation Cases, the Debtor started diverting assets. The Debtor's financials show member draws in 2021 and 2022 in excess of $60 million to Alex Jones. These draws were in addition to his yearly salary, which according to the budget, is in excess of $1.4 million, and taken while the Debtor claimed to operate at a net loss. The Debtor's filings already concede that PQPR is an insider owned and controlled by the Jones family. They then presume that these entities operate independently of each other and at arm's length, such that they have the ability to contract with each other. Discovery conducted in Connecticut and Texas, however, demonstrates that Alex Jones controlled the business decisions

---

[6]  *Infowars, LLC v. Fontaine*, No. 03-18-00614-CV, 2019 WL 5444400, at *1 (Tex. App.—Austin Oct. 24, 2019, pet. denied).

of both entities and that the business operations of the two supposedly separate entities are so intertwined and so completely controlled by Jones that they are functionally one business.

10.     Just three weeks after the Connecticut Supreme Court affirmed significant discovery sanctions against Jones and the Debtor, and three months after the last appellate-court decision allowing the Texas Plaintiffs litigation to proceed, PQPR filed a UCC Financing Statement claiming a security interest in essentially everything Debtor Free Speech Systems owns. The claimed security interest covers an alleged $54 million debt the Debtor supposedly owes to PQPR. The Debtor admits that the supposed debt was first memorialized in 2020, even though its claim is that this obligation had been accruing since some time "in the past" and by 2020 amounted to $29 million dollars. The Debtor also admits that PQPR continues to supply it with supplements during the entire period of claimed nonpayment, even though the claimed indebtedness is now $54 million.

### III.     OBJECTION

#### A.  PQPR'S ALLEGED DEBT AND ITS PURPORTED LIENS ARE ILLEGITIMATE

11.     As previewed above, the Sandy Hook Plaintiffs' investigation over the course of the litigation against the Debtor indicates that the alleged PQPR debt is not legitimate.  None of the Debtor, PQPR, Jones, or any related entity or insider have produced any documentation evidencing the alleged underlying debt or the purported lien relating to PQPR's Notes.  In his Declaration, the Chief Restructuring Officer refers to "extensive and difficult negotiations with PQPR over the use of cash collateral" but gives no indication as to the substance of those negotiations or who was negotiating for PQPR (which is purportedly owned by some combination of Jones, his mother, and his father).  Further, he gives no indication that he has investigated whether or not the underlying debt to insider PQPR has ever existed and fails to disclose to this

Court that the Debtor, PQPR, Jones, and several of their related entities are the subject of a fraudulent transfer action pending in Travis County, Texas. The Chief Restructuring Officer and Debtor's counsel should advise the Court as to the substance of the negotiations he references and who they were with, what type of investigation was done prior to the filing of this Bankruptcy Case regarding the validity of this alleged debt and purported lien, and why he didn't advise the Court that the Debtor, Jones, PQPR, and several of their related entities are the subject of a fraudulent transfer action.

### B. THE COURT SHOULD NOT AUTHORIZE THE DEBTOR TO GRANT ADEQUATE PROTECTION, CONSISTING OF REPLACEMENT LIENS OR A SUPER PRIORITY ADMINISTRATIVE EXPENSE CLAIM IN FAVOR OF PQPR, ON AN INTERIM BASIS

12.     The Sandy Hook Plaintiffs object to the grant of any adequate protection liens or super priority administrative expense for use of cash collateral on an interim basis given the circumstances here. To the extent the Court is inclined to give some limited form of adequate protection on an interim basis, PQPR should not receive any purported replacement liens on any assets that were unencumbered as of the Petition Date, including avoidance actions, commercial tort claims, and any other unencumbered asset.

13.     It is well established that a party is not entitled to adequate protection absent a showing of the requisite cause. First, PQPR and the Debtors should provide evidence regarding the legitimacy of the debt. Second, PQPR is not entitled to adequate protection unless there is evidence that its purported collateral is declining in value.[7]

---

[7] *See., e.g.*, *In re Continental Airlines, Inc.*, 146 B.R. 536, 639 (Bankr. D. Del. 1992) ("Post-*Timbers* courts have uniformly required a movant seeking adequate protection to show a decline in value of its collateral"); *Zink v. Vanmiddlesworth*, 300 B.R. 394, 402-03 (N.D.N.Y. 2003) ("[T]he initial burden of showing the need for adequate protection [is] upon the creditor having an interest in the property being used by the debtor. In order to meet this burden, the secured creditor must demonstrate that such relief is required by showing a likelihood that the collateral will decrease in value of establishing some basis for the relief.") (internal citations omitted).

14.     Avoidance actions in particular are uniquely beneficial for the Sandy Hook Plaintiffs. While avoidance actions are carved out of requested replacement liens, they are not carved out from the requested super priority administrative expense request. The intent behind avoidance powers and a debtor's power to bring causes of action is to allow the debtor-in-possession to gain recoveries for the benefit of all unsecured creditors.[8] Hence, avoidance actions and the proceeds thereof should remain unencumbered for the benefit of all creditors—not subject to any super priority administrative expense claim.

