# Exhibit 13

4/6/2022 1:43 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-22-001610
Ruben Tamez

D-1-GN-22-001610

CAUSE NO. _____

| | | |
|---|---|---|
| NEIL HESLIN, SCARLETT LEWIS, | § | IN THE DISTRICT COURT |
| LEONARD POZNER, VERONIQUE | § | |
| DE LA ROSA, MARCEL FONTAINE | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, | § | |
| PQPR HOLDINGS LIMITED LLC, | § | |
| JLJR HOLDINGS, LLC, PLJR | § | |
| HOLDINGS, LLC, CAROL JONES, | § | |
| DAVID JONES, PQPR HOLDINGS, | § | |
| LLC, JLJR HOLDINGS LIMITED, | § | |
| LLC, AEJ HOLDINGS, LLC, AEJ | § | |
| TRUST 2018 | § | 200TH, DISTRICT COURT |
| | § | |
| **Defendants.** | § | _____ DISTRICT COURT |

## PLAINTIFFS' ORIGINAL PETITION

### Introduction

1.      After Alex Jones was sued for claiming the massacre at Sandy Hook Elementary was a hoax, the infamous conspiracy theorist conspired to divert his assets to shell companies owned by insiders like his parents, his children, and himself. Since being sued, Jones transferred millions of dollars from his fortune to these insiders—whom he apparently thought were beyond reach. But the Texas Uniform Fraudulent Transfer Act prohibits defendants from playing shell games to shield assets from their creditors. And it allows creditors like the Sandy Hook Families to void fraudulent transfers that defendants like Alex Jones make to their insiders. The Sandy Hook Families and Fontaine therefore assert TUFTA claims against Jones and his insiders to foil this scheme.

## Parties

**The Sandy Hook Families**

2.     Plaintiff Neil Heslin is an individual who resides in Connecticut.

3.     Plaintiff Scarlett Lewis is an individual who resides in Connecticut.

4.     Plaintiff Leonard Pozner is an individual who resides in Florida.

5.     Plaintiff Veronique De La Rosa is an individual who resides in Florida.

**Fontaine**

6.     Plaintiff Marcel Fontaine is an individual who resides in Massachusetts.

**The Jones Debtors**

7.     Defendant Alex E. Jones is a resident of Austin, Texas. He hosts radio and web-based news programing, including "The Alex Jones Show," and he owns Free Speech Systems, LLC, which operates the website infowars.com. Jones can be served at his place of business, InfoWars, 3019 Alvin Devane Blvd., Suite 300-350, Austin, TX 78741.

8.     Defendant InfoWars, LLC is a Texas limited-liability company with principal offices located in Austin, Texas. It may be served at the address of its registered agent, Eric Taube, at 100 Congress Ave., 18th Floor, Austin, TX 78701.

9.     Defendant Free Speech Systems, LLC is a Texas limited-liability company with principal offices located in Austin, Texas. It may be served at the address of its registered agent, Eric Taube, at 100 Congress Ave., 18th Floor, Austin, TX 78701.

10.     At all times relevant to this petition, these Jones Debtors operated as a joint venture, joint enterprise, single-business enterprise, or alter ego.

**The Jones Transferees**

11.     Defendant PQPR Holdings Limited LLC is a Nevada limited-liability company. It may be served at the address of its registered agent, Registered Agents Inc., at 401 Ryland St., Suite 200-A, Reno, NV 89502.

12.     Defendant JLJR Holdings, LLC is a Nevada limited-liability company. It directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. It may be served at the address of its registered agent, Registered Agents Inc., at 401 Ryland St., Suite 200-A, Reno, NV 89502.

13.     Defendant PLJR Holdings, LLC is a Nevada limited-liability company. It directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. It may be served at the address of its registered agent, Registered Agents Inc., at 401 Ryland St., Suite 200-A, Reno, NV 89502.

14.     Defendant Carol Jones is a resident of Austin, Texas. She is Alex Jones's mother and directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. She can be served personally at 3402 Clawson Road, Austin, Texas 78704 or wherever she can be found.

15.     Defendant David Jones is a resident of Austin, Texas. He is Alex Jones's father and directly and indirectly owns, operates, and receives income from PQPR Holdings Limited LLC. He can be served personally at 3402 Clawson Road, Austin, Texas 78704 or wherever he can be found.

16.     Defendant PQPR Holdings, LLC is an entity that has been previously identified by the Jones Debtors as a party to transfers or obligations that Plaintiffs contend are fraudulent. To date, Plaintiffs have found no entity by this name and no registered agent to receive service. They will amend this pleading accordingly when a registered agent has been ascertained.

17.     Defendant JLJR Holdings Limited, LLC is an entity listed as a member of PQPR Holdings Limited, LLC and PLJR Holdings, LLC. To date, Plaintiffs have found no entity by this name and no registered agent to receive service. They will amend this pleading accordingly when a registered agent has been ascertained.

18.     Defendant AEJ Holdings, LLC is an entity that has been identified previously by the Jones Debtors as a party to transfers or obligations that Plaintiffs contend are fraudulent. To date, Plaintiffs have found no entity by this name and no registered agent to receive service. They will amend this pleading accordingly when a registered agent has been ascertained.

19.     Defendant AEJ Trust 2018 is an entity that has been identified previously by the Jones Debtors as a party to transfers or obligations that Plaintiffs contend are fraudulent. To date, Plaintiffs have found no entity by this name and no registered agent to receive service. They will amend this pleading accordingly when a registered agent has been ascertained.

20.     At all times relevant to this petition, the Jones Transferees and Defendant Alex Jones operated as a joint venture, joint enterprise, single-business enterprise, or alter ego.

### Discovery-Control Plan

21.     Discovery should be conducted under Level 3 case of the Texas Rules of Civil Procedure.[1] Plaintiffs seek monetary relief over $1,000,000.[2]

### Jurisdiction and Venue

22.     The amount in controversy exceeds the Court's minimum jurisdictional requirements.

---

[1] *See* Tex. R. Civ. P. 190.

[2] *See* Tex. R. Civ. P. 47. Plaintiffs may also seek injunctive relief, in which case they may request expedited discovery.  *See* Tex. R. Civ. P. 680.

23.     Venue is proper in Travis County because that's where certain Defendants resided when the cause of action accrued and because all or a substantial part of the events or omissions giving rise to the claims occurred in Travis County.[3]

## Background

24.     Alex Jones, through his media companies Free Speech Systems and InfoWars, became a national figure by peddling bizarre conspiracy theories. Followers tune in to hear him and his guests ramble about unsubstantiated claims—like how the September 11th attacks were an inside job by the U.S government. They can also hear him tout the various products available to buy on his InfoWars website. And they can then navigate to that website, where they have a host of products available for purchase.

25.     They can buy, for example, bumper stickers echoing the types of conspiracy theories they hear on Jones's programming:



_____

[3] *See* Tex. Civ. Prac. & Rem. Code § 15.002.

[4] InfoWars Store, at "Stickers and Decals", https://www.infowarsstore.com/gear/stickers-and-decals (last visited April 4, 2022).

26.     They can even buy various "preparedness" kits ranging from seeds to storable food to survival gear to nuclear and biological supplies:



27.     The sale of these types of products on the InfoWars website and elsewhere enabled the Jones Debtors to earn a fortune.

28.     But after the Jones Debtors aimed their conspiracy theories at Sandy Hook Elementary—claiming the tragic shooting there was staged—that all changed.

---

[5] InfoWars Store, at "Preparedness", https://www.infowarsstore.com/preparedness (last visited April 4, 2022).

**The Sandy Hook Families and Fontaine sue the Jones Debtors for defamation.**

29.     In April 2018, the Sandy Hook Families and Fontaine sued the Jones Debtors for defamation, among other claims, based on various lies and conspiracy theories Alex Jones espoused through his media outlet (the Defamation Cases).[6] The claims of the Sandy Hook Families—parents of children slain at Sandy Hook—stem from conspiracy theories the Jones Debtors disseminated that the mass shooting was a hoax.[7] Similarly, Fontaine's claims arose from falsehoods the Jones Debtors spread that he was the shooter responsible for murdering 17 people at a high school in Parkland, Florida.[8]

30.     Rather than accept responsibility for propagating these lies, however, the Jones Debtors continued to deflect the truth. The Jones Debtors first tried to dismiss the Defamation Cases. But the trial courts denied those attempts in part because the Jones Debtors refused to cooperate in the cases' truth-finding phase of discovery. Instead of accepting blame then, the Jones Debtors appealed the trial courts' denials of their dismissal motions. Each time, the appellate court declined the Jones Debtors' requests to dismiss the cases. The appellate court

---

[6] Cause No.: D-1-GN-18-001835; *Neil Heslin v Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC and Owen Shroyer*; In the 261st Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-18-001842; *Leonard Pozner and Veronique De La Rosa v Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC*; In the 345th Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-19-004651; *Neil Heslin v Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC*; In the 261st Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-18-006623; *Scarlett Lewis v Alex E. Jones, Infowars, LLC and Free Speech Systems, LLC*; In the 98th Judicial District Court of Travis County, Texas; Cause No.: D-1-GN-18-001605; *Marcel Fontaine v Infowars, LLC, Free Speech Systems, LLC and Kit Daniels*; In the 459th Judicial District Court of Travis County, Texas.

[7] *See e.g., Jones v. Heslin,* No. 03-20-00008-CV, 2020 WL 4742834, at *1 (Tex. App.—Austin Aug. 14, 2020, pet. denied); *Jones v. Heslin*, No. 03-19-00811-CV, 2020 WL 1452025, at *1 (Tex. App.—Austin March 25, 2020, pet. denied); *Jones v. Pozner*, No. 03-18-00603-CV, 2019 WL 5700903, at *9 (Tex. App.—Austin Nov. 5, 2019, pet. denied); *Jones v. Lewis*, No. 03-19-00423-CV, 2019 WL 5090500, at *4 (Tex. App.—Austin October 11, 2019, pet. denied).

[8] *Infowars, LLC v. Fontaine*, No. 03-18-00614-CV, 2019 WL 5444400, at *1 (Tex. App.—Austin Oct. 24, 2019, pet. denied).

even sanctioned the Jones Debtors for raising a frivolous appeal that misrepresented the underlying facts and the governing law.[9]

31.     Even after the appellate court allowed the Defamation Cases to proceed, the Jones Debtors continued to obstruct discovery. Their repeated discovery abuses even culminated in the trial court granting default judgments for the Sandy Hook Families and against the Jones Debtors on liability in September 2021. The first trial against the Jones Debtors on damages commences at the end of April 2022. The next will follow soon after. In other words, judgments against the Jones Debtors are imminent.

**During the Defamation Cases, the Jones Debtors doomsday prepped for these eventual judgments by diverting assets.**

32.     After the Sandy Hook Families and Fontaine filed their Defamation Cases, the Jones Debtors started diverting their assets. From 2018 to 2021, for example, Alex Jones personally drew about $18 million from his InfoWars company, Free Speech Systems. These draws were in addition to his yearly salary, which exceeded $600,000, and taken while Free Speech Systems operated at a net loss in the millions each of those years.

33.     Jones apparently drew these $18 million while his company, Free Speech Systems, was insolvent. Just three months after the last appellate-court decision allowing the Defamation Cases to proceed, a company named PQPR filed a UCC Financing Statement claiming a security interest in essentially everything Free Speech Systems owns. The claimed security interest covers an alleged $54 million debt Free Speech Systems owes to PQPR. The supposed debt began accruing years earlier as part of an arrangement where Free Speech Systems sells PQPR's products on the InfoWars website. Under this alleged arrangement, PQPR was to be reimbursed for the costs of the products and receive 70% of the sales revenue while

---

[9] *Heslin*, 2020 WL 1452025, at *6.

Free Speech Systems retained the other 30%. In practice, however, Free Speech Systems supposedly kept 100% of the revenue for about seven years and didn't pay for the goods PQPR provided—to the point where a $54 million debt had accumulated. All the while, PQPR not only supplied Free Speech Systems with more products to sell but also paid Free Speech Systems millions of dollars a year to advertise on the InfoWars website. PQPR still supplies the Jones Debtors with products to sell and pays for advertising on the website.

34.     So why would an independent business like PQPR continue to engage in such questionable transactions?

35.     Because PQPR is not actually an independent business. It's an insider of the Jones Debtors. It is owned and operated directly or indirectly by Jones, his parents, and his children through an alphabet soup of shell entities like JLJR Holdings Limited LLC; JLJR Holdings, LLC; PLJR Holdings, LLC; PQPR Holdings, LLC; AEJ Holdings, LLC; and AEJ Trust 2018. And the income PQPR receives—including from sources like the Jones Debtors—goes to Alex Jones and these Jones Transferees.

36.     And after the Defamation Cases began, the Jones Debtors started transferring large sums of money to the Jones Transferees. These sums include money the Jones Debtors started regularly transferring from Free Speech Systems to PQPR *the same month that the default judgments were rendered*. In fact, the month the default judgments were rendered, Free Speech Systems started transferring to PQPR between $11,000 per day and $11,000 per week plus 60–80% of Free Speech Systems' sales revenue—supposedly just to pay the interest on the alleged $54 million debt. Free Speech Systems claims these payments are part of a "financial disentanglement between the two companies[.]" In reality, they're transfers designed to siphon off the Jones Debtors' assets to make them judgment-proof.

37.     This fact is only confirmed by the jaw-dropping amount in transfers the Jones Debtors made during the Defamation Cases. In 2021 alone, the Jones Debtors transferred from Free Speech Systems tens of millions more than it cost to operate that year. These transfers started just four months after the last appellate-court decision was issued that allowed the Defamation Cases to proceed.

## Causes of Action

38.     The Sandy Hook Families and Fontaine assert fraudulent-transfer claims under the Texas Uniform Fraudulent Transfer Act to void transfers between the Jones Debtors and the Jones Transferees. Texas enacted TUFTA to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach.[10] Through TUFTA's statutory scheme, creditors may seek recourse for fraudulent transfers of assets or property.[11] The Sandy Hook Families and Fontaine are creditors entitled to recourse under TUFTA because the Jones Debtors engaged in fraudulent transfers and conspired to commit fraudulent transfers.[12]

**Count 1—Fraudulent Transfer with actual intent to hinder, delay, or defraud under § 24.0005(a)(1)**

39.     The Sandy Hook Families and Fontaine reallege and incorporate by reference the prior facts alleged in this pleading.

---

[10] *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016).

[11] *Sargeant v. Al Saleh*, 512 S.W.3d 399, 411–12 (Tex. App.—Corpus Chrisi-Edinburg 2016, no pet.) (citing cases).

[12] *See* Tex. Bus. & Com. Code § 24.002 (defining "creditor" as a person who has a "claim" and "claim" as a right to payment including whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, or undisputed); *see also Bank of Am., N.A. v. Fulcrum Enterprises, LLC*, 20 F. Supp. 3d 594, 601 (S.D. Tex. 2014) (explaining that a person my bring a TUFTA action as a creditor of the transferor by virtue of a legal action, pending and unliquidated at the time of transfer).

40.     The Jones Debtors are liable for engaging in fraudulent transfers as to present and future creditors under § 24.0005(a)(1).[13] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor under this section if the debtor made the transfer or incurred the obligation with the actual intent to hinder, delay, or defraud any creditor of the debtor.[14] Such transfers or obligations are fraudulent whether the creditor's claim arose before or within a reasonable time after the transfers were made or obligations incurred.[15]

41.     The Jones Debtors engaged in fraudulent transfers under this standard. During the Defamation Cases—while the Sandy Hook Families and Fontaine were creditors—the Jones Debtors transferred millions of dollars from Free Speech Systems for reasons unrelated to Free Speech Systems' business operations. In 2021 alone, they transferred from Free Speech Systems tens of millions more than it cost to operate that year. These transfers started just four months after the last appellate-court decision was issued that allowed the Defamation Cases to proceed.

42.     Transfers by the Jones Debtors while the Defamation Cases were pending also include payments to insiders, like Jones himself. From 2018 to 2021, for example, Jones apparently drew $18 million from Free Speech Systems, even though it was insolvent and operating at a net loss each of those years. These draws were in addition to (and about 30 times greater than) Jones's yearly salary.

43.     And since the Defamation Cases began, the Jones Debtors also transferred large sums to other insiders, like the Jones Transferees. These sums include money the Jones Debtors

---

[13] Tex. Bus. & Com. Code § 24.005(a)(1) ("(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor;").

[14] *Id.*

[15] *Id.*

started regularly transferring from Free Speech Systems to insider PQPR the same month that default judgments in the Defamation Cases were rendered. Specifically, PQPR started receiving as much as $11,000 per day plus 60–80% of Free Speech Systems' sales revenue. These payments are allegedly to pay just the interest on the questionable $54 million obligation to PQPR the Jones Debtors decided that Free Speech incurred just three months after the appellate court allowed the Defamation Cases to proceed. All the while the Jones Debtors retained possession and control of these money transfers and obligations, as the money PQPR receives from Free Speech Systems goes directly and indirectly to insiders like Jones, his parents, and his children through the shell entities included as Jones Transferees.

44.     These transfers and obligations that the Jones Debtors made and incurred were done with the actual intent to hinder, delay, or defraud their creditors—including the Sandy Hook Families and Fontaine. That truth becomes especially glaring considering the badges of fraud surrounding these transfers and obligations.[16] Those badges include, for example, that the transfers and obligations were made to insiders who retained possession and control over the property; the transfers and obligations were concealed and made while the Defamation Cases were pending and while the Jones Debtors were insolvent; and that past and future transfers to PQPR will eliminate substantially all of the Jones Debtors' assets—as these essential assets paid

---

[16] Tex. Bus. & Com. Code § 24.005(b) ("(b) In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.").

to insider and supposed secured creditor PQPR will be subsequently transferred to insiders like Jones, his parents, and his children through the Jones Transferees.

45.     The Jones Debtors are thus liable under § 24.0005(a)(1) and the Sandy Hook Families and Fontaine seek the remedies available under TUFTA against not only the Jones Debtors as transferors but also Jones and the Jones Transferees as transferees. Among the remedies the Sandy Hook Families and Fontaine seek is to void the transfers made by the Jones Debtors to Jones and the Jones Transferees or to recover from Jones and the Jones Transferees the value of the transfers they received from the Jones Debtors.[17]

**Count 2—Fraudulent Transfer without receiving reasonably equivalent value under § 24.0005(a)(2)**

46.     The Sandy Hook Families and Fontaine reallege and incorporate by reference the prior facts alleged in this pleading.

47.     The Jones Debtors are liable for engaging in fraudulent transfers as to present and future creditors under § 24.0005(a)(2).[18] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor under this section if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and either (1)  the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to

---

[17] Tex. Bus. & Com. Code § 24.008.

[18] Tex. Bus. & Com. Code § 24.005(a)(2) "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: . . . (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or the transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.").

the business or transaction; or (2) the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[19] Such transfers or obligations are fraudulent whether the creditor's claim arose before or within a reasonable time after the transfers were made or obligations incurred.[20]

48.     Under these standards the Jones Debtors committed fraudulent transfers as to the Sandy Hook Families and Fontaine. While the Defamation Cases were pending—that is, while the Sandy Hook Families and Fontaine were creditors—the Jones Debtors transferred millions of dollars from Free Speech Systems without receiving reasonably equivalent value in exchange, and while the Jones Debtors' assets were unreasonably small. Moreover, the Jones Debtors incurred millions of dollars in obligations they intended or reasonably should have believed they would be unable to pay as they became due.

49.     For instance, in 2021 the Jones Debtors transferred from Free Speech Systems tens of millions more than it cost to operate the company. These transfers were unrelated to operating the business and thus weren't in exchange for reasonably equivalent value. And these transfers far exceeded Free Speech Systems' assets—and any of the Jones Debtors' for that matter—which were unreasonably small compared to the millions transferred away.

50.     And from 2018 to 2021, the Jones Debtors also transferred from Free Speech Systems to Jones about $18 million on top of the already substantial salary he received. Of course these $18 million in draws weren't for reasonably equivalent value, especially given that Free Speech Systems was operating at a loss at that time and allegedly had other substantial debts to insider PQPR it hadn't been paying for years. And these $18 million in transfers

---

[19] *Id.*

[20] *Id.*

virtually eliminated Free Speech Systems' remaining assets, which were already unreasonably small compared to the $18 million that had been transferred.

51.     And around the time that default judgments were rendered against the Jones Debtors in the Defamation Cases, the Jones Debtors incurred an obligation to insider PQPR to pay only the interest on the supposed $54 million debt to PQPR that Free Speech Systems hadn't been paying as it became due. Under this obligation to pay only the interest, Free Speech Systems agreed to pay as much as $11,000 per day plus 60–80% of its sales revenue. Incurring such a hefty obligation to cover only the interest on an alleged debt to an insider is not for reasonably equivalent value. And the Jones Debtors intended to incur or believed or reasonably should have believed that Free Speech Systems was incurring, debts beyond its ability to pay as they became due. After all, given that 100% of Free Speech Systems' sales revenue was already too little to cover its operating expenditures, counting on only 20–40% of sales revenue to cover operating expenditures would be quixotic. The Jones Debtors knew or should have known their new obligation to insider PQPR—which is directly and indirectly run by and benefits Jones, his parents, and his children through the Jones Transferees—is beyond their ability to pay.

52.     This of course rests against the backdrop of the dubious $54 million obligation Free Speech Systems now claims it owes PQPR. Free Speech Systems apparently did not recognize any obligation to PQPR before the Defamation Cases. Only after the appellate court allowed the cases to proceed, did any evidence of an obligation by Free Speech Systems to PQPR surface. That Free Speech Systems needlessly agreed to take on a $54 million obligation to an insider is not an obligation in exchange for reasonably equivalent value. And it's an obligation the Jones Debtors apparently intended to incur or believed or reasonably should have believed they would incur and would be beyond their ability to pay as they became due.

53.     The Jones Debtors are thus liable under § 24.0005(a)(2) and the Sandy Hook Families and Fontaine seek the remedies available under TUFTA against not only the Jones Debtors as transferors but also Jones and the Jones Transferees as transferees. Among the remedies they seek is to void the transfers made by the Jones Debtors to Jones and the Jones Transferees or to recover from Jones and the Jones Transferees the value of the transfers they received from the Jones Debtors.[21]

**Count 3—Fraudulent Transfer without receiving reasonably equivalent value under § 24.0006(a)**

54.     The Sandy Hook Families and Fontaine reallege and incorporate by reference the prior facts alleged in this pleading.

55.     The Jones Debtors are liable for engaging in fraudulent transfers as to present creditors under § 24.0006(a).[22] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.[23]

56.     The Jones Debtors also committed fraudulent transfers under this standard. While the Sandy Hook Families and Fontaine were creditors and while the Jones Debtors were insolvent, the Jones Debtors transferred millions of dollars without receiving reasonably

---

[21] Tex. Bus. & Com. Code § 24.008.

[22] Tex. Bus. & Com. Code § 24.006(a) ("(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.").

[23] *Id.*

equivalent value. These transfers include the tens of millions transferred from Free Speech Systems in 2021 that were unrelated to its operation. They also include $18 million that Jones drew from his business, Free Speech Systems. And they include the Jones Debtors' payments on just the interest on an alleged $54 million debt Free Speech Systems owes insider PQPR—payments that include as much as $11,000 per day plus 60–80% of Free Speech Systems' sales revenue. As explained in prior sections, none of these transfers and obligations were in exchange for reasonably equivalent value. And all were apparently made and incurred while the Jones Debtors were insolvent—or they became insolvent as a result of these transfers and obligations.

57.     The Jones Debtors are thus liable under § 24.0006(a) and the Sandy Hook Families and Fontaine seek the remedies available under TUFTA against not only the Jones Debtors as transferors but also Jones and the Jones Transferees as transferees. Among the remedies they seek is to void the transfers made by the Jones Debtors to Jones and the Jones Transferees or to recover from Jones and the Jones Transferees the value of the transfers they received from the Jones Debtors.[24]

**Count 4—Fraudulent Transfer without receiving reasonably equivalent value under § 24.0006(b)**

58.     The Sandy Hook Families and Fontaine reallege and incorporate by reference the prior facts alleged in this pleading.

59.     The Jones Debtors are liable for engaging in fraudulent transfers as to present creditors under § 24.0006(b).[25] A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent

---

[24] Tex. Bus. & Com. Code § 24.008.

[25] Tex. Bus. & Com. Code § 24.006(b) ("(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.").

debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.[26]

60.     The Jones Debtors engaged in fraudulent transfers under this standard. After the Sandy Hook Families' and Fontaine's claims against the Jones Debtors arose, the Jones Debtors started repaying an alleged debt to insider PQPR, which is owned directly and indirectly by Jones, his parents, and his children through various entities—the Jones Transferees. Moreover, income that PQPR receives from Free Speech Systems, for example, is directly and indirectly paid to Jones, his parents, and his children though the Jones Transferees. The Jones Debtors made these transfers to pay off this antecedent debt to insider PQPR directly (and Jones and the Jones Transferees indirectly) while they were insolvent. And the Jones Transferees, including PQPR, had reasonable cause to believe that the Jones Debtors were insolvent at the time. After all, the Jones Debtors allegedly failed to the pay the supposed debt to PQPR for years to the point where the debt reached $54 million and exceeded the Jones Debtors' assets.

61.     And to the extent that the $18 million Jones drew from Free Speech Systems between 2018 and 2021 were payments for antecedent debts, such payments are also fraudulent transfers under this section. These transfers were made after the Sandy Hook Families' and Fontaine's claims against the Jones Debtors arose. As Free Speech Systems' sole owner, Jones was its insider. And as its sole owner, Jones had reasonable cause to believe that Free Speech Systems was insolvent—and in fact was insolvent—when these transfers to him were made.

62.     The Jones Debtors are thus liable under § 24.0006(b) and the Sandy Hook Families and Fontaine seek the remedies available under TUFTA against not only the Jones Debtors as transferors but also Jones and the Jones Transferees as transferees. Among the remedies they seek is to void the transfers made by the Jones Debtors to Jones and the Jones

---

[26] *Id.*

Transferees or to recover from Jones and the Jones Transferees the value of the transfers they received from the Jones Debtors.[27]

**Count 5—Conspiracy to commit fraudulent transfers**

63.     The Sandy Hook Families and Fontaine reallege and incorporate by reference the prior facts alleged in this pleading.

64.     The Jones Debtors and the Jones Transferees are liable for conspiracy to commit fraudulent transfers.[28] The elements of a civil conspiracy are: (1) two or more persons; (2) an end to be accomplished; (3) meeting of the minds on the end or course of action; (4) one or more overt unlawful acts; and (5) proximately resulting in injury.[29]

65.     Here, the Jones Debtors and the Jones Transferees conspired to commit fraudulent transfers. As the prior paragraphs establish, the Jones Debtors and the Jones Transferees conspired to siphon the Jones Debtors' assets away to avoid paying the Sandy Hook Families and Fontaine in the Defamation Cases. The Jones Debtors and the Jones Transferees then proceeded with the course of action of transferring millions of dollars in assets away from the Jones Debtors and having the Jones Debtors incur millions of dollars in obligations to its insider Jones Transferees, who weren't sued in the Defamation Cases. These overt acts are unlawful fraudulent transfers under TUFTA. And they proximately resulted in injury to the Sandy Hook Families and Fontaine. Diverting assets away from the Jones Debtors to the Jones Transferees impairs the Sandy Hook Families' and Fontaine's ability to collect on their judgments.

---

[27] Tex. Bus. & Com. Code § 24.008.

[28] *In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 743 (Bankr. S.D. Tex. 2020) (citing *Ramirez v. Rodriguez (In re Ramirez),* 413 B.R. 621, 629 (Bankr. S.D. Tex. 2009) and *Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 740 (N.D. Tex. 2008)).

[29] *Id.* at 743–44.

## Conditions Precedent

66.     All conditions precedent to the Sandy Hook Families' and Fontaine's claims for relief have been performed or have occurred or have been waived.

## Attorney's Fees and Interest

67.     The Sandy Hook Families and Fontaine seek costs and attorney's fees under § 24.013 of the Texas Uniform Fraudulent Transfer Act.[30]

68.     The Sandy Hook Families and Fontaine further seek pre- and post-judgment interest on the amount of any judgment as allowed by law.

## Request for Disclosure

69.     Defendants are requested to disclose, within 50 days of the service of this request, the information or material described in Texas Rule of Civil Procedure 194.2.

## Trial by Jury

70.     The Sandy Hook Families and Fontaine respectfully request a trial by jury.

## Notice of Intent

71.     Under Rule 193.7, Plaintiffs intend to use any documents produced in response to written discovery requests at trial and in any pretrial matters in the litigation.[31]

## Prayer

For these reasons, Plaintiffs respectfully request that Defendants be cited to appear and answer and that judgment be awarded to Plaintiffs for the following:

1) avoidance of transfers or obligations to the extent necessary to satisfy Plaintiffs' claims;

---

[30] Tex. Bus. & Com. Code § 24.013.

[31] Tex. R. Civ. P. 193.7.

2) an attachment or any other provisional remedy against the assets transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice and Remedies Code relating to ancillary proceedings;

3) an injunction—including temporary and permanent injunctive relief—against further disposition by the debtors or transferees, or both, of the assets transferred or of other property;

4) an appointment of a receiver to take charge of the assets transferred or of other property of the transferees;

5) to levy execution on assets transferred or their proceeds;

6) actual damages, including direct, indirect, special, incidental, and consequential damages;

7) exemplary damages;

8) costs and reasonably attorney's fees as are equitable and just;

9) pre- and post-judgment interest;

10) any other relief the circumstances may require.

Dated: April 6, 2022

Respectfully submitted

**MCDOWELL HETHERINGTON LLP**

By: */s/ Avi Moshenberg*
    Avi Moshenberg
    Texas Bar No. 24083532
    Nick Lawson
    State Bar No. 24083367
    Matthew Caldwell
    State Bar No. 24107722
    1001 Fannin Street, Suite 2700
    Houston, TX 77002
    Phone: (713) 337-5580
    Fax: (713) 337-8850
    Email: avi.moshenberg@mhllp.com
    Email: nick.lawson@mhllp.com
    Email: matthew.caldwell@mhllp.com

**KASTER LYNCH FARRAR & BALL, LLP**

By: */s/ Mark D. Bankston*
    Mark D. Bankston
    State Bar No. 24071066
    William R. Ogden
    State Bar No. 24073531
    1117 Herkimer
    Houston, Texas 77008
    (713) 221-8300 Telephone
    (713) 221-8301 Fax
    Email: mark@fbtrial.com
    Email: bill@fbtrial.com

**THE AKERS FIRM PLLC**

By: */s/ Cordt Akers*
    Cordt Akers
    State Bar No. 24080122
    3401 Allen Parkway, Suite 101
    Houston, TX 77019
    Phone: (713) 877-2500
    Fax: (713) 583-8662
    Email: cca@akersfirm.com

**ATTORNEYS FOR PLAINTIFFS**