# **EXHIBIT D**

**Changes to Plan Support Agreement**

*[Different first page setting changed from off in original to on in modified.].*

## AMENDED AND RESTATED PLAN SUPPORT AGREEMENT

This AMENDED AND RESTATED PLAN SUPPORT AGREEMENT (as the same may be amended, modified or supplemented from time to time in accordance with the terms hereof, the "Agreement") is made and entered into as of April ~~14~~28, 2022 by and among the following parties (each individually a "Party" and collectively referred to as the "Parties"):

(a)     Free Speech Systems, LLC, a Texas limited liability company ("FSS");

(b)     Alex E. Jones, an individual residing in Texas ("~~AJ~~AEJ," and, collectively with FSS, the "Third-Party Funding Contributor[s]");

(c)     InfoW, LLC,[1] a Texas limited liability company ("IW");

(d)     InfoHealth, LLC,[2] a Texas limited liability company ("IWH"); and

(e)     Prison Planet TV, LLC, a Texas limited liability company ("PTV").

## RECITALS[3]

~~WHEREAS, IW, IWH and PTV (collectively the "Debtors" and each individually a "Debtor") intend to commence voluntary reorganization cases (the "Bankruptcy Cases") under subchapter V of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court") to affect the resolution and payment of certain claims and litigation claims through one or more chapter 11 plan(s) of reorganization;~~

WHEREAS, the Debtors have determined that it would be in their best interests and the best interest of their creditors to implement a restructuring of their indebtedness and other obligations through the prosecution of the ~~Bankruptcy Cases~~Chapter 11 Cases (defined herein) managed by a Chief Restructuring Officer, with the membership interest of the Debtors in a trust, under the exclusive governance and control of independent trustees to be approved by the Bankruptcy Court and funded by ~~AJ and FSS (collectively the "~~the Third-Party Funding Contributor[s]~~)~~ as herein provided;

WHEREAS, on April 18, 2022 (the "Petition Date"), IW, IWH and PTV (collectively the "Debtors" and each individually a "Debtor") filed voluntary petitions for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing jointly administered cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court");

---

[1]     Formerly known as InfoWars, LLC

[2]     Formerly known as InfoWars Health, LLC

[3]     Unless otherwise indicated, capitalized terms used in these Recitals shall have the meanings ascribed in the body of this Agreement.

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

WHEREAS, prior to the Petition Date, the Debtors, the Third-Party Funding Contributor[s], and the Initial Trustee (as defined therein) executed that Declaration of Trust (as may be amended or restated, the "Trust Agreement") establishing the 2022 Litigation Settlement Trust (the "Litigation Settlement Trust") to facilitate the independent administration of the Chapter 11 Cases and to pursue confirmation of a chapter 11 plan of reorganization in accordance with the terms of this Agreement;

WHEREAS, also prior to the Petition Date, the Parties ~~have agreed on the terms of~~entered into this Agreement and ~~the elements~~agreed upon certain material terms of a proposed chapter 11 plan(s) for the Debtors, ~~each~~as may be amended, modified, or supplemented from time to time, including any schedules and exhibits attached thereto, in each case, in accordance with the terms hereof (the "Proposed Plan");

WHEREAS, subject to the terms and limitations set forth herein, the Proposed Plan shall provide for Payment in Full of all Allowed Litigation Settlement Trust Claims, which payments shall be administered by the Litigation Settlement Trustees and funded by the Third-Party Funding Contributor[s] with cash, assets and liens (as set out and limited herein, the "Exit Funding Commitment");

WHEREAS, in consideration for the performance and fulfillment of the Funding Commitment (as defined in the Trust Agreement) and the Exit Funding Commitment, the Third-Party Funding Contributor[s] shall be entitled to receive the Resulting Releases subject to the terms of this Agreement and the Plan, provided, however, for the avoidance of doubt, that the granting of such Resulting Releases shall be expressly conditioned upon satisfaction in full of any and all joint and several liabilities of each or all of the Debtors and the Third-Party Funding Contributor[s] and arising from the Litigation Settlement Trust Claims;

WHEREAS the Debtors and the Third-Party Funding Contributor[s] desire the appointment of the Litigation Settlement Trustees as successors to the Initial Trustee of the Litigation Settlement Trust;

WHEREAS the Litigation Settlement Trustees require certain amendments and revisions to the terms of this Agreement as set forth herein as a condition of their willingness to serve as trustees of the Litigation Settlement Trust; and

WHEREAS, subject to the terms hereof and appropriate approvals of the Bankruptcy Court, as may be required, the following sets forth the amended and restated agreement among the Parties concerning their respective obligations in connection with the Plan(s) and the ~~Bankruptcy~~Chapter 11 Cases.

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound hereby, agree as follows:

## Section 1     CERTAIN DEFINITIONS

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

Applicable definitions contained in (i) the Bankruptcy Code; and (ii) the Litigation Settlement Trust (and associated documents) are incorporated into this Agreement except as modified in this Section 1 or except as conflicting with the defined the terms herein. The following definitions shall have the meanings as specified herein, and shall be designated, when such special definitions are applicable, with capital letters, and these definitions shall be enforceable as terms of the Agreement in conjunction with the respective matters to which they reference or define.

**"Allowed"** or **"Allowed Claim"** means ~~a Litigation Settlement Trust Claims or Claim that is allowed: (i),~~ with respect to any Claim, except as otherwise provided in the Proposed Plan, a Claim allowable under Bankruptcy Code section 502 that (i) has been allowed by a Final Order, including but not limited to any Final Order estimating claims for purposes of confirming this Plan, (ii) either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtors' schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed and liquidated Proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, (iii) is expressly allowed in a liquidated amount in the Plan; or (iv) has been allowed in any stipulation executed by the Debtor (or the Litigation Settlement Trustees ~~after the Confirmation Order becomes a Final Order~~), the Third-Party Funding Contributors and the holder of the Litigation Settlement Trust Claim~~; (ii) in a Final Order; or (iii) pursuant to the terms of the Plan~~.

**"Claim(s)"** means a "claim" against the Debtors, as defined in Section 101(5) of the Bankruptcy Code.

~~**"Approved Plan Documents"** means those agreements and documents executed and or submitted in conjunction with the Plan or as a supplement to the Plan which have been approved by the Third-Party Funding Contributors.~~
~~**"Bankruptcy Cases"** means collectively or individually the cases filed by the Debtors pursuant to 11 U.S.C. §1101, *et seq.*~~
~~**"Bankruptcy Code"** means title 11 of the United States Code.~~
**"Confirmation Order"** means ~~the~~a final, non-appealable order of the Bankruptcy Court confirming the Proposed Plan~~(s)~~ pursuant to section 1191 of the Bankruptcy Code.

~~**"Debtor"** or **"Debtors"** shall refer individually and collectively to InfoW, LLC (XXXX), InfoHealth, LLC (XXXX), and Prison planet TV, LLC (XXXX), including any and all affiliated, predecessor, successors, assigns, agents, employees, partners, attorneys, representatives, administrators, investigators, consultants and other persons, acting or purporting to act on behalf of any of the above entities.~~
**"Definitive Documents"** means, with respect to the Plan(s), all material documents (including the Plan itself as well as any related Bankruptcy Court orders, agreements, schedules, pleadings, motions, filings, or exhibits) that are contemplated by this Agreement , in form and substance acceptable to the Litigation Settlement Trustees and the Third-Party Funding Contributor[s], and

*[Different first page setting changed from off in original to on in modified.].*

that are otherwise necessary or desirable to implement the Plan(s) and this Agreement, including (as applicable): (i) the Plan(s); (ii) Disclosure Statement(s) if ordered by the Bankruptcy Court; (iii) any other operative documents and/or agreements relating to the Plan(s) (including any documents necessary to implement the distributions contemplated thereunder); and (iv) the Confirmation Order.

***"Effective Date"*** ~~means April 8, 2022.~~

***"Final Order"*** ~~means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.~~

***"Litigation"*** means pending civil lawsuits against one or more of the Debtors, including but not limited to the following (as may be removed to federal court):

- *Marcel Fontaine vs. Alex E., Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels*, Cause No. D-1-GN-18-001605 in the 459th Judicial District Court of Travis County, Texas;

- *Neil Heslin vs. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001835 in the 261st Judicial District Court of Travis County, Texas;

- *Veronique de la Rosa and Leonard Pozner vs. Alex E. Jones, Inforwars, LLC, and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001842 in the 345th Judicial District Court of Travis County, Texas;

- *Scarlett Lewis vs. Alex E. Jones, Inforwars, LLC, Free Speech Systems, LLC and Owen Shroyer*, Cause No. D-1-GN-18-006623 in the 98th Judicial District Court of Travis County, Texas;

- *Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and*

*[Different first page setting changed from off in original to on in modified.].*

*Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046437-S in the Superios Court of Connecticut, Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046438-S in the Superios Court of Connecticut, Waterbury Division; and

- *Brennan M. Gilmore v. Alexander ("Alex") E. Jones, Infowars, LLC, Free Speech Systems, LLC, Lee Stanahan, Lee Ann McAdoo a/k/a Lee Ann Fleissner, Scott Creighton, James ("Jim") Hoft, Allen B. West, Derrick Wilburn, Michelle Hickford, and Words-n-Ideas, LLC*, Cause No. 3:18-cv-00017-GEC in the United States Districrt Court for the Western District of Virginia, Charlottesville Division;

- *Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique de la Rosa, Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited LLC, JLJR Holdings Limited LLC, JLJR Holdings, LLC, PLJR Holdings, LLC, Carol Jones, David Jones, PQPR Holdings, LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018*, Cause No. D-1-GN-22-001610 in the District Court Travis County, Texas 200th District Court.

together with any other pending lawsuits against any of the ~~Parties on the Effective Date of this Agreement (collectively, the "Litigation Claims")~~Debtors on the Petition Date.

**"Litigation Claims"** means any and all Claims arising out of the Litigation against any of the Parties for which a Debtor is or has at any time been alleged to be jointly and severally liable under theory of law or equity.
~~**"Initial Trust Funding"** means $725,000 in cash funded to the Litigation Settlement Trust by AJ from his Exempt property upon the Effective Date of this Agreement to pay the costs of administration of the Debtors' Bankruptcy Cases and the Litigation Settlement Trust, including retention of the Litigation Settlement Trustees and retention by the Trustees of all professionals deemed necessary to accomplish the purpose of this Trust and the commitment of the Third-Party Funding Contributors to maintain for not less than 120 days after the Petition Date a balance of $200,000 after payment of all initial administrative expense retainers to newly appointed Litigation Settlement Trustees and as the only members of the Debtors acting as independent Members, together with the Debtors' professionals from time to time, to be paid directly, or thereafter maintained in the Litigation Settlement Trust for continued payment of the costs of Administration of the Litigation Settlement Trust and the Debtors' Bankruptcy Cases.~~
**"Litigation Settlement ~~Trust"~~** means the 2022 Litigation Settlement Trust dated effective April 1, 2022 for the benefit of the Debtors' as provided therein, including that Third-Party Funding

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

~~Contributor[s] intended to facilitate and underwrite the "Payment in Full" Plan Class of Allowed Litigation Settlement Trust Claims and the Litigation Settlement Trust Beneficiaries Litigation Settlement Trust Claims, as may exist from time to time and as may be funded by the Third Party Funding Contributors for this purpose from time to time to achieve Payment in Full.(s).~~***Trustees"*** means, subject to entry of the Trustee Order (as defined in the Trust Agreement), Richard S. Schmidt and Russell F. Nelms.

~~***"Litigation Settlement Trustees"*** means two individuals approved by the Bankruptcy Court to serve as Trustees of Litigation Settlement Trust who will replace the interim trustee serving in that capacity prior to the filing of the Bankruptcy Cases.~~

~~***"Litigation Settlement Trust Claims Bar Date"*** means the bar date for filing Claims or Litigation Claims in the Bankruptcy Cases established by Order of the Bankruptcy Court;~~

***"Litigation Settlement Trust Claims"*** means the Claims of any party arising out of or related to the Litigation Claims and evidenced by a proof of claim timely filed in the Debtors' Chapter 11 case(s).

***"Litigation Settlement Trust Claims*** ~~***Estimation***~~***"*** ~~means the estimation of the Litigation Settlement Trust Claims by~~***Bar Date"*** means the bar date for filing Claims or Litigation Claims in the Chapter 11 Cases established by Order of the Bankruptcy Court ~~in these Bankruptcy Cases pursuant to Sections 502(c) and 105 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules of Procedure.~~ ;

**"**~~***Liquidated***~~ **Litigation Settlement Trust** ~~***Beneficiary"***~~ ~~Means the holder of a Litigation Settlement Trust Claim~~***Claim Amount"*** shall have the meaning set forth in Section 2.2(a) of this Agreement.

~~***"Litigation Trust Expenses"*** means all costs, expenses and professional fees incurred by the Litigation Settlement Trust and the Litigation Settlement Trustees during the Support Period, specifically including, but not limited to the allowed fees and expenses of the Debtors and their professionals incurred in connection with the prosecution of the Bankruptcy Cases and those incurred after the Plan Effective Date, approved by the Litigation Settlement Trustees.~~

~~***"Petition Date"*** means the date upon which the earliest of the Debtors' Bankruptcy Cases was commenced as a voluntary bankruptcy case.~~

"***Payment in Full***" shall have the meaning set forth in Section 2.2(d) of this Agreement.

~~***"Plan(s)"*** or ***"Plan(s) of Reorganization"*** means the chapter 11 plan(s) to be jointly proposed by the Debtors supported by the Third Party Funding Contributors in each of the Bankruptcy Cases, that contains the same terms set forth in, and is otherwise materially consistent with this Agreement and that is an Approved Plan Document, as the same may be amended, supplemented, or otherwise modified as provided herein.~~

***"***~~***Plan***~~**Effective Date"** means the date on which the Proposed Plan, as confirmed, becomes effective, as defined therein.

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

*"Support Period"* means, with respect to any Party, the period commencing on the later of (a) the Agreement Effective Date and (b) the Petition Date and ending on the date on the earlier of (i) 180 days following the commencement date and (ii) termination of this Agreement, *provided* however that if a Confirmation Order is entered, then on and after the Effective Date the Support Period shall remain in effect for the earlier of not less than 5 years from the Plan Effective Date or until Payment in Full, or full liquidation of all available assets in the Litigation Settlement Trust, which ever first occurs.

"*Resulting Release*" shall have the meaning set forth in Section 2.2(d).

### Section 2    ~~The Plan(s) and the Litigation Settlement Trust Claims Estimation~~Prosecution of the Chapter 11 Cases.

2.1    Chapter 11 Case Administration.   The Parties agree that as soon as practical after the Petition Date, and during the Support Period that they will:

a.              ~~(i)         promptly~~the Debtors shall file a Motion to ~~set~~establish a Litigation Settlement Trust Claims Bar Date;

b.      after such diligence and deliberation as the Litigation Settlement Trustees shall in their sole discretion require, the Debtors shall initiate, including by seeking such approvals as may be required from the Bankruptcy Court, protocol(s) for the establishment of the Allowed Litigation Settlement Trust Claims subject to the terms of this Agreement, which protocols may, in the discretion of the Litigation Settlement Trustees, include, but shall not be limited to, liquidation of the Litigation Settlement Trust Claims through (i) subject to Section 6.2(b) herein, settlement by the holder of an Litigation Settlement Trust Claims with the Debtors and the Third-Party Funding Contributors; (ii) estimation pursuant to section 502(c) of the Bankruptcy Code; (iii) a consolidated trial in court of competent jurisdiction over all Litigation Settlement Trust Claims subject to the mandates of 28 U.S.C. § 157(b)(5) (as applicable); or (iv) such other process permitted under applicable law as is determined by the Litigation Settlement Trustees under the facts and circumstances then applicable to be most suitable to liquidating the Litigation Settlement Trust Claims such that the amount necessary to satisfy the Exit Funding Commitment may be reasonably determined; and

c.      promptly initiate and negotiate the Definitive Documents in good faith, consistent in all respects with this Agreement, and otherwise in form and substance reasonably acceptable to the Parties.

2.2    Material Terms of the Proposed Plan.  Pursuant to the terms of this Agreement and subject to negotiation of the Definitive Documents, the Debtors shall file and seek confirmation of the Proposed Plan, which Proposed Plan shall include the following material terms:

a.      Conditions to Effectiveness.  Occurrence of the Effective Date shall be conditioned upon (i) entry of a final, non-appealable Confirmation Order in form and substance agreeable to the Litigation Settlement Trustees and the Third-Party Funding Contributor[s]; (ii) estimation of the Liquidated Litigation Settlement Trust Claim Amount, pursuant to section 502(c) of the Bankruptcy Code or such other method as may

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

be reasonably acceptable to the Third-Party Funding Contributor[s], in an amount acceptable to the Third-Party Funding Contributor[s]; and (iii) such other reasonable conditions as the Parties may require.

b.      Binding Liquidation of the Allowed Litigation Settlement Trust Claims. To the extent that any Allowed Litigation Settlement Trust Claim(s) remains unliquidated, the Proposed Plan shall authorize the Litigation Settlement Trustees, as representatives of the Debtors or reorganized Debtors, to engage in such proceedings reasonably required for the liquidation of such Claims, provided that any final ruling, order, or judgment in such proceedings as to the liquidated amount of the Allowed Litigation Settlement Trust Claims shall represent the aggregate liability on account of the Litigation Claims. Collectively with such liquidated amounts determined pursuant to Section 2.1(b) above, such aggregate liability shall be referred to herein as the Liquidated Litigation Settlement Trust Claim Amount.

c.      Channeling Injunction and Tolling of Limitations. To the fullest extent permissible under applicable law, the Proposed Plan shall prohibit and enjoin the continuation of any Litigation against the Debtors or any Third-Party Funding Contributor for so long as neither the Debtors nor the Third-Party Funding Contributor[s] are in material default under the terms of this Agreement or the Proposed Plan (the "Channeling Injunction"), provided, however, that the Proposed Plan shall further provided that any and all statutes of limitation or repose, and all time-related legal doctrines, whether equitable or legal, including but not limited to the doctrines of estoppel or laches, that may apply or relate to any claim or cause action enjoined pursuant to the Channeling Injunction described herein shall be tolled for a period of not less than 120 days following the termination of such Channeling Injunction.

d.      Payment Allowed Litigation Settlement Trust Claims. Upon a final, non-appealable determination (a "Determination") of the Liquidated Litigation Settlement Trust Claim Amount, the Proposed Plan shall provide for distributions, either through the Litigation Settlement Trust or such other mechanism as may be appropriate, to the holders of Allowed Litigation Settlement Trust Claims, in an amount equal to the Liquidated Litigation Settlement Trust Claim Amount plus accrued interest at the statutory judgment rate ("Payment in Full"). Such distributions shall be funded by the Third-Party Funding Contributor[s] pursuant to the Exit Funding Commitment.

e.      The Resulting Releases. Only upon Payment in Full, and provided that there exists no uncured material default under this Agreement or the Proposed Plan, the Third-Party Funding Contributor[s] shall be entitled to receive the Resulting Releases, which may be memorialized in the form of a final order of the Bankruptcy Court or such other court of competent jurisdiction enjoining any party from asserting any claim, cause of action, or other right of recovery whatsoever, arising from or relating to the Litigation Claims against any Third-Party Funding Contributor.

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

~~(ii)      promptly file a Motion to Estimate all Litigation Settlement Trust Claims pursuant to Section 502(c) to determine for all purposes, except, allowance of the amount of all Litigation Claims, and shall set an Estimation Protocol to initiate and conduct such estimations.~~

~~(iii)      promptly initiate the protocol for settlement negotiations of the allowed amounts of all Litigation Settlement Trust Claims, the Plan treatment, and all related issues and matters toward a Plan Confirmation of a "Payment in Full" Plan; and~~

~~(iv)      promptly initiate and negotiate the Definitive Documents in good faith, and such Definitive Documents will be materially consistent in all respects with this Agreement, and otherwise in form and substance reasonably acceptable to the Parties, and that, upon execution, the terms and conditions set forth in this Agreement are not subject to further negotiation or change. Notwithstanding anything to the contrary herein, in no event shall the Plan or the Definitive Documents (x) increase or decrease directly or indirectly the settlement consideration or otherwise require any amount to be payable, directly or indirectly, by the Third Party Funding Contributors or (y) change the conditions precedent for funding by the Third Party Funding Contributors.  If the Plan and the Definitive Documents satisfy the criteria in this Section 2, they will be considered the "Approved Plan Documents."  This provision, however, is not intended in any way to abrogate, abridge or affect in any way the fiduciary duties and obligations of the Debtors.~~

~~**Section 3 Joint Agreements**~~

~~During the Support Period, the Parties agree to the following:~~

~~(a) The Debtors and the Litigation Settlement Trust along with the Third Party Funding Contributors shall jointly file and prosecute a motion to establish (x) a Litigation Settlement Trust Claims Bar Date, (y) a Litigation Settlement Trust Claims Estimation protocol, and (z) the Plan(s).~~

~~(b) Each Party agrees to (i) support and take all reasonable actions necessary to facilitate the confirmation, implementation and consummation of, the Plan and (ii) not take any action that is inconsistent with the implementation or consummation of this Agreement or the Plan.~~

~~(c) No Party shall:~~

~~(i) object to, delay, or take any other action to interfere, directly or indirectly, in any respect with acceptance or implementation of the Plan(s), nor encourage any person or entity to do any of the foregoing;~~

~~(ii) directly or indirectly seek, solicit, propose, file, support, encourage, or vote for any plan of reorganization other than the Plan;~~

~~(iii) take any other action, including but not limited to, initiating any legal proceeding, that is materially inconsistent with, or that would prevent or delay consummation of, the Plan; and~~

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

(iv) impede either in the Bankruptcy Court or any other court reasonable efforts to have the Plan confirmed by the Court as during the Support Period.

**Section 3** ~~Section 4~~ **Third-Party Funding Contributor Agreements.**

(a) During the Plan Support Period the Third-Party Funding Contributors shall:

(i) fund the Initial Trust Funding to the Litigation Settlement Trust;

(ii) subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors, (A) deliver or cause to be delivered to the Litigation Settlement Trustees any and all documents (or copies thereof) relating to the Litigation Settlement Trust Claims, held by the Debtors, their employees, agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors, and (B) provide reasonable access to the Litigation Settlement Trustees and their advisors to such employees of the Debtors, their agents, advisors, attorneys, accountants, or any other professionals hired by the Debtors with knowledge of matters relevant to the Litigation Settlement Trust Claims for the purpose of enabling the Litigation Settlement Trustees to fulfill their obligations under this Plan and the Litigation Settlement Trust, including the prosecution of the Litigation Settlement Trust Claims.

(iii) subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors or the Bankruptcy Court, upon request from the Litigation Settlement Trustees, the Third-Party Funding Contributors shall deliver current financial information, operating information, assets or account information ("Information") as reasonably needed to determine that each Third-Party Funding Contributor has the financial ability to pay Allowed Litigation Settlement Trust Claims in full, in accordance with the Plan.  The Information shall be produced only under this provision, and if there is any disagreement on Information production requested, the Litigation Settlement Trustees may seek orders from any Federal Court.

(b) After the Confirmation Order becomes a Final Order and continuing until the Third-Party Funding Contributors declare that they will not Pay in Full a settlement proffered by the Litigation Settlement Trustees:

(i) From time to time thereafter, transfer to the Litigation Settlement Trust additional funds to the extent required by the Litigation Settlement Trust and the confirmed Plan to pay Litigation Trust Expenses during the Support Period.

(ii) The Plan shall provide that the Litigation Settlement Trustees shall hold a perfected lien and security interest in and to all of FSS's and all

*[Different first page setting changed from off in original to on in modified.].*

~~non-exempt AJ assets to secure their obligations hereunder, subject to this Section 4(b) hereof. The Litigation Settlement Trustees and the Third-Party Funding Contributors shall determine from time to time an appropriate budget for FSS to be operated properly during the Support Period and an appropriate personal budget for AJ consistent with the anticipated needs of individual contributions during the Support Period and consistent with his usual and ordinary needs. No agreed budget term or provision will waive any right to an exemption in property otherwise available to AJ and his family. The Third-Party Funding Contributors covenant that they shall not divert, secret, hide or hinder assets subject to this agreement, other than those available to each under the agreed budgets during the Support Period prior to termination. In any Litigation relating to allegations of breach of this provision shall be brought exclusively in the bankruptcy court and shall entitle the Litigation Settlement Trustees to injunctive relief and costs.~~

3.1    Funding Commitment. In accordance with the Trust Agreement, the Third-Party Funding Contributor[s] agree from time to time to deliver Cash to the Litigation Settlement Trust to fund all costs of administration to the extent requested by the Litigation Settlement Trustees as necessary to maintain a cash balance of $200,000.00 in the Litigation-Settlement Expense Fund (as defined in the Trust Agreement). The Funding Commitment shall be subject to the following terms and conditions:

a.    Term. Commencing upon the Petition Date and continuing until the earlier of (x) 120 days after the Petition Date, or (y) the Effective Date, which date may be extended by agreement of Third-Party Funding Contributor[s] and the Trustees.

b.    Timing. Such additional funding shall be provided in Cash to the Litigation-Settlement Expense Fund by the Third-Party Funding Contributor[s] within five (5) business days of receipt of a written request by the Litigation Settlement Trustees, unless extended by written consent of the Litigation Settlement Trustees as set out in the Trust Agreement.

c.    Failure to Fund. To the extent that the Third-Party Funding Contributor[s] fail to make any Cash deposit requested pursuant to Section 3.1(b) above within the applicable three-day period, the Litigation Settlement Trustees, in their sole discretion, shall be entitled to seek dismissal of the Chapter 11 Cases or conversion of the same to cases under chapter 7 of the Bankruptcy Code.

3.2    Exit Funding Commitment. Subject to the occurrence of the Effective Date, the Third-Party Funding Contributor[s] shall provide such funding as is necessary (i) to satisfy the continuing administrative expenses of the Litigation Settlement Trust and, to the extent no final decree has been entered, the Chapter 11 Cases; and (ii) to fund Payment in Full of the Liquidated Litigation Settlement Trust Claim Amount; provided, however, that in the event a Deficiency is determined pursuant to 3.2(c) of this Agreement, the Third-Party Funding Contributors, in their sole discretion, may agree whether to fund such Deficiency Payment to meet the Payment in Full

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

of the Liquidated Litigation Settlement Trust Claim Amount(s) obligations pursuant to the Plan. The Exit Funding shall be provided on the following terms:

a.     Initial Exit Funding.  Upon the Effective Date, the Third-Party Funding Contributor[s] shall transfer **$2,000,000.00** (including any balance remaining in the Litigation Settlement Trust pursuant to ¶ 3.1 above) to the Litigation Settlement Trust (or such other entity provided in the Proposed Plan or Confirmation Order).

b.     Quarterly Payments.  Not less than once per fiscal quarter, the Third-Party Contributor[s] shall transfer and pay to the Litigation Settlement Trust, **$250,000.00** for a period of not less than twenty (20) consecutive quarters, and (v) and contribute additional funds to the Litigation Settlement Trust as may be requested by the Litigation Settlement Trustees and agreed to by the Third-Party Funding Contributors in writing, or pursuant to an agreed budget, from time to time in accordance with the Plan to Pay in Full Allowed Litigation Settlement Trust Claims or Allowed Claims.

c.     Deficiency Payments.  If at any time during the term of this Agreement, the Litigation Settlement Trustees shall determine that sum of the Initial Exit Funding and the Quarterly Payments shall be insufficient to satisfy the administrative costs of the Chapter 11 Cases, the Litigation Settlement Trust, and to fund Payment in Full of the Liquidated Litigation Settlement Trust Claim Amount, the Trustees shall notify the Third-Party Funding Contributor[s] in writing of such deficiency (a "Deficiency Notice").  Within thirty (30) days of receipt of any Deficiency Notice, the Third-Party Funding Contributor[s] shall either (i) transfer to the Litigation Settlement Trust assets sufficient to cure such deficiency; (ii) agree to amend the terms of the Exit Funding Commitment on terms acceptable to the Litigation Settlement Trustees to increase the amount or frequency of the Quarterly Payments in an amount sufficient to cure such deficiency; or (iii) terminate this Agreement and declare the Proposed Plan to have failed.

d.     Termination After Confirmation.  To the extent that this Agreement is terminated after the occurrence of both (i) the Effective Date and (ii) a Determination, then the Litigation Settlement Trustees shall be entitled to retain and distribute in accordance with the terms of the Proposed Plan any cash or other assets previously transferred to the Litigation Settlement Trust by either the Third-Party Funding Contributor[s], the Debtors, or their Estates (as defined in the Trust Agreement) as may be approved by the Bankruptcy Court.  Further, subject to the tolling provisions set forth in Section 3.4 hereof, the Litigation Settlement Trustees shall be authorized to liquidate the assets of the Debtors and their Estates for the benefit of the Litigation Settlement Trust Beneficiaries.

e.     Security.  As security against the post confirmation funding obligations in this Agreement, the Proposed Plan and Confirmation Order shall provide that the Litigation Settlement Trustees shall hold a first in priority perfected lien and security interest in and to certain of the assets of each Third-Party Funding Contributor as may be provided in the Confirmed Plan.  The Parties acknowledge that the assets may be subject to existing liens and agreement from 3rd parties may be required to grant the required

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

liens.  The Litigation Settlement Trustees will have discretion to determine the scope and priority of the liens to be granted to the Litigation Settlement Trust and may terminate this Agreement pursuant to Section 7 below if the required liens cannot be granted.

(iii) 3.3	Confidential Information.  Subject to execution of confidentiality agreements in a form acceptable to the Third-Party Funding Contributors, upon request from the Litigation Settlement Trustees, the Third-Party Funding Contributors shall deliver the current financial information, operating information, assets or account information ("Information") as reasonably needed to determine that each the Third-Party Funding Contributor is maintaining operations and business sufficient to not only maintain the minimum balance in the Litigation Settlement Trust, but also to pay Allowed Litigation Settlement Trust Claims in full, in accordance with the Plan[s] shall:

	a.	Deliver or cause to be delivered to the Litigation Settlement Trustees  and the Debtors' Chief Restructuring Officer any and all documents and communications in whatever form (or copies thereof) requested by the Litigation Settlement Trustees for the purpose of enabling the Litigation Settlement Trustees, in their sole discretion, to fulfill their obligations under this Agreement or the Proposed Plan (the "Information"), held by the Third-Party Contributors and/or any company related to, affiliated, or under the control of the Third-Party Contributors, their employees, agents, advisors, attorneys, accountants, or any other professionals hired by the Third-Party Contributors and/or any company related to, affiliated, or under the control of the Third-Party Contributors;

	b.	Provide reasonable access to the Litigation Settlement Trustees, the Debtors and their respective advisors to such employees of the Third-Party Contributors and/or any company related to, affiliated, or under the control of the Third-Party Contributors their agents, advisors, attorneys, accountants, or any other professionals hired by the Third-Party Contributors and/or any company related to, affiliated, or under the control of the Third-Party Contributors for the purpose of enabling the Litigation Settlement Trustees, in their sole discretion, to fulfill their obligations under this Agreement or the Proposed Plan;

	c.	. The Information shall be produced only under this provision, and to To the extent that there is any disagreement on Information production requested, the Third-Party Contributors or the Litigation Settlement Trustees or the Debtors may seek orders from any Federal Court having jurisdiction over the Litigation Settlement Trust. In every event the Information shall be confidential and held pursuant to the confidentiality terms of the Litigation Settlement Trust Agreement and such other confidentiality terms reasonably requested by any Third-Party Funding Contributor.

		(iv)	In accordance with the confirmed Plan, (i) transfer $2 million to the Litigation Settlement Trust, (ii) , contribute $250,000 per quarter for 20 consecutive quarters to the Litigation Settlement Trust, and contribute additional funds to the Litigation Settlement Trust as may be requested by the Litigation Settlement Trustees and agreed to by the Third-Party Funding Contributors in writing, or pursuant to an agreed budget, from

*[Different first page setting changed from off in original to on in modified.].*

4858-9477-4556, v. 18

*[Different first page setting changed from off in original to on in modified.].*

~~time to time in accordance with the Plan to Pay in Full Allowed Litigation Settlement Trust Claims or Allowed Claims.~~

**~~Section 5 Duration of the Agreement.~~**

<u>3.4</u>    <u>Tolling of Claims.   Subject to the tolling provisions of this Section, the Third-Party Funding Contributor[s] and the Debtors agree and covenant not to sue or otherwise assert against the Third-Party Funding Contributor[s] any claims or causes of action for the avoidance and recovery of any transfers of an interest of the Debtors in property arising under the Bankruptcy Code, applicable state law, or otherwise (the "Avoidance Claims") during the term of this Agreement provided that:</u>

<u>a.</u>    The ~~Agreement shall become effective on the date it is executed by all Parties, *provided*, however, that if the Agreement is not executed by the Debtors on or before 5:00 p.m. (Central Daylight Time) on April 15, 2022, or such later date as agreed by~~<u>Third-Party Funding Contributor[s] agree that any and all statutes of limitation or repose, including but not limited to the time limitations set forth in section 546 of the Bankruptcy Code, and all time-related legal doctrines, whether equitable or legal, including but not limited to the doctrines of estoppel or laches, that may apply or relate to any action, complaint, claim, counterclaim or third-party complaint that may hereafter be commenced by the Debtors or</u> the Debtors ~~and~~<u>'</u> bankruptcy estates against the Third-Party Funding ~~Contributors (the "Expiration Date"), this Agreement shall no longer be available for acceptance by the Debtors.  The Agreement will remain in effect and be irrevocable by the Parties during the Support Period.  Upon implementation under the Plan, the Agreement shall remain in effect for not less than 5 years from the Plan Effective Date.~~<u>Contributor[s] or any company related to, affiliated, or under the control of the Third-Party Contributors with respect to the Avoidance Claims shall be tolled and suspended until the date that is the third anniversary of the date that this Agreement terminates (the "Tolling Period").  The Third-Party Funding Contributor[s] agree not to assert as an objection or defense to the Avoidance Claims, or otherwise, that it has been prejudiced in any manner by the passage of the time during the Tolling Period.  Upon termination of the Tolling Period, the Litigation Settlement Trustees shall have the right to assert Avoidance Claims.</u>

<u>b.</u>    <u>Except as expressly provided in this Agreement, nothing in this Section is or shall be deemed to constitute a waiver of any rights, claims or defenses of any party to this Agreement and the Parties expressly reserve all rights, claims, and defenses they may have against one another in connection with or related to the Avoidance Claims.</u>

<u>**Section 4**        **Duration of the Agreement.**</u>

<u>Section 4.1    The Amendment shall become effective upon entry of the Trustee Order and, subject to the provisions of Section 7 herein, this Agreement shall remain in effect for a period of not less than 120 days, and not more than 180 days following the Petition Date, provided, however, that, upon the occurrence of the Effective Date, the term of this Agreement shall be extended for a period of not less than five (5) years from the Effective Date or as may otherwise be provided in the Confirmed Plan.  This Agreement may be extended by the written agreement</u>

*[Different first page setting changed from off in original to on in modified.].*

of all parties to this Agreement: (i) the Litigation Settlement Trustees, (ii) the Debtors or their Estates, and (iii) the Third-Party Funding Contributors.

### Section 5   ~~Section 6~~ Representations and Warranties.

~~(a)~~Section 5.1   Third-Party Funding Contributor[s].   The Third-Party Funding Contributors jointly and severally represent and warrant that the following statements are true, correct, and complete as of the date hereof:

    a.   ~~(viii)~~ Organization and Good Standing.  FSS is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas.

    b.  ~~(ix)~~  ~~Authorization of Agreement~~Authority to Contract.  Each of the Third-Party Funding Contributors has the requisite power and authority to execute this Agreement and to consummate the transactions contemplated hereby.  The execution and delivery of this Agreement by the Third-Party Funding Contributors and the consummation ~~by the Plan of the transaction~~of the transactions contemplated hereby has been duly authorized by FSS' managers and no other corporate proceedings on the part of the Third-Party Funding Contributors are necessary to authorize this Agreement or to consummate the transaction contemplated hereby.  This Agreement has been duly executed and delivered by the Third-Party Funding Contributors and, assuming due execution and delivery by the Debtors of this Agreement, this Agreement constitutes a valid and binding obligation of the Third-Party Funding Contributors, enforceable against the Third-Party Funding Contributors in accordance with its terms.  ~~The Third-Party Funding Contributors are prepared to consummate this Agreement immediately upon its acceptance by the Debtors.~~

    c.  ~~(x)~~ Due Diligence.  The Third-Party Funding Contributors have completed their due diligence, and this Agreement is not subject to a due diligence condition, *provided* that the Debtors shall continue to provide information regarding the ~~Bankruptcy~~Chapter 11 Cases and the process surrounding confirmation of the Proposed Plan(s).

    d.  ~~(xi)~~ No Securities; No Third-Party Financing.  No securities are being issued and the obligation of the Third-Party Funding Contributors to perform under this Agreement is not conditioned on obtaining third-party financing.

    e.  ~~(xii)~~ Financial Capability.  The Third-Party Funding Contributors have and will have upon ~~Plan~~ Effective Date, sufficient cash and/or cash flow available to consummate the transactions contemplated by this Agreement and the Proposed Plan.

    f.  ~~(xiii)~~ No Violation; Consents.  The execution and delivery by the Third-Party Funding Contributors of this Agreement and the consummation of the transactions contemplated hereby do not and will not (1) violate any provision of the organizational documents of FSS, (2) violate any ~~Order~~order of any governmental authority to which the Third-Party Funding Contributors are bound or subject, (3) violate

*[Different first page setting changed from off in original to on in modified.].*
Plan Support Agreement    Page 15
4858-9477-4556, v. 18

*[Different first page setting changed from off in original to on in modified.].*

any applicable law, or (4) violate any legal agreements to which a Third-Party Funding Contributor is a party.

g.    ~~(xiv)~~ No Third-Party Approvals Required.    No regulatory or other third-party approvals, consents or filings are required to be obtained or made by the Third-Party Funding Contributors in order to consummate this Agreement, except for any such requirements, the failure of which to be obtained or made would not reasonably be expected to prevent, impede or materially delay or otherwise affect in any material respect the transactions contemplated by this Agreement.

h.    ~~(xv)~~ Bankruptcy.    There are no bankruptcy, reorganization or arrangement proceedings pending against, being contemplated by or, to the knowledge of the Third-Party Funding Contributors, threatened against the Third-Party Funding Contributors.

i.    ~~(xvi)~~ Representation by Counsel.    The Third-Party Funding Contributors acknowledge that they have been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.

j.    Negotiated in Good Faith and Arm's Length Transaction.    The Third-Party Funding Contributors acknowledge that they have negotiated in good faith and this Agreement represents an arm's length transaction.

~~(b)~~ Section 5.2  The Debtors.    The Debtors represent and warrant that the following statements are true, correct, and complete as of the date ~~it executes this Agreement~~ hereof:

a.    ~~(ii)~~ Organization and Good Standing.    The Debtors are limited liability companies duly formed, validly existing and in good standing under the laws of the State of Texas.

b.    ~~(iii)  Authorization of Agreement.    The~~ Authority to Contract.  Subject to entry of the Trustee Order, the Debtors have the requisite limited liability company power and authority to execute this Agreement and, subject to Bankruptcy Court approval, to consummate the transactions contemplated ~~hereby.  The~~ herein.  Subject to entry of the Trustee Order, the execution and delivery of this Agreement by the Debtors and the consummation by the Debtors of the transaction contemplated hereby have been duly authorized by the ~~managers of the Debtors~~ Litigation Settlement Trustees and no other limited liability company proceedings on the part of the Debtors are necessary to authorize this Agreement or to consummate the ~~transaction~~ transactions contemplated ~~hereby~~ herein.  This Agreement has been duly executed and delivered by the Debtors and, assuming due execution and delivery by the Third-Party Funding Contributors~~, this Agreement constitutes~~ and subject to entry of the Trustee Order, shall constitute a valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms.

c.    ~~(iv)~~ No Violation; Consents.    The execution and delivery by the Debtors of this Agreement and the consummation of the transactions contemplated hereby do not and will not (1) violate any provision of the organizational documents of the Debtors,

*[Different first page setting changed from off in original to on in modified.].*

(2) violate any Order of any governmental authority to which the Debtors are bound or subject, or (3) violate any applicable law.

d.   ~~(v)~~ No Third-Party Approvals Required.   Other than approval of the Bankruptcy Court, no order or permit issued by, or declaration or filing with, or notification to, or waiver from any governmental authority is required on the part of the Debtors in connection with the execution and delivery of this Agreement, or the compliance or performance by the Debtors with any provision contained in this Agreement, except for any such requirements, the failure of which to be obtained or made would not reasonably be expected to prevent, impede or materially delay or otherwise affect in any material respect the transactions contemplated by this Agreement.

e.   ~~(vi)~~ Representation by Counsel.   The Debtors acknowledge that they have been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.

f.   Negotiated in Good Faith and Arm's Length Transaction.   The Debtors acknowledge that they have negotiated in good faith and this Agreement represents an arm's length transaction.

~~(vii) Binding on Debtors in Possession and Reorganized Debtors. This Agreement shall become binding on the Debtors in Possession and the Reorganized Debtors upon the Bankruptcy Court approving the Agreement on a standalone basis or as the terms of the Agreement may be contained and incorporated into a Plan and a confirmation order approving this Agreement.~~

~~(viii) The obligations and rights of the Third-Party Funding Contributors shall be as set out in the Litigation Settlement Trust and this Agreement and in the event of a conflict among such terms of either agreements, the Litigation Settlement Trust shall control.~~

**Section 6**   ~~**Section 7**~~ **Covenants.**

Section 6.1   Covenants of the Third-Party Funding Contributor[s].  The Third-Party Funding Contributor[s] covenant and agree that subsequent to the date of this Amendment and prior to termination of this Agreement pursuant to Section 7 hereof:

a.   Financial Condition.   The Litigation Settlement Trustees and the Third-Party Funding Contributors shall determine from time to time an appropriate budget for FSS to be operated properly during the term of this Agreement and an appropriate compensation for AEJ, excluding exempt assets and wages for his personal services,  consistent with the anticipated needs of individual contributions during the term of this Agreement and consistent with his usual and ordinary needs.   The Third-Party Contributor[s] shall not initiate or make any transfers in excess of 5% of the approved budgets unless specifically authorized by the Litigation Settlement Trustees.

b.   No Material Transfers.  The Third-Party Funding Contributors covenant and agree that they shall not divert, secret, hide or hinder assets subject to this

*[Different first page setting changed from off in original to on in modified.].*

Agreement, Proposed Plan, or Definitive Document, including but not limited to initiation or making any transfer outside of the ordinary course of business, as determined by the Litigation Settlement Trustees. Any litigation relating to allegations of any breach of this provision shall be brought exclusively in the Bankruptcy Court and shall entitle the Litigation Settlement Trustees to injunctive relief, costs and attorneys' fees.

c.    Timely Payment of Royalties and Fees.   During the term of this Agreement the Third-Party Funding Contributor[s] covenant and agree not to divert or cause to be diverted (i) any royalty owed to the Debtors arising from the sales of products sold by any Third-Party Contributor; or (ii) any licensing fees generated by the Third-Party Contributor[s]' use of any intellectual property, copyrights, and trademarks owned by the Debtors, and shall cause such amounts to be paid to the Debtors or to the Litigation Settlement Trust, as may be provided in a Proposed Plan.

(a)    ~~Access to Information~~Section 6.2    Covenants of the Debtors.   The Debtors covenant and agree that prior to the ~~Plan~~Effective Date and prior to termination of this Agreement pursuant to Section ~~8~~7 hereof, the Debtors will~~ permit~~ :

a.    Access to Information.  Permit the Third-Party Funding Contributors and their representatives to have reasonable access, during normal business hours and upon reasonable advance notice, to the books and records and senior management personnel of the Debtors pertaining to the Agreement.  The Parties shall cooperate to resolve issues where such disclosure would result in violation of applicable law or would jeopardize any privilege available to the Debtors or any of their affiliates relating to such information or would cause the Debtors or any of their affiliates to breach a confidentiality obligation to which they are bound.  In connection with such access, the Third-Party Funding Contributors' representatives shall cooperate with Debtors' representatives and shall use their best efforts to minimize any disruption of business. The Third-Party Funding Contributors shall indemnify, defend and hold harmless the Debtors, the Debtors' officers, directors, employees and agents, including the Chief Restructuring Officer, from and against all liabilities asserted against or suffered by them relating to, resulting from, or arising out of, examinations or inspections made by Third-Party Funding Contributors or its representatives pursuant to this Section ~~7~~6.2(a).

b.                   ~~(b)~~    Notice; Settlements.   ~~The Debtors covenant and agree that prior to the Plan Effective Date and prior to termination of this Agreement, pursuant to Section 8 hereof, the Debtors shall (i) keep~~Keep the Third-Party Funding ~~Contributors~~Contributor[s] apprised of any settlement discussions, negotiations or meetings related to the Proposed Plan and the Litigation Settlement Trust Claims, ~~and (ii) will~~provided, however, that the Litigation Settlement Trustees shall be entitled to enter into a settlement of any Litigation Settlement Trust Claim against the Debtor(s) without the prior consent of the Third-Party Funding Contributors, ~~but shall not be entitle to bind such Third-Party Funding Contributors except to the extent of their respective consent and agreement;  provided, further, the absence of any such consent shall not impair or effect the Trustees' binding settlement(s) reached nor shall it prohibit the respective Third-Party Funding Contributors from later consenting and causing the "Payment in~~

*[Different first page setting changed from off in original to on in modified.].*

Full" event to entitle the Third Party Funding Contributor to their respective "Resulting Releases.".

c.        (c)        Conduct of Business Pending the Consummation of Plan.  The Debtors agree that prior to the Plan Effective Date and termination of this Agreement pursuant to Section 8 hereof, unlessUnless otherwise expressly permitted by this Agreement, the Debtors shall conduct their business in the ordinary course.

6.3        (d)        Cooperation; Consents and FilingsMutual Covenants.

a.        (i) Consents and Filings.  From and after the date hereof and until prior to the Plan Effective Date and termination of this Agreement pursuant to Section 87 hereof, unless otherwise expressly permitted by this Agreement, the Parties shall cooperate with each other and use (and will cause their respective representatives to use) commercially reasonable efforts (1) to take, or to cause to be taken, all actions, and to do, or to cause to be done, all things reasonably necessary, proper or advisable on their part under this Agreement, applicable law or otherwise to consummate and make effective the transactions contemplated by this Agreement as promptly as practicable; (2) to obtain promptly from any person or governmental authority any consent, order or permit required to be obtained by the Parties or any of their respective affiliates in connection with the authorization, execution, delivery and performance of this Agreement, and the consummation of the transactions contemplated hereby and thereby; (3) to promptly make all necessary filings and thereafter make any other required submissions with respect to this Agreement and prompt consummation of the transactions contemplated hereby and thereby required under any applicable law, including, without limitation, the Disclosure Statement (if required), the Plan, all documents, instruments and pleadings necessary for the approval of the Disclosure Statement (if required) and confirmation of the Plan; and (4) to provide prompt notification to the other Party hereto of any actions pursuant to clauses (1) – (3) of this Section 76.3(da).

b.        Cooperation.  In addition, no Party shall take any action after the date hereof (other than any action required to be taken under this Agreement or to which the other Parties shall have granted their consent) that could reasonably be expected to materially delay the obtaining of, or result in not obtaining, any consent, order, permit, qualification, exemption or waiver from any governmental authority or other person required to be obtained prior to the effective date of the Plan; including, without limitation, the Disclosure Statement (if required), the Plan, all documents, instruments and pleadings necessary for the approval of the Disclosure Statement (if required)  and confirmation of the Plan.

c.        (ii) Joint Prosecution.  If permitted by applicable law and subject to any limitations on access to information provided for in Section 4(a)3.3, each party shall consult with the other parties with respect to, and provide any information reasonably requested by the other party in connection with, all material filings made with the Bankruptcy Court or any governmental authority in connection with this Agreement and the transactions contemplated hereby.  If any party or any of its affiliates receives a request for information or documentary material from any governmental authority with

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

respect to this Agreement or any of the transactions contemplated hereby, then such party shall endeavor in good faith to make, or cause to be made, as soon as reasonably practicable and, to the extent permitted by applicable law, after consultation with the other parties, an appropriate response in compliance with such request.

d. ~~(g)~~ <u>Bankruptcy Matters</u>. The Parties shall use commercially reasonable efforts to cooperate, negotiate, assist and consult with each other to secure the entry of an order confirming the <u>Proposed</u> Plan following the date hereof, and to consummate the transactions contemplated by this Agreement, including, without limitation, the Plan, all documents, instruments and pleadings necessary for the approval of a disclosure statement (if necessary) regarding the Plan and confirmation of the Plan. In the event that any order of the Court relating to this Agreement shall be appealed by any person (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to any such order), the Parties will cooperate in taking such steps to diligently defend against such appeal, petition or motion and the Parties shall use their commercially reasonable efforts to obtain an expedited resolution of any such appeal, petition or motion. The Parties shall not, without the prior written consent of the other parties, file, join in, or otherwise support in any manner whatsoever any motion or other pleading relating to a sale or plan of reorganization, other than the <u>Proposed</u> Plan, unless the Debtors through the Litigation Settlement Trustees determine in their business judgment their fiduciary obligations require them to do so.

**Section 7** ~~Section 8~~**Termination.** This Agreement shall terminate <u>upon the election of any party with the right to declare a termination set out below</u>, and the obligations of the Parties shall thereupon terminate and be of no further force and effect, upon the occurrence of the earlier of the following events (each, a "<u>Termination Event</u>"):

(i) Upon mutual written consent of the Debtors, on the one hand, and the Third-Party Funding Contributors, on the other hand<u>;</u>.

(ii) The ~~Bankruptcy~~<u>Chapter 11</u> Cases are (a) dismissed, <u>or</u> (b) converted to a case under chapter 7 of the Bankruptcy Code~~, or (c) converted into a case under Chapter 11 of Title 11 of the Bankruptcy Code other than under Subchapter V thereof;~~

~~(iii)~~ <u>;</u> <u>the</u> ~~The~~Bankruptcy Court enters an order appointing a trustee or examiner under chapter 11 of the Bankruptcy Code<u>;</u>.

<u>(iii)</u> ~~(iv)~~The Bankruptcy Court enters an order granting relief from the automatic stay imposed by §362 of the Bankruptcy Code to allow the continued litigation of a Litigation Settlement Trust Claim without the consent of the Third-Party Funding ~~Contributors;~~<u>Contributor[s] in any court other than as provided in 28 U.S.C. 157(b)(5) (to the extent applicable).</u>

<u>(iv)</u> ~~(v)~~The Debtor or the Third-Party Funding Contributors shall (a) fail to comply with any of its obligations under this Agreement (it being understood that only the non-breaching party may invoke the Termination Event)~~, or;~~ (b) has breached any

*[Different first page setting changed from off in original to on in modified.].*

representation, warranty, covenant or agreement contained in this Agreement; or (c) notwithstanding ¶ 7(iv)(a) above, a settlement is proposed or agreed to, or a claim allowed by the Bankruptcy Court or by any other Court properly authorized to liquidate a claim or claims that is in an amount the Third-Party Funding Contributors determine, in their sole discretion, to be impractical or impossible to timely pay in full as contemplated by the Plan.

~~(vi)  the Debtors shall withdraw (or move to withdraw) the Plan;~~

~~(vii) The Third-Party Funding Contributors have terminated participation under the Agreement, including ¶ 4(b).~~

~~(viii) The Bankruptcy Court enters an order denying confirmation of the Plan;~~

~~(ix)  The Bankruptcy Court does not enter an order approving the appointment of the Litigation Settlement Trustees on or before April 30, 2022;~~

~~(ix)    The Plan has not been filed with the Court on or before April 30, 2022;~~

~~(x)    The Plan has not been confirmed by the Court on or before the expiration of the Support Period;~~

~~(xi)    The order confirming the Plan fails to become a Final Order on or before 90 days after the expiration of the Support Period; *provided*, that the requirement for finality shall be waived as to any appeal as to which the appellant fails to obtain a stay pending appeal of the confirmation order; or~~

(v)    ~~(xii)~~ Any court of competent jurisdiction or other competent governmental or regulatory authority shall have issued an order making illegal or otherwise restricting, preventing, or prohibiting the Plan in a way that cannot be reasonably remedied or otherwise grants relief to any party that is materially inconsistent with the Plan or this Agreement.

(vi)    ~~(xiii)~~ The relevant court remands the Litigation Claims and lifts the automatic stay to allow the State Court to proceed to Judgment without the consent of the Third-Party Funding Contributor[s].

(vii)    Upon termination, the Third-Party Funding Contributor[s] shall have no rights in any funds remaining in the Litigation Settlement Trust or otherwise deposited to pay claims and the Third-Party Funding Contributor[s] shall have no further liability under the Litigation Settlement Trust or under this Agreement.

**Section 8**    ~~Section 9~~ **Amendments.**  This Agreement may not be modified, amended, or supplemented, except in a writing signed by all Parties.

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

**Section 9** ~~Section 10~~ **Governing Law; Jurisdiction.**  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas or the United States, without regard to the applicable principles of conflict of laws.

**Section 10** ~~Section 11~~ **Notices.**  All demands, notices, requests, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered by courier service, messenger, telecopy, facsimile, or if duly deposited in the mails, by certified or registered mail, postage prepaid-return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, as follows:

*If to the Debtor, to:*

Marc Schwartz
Chief Restructuring Officer
of the Debtors
Schwartz ~~&~~ Associates LLC
712 Main Street, Ste 1830
Houston, Texas 77002


With a copy to:

Kyung S. Lee
Parkins Lee & Rubio LLP
Pennzoil Place-13th Floor
700 Milam
Houston, Texas 77002
klee@parkinslee.com

*If to the Third-Party Funding Contributors:*

Free Speech Systems, LLC
~~To:~~
To:  Law Offices of Ray Battaglia, PLLC
Attn: Ray Battaglia
66 Granburg Circle
San Antonio, Texas 78218
rbattaglialaw@outlook.com

Alex Jones
To:  Shelby A. Jordan
~~Shelby A. Jordan~~
Jordan & Ortiz, P.C.
500 N. Shoreline Dr., Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.]*.

~~**Section 12 Reservation of Rights.** This Agreement is part of a proposed settlement of all disputes among the Parties. Except as expressly provided in this Agreement or the Plan, nothing therein is intended to, or does, in any manner waive, limit, impair, or restrict the ability of the Parties to protect and preserve their respective rights, remedies, and interests, including, without limitation, any claims against any other Party. If the transactions contemplated herein or in the Plan are not consummated, or if this Agreement is terminated for any reason, the Parties fully reserve any and all of their respective rights and remedies. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this Agreement and all negotiations relating hereto, shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms.~~

**Section 11      Litigation Settlement Trustees' Fiduciary Obligations**. Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement, the Proposed Plan, or anything included in any Definitive Document shall require the Litigation Settlement Trustee(s), after consulting with counsel, to take any action or to refrain from taking any action with respect to this Agreement, the Plan, or Definitive Document to the extent taking or failing to take such action would be inconsistent with applicable law or each of the Litigation Settlement Trustee's fiduciary obligations under applicable law, and any such action or inaction pursuant to such exercise of fiduciary duties shall not be deemed to constitute a breach of this Agreement, the Plan, or any Definitive Document; provided that the Litigation Settlement Trustees shall give prompt written notice to counsel to the Third-Party Funding Contributor(s) (electronic mail among counsel being sufficient) of any such determination by the Litigation Settlement Trustees, in their sole discretion, that any such action or refrainment from taking such action with respect to this Agreement, the Plan, or and Definitive Document would be inconsistent with applicable law or each of the Litigation Settlement Trustee's fiduciary obligations under applicable law. For the avoidance of doubt, notwithstanding anything to the contrary in this Section 11, the Debtors' failure to comply with the terms of this Agreement may constitute a Termination Event under Section 7, above.

**Section 12** ~~**Section 13**~~ **Entire Agreement.** This Agreement~~, together with the Reorganization Plan, constitute~~ constitutes the entire understanding and agreement among the Parties with regard to the subject matter hereof, and supersedes all prior agreements with respect thereto.

**Section 13** ~~**Section 14**~~ **Headings.** The headings of the paragraphs and subparagraphs of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

**Section 14** ~~**Section 15**~~ **Successors and Assigns.** This Agreement is intended to bind and inure to the benefit of the Parties and their respective permitted successors and assigns.

**Section 15** ~~**Section 16**~~ **Specific Performance.** Each Party hereto recognizes and acknowledges that a breach by it of any covenant or agreement contained in this Agreement may cause the other Parties to sustain damages for which such Parties would not have an

*[Different first page setting changed from off in original to on in modified.].*

adequate remedy at law, and therefore each Party hereto agrees that in the event of any such breach the other Parties shall be entitled to seek the remedy of specific performance of such covenant and agreement and injunctive and other equitable relief in addition to any other remedy to which such Parties may be entitled, at law or in equity.

**Section 16** ~~Section 17~~ **Remedies Cumulative.**    All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power or remedy by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

**Section 17** ~~Section 18~~ **No Waiver.**    The failure of any Party to exercise any right, power, or remedy provided under this Agreement or otherwise available to it at law or in equity, or to insist upon compliance by any other Party with its obligations hereunder, and any custom or practice of the Parties at variance with the terms hereof, shall not constitute a waiver by such Party of its right to exercise any such or other right, power, or remedy or to demand such compliance.

**Section 18** ~~Section 19~~ **Counterparts.**    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Agreement.    Delivery of an executed signature page of this Agreement by telecopier or facsimile shall be as effective as delivery of a manually executed signature page of this Agreement.

**Section 19** ~~Section 20~~ **Severability.**    Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.    The provisions of this Agreement shall be interpreted in a reasonable manner to effect the intent of the Parties hereto.

**Section 20** ~~Section 21~~ **No Third-Party Beneficiaries.**    Unless expressly stated herein ~~as to direct or indirect beneficiaries of the Litigation Settlement Trustor the Confirmed Plan~~, this Agreement shall be solely for the benefit of the Parties, and no other person or entity shall be a third-party beneficiary hereof.

**Section 21** ~~Section 22~~ **Jurisdiction and Venue:**    Notwithstanding any provision herein to the contrary no action or proceeding by any Party or any third-party may be brought to determine, enforce, prohibit, enjoin, or otherwise determine any rights or obligations of any Party to this Agreement except in the United States Bankruptcy Court or the United States District Court, as the case may be, for the Division and District in which the ~~Bankruptcy~~Chapter 11 Cases ~~have been filed~~are pending.

THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

          IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Declaration or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Effective Date:  April —28, 2022.

                                                         ***INITIAL* LITIGATION SETTLEMENT TRUSTEE**

By: _____
Name:   Robert Dew
Title:   Initial Trustee, and as sole officer and
          Director of each Debtor entity
          InfoW, LLC, InfoHealth, LLC,
          Prison Planet TV, LLC

**INFOW, LLC**

By: _____
Name:   W. Marc Schwartz
Title:      Chief Restructuring Officer

**IWHEALTH, LLC**

By: _____
Name:   W. Marc Schwartz
Title:      Chief Restructuring Officer

**PRISON PLANET TV, LLC**

By: _____
Name:   W. Marc Schwartz
Title:      Chief Restructuring Officer

**THIRD-PARTY FUNDING CONTRIBUTOR ALEX JONES**

By: _____
Name:

**THIRD-PARTY FUNDING CONTRIBUTOR FREE SPEECH SYSTEMS, LLC**

By: _____
Name:

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

Title:

**SIGNATURES LEFT BLANK PENDNG
APPOINTMENT BY BANKRUPTCY
COURT ORDER**

_____
Name:
Title: Litigation Settlement ~~Trust~~ Trustee and
Debtors' ~~Independent Board Members~~ Managing Member

_____
Name:
Title: Litigation Settlement ~~Trust~~ Trustee and
Debtors' ~~Independent Board Members~~ Managing Member

| Summary report: Litera Compare for Word 11.0.0.61 Document comparison done on 4/29/2022 8:57:09 AM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 2.0 - 4.14.2022 Plan Support Agreement.docx | |
| **Modified filename:** 2.1 - 4.28.2022 Amended and Restated Plan Support Agreement.docx | |
| **Changes:** | |
| Add | 250 |
| Delete | 197 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 447 |