15.     There are also potentially valuable, unencumbered commercial tort claims belonging to the Debtor's estate, including potential breach of fiduciary duty claims. These too should not be the subject of any adequate protection claim by PQPR.

16.     In sum, if the Court is inclined to grant replacement liens or an administrative expense claim, they should be subject to challenge and limited in scope. No purported replacement liens should attach to commercial tort claims or avoidance actions, nor should any administrative expense claim be payable from commercial tort claims or avoidance actions. Any liens or administrative expense claim should be subject to challenge by a party granted standing by this Court.

C.  **USE OF CASH COLLATERAL AND THE BUDGET SHOULD BE NARROWLY TAILORED DURING THE INTERIM PERIOD**

17.     As explained in the Sandy Hook Plaintiffs' preliminary statement, the Budget attached to the Cash Collateral Motion contains numerous payments that are inappropriate at this time and that would not cause "immediate and irreparable harm" if not paid. Bankruptcy Rule 4001 states that "the court may conduct a preliminary hearing . . . but the court may authorize the

---

[8]  *See Buncher Co. v. Official Comm. Of Unsecured Creditors of GenFarm Ltd. Partn. IV*, 229 F.3d 245, 250 (3d Cir. 2000); *In re Sweetwater*, 55 B.R. 724, 735 (D. Utah 1985) (avoiding powers are meant to benefit creditors generally and promote equitable distribution among all creditors).

use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." The Chief Restructuring Officer should provide an explanation as to why the following payments, including payments to insiders and PQPR as a prepetition creditor, are necessary to avoid "immediate and irreparable harm to the estate pending a final hearing":

        a.        **Repay PQPR Inventory**: $250,000

        b.        **Alex Jones Salary**: $54,166.67

        c.        **Payment on PQPR Note**: $18,000

        d.        **Amex Payment**: $172,390.28

18.     In sum, these payments to or for the benefit of insiders are not appropriate at this stage of the case. The Court should prohibit or limit payments in excess of $10,000 to insiders in total, and no payments should be made to PQPR until a full investigation of its purported secured claim is complete.

### IV.       CONCLUSION AND RESERVATION OF RIGHTS

19.     The Court should require the Debtor to provide a narrowly tailored budget necessary to bridge the gap from the petition date to the final hearing on cash collateral usage, and the cash during that interim period should come from "unencumbered" cash. The alleged PQPR debt is not valid and the Court should deny the Cash Collateral Motion. Neither the filing of this Objection or anything set forth herein (nor any other filing in this Bankruptcy Case) is, or should be constructed to be, a consent to jurisdiction of the United States Bankruptcy Court with respect to the claims asserted herein or for any other purpose. Furthermore, the Sandy Hook Plaintiffs hereby retain and fully reserve their rights to modify this Objection.  Finally, the Sandy Hook

Plaintiffs fully reserve all rights relating to the objection to the use of cash collateral on a final basis.

      Date: August 2, 2022

                                        Respectfully submitted,

                                        **McDowell Hetherington LLP**

                                        Avi Moshenberg
                                        Texas Bar No. 24083532
                                        1001 Fannin Street, Suite 2700
                                        Houston, Texas 77002
                                        D: 713-337-5580
                                        F: 713-337-8850
                                        E: Avi.Moshenberg@mhllp.com

                                        ***Counsel for the Texas Plaintiffs***

                                        and

                                        **Chamberlain, Hrdlicka, White,**
                                              **Williams & Aughtry, PC**

                                        By: */s/Jarrod B. Martin*
                                        Jarrod B. Martin
                                        Texas Bar No. 24070221
                                        1200 Smith Street, Suite 1400
                                        Houston, Texas 77002
                                        D: 713.356.1280
                                        F: 713.658.2553
                                        E: jarrod.martin@chamberlainlaw.com

                                        ***Bankruptcy Counsel for the Texas Plaintiffs***

                                        By: */s/ Ryan Chapple*
                                        Ryan E. Chapple
                                        State Bar No. 24036354
                                        Email: rchapple@cstrial.com
                                        **Cain & Skarnulis PLLC**
                                        303 Colorado Street, Suite 2850
                                        Austin, Texas 78701
                                        512-477-5000
                                        512-477-5011—Facsimile

and

Randy W. Williams
State Bar No. 21566850
Email: rww@bymanlaw.com
**BYMAN & ASSOCIATES PLLC**
7924 Broadway, Suite 104
Pearland, Texas 77581
281-884-9262

***Counsel for Connecticut Plaintiffs***


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on August 2, 2022, a true and correct copy of the foregoing objection was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.


*/s/ Jarrod B. Martin*
Jarrod B. Martin