```
              UNITED STATES BANKRUPTCY COURT

                SOUTHERN DISTRICT OF TEXAS

                    HOUSTON DIVISION


IN RE:                          .  CASE NO. 22-BK-60020-11
                                .
   INFOW, LLC,                  .  HOUSTON, TEXAS
                                .  FRIDAY, APRIL 29, 2022
              DEBTOR.           .  03:00 P.M. TO 04:12 P.M.
                                .
. . . . . . . . . . . . . . . .
```

                        STATUS CONFERENCE

    (ALL PARTIES APPEARING VIA VIDEO CONFERENCE, TELEPHONICALLY, OR
                            IN PERSON)

              BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                  UNITED STATES BANKRUPTCY JUDGE

```
     APPEARANCES:                    SEE NEXT PAGE

     ELECTRONIC RECORDING OPERATOR:    KIMBERLY PICOTA

     CASE MANAGER:                     ROSARIO SALDANA
```

                    TRANSCRIPTION SERVICE BY:

                  **TRINITY TRANSCRIPTION SERVICES**
                        **1081 Main Street**
                     **Surgoinsville, TN 37873**
                         **281-782-0802**
                     trinitytranscripts@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

                    **TRINITY TRANSCRIPTION SERVICES**

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | . | CASE NO. 22-BK-60020-11 |
| | . | |
| INFOW, LLC, | . | HOUSTON, TEXAS |
| | . | FRIDAY, APRIL 29, 2022 |
| DEBTOR. | . | 03:00 P.M. TO 04:12 P.M. |
| | . | |

. . . . . . . . . . . . . . . . .

STATUS CONFERENCE

(ALL PARTIES APPEARING VIA VIDEO CONFERENCE, TELEPHONICALLY, OR
IN PERSON)

BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE


For the **DEBTOR: INFOW, LLC:**    **R.J. SHANNON, ESQ.**
Parkins Lee & Rubio LLP
700 Milam Street, Suite 1300
Houston, TX 77002

For the **ALEX JONES:**    **SHELBY JORDAN, ESQ.**
NO ADDRESS PROVIDED

For the **FREE SPEECH**    **RAY BATTAGLIA, ESQ.**
  **SYSTEMS, LLC:**    Law Offices of Ray Battaglia PLLC
66 Granburg Circle
San Antonio, TX 78218

For **U.S. TRUSTEE:**    **JASON RUFF, ESQ.**
Office of the United States
  Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002

For **HESLEN, LEWIS, POSNER,**    **MAX BEATTY, ESQ.**
  **DE LA ROSA AND FONTAINE:**    NO ADDRESS PROVIDED

Appearances (cont.):

|  |  |
|---|---|
|  | **AVI MOSHENBERG, ESQ.**<br>**MCDOWELL HETHERINGTON, LLP**<br>First City Tower<br>1001 Fanin Street.<br>Houston, TX 77002 |
| For **CONNECTICUT PLAINTIFFS:** | **RYAN CHAPPLE, ESQ.**<br>**RANDY WILLIAMS**<br>**ELEANOR STERLING**<br>**CHRIS MACKEY, ESQ.**<br>NO ADDRESS PROVIDED |
| For **SUBCHAPTER 5 TRUSTEE:** | **MELISSA HASELDEN, ESQ.**<br>Haselden Farrow, PLLC<br>700 Milam, Suite 1300<br>Houston, TX 77002 |
| For **PROPOSED LIQUIDATING**<br>  **TRUSTEES:** | **MATTHEW OKIN, ESQ.**<br>**DAVID CURRY, JR., ESQ.**<br>Okin Adams LLP<br>1113 Vine Street #240<br>Houston, TX 77002 |
| **PROPOSED LIQUIDATING**<br>  **TRUSTEES:** | **RICHARD SCHMIDT, ESQ.**<br>**RUSSELL NELMS**<br>NO ADDRESS PROVIDED |
| **OBSERVING:** | **MARTY BRIMMAGE, ESQ.**<br>**AKIN GUMP STRAUSS HAUER**<br>**& FELD LLP**<br>2300 North Field Street<br>Suite 1800<br>Dallas, TX 75201-2481 |
| Transcriber: | Cheryl Battaglia<br>Trinity Transcription Services<br>1081 Main Street<br>Surgoinsville, TN 37873<br>281-782-0802 |

1

1       **Houston, Texas; Friday, April 29, 2022; 03:00 p.m.**

2       **(All Parties Appearing via Video Conference,**

3   **Telephonically, or in person)**

4           **THE COURT:**  Good afternoon everyone.  This is Judge

5   Lopez.  I'm going to call the three o'clock case.  It's here on

6   a status conference in InfoWars (phonetic).

7           I'm going to ask everyone on the phone, if you can

8   just take a look at your phone and please place your phone on

9   mute.  I have a number of people on the line and want to make

10  sure that everyone can be heard.  I'm going to eventually mute

11  the line.  So if you're going to ask to address the Court

12  you're going to need to hit five, star.

13          So why don't I begin by taking appearances in the

14  courtroom.  So, Mr. Lee.

15          **MR. LEE:**  Good afternoon.

16          **THE COURT:**  Good afternoon, sur.

17          **MR. LEE:**  Good afternoon, your Honor.  Kyung Lee and

18  R.J. Shannon for the Debtors.  And I'm herein the courtroom

19  with Mr. Mark Schwartz who is the Chief Restructuring Officer

20  of the Debtors.

21          **THE COURT:**  Okay.  Good afternoon, sir.

22      **(Pause in the proceeding.)**

23          **MR. JORDAN:**  Good afternoon, Judge.  Shelby Jordan.

24  I represent Alex Jones.

25          **THE COURT:**  Good afternoon.

1        **MR. BATTAGLIA:**  Good afternoon, Judge.  Ray

2  Battaglia.  I represent Free Speech Systems, LLC.

3        **THE COURT:**  Good afternoon, sir.

4        **MR. RUFF:**  Good afternoon, your Honor.  Jason Ruff

5  for the U.S. Trustee's office.  And with is Ha Nguyen as

6  all -- as well.

7        **THE COURT:**  Okay.  Good afternoon.  Good afternoon.

8        **MR. BEATTY:**  Your Honor, Max Beatty on behalf of

9  victims, Mr. Heslen (phonetic), Miss Lewis, Mr. Posner

10  (phonetic), Miss De La Rosa (phonetic), and Mr. Fontaine

11  (phonetic).  I also have Avi Moshenberg with me here today as

12  well.

13        **THE COURT:**  Good afternoon to both of you.

14        **MR. MOSHENBERG:**  Good afternoon.

15        **MR. CHAPPEL:**  Good afternoon, your Honor, Ryan

16  Chapple (phonetic).  I have my colleague, Randy Williams with

17  me.  We represent the Connecticut Plaintiffs.  Your Honor, I

18  also have Eleanor Sterling (phonetic) and Chris Mackey

19  (phonetic) on the phone from Connecticut.

20        **THE COURT:**  I see them.  Good afternoon.

21        **MR. CHAPPEL:**  Thank you.

22        **(Pause in the proceeding.)**

23        **MS. HASELDEN:**  Good afternoon, your Honor.  Melissa

24  Haselden, Subchapter 5 Trustee.

25        **THE COURT:**  Okay.  Good afternoon.

1        All righty.  That looks like everyone in the

2   courtroom.  If you wish to make an appearance, I would just ask

3   that you please hit five star.

4        Okay.  I'm going to open up the line for an 832-651.

5   **(Pause in the proceeding.)**

6        **MR. OKIN:**  Good afternoon, your Honor, Matthew Okin,

7   O-k-i-n, and David Curry, on behalf of the proposed Liquidation

8   Trustees, Richard Schmidt and Russell Nelms (phonetic).

9   Mr. Nelms and Mr. Schmidt are also are on the line and I

10  believe on video here today.

11       **THE COURT:**  Yes.  And I -- I see them both.  Good

12  afternoon to all of you.

13  **(Pause in the proceeding.)**

14       **THE COURT:**  Anyone else wish to make an appearance?

15       Okay.  I'm going to a 214-668.

16  **(Pause in the proceeding.)**

17       **MR. BRIMMAGE:**  Good afternoon, your Honor.  Marty

18  Brimmage with Akin Gump Strauss Hauer & Feld.  I'm not here on

19  behalf of anyone yet.  But we are certainly looking at joining

20  the party.  And so I'm here observing.  And I didn't want you

21  to be confused.  But I just wanted to announce that I'm here.

22       **THE COURT:**  Got it.  Good afternoon.

23       **MR. BRIMMAGE:**  Thank you.

24       **THE COURT:**  Anyone else wish to make an appearance?

25  Please hit five, star.

1        **(Pause in the proceeding.)**

2            **THE COURT:**  And Mr. Okin, I'm going to leave your

3    line unmuted.

4            I see you there.  Mr. Brimmage, I'm going to leave

5    your line unmuted.  I know who you -- you all are.  No need to

6    hit five, star again.  Just keep -- please keep your phone on

7    mute during this time.

8        **(Pause in the proceeding.)**

9            **THE COURT:**  Okay.  All right.  I do it.  Checking

10   once, checking twice.

11       **(Pause in the proceeding.)**

12           **THE COURT:**  Sounds like we've taken all appearances.

13   Mr. Lee, let me turn things over to you, sir.

14           **MR. LEE:**  Good afternoon, your Honor.  I'll be brief.

15           I thought that it'd be both very helpful to the Court

16   hopefully and to the parties, and the only document that I

17   thought we should file and help you today was Document Number

18   49, which was the agenda of matters that may be discussed at

19   the April 29th, 2022 Status Conference.

20           **THE COURT:**  Thank you.

21           **MR. LEE:**  Docket Number 49, your Honor.

22           And the purpose of that was to point out to the Court

23   the pending motions and the status of those in Roman numeral I.

24   Roman Numeral II was to set out the matters that have been

25   removed in both Texas and in Connecticut and the status of

1    those matters.

2          And in Roman Numeral III, to advise the Court and the

3    parties that key agreements, being the Declaration of Trust and

4    the Plan Support Agreement, which were being discussed last

5    time, have been revised, and finalized, and been filed with the

6    Court.

7          And then Number IV was to advise sort of the

8    predictors of what's going to come in this case to the extent

9    that the Debtor survived the Motion to Dismiss and the

10   challenge to being Subchapter V Debtors, and those being that

11   we intend to file an estimation motion next week.

12         And then for the summer coming up we're going to ask

13   this Court to compel the parties to a mediation once we get to

14   the plan process, if we can't work everything out.  So --

15         **THE COURT:**  Okay.

16         **MR. LEE:**  -- more than anything else, I just wanted

17   to give the Court an idea of where this case was going and the

18   fact that we have, in my view, 120 days to get it done.

19         And the reason why I say the 120 days is because

20   under the Plan Support Agreement, I think I have a four month

21   budget to get the case done.

22         **THE COURT:**  Okay.

23         **MR. LEE:**  And so I'm going to try to get that done in

24   that period of time.  And so I'm trying to work early and let

25   everyone know where I'm going.

1          And so that's what I contribute to this today.  So --

2          **THE COURT:**  Okay.

3          **MR. LEE:**  -- Status Conference.  And hopefully, it'll

4  be helpful to all the parties.  And if the parties need

5  Document Number 49, I have some extra ones in the courtroom.

6          **THE COURT:**  Thank you.  Just a couple of quick

7  questions.

8          I did get an opportunity to review, but we're not

9  taking it up today, the -- the revised Trust Agreement and the

10  PSA.  One of the documents talks about an upcoming litigation

11  claims bar date motion.  And -- but I -- I did notice that

12  there was a -- a general bar date motion that was also been

13  filed.  Are they the same thing?  Or -- or is that something

14  completely different?

15          **MR. LEE:**  I will have to be -- I'll tell you that

16  when I drafted the claims bar date motion, it was kind of

17  independent of what the trust people were doing.

18          **THE COURT:**  Okay.

19          **MR. LEE:**  It's envisioned that we have a bar date in

20  order to get out of the case.  Because I think we have to have

21  a shorter, in order to make some determinations about the size

22  of the class and the aggregate amount of the claims, for

23  feasibility purposes.

24          **THE COURT:**  Understood.

25          **MR. LEE:**  So, I could -- I think that Mr. Shannon and

1    Mr. Shelby can address the interaction between the two more

2    better than I can.  Because I was not involved in the detail of

3    drafting and editing of the trust document --

4              **THE COURT:**  Okay.

5              **MR. LEE:**  -- this week.

6              **THE COURT:**  No.  I just wanted to make sure.

7              On the -- I know we're not talking about it today,

8    though.  But I did notice on the general bar date motion you're

9    also seeking to shorten the Government --

10             **MR. LEE:**  And --

11             **THE COURT:**  -- bar date as well.

12             **MR. LEE:**  Your Honor, that's a very good point.

13             Mr. Ruff already called me over -- overzealous

14   drafting on my part at two in the morning.  And I've told them

15   that I would check with my client about whether or not we had

16   any governmental bar dates -- governmental claims.  And it

17   turns out that we do not.

18             And so I'm going to withdraw that part of the request

19   when we get to it.  Cause we don't have any

20   claims -- governmental claims to our knowledge.  So it should

21   not affect the ability to confirm a plan.

22             **THE COURT:**  Okay.  Thank you.

23             Mr. Ruff?

24             **MR. RUFF:**  Yes.  Good afternoon, your Honor.

25             **THE COURT:**  Good afternoon.

8

1        **MR. RUFF:**  It's always a pleasure being in your

2 court.

3        And so, you know, the -- I guess the couple of things

4 that I just wanted to mention very briefly is that, you know,

5 I -- your Honor obviously saw the other parties had filed

6 Motions to Dismiss.  U.S. Trustee's office also filed its own

7 Motion to Dismiss just prior to this hearing today.

8        And, you know, I think, you know, there's a lot of

9 stuff that's on the agenda that has been put forth for the

10 Court.

11        **THE COURT:**  Uh-huh.

12        **MR. RUFF:**  But I think before you get to those issues

13 and start adjudicating and matters that are related to the

14 administration of this estate, we should really probably figure

15 out should we even be here.

16        And so I'm hoping today that we can discuss, you

17 know, hearing dates on these motions, your Honor.

18        **THE COURT:**  It certainly seems to be the -- the

19 intent.

20        When I saw the agenda and it said hearing date

21 needed, I'm presuming that we've got to pick some dates.  And I

22 intend to do that today.  I think it makes a lot of sense.  So

23 I'm -- I'm glad we're going to have that discussion.

24        **MR. RUFF:**  Yeah.  I mean, I'll just say it for the

25 record and for everybody else's hearing.

1          I -- I think that really the important thing for us

2   is to get hearing dates on the Motions to Dismiss.  I -- I -- I

3   think, I mean, we can pick dates that come after that for

4   the -- the -- the other items.

5          But I don't know that we really need to even be

6   focused on those right now.  Cause again, I really think we

7   need to figure out should we even be here before we start

8   worrying about hey, should we have a bar date.

9          And it's only important if we actually have a

10  bankruptcy case to be in.

11          **THE COURT:**  Okay.

12          **(Pause in the proceeding.)**

13          **THE COURT:**  Let me hear from --

14          **MR. OKIN:**  Your -- your Honor, Matt -- if I might go.

15          **THE COURT:**  Hold on a second, Mr. Okin.  I don't --I

16  want to just hear from the Subchapter V Trustee.  I want to

17  make sure that she's getting everything that she needs.

18          If you can just wave.  I just want to make sure that

19  you're -- everything's going okay from your perspective.  It's

20  still a -- it's a Subchapter V case.  And I know that there are

21  some challenges to the designation.  But we're still in

22  Subchapter V.  And Subchapter V Trustees play a very important

23  role in the process.

24          I want to make sure that you have an opportunity to

25  be heard and that you -- anything you need to tell me that you

1   certainly have the opportunity.

2           **MS. HASELDEN:**  Uh --

3           **THE COURT:**  You can just get close to the mic.  I

4   just want to make sure that everybody can hear you.

5           **MS. HASELDEN:**  Yes.  Yes, your Honor.

6           The -- the parties have been -- everyone's been very

7   communicative with me.  At this point I feel like until these

8   Motions to Dismiss are heard, I'm sort of in a holding pattern.

9           **THE COURT:**  Okay.

10          **MS. HASELDEN:**  I am communicating with the parties

11  and getting the information that I need.  But --

12          **THE COURT:**  Okay.

13          **MS. HASELDEN:**  -- I'm not really digging in real deep

14  until we have a decision on -- on the Motions to Dismiss.

15          **THE COURT:**  No pressure on the Judge, huh?

16      **(Laughter.)**

17          **THE COURT:**  Okay.  Okay.

18          Mr. Okin.  I apologize.

19          **MR. OKIN:**  That's all right, your Honor.

20          Your Honor, I did just want to put in my pitch

21  for -- I -- I'm not going to address the bar date motion.  I'll

22  let Mr. Lee talk to the merits of timing on that.

23          But at least with regard to the appointment of the

24  Trustees, I'll -- we've worked very hard over the last week to

25  try to revise these documents to something that Mr. Nelms and

 1  Mr. Schmidt are willing to serve under.  But they are not

 2  serving.

 3         And although the Debtor has offered, you know,

 4  to -- to meet with us, and provide us information as we go,

 5  until the Court has an opportunity to rule on the Trustee

 6  motions, we don't -- we don't have any power.

 7         And I -- while I understand the need and everybody's

 8  desire to get the dismissal issue as quickly as possible, and I

 9  think the Court ought to take that up as quickly as it can, I

10  would urge you to consider the Trustee motion, at least at the

11  same time as the Motion to Dismiss if not before.

12         I think that Mr. Nelms and Mr. Schmidt can add a

13  great deal to this process.  And while I am sure -- I -- I know

14  Mr. Schwartz and Mr. Lee are more than capable of handling this

15  case with or without the -- the Trustees involved.  I -- I

16  think the structure here, in order to give people confidence,

17  the importance of -- of having two former bankruptcy judges in

18  that role includes -- was critical to the way this was set up.

19         And the sooner we can put them in that role I believe

20  the better for everybody.

21         **THE COURT:**  Thank you.  I -- I -- I have a couple of

22  clarifying questions about the Trust Agreement.

23         Just -- I had an opportunity to review the redline.

24  And I want to just make sure that I understand what I'm

25  reading.  And we're not taking evidence.  Today's not the day

1  to make decisions.  I just want to make sure that I understand

2  some of the changes that were made.

3          But let me first given an opportunity to anyone who

4  wishes to just initially address the Court, an opportunity

5  to -- to do so.

6      **(Pause in the proceeding.)**

7          **THE COURT:**  All right.  Mr. Beatty, I saw you getting

8  up.  That was -- that was -- that was the cue.  I apologize.

9          **MR. BEATTY:**  Thank you, your Honor.  Max Beatty.

10         I just wanted to make a couple of comments.  We're

11  here today to talk about scheduling.  And I know Mr. Ruff has

12  already said this.  But I think there's grave importance to

13  deciding the dismissal issues in advance.  These are

14  gatekeeping issues.

15         I said it last time.  And unfortunately, I'm a bit

16  repetitive at times.  But there's a lot of attorneys here

17  today.  And I understand that Mr. Okin has just asked and said

18  hey, I think it'd be a great idea to take up the Trustee motion

19  at the same time as the Motion to Dismiss.

20         And I'll tell you, I -- I'm glad to hear everyone say

21  the Motion to Dismiss should come first.  But I do have some

22  hesitancy with that.  Because ultimately, we're in a position

23  right now where the quote "creditors" here are different than

24  regular creditors.  They're victims.

25         And right now the victims are spending money.  And

1  unfortunately, the idea of bringing any other issue up at the

2  same time is incredibly costly and it divides attention.

3          And so I would request that we didn't do that.  That

4  ultimately what we do is we fast track the Motion to Dismiss.

5  I think most of the issues here are admitted.  We have the

6  Schwartz Declaration.  We, from other litigations, we have

7  litigation testimony from InfoWars itself talking about how no

8  business was done.

9          So I think that's an easy issue to decide up front.

10  And although I appreciate the Trustee's position they'd like to

11  be put in place as quickly as possible.  Again, this is a good

12  chance at just incurring fees that are completely unnecessary

13  on people who have already suffered enough.

14          And so what I would prefer to see is something like a

15  hearing on that Motion to Dismiss next Friday.  And then 21

16  days from that point we can then take up and, you know, have

17  time to respond, and ultimately argue however we see fit.

18          When we're looking at the documents that just came

19  out today, those amended, the Plan Support Agreement and the

20  Trustee Agreement.  Honestly, when I looked at it, it looked to

21  me like flashing cop car lights that were just all blue and

22  red.

23          I felt like it was a completely new document.  We

24  needed the time to analyze that in depth.  But at the same

25  time, this gating issue, the dismissal issue's important.

1        You know, the Supreme Court has said bankruptcy is

2   for the honest but unfortunate Debtor.  I don't think we have

3   honest Debtors here.  Ultimately, your Honor, the victims here

4   who are the creditors, they're going to be creditors because

5   Mr. Alex Jones and his company lied.  We heard Mr. Schwartz say

6   InfoWars is the Coca Cola of conspiracy theory websites and

7   sources.

8        And again, looking back, last time I quoted a Fifth

9   Circuit case.  We are not -- the bankruptcy process is for

10  reorganization, not sinister and unworthy purposes.

11       I can't think of a less worthy purpose than having

12  the rehabilitation and reorganization of a company that made

13  tens and tens of millions of dollars lying.  One of my clients

14  held his six year old son with a bullet hole in his head.  And

15  Mr. Alex Jones called him a liar.

16       I -- beyond the fact of whether or not these are

17  Debtors or not under Subchapter V, I think we have to take up

18  that dismissal issue as quickly as possible.  Because, frankly,

19  I don't think that a reorganization in this case is

20  appropriate.  Because it's borrowing time from this Court for

21  an unworthy, abusive purpose.

22       So I'd ask the Court to set that, the Motion to

23  Dismiss hearings quickly, and give us that 21 days for anything

24  else, should the Court, for some reason, decide to continue

25  with this case.

1          **THE COURT:**   Thank you.

2      **(Pause in the proceeding.)**

3          **MR. CHAPPEL:**   Thank you, your Honor.   Ryan Chapple on

4   behalf of the Connecticut Plaintiffs.

5          I would just like to reiterate Mr. Beatty's comments.

6   From our perspective, from my clients' perspective, every day

7   that Mr. Williams and I are here in this courtroom is taking

8   money out of their pockets.   It's delaying their day in court

9   against Mr. Jones in Connecticut.

10          I really like the idea of having the hearings on the

11   Motions to Dismiss a week from today and then, dependent upon

12   what happens, having 21 days after that to take up anything

13   else.   I think we need to be narrowly focused.

14          I thought Mr. Beatty's comment about diverting

15   attention away from this gatekeeper issue was very insightful.

16   We certainly agree with that.

17          I'll keep it brief -- brief, your Honor.   Thank you.

18          **THE COURT:**   Thank you.

19      **(Pause in the proceeding.)**

20          **MR. LEE:**   May I address the point, your Honor?

21          **THE COURT:**   Just a second.   I just want to make sure

22   before I go to you, Mr. Lee.

23          **MR. LEE:**   Sure.

24          **THE COURT:**   Is there anyone on the -- on the line who

25   if you want to hit five star --

1          **(Voices whispering.)**

2                  **THE COURT:**  -- make a statement.

3          **(Pause in the proceeding.)**

4                  **THE COURT:**  Okay.  Mr. Lee?

5                  **MR. LEE:**  Your Honor, just brief --

6                  **THE COURT:**  Uh-huh.

7                  **MR. LEE:**  -- briefly.

8                  The three Debtors are affiliates of Mr. Jones.

9  And --

10                 **THE COURT:**  Former affiliates.  Isn't that correct?

11                 **MR. LEE:**  Former affiliates.  That's true, your

12  Honor, absolutely true.

13                 And -- and the one thing that I want to emphasize is

14  no matter how bad Mr. Jones' conduct was, in this Court and

15  under the Bankruptcy Code, I think the parties that come before

16  you are entitled to due process.

17                 And one of the things I pointed out in the short memo

18  that I filed with the Court in response on their Emergency

19  Motion to Dismiss, under Bankruptcy Rule 2002(a)(4), you've got

20  to give us 21 days' notice.  You can't just conduct a hearing

21  next Friday on their Motion to Dismiss.  It doesn't provide

22  enough opportunity for shortening that period unless they come

23  up with some reason other than the statute.

24                 The way we've argued it, and the cases that we've

25  pointed out is, you -- you have to provide 21 days' notice,

17

1    cause there's no cause exclusion under 2002(a)(4).

2            And so, I -- I understand their need for wanting to

3    have a hearing.  And I'm fine with having a hearing 21 days

4    after they've given notice, which is fine.  But Mr. Beatty

5    can't come here and talk about the injury, and wanting to have

6    a hearing next Friday, and having a hearing on the rest of the

7    things at another time.

8            It's just not right in that sense.  So yes, your

9    Honor, 21 days from the days from the day he filed a motion.

10   I'm happy to have the hearing.  I'm happy to put on the

11   evidence.  I'm happy to demonstrate to you that we are

12   qualified to be a Subchapter V Debtor, and that we have

13   legitimate reasons to be here in Bankruptcy Court, which is to

14   try to pay all the creditors in a pro rata basis or in full.

15   And this is a legitimate use of the Bankruptcy Code.

16           So as long as you're willing to accord us the due

17   process and what the Bankruptcy Code allows us to do, we're

18   fine and willing to do that.  But that's all we're asking for

19   fairness in this process.

20           And as long as that's complied with, we're -- we're

21   fine.  And we will come before you and demonstrate to you

22   unequivocally that we are capable of being a Debtor-in-

23   Possession -- Debtor there under Subchapter V and that we're

24   here for a good cause.

25           And I think Mr. Battaglia and Mr. Jordan can tell you

1   their positions on that and -- and why there's here today

2   if -- if that's something that you'd like to hear more about.

3   Because you didn't get to hear that last time as much, I think,

4   when they were on the phone.

5          **THE COURT:**  Yeah.  If anybody wishes to -- I'm

6   opening it up now.  And then I'm -- tell you what I'm thinking.

7          **(Pause in the proceeding.)**

8          **MR. BATTAGLIA:**  How could I deny that invitation by

9   Mr. Lee to come up here and speak, your Honor.  Ray Battaglia

10  for Free Speech Systems.

11         I've heard a lot of emotion, and I understand.  And I

12  appreciate the emotion that's involved in the issues in the

13  underlying litigation.

14         We're here in a bankruptcy case.  And when I hear

15  legitimate use of bankruptcy, I go back to the first bankruptcy

16  class I ever had where the fundamental purposes of bankruptcy

17  were to give the Debtor a breathing spell by virtue of the

18  automatic stay, and to provide a mechanism for the equitable

19  distribution of -- of assets and payment of creditors.  Those

20  are the two foundational aspect of bankruptcy.

21         And this bankruptcy case serves both of those

22  purposes.  First, the stay, and the -- the removal, and so

23  forth, have stopped the race to the courthouse which, frankly,

24  favors the Texas Plaintiffs over the Connecticut Plaintiffs.

25  As you are aware from prior comments, the case in Texas was set

19

1    already for hearing.  And the Judge has said she'll -- if

2    remanded and the stay lifted, she'll promptly take it up.

3            Where as I understand, the Connecticut cases are not

4    set until August.  And I could be corrected on that.  But

5    that's my recollection.

6            So -- so this -- this promotes the breathing spell on

7    the one hand.  It also promotes the equitable distribution.

8    And here's why.

9            If the Texas case is -- proceeds to conclusion,

10   proceeds to judgment, and lacking the ability to bond around

11   any judgment, the Texas Plaintiffs will have the ability to

12   start attaching, and taking, and realizing upon assets.

13           From my clients' perspective, Free Speech Systems,

14   it -- it -- it's -- it's an operating entity.  It -- it has

15   cash flow.  But it doesn't have any significant, tangible

16   assets.  And I'm not going to say no tangible assets.  But it

17   doesn't own any real estate, for example.

18           So the likely effect of a judgment and enforcement

19   efforts, frankly, will -- will probably shut Free Speech

20   Systems down.

21           **THE COURT:**  Your client is a non-Debtor, correct?

22           **MR. BATTAGLIA:**  My client is a non-Debtor.

23           But it is the source of a considerable portion of the

24   funds that are going to be used to fund the -- the litigation

25   settlement trust.  So without FSS, I guess the Plaintiffs are

20

1    left to look at whatever tangible assets, non-exempt tangible

2    assets, Alex Jones may or may not have.  And Mr. Jordan can

3    address that or not.  At least from --

4            **THE COURT:**  And let me tell you, Mr. Battaglia,

5    I -- I -- I understand there's a mechanism in place.  Right?

6    I've read the trust agreements.  I've read their PSA.

7            I also know that your client and Mr. Jones aren't

8    here.  And they don't have to be here.  Right?  No one's forced

9    to file for bankruptcy.  People -- they're voluntary petitions.

10   So I understand.

11           And I -- in this case I've got three Debtors.  And

12   that's who my focus is on until someone asks me to kind of look

13   at, or think about, something different.

14           And obviously, I can't divorce myself from the

15   reality that there's been a relationship.  But my job, and

16   I -- and I say this will sincerity to everyone, is to rule on

17   the -- on the issues that are before me.

18           And so, you know, I -- I understand that there could

19   be motions that -- that could come that could affect your

20   client.  But, you know, some decisions I may make may affect

21   your client indirectly or directly.

22           But I'm not focused on that.  I'm focused more on

23   deciding issues that come before me as a matter of law based on

24   the evidence.  And so what I've got is a Motion to Appoint a

25   CRO pending.  What I've got is a Motion to Appoint Litigation

1  Trustees of a Non-Debtor.

2          But I understand now that the, I guess, well

3  litigation Trustees, Mr. Okin's going to have to help me.

4  They'll not be managing members in control of the Debtors,

5  except for what they give to the CRO.

6          And I've got Motion to Dismiss and Motions to Change

7  the Designations.  That's what I'm going to rule on.

8          **MR. BATTAGLIA:**  I -- I -- I understand.

9          **THE COURT:**  And that's what's before me.

10          So I -- I -- I completely understand what you're

11  saying and -- and the position that your client is in.  I

12  just -- I know that there's strong emotion on -- on both sides

13  of this and everybody feels -- everybody wants me to either go

14  really, really fast or really, really, you know, or really,

15  really slow.

16          I'm just going to take them up as we -- as we --

17          **MR. BATTAGLIA:**  No.  I --

18          **THE COURT:**  -- take 'em and we'll -- we'll make

19  calls.

20          **MR. BATTAGLIA:**  I -- I appreciate that, Judge.  And

21  I'm not asking you to rule on --

22          **THE COURT:**  Oh, I know you're not.  I know you're

23  not.

24          **MR. BATTAGLIA:**  -- any.

25          Much has been said today and at the prior hearing

1   about, you know, my clients.  And if -- and if this litigation,

2   and if the purpose of bankruptcy, is a economic recovery, it

3   will not happen without a program like this.  FSS can't be a

4   bankruptcy Debtor cause it'll shut it down.

5          I'm sure the Court is aware of blacklisting and de-

6   platforming that goes on in the world.  I think somebody named

7   Musk just bought a company for 44 billion dollars complaining

8   of that issue.

9          But -- but it's not just social media de-platforming

10  that goes on.  It's financial de-platforming.  And -- and I can

11  assure the Court, and we'll present evidence at an appropriate

12  time, that's what'll happen here is Free Speech System will not

13  be available to satisfy any damage claim.  And that 50 plus

14  million dollars Mr. Schwartz discussed at the last hearing will

15  go to zero rapidly if not immediately.

16         And -- and so if the desire here is to find a

17  mechanism to pay people for their legitimate claims, that's

18  what this program proposes.  That's what the trust and the PSA

19  are designed to do, is to come to a number of what the claim is

20  and to -- to satisfy it, and satisfy it in full largely, not

21  exclusively, but largely from the assets of my client and

22  Mr. Jordan's client.

23         But -- but in the absence of a program like this,

24  spending millions of dollars in trials in two different

25  locations will consume assets and ultimately not result in an

1  economic recovery and -- and as I understand all the facts that

2  are presented to me, this will go to a zero very quickly.

3       So I'm told this is a litigation tactic.  Right now,

4  I mean, the Plaintiffs all have liability death penalty orders

5  entered.  So liability's a given.  We're just talking about

6  what the damages are.

7       And -- and this Court, or whichever court retains the

8  removed litigation, is appropriate vehicle to tell us what

9  those numbers are.  And so that we can come to a mechanism to

10  pay them, as opposed to paying all the lawyers who are sitting

11  here in this courtroom.

12       So if -- if a -- if that's not a legitimate

13  rehabilitative purpose, or conform with the -- the -- the

14  precepts of the Bankruptcy Code, I guess I don't know

15  what -- what is.  And that's what we're trying to do.  And, you

16  know, there's been a lot said by other lawyers about bad faith.

17  And that's not how I come here today.

18       I came her trying to pay the claims that someone

19  tells me are the appropriate claims.

20       **THE COURT:**  Thank you.

21     **(Pause in the proceeding.)**

22       **THE COURT:**  Well let me -- let me just kind of tell

23  folks.

24       Oh, actually, Mr. Jordan, I'm going to give you an

25  opportunity.  I am.  Please.  Please.  Please.  No.  No.

24

1    I -- I meant to -- I was going to start to speak, but I saw you

2    get up.  And certainly wanted to make sure you have an

3    opportunity to address the Court.

4              **MR. JORDAN:**  Thank you very much.

5              Judge, unfortunately, I -- I, or fortunately, I'm not

6    sure how I should phrase it.  Mr. Battaglia and I are in -- in

7    the same boat.

8              One of the things that is important for me to at

9    least communicate to the Court, is that this is, besides the

10   fact that there are factors in the history of this case, none

11   of which I was involved in and really many of which I -- I

12   don't even know the details.

13             The facts of where we find ourself today are really

14   the controlling issues that this Court's faced with.  There are

15   numerous cases, most current right now where third-party

16   parents, or third-party affiliates, or others out-of-bankruptcy

17   affiliates have taken on the -- the function of funding a

18   method by which claims could be handled.

19             I mean, I'd like to say that *J and J* is a -- a good

20   example.  But I -- I don't know enough about that case to say

21   that.  But I do know enough about this case to let you know

22   that the -- the parties in the courtroom today on -- in respect

23   to the Debtor have a history of maybe 60 to 90 days.

24             We're all bankruptcy lawyers.  We all know what good

25   faith and bad faith is.  We all know abuse of process.  It's

**TRINITY TRANSCRIPTION SERVICES**

1   unfortunate that those terms have come up.  But we're certainly

2   willing to face those head on.  And I don't argue with the idea

3   that the -- the Motions to Dismiss should be heard soon.

4   Because that's -- that's something the Court has to be careful

5   about.

6          There are -- there are two groups in this courtroom

7   that this Court has a duty to.  One is the justice.  Lady

8   Justice is your client if that could be said that way, as well

9   as the creditors whose -- whose claims are being handled.

10         Those have to be balanced.  And so when someone

11  alleges that there has been something initiated by lawyers that

12  should know better, that I -- I agree with the parties, needs

13  to be heard and heard promptly.

14         But let me give you just a quick example of the

15  things.  And -- and unfortunately, I -- I'm the lawyer that

16  the -- that's the longest in this case, 95 or 100 days.  And

17  I'm also the oldest one in the courtroom, which is -- I don't

18  even know when that happened.  But all of a sudden that's the

19  truth.

20         So with respect to the comments that Mr. Battaglia

21  made.  There is a purpose for the reorganization as it is cast.

22  My best guess is that Johnson & Johnson would not have gone out

23  of business.  It would just have spent hundreds of times more

24  than could probably be expected in a organized method.

25         This case is different, because there is no doubt

1   and -- and here's -- here's one example.  We implemented this

2   process hoping that we would have trustees in place as soon as

3   practical so that the funding that we had promised, about three

4   quarters of a million dollars so far, and that's just up front,

5   to get this matter and that money not DIP is not refundable.

6   You made mention of that is -- is there any way that -- that

7   the contributors get any money.  That'll never happen.  It's

8   specifically provided it will -- there will be no money

9   returned to Alex Jones or who is the contributor at this point,

10  or FSS if the matter craters, if the Plan doesn't occur.  Those

11  monies are dedicated and gone.

12          But -- but --

13          **THE COURT:**  Are you talking about the initial

14  funding.

15          **MR. JORDAN:**  I'm sorry, Judge?

16          **THE COURT:**  The initial funding?

17          **MR. JORDAN:**  Well, actually the -- the initial

18  funding, the funding that starts the Plan.  Assuming the Plan

19  were to go for a year and there's a -- a quarter of a million

20  dollars every quarter provided under the Plan.  That money

21  would never go back.

22          If -- if -- the -- the non-revised PSA indicates that

23  the Court would decide how that money would be held, handled,

24  or -- or distributed once creditors began to make claims to it.

25          So -- and again, to be --

1          **THE COURT:**  You took out the Subchapter V designation

2  that was --

3          **MR. JORDAN:**  I'm sorry, Judge.

4          **THE COURT:**  All right.  Got it.  No.  I see it now.

5          **MR. JORDAN:**  Okay.

6          **THE COURT:**  The Subchapter V designation got removed

7  as a termination event.

8          **MR. JORDAN:**  Okay.  But -- but -- and -- and I have

9  to say that -- that --

10          **THE COURT:**  And I think it also says that if I don't

11  appoint the Trustee within 45 days of the initial funding,

12  which I guess will put us some time in about 30 days, then the

13  trust blows up as well.

14          **MR. JORDAN:**  Well, and -- and I -- I -- I don't think

15  the trust actually blows up at that point.  But let me tell you

16  the problem with that and the reason that -- that -- that was

17  modified.

18          There was a date that was --

19          **THE COURT:**  I just want to make sure we're all on the

20  same page.  I'm not making judgment about it.  I just want to

21  make sure --

22          **MR. JORDAN:**  All right.

23          **THE COURT:**  -- I explain what you're saying.

24          Section 2.2 says,

25          "In the event that the Trustee order's not

1              entered within 45 days of the trust

2              settlement date, this Litigation Trust

3              shall terminate and all funds remaining in

4              the litigation settlement expense fund

5              shall be returned to the respective third-

6              party contributor."

7          That's why I asked that question.

8          **MR. JORDAN:**  And let me explain the purpose of that.

9    And -- and -- and keep in mind, it's 45 days.  So

10   we -- we -- we were discussing that in the modifications --

11         **THE COURT:**  About 30 days from now.

12         **MR. JORDAN:**  If we were sending 21 days, and we knew

13   things were going to be heard.

14         There's not going to be anything that's critical to

15   this case that's not going to be heard in 45 days.  The reason

16   we -- reason we chose that is that we -- Mr. Battaglia

17   mentioned to you the -- the -- the problems with de-

18   platforming.  I've never had this exposure before.  I've never

19   been in a case where there was an influence outside the

20   courtroom that actually had powers and controls.

21         But let me give you an example.  No bank will take

22   the funds that I have.  And I don't want to put on the record

23   where they are, because I don't want to be attacked in order to

24   try to get to funds.

25         The -- no national bank will accept cash from Alex

1  Jones or an entity to which they think he is still an

2  influence.

3         **THE COURT:**  Oh, Mr. Jordan.

4         **MR. JORDAN:**  And that will be -- he -- he will be an

5  influence as long as there are no Trustees, because

6  we -- we -- we can't open a bank account.  And -- and the issue

7  is not that Mr. Jones is -- is -- has -- has drug money, or

8  he's -- he's laundering the money.

9         The banks make it very clear.  This is political.  It

10  purely -- they do not want to be associated with that issue,

11  because it brings with it a number of other problems.  So -- so

12  I can't even start the process.  And the 45 days was that if we

13  get that far and there is no resolution of where can I put the

14  money that we're -- we are committed to.

15         And let me make this clear, we are also, up to the

16  date of filing, we were paying the retainers for all the

17  various parties.  That will be ceased.  And those funds may be

18  held in their trust accounts, or however they do, because it's

19  your -- it's your pleasure as to how those are paid.

20         But that's just an example.  Because the net result

21  of what -- what happened.  And -- and let me -- let me not add

22  a bunch of intrigue to this, but let me say as -- as practical

23  as I can.  Things that I -- that -- that need to be presented

24  to this Court, for the most part, are public.

25         There are things, and -- and -- and use the Coca Cola

1    example.  If someone said I want to know the formula.  Judge,

2    Coca Cola's in Chapter 11 and I want to know the formula.

3    And -- and Coca Cola said Judge, I can't -- we can't tell

4    the -- put it on the record.

5          There are methods by which the -- the truth of what

6    is going to happen to this Debtor if a -- if a bankruptcy is

7    filed against them, involuntary, or if they were required to be

8    in bankruptcy at this state.

9          **THE COURT:**  Who is this -- who is this Debtor that

10   you're referring to in that hypo?

11         **MR. JORDAN:**  I'm sorry, Judge.

12         **THE COURT:**  Who is the -- you said "if this Debtor,"

13   who is the Debtor that you're referring to.

14         **MR. JORDAN:**  Well -- well these Debtor are in.  If

15   the two absent parties who are the funding parties, if those

16   two parties were in a bankruptcy proceeding, those two parties

17   could not operate a business.

18         And -- and that's very different from --

19         **THE COURT:**  I -- I -- no.  No.  No.  I understand

20   that.  But, I don't mean to sound harsh, but aren't most

21   decisions that Bankruptcy Courts make very tough decisions

22   affect Debtors, and non-Debtor, and creditors all the time.

23         I -- it -- I understand that your client has a

24   very -- is interested in -- in a resolution of -- of claims.

25   And again, I'm -- I'm focused on the Debtors that we've got

1    here.  And I've got to make decisions based upon what's -- what
2    the Code tells me to do, which is make decisions based upon the
3    motions that are filed, and the Bankruptcy Codes that are
4    cited, and some that may not have been cited, and make the best
5    decisions of what's in the best interest of the estate based
6    upon the evidence and then above all.

7           So that's what I'm going to do.  But I understand
8    your client's position.  Look, there's strong, I get it.
9    There's strong emotion on both sides.  I'm sure that the
10   Connecticut Plaintiffs and the Austin Plaintiffs are going to
11   tell me they want to go back and have their day in court.  And
12   that's what they've been waiting on.  And I -- and your clients
13   are going to tell me that's going to result in an unequitable
14   result for all parties, including these three Debtors.

15          And so I look forward to having that conversation
16   when -- when the time comes when we take up the Motion to
17   Dismiss.  I agree.  We got to pick a date.  We'll have a
18   discussion.  And we'll talk about, I'm sure *Johnson & Johnson*
19   will come up.  And -- and we can talk about that.  And I look
20   forward to -- to that.

21          **MR. JORDAN:**  All right, Judge, and I -- I understand
22   your -- your position.  I -- I -- I would say this that to the
23   best extent that I'm making a presentation today, I'm really
24   trying to avoid any emotion, any drama, any of that.

25          **THE COURT:**  I got it.

2222222222

32

MR. JORDAN:  This -- this really is one of the -- the circumstances that, notwithstanding my inability to tell the Court here's why -- here's what will happen.  And here's what -- why we can't bring these two parties into this Chapter 11, to be the white knight, to -- to operate the business like Debtors-in-possession do, and to fund and pay a plan, just like they're proposing to do.

There is a -- there is a valid, commercial reason that that won't happen.  And the -- and the net result of that is, again, not an emotional result, it's just a matter of fact. If the business is shut down there will be no monies to pay anybody.

I mean, there won't be any monies -- there will be no monies to pay lawyers to defend.  There'll be no monies to pay Plaintiffs when they -- when the -- and -- and I say that only because the only enterprise that will pay the substantial claims that we've already proposed to pay, and the substantial monies that we've already indicated to the Court would be paid if the business are -- are live and operating.

That is not in the control of normal forces.  And so from that perspective, there are things like the Coca Cola formula that have to be maintained different than what you would normally ever expect to be dealing with.

So -- so let me quickly move on, just so I can be sure the Court's aware that we've -- that what we've tried to

33

1    do.  The settlement trust, it -- it's been substantially

2    modified.

3            **THE COURT:**  Uh-huh.

4            **MR. JORDAN:**  But the purpose of the settlement trust

5    was to completely divorce any control, not to divorce free

6    speech or Alex Jones from the obligations and burdens.  But

7    there is no upside.  And let me be sure that this is understood

8    by the Court.

9            There is no third-party release.  None.  It cannot

10   happen under this circumstance.  They get nothing out of this

11   bankruptcy case until payment in full is reached and -- and I

12   created the definition.  It's called a resulting release.

13           And I made that up.  Because the release only results

14   from payment in full.  I don't know what to call it, so I call

15   it a resulting release.  We don't -- Alex Jones doesn't get a

16   third-party release if he pays two-thirds of the claims, or if

17   he pays all the claims that you estimate.  None of that -- none

18   of that applies.

19           This is -- this will never be a -- a third party

20   release plan.  It is a release --

21           **THE COURT:**  Yeah.

22           **MR. JORDAN:**  -- that pays in full.

23           **THE COURT:**  Yeah.

24           **MR. JORDAN:**  Or there is no release.  And --

25           **THE COURT:**  It's a channeling injunction plan, right?

1   That's really what it is.  It's a channeling --

2           **MR. JORDAN:**  I'm sorry, Judge.

3           **THE COURT:**  It's a channeling injunction-type plan

4   where you're going to -- where -- where everything stops and

5   everything kind of gets figured out in other courts.  And we

6   try to -- you're going to try to get a resolution in this Court

7   or in some other court of those issues.  And they'll get paid

8   through this plan -- a plan that gets filed by the Debtor, I

9   should say.

10          **MR. JORDAN:**  Right.  But they --

11          **THE COURT:**  Okay.

12          **MR. JORDAN:**  It has to be liquidated in some fashion.

13  Then it has to be paid in full.

14          There -- there's no hedge between those two factors.

15  And so, notwithstanding the fact that I completely agree that

16  your observation's right, I mean, these claims could be tried,

17  157(b)(5) says the District Judge is going to tell us where

18  it's tried, when it's tried, how it's tried.

19          **THE COURT:**  Uh-huh.

20          **MR. JORDAN:**  That's -- that's the reality.

21          Now the other reality is that at some point in time,

22  with -- which is the only other comment I want to make --

23          **THE COURT:**  Uh-huh.

24          **MR. JORDAN:**  -- about the trust, is that it -- it

25  itself provides for absolute full disclosure.

1    CRI -- CRO has the right to come into Alex Jones and

2 say I want to see your -- your -- your checking accounts.  It

3 can go to Free Speech and say I need to see your books and

4 records.  I need copies of the -- whatever they want is what

5 they're going to get.

6    Because short of that, if there was any less of

7 a -- of a standard that we would expect this Court to tolerate,

8 I'm not going to test that.  It is going to be whatever

9 is -- is needed to -- to have full disclosure so that -- so

10 that the issue of a plan hiding something or giving the -- Alex

11 Jones anything more than some time to pay the bill, and -- and

12 some time to understand what the bill is.

13    Because modifications are going to happen.

14 If -- if -- if the plan's -- if the estimation of claims comes

15 in at one number, yet the trials result in another number.

16 Assuming that they decide to go to trial and not deal with a

17 settlement, the facts of those trials are -- are what will

18 drive whether or not any releases are ever given.

19    And from our perspective, once everything is well

20 known, sometimes cooler heads take over.  And so the desire of

21 the settlement trust was to put some credibility on the -- on

22 the side of resolving and paying these claims.

23    The mediation that we have requested, only of course

24 if we survive the Motions to Dismiss and -- and -- and other

25 matters will be pending.  Those, notwithstanding, the ability

1  to resolve complaints is kind of the hallmark of a bankruptcy

2  proceeding.

3          That's what really happens in bankruptcy.  And it

4  happens in environments that it -- that it doesn't happen in

5  any other environment.  And I -- and I -- and I'm going to sit

6  down with this.

7          The -- the original fights in the asbestos cases, I

8  was practicing under the -- under the Roman numeral.

9  The -- the original asbestos trusts in channeling

10  injunctions --

11          **THE COURT:**  Uh-huh.

12          **MR. JORDAN:**  -- were fought tooth and nail --

13          **THE COURT:**  Yeah.

14          **MR. JORDAN:**  -- until it occurred to the -- the

15  victims, or the however you want, injured, that this is not a

16  bad arrangement.

17          You mean, I really don't have to fight everybody else

18  to try to get there first.  I don't have to fight every

19  insurance company until exhaustion is declared and I have

20  nothing to look to.  Those things changed.  And the industry

21  changed.  And then the whole bankruptcy system changed.

22          Now we're not that important.  And I don't want to

23  say anything except this.  Resolving disputes is what

24  bankruptcy system does.  And this is a -- a case that is

25  incredibly emotional.  It's a case that has been -- that has

1  been discussed almost daily for the last -- since it's been

2  filed, for the last four or five years.

3        And -- and the desire of the team that's here is not

4  a team of trial lawyers.  It is a team of bankruptcy lawyers

5  who have been through the process long enough to know what a

6  good faith filing is and what abuse of the system is.

7  And -- and to come up with a -- a -- the mechanism that might

8  actually change some of the -- of the -- of the injured, or all

9  of the injured's minds about settling these cases.

10        And -- and so I -- I -- I will -- I'm going to sit

11  down, but I encourage the Court at any point because I -- I

12  have sort of -- I don't -- I won't say this.  I -- I was in

13  charge of trying to put together a system by which people would

14  be induced to think about resolving these claims in some

15  fashion other than at the courthouse.

16        And one of those was what you are now witnessing.

17  And so from that perspective all of these things have the

18  ability to be changed, and modified, and all of them have the

19  capacity to be rethought.  And that's -- we're -- we're just

20  barely in the -- in the -- in the initiative phase of that.

21  And that's what we intend to do, Judge.

22        **THE COURT:**  Okay.

23        **MR. JORDAN:**  Thank you.

24        **MR. RUFF:**  Your -- your Honor, I -- if I could

25  just -- if you don't mind, if I could just --

38

1            **THE COURT:**  Sure.

2            **MR. RUFF:**  I promise to be brief.

3            I just feel like --

4            **THE COURT:**  I don't believe you.

5            **MR. RUFF:**  -- this is supposed to be a Status

6   Conference, but we just got a presentation.  So I would like

7   to --

8            **THE COURT:**  That's fine.  I mean, that's fine.

9   Everybody --

10           I -- I have thoughts.  And I'm going to share them,

11  too.  So -- but I -- I get it.

12           **MR. RUFF:**  I -- I appreciate it.  I -- I -- I promise

13  to be brief, which my wife never believes.  But I will honor

14  that for your Honor.

15           **THE COURT:**  Don't believe you.

16           **MR. RUFF:**  So just a couple of thoughts.

17           I hear all of this talk about, you know, we're doing

18  this for the good of the creditors.  They just don't know it.

19           This Plan Support Agreement was not negotiated with a

20  single creditor.  If they wanted to know and try and convince

21  the creditors what was good for them, why didn't they talk to

22  them about that?

23           It was negotiated with Alex Jones.  And that entity's

24  controlled a hundred percent by Alex Jones.  So that's pretty

25  circular reasoning I think.

1        You know, as far as, again, I -- I heard something

2   from Mr. Okin a little while ago about, you know, I really

3   think you need to take up the -- the Trust Agreement as well,

4   and the Court's authority or authorizing of the Trust

5   Agreement.

6        I don't see why.  The status quo is being maintained.

7   I, again, these are, you know, companies that have no assets,

8   no employees, no operations.  And so

9   there's -- there's -- there's -- the status quo's being

10  maintained.  And we really need to determining this gating

11  issue before we do anything else.

12       I also hear a lot about this race to the Court.

13  Well, your Honor, they were already in court.  The only person

14  racing to another Court was these Debtors at the control of

15  Alex Jones being put into this Court to try and change forums.

16  So that was the only race to the Court that was really going

17  on, just as they were about to start determining and

18  liquidating their damages in their cases.

19       We had the Plaintiffs here, your Honor.  They're

20  represented.  None of them were asking to be here.  In fact,

21  they're asking to get out of here and go back to just where

22  they were.

23       And again, I -- this termination 45 days.  I mean,

24  Alex Jones put that timetable on himself for these Debtors that

25  he controlled.  This -- and this was his doing.  So he

40

1    can -- if he -- if he really wants to be here, I think he can

2    extend that.  So I -- I don't think we should be worried about

3    timelines that he set.  Because they're -- they're really kind

4    of without meaning.

5             Your Honor, if we're legitimately -- legitimately

6    supposed to be here, I think we need to figure that out first.

7    Our position, we filed our own motion.  Your Honor will read

8    it.  Is that -- there is no legitimate purpose here to be in

9    the bankruptcy.

10            But these cases were filed in bad faith.  And there

11   were -- they were intended to -- to shield Alex Jones and Free

12   Speech Systems, the two parties who are not here, that we just

13   heard a, you know, a nice, long presentation about all the bad

14   things that might happen to them if -- if they were forced to

15   come here.

16            But -- but they're not here.  So, you know,

17   they -- instead they get to not subject themselves to all the

18   transparency requirements that the Bankruptcy Code dictates.

19   And the quid pro quo.  You get the benefits, but you also have

20   to submit yourself.  And that's a good faith negotiation,

21   right?  That's -- that's -- that's the transfer there.

22            So, your Honor, I promised I would be brief.  And I'm

23   just going to conclude there.  Cause I know there's --

24            **THE COURT:**  Yeah.

25            **MR. RUFF:**  -- people who can say better things than

1  myself.  So --

2          **THE COURT:**  All right.  Let -- let me just note, too.

3  There's -- there's a few people on video who are being very

4  disrespectful to the Court.  This is still live court.  People

5  may appear by video.  But you should really consider that.

6          Just because we're appearing by video for

7  convenience, and I'm happy that we're able to do it, doesn't

8  mean that we're still not in open court.  So thank you.

9          Folks, we're going to --

10         **(Pause in the proceeding.)**

11         **THE COURT:**  We're going to pick dates.  We're going

12  to proceed along.  Cause right now I've got three Debtors.  And

13  these three Debtors have requested relief as was routine.  And

14  virtually every Chapter 11 case filed, the Debtors get to make

15  requests for essential relief on an emergency basis.

16         And the fact that there's an Emergency Motion to

17  Dismiss that is filed, those get taken up.  We're going to pick

18  a date that makes sense.  And everybody's going to have their

19  day in court.

20         The Debtors have filed a motion last week.  And want

21  a hearing.  And they're going to get a hearing on it.  How I

22  rule on it, don't know.  But they're entitled to a hearing

23  and -- and they'll get one.

24         No one should read anything into that, other than the

25  fact that someone has requested relief on an emergency basis.

42

1      **(Pause in the proceeding.)**

2          **THE COURT:**   In connection -- and the Debtor is

3    telling me that it's in connection with their very management.

4          So they're going to get a hearing on it.  Well let's

5    take that up.  But let's -- why don't we work backwards and

6    talk about the Motion to Dismiss.  And let's pick a date that

7    works for everyone on that.

8          So why doesn't everybody just turn to their calendars

9    if they get a chance.  These are really important issues for

10   the families.

11     **(Pause in the proceeding.)**

12         **THE COURT:**   Important for the Debtors as well.  And I

13   get it.  No one likes the Debtors.  But --

14     **(Pause in the proceeding.)**

15         **THE COURT:**   -- they have a right to defend themselves

16   just like as anyone who came before me.

17         So let's pick a date.

18     **(Pause in the proceeding.)**

19         **THE COURT:**   Let's see.  Today --

20     **(Pause in the proceeding.)**

21         **MR. LEE:**   Your Honor?

22         **THE COURT:**   Yeah.  I'm just pulling up my calendar.

23         **MR. LEE:**   I just want to put a -- I don't want to put

24   a kink in the -- in the calendar.  But I just have a request of

25   you.

1        I haven't taken a day off for two years.  And I've

2    promised my family that I'd go to Miami with them on May 18th

3    through 20th.  And if that gets in the way, I can change it.

4    But I just wanted to get some --

5           **THE COURT:**  No.  I can't do those dates anyway.

6           **MR. LEE:**  All right.  Thank you, your Honor.

7        **(Pause in the proceeding.)**

8           **THE COURT:**  We can do May 27 or June 3rd.  That

9    should give you enough time.

10          **MR. LEE:**  Absolutely, your Honor.

11           And -- and we're fine with May 27th if -- if the

12   other counsel is available on those dates.

13          **UNKNOWN MALE:**  Well, Judge, it's my birthday.  But

14   I've had 63 of them --

15          **THE COURT:**  Yeah.

16          **UNKNOWN MALE:**  -- before.  So it's not that big a

17   deal.

18          **THE COURT:**  Vacation might -- vacation might get me

19   there.  But birthday you're not.

20          **MR. LEE:**  Twenty-seventh is fine for the Debtors,

21   your Honor.

22          **THE COURT:**  All right.  You're going to get full

23   notice.

24           But I'm giving everyone a lot of time because I want

25   everyone to put on their best evidence.  And I'm going to take

1  time.

2          But one thing I do promise everyone is I get it.

3  It's important.  It's a gating issue.  This issue does need to

4  get decided.  And I am going to decide it quickly.  I'm going

5  to take my time and I'm going to be thoughtful.

6          But I understand that a lot is riding on this

7  decision.  And people are going to want an answer.  And I'm

8  going to give you the answer.  It may be that day.  May take

9  some time, depending on what the evidence is.  But I want to be

10 very thoughtful about it and deliberate about what I do.  But

11 you're going to get an answer really fast from me.  And

12 I'm -- I'm not rushing anything.  I just understand where we

13 are.

14         So I know what hard works looks like.  And -- and

15 I'll do.  It's my job.

16         **MR. LEE:**  What time, your Honor?

17         **THE COURT:**  Why don't we start at 9:00 a.m. on the

18 27th.  Parties should prepare to go late.

19    **(Voices speaking off the record.)**

20         **MR. LEE:**  And --

21         **THE COURT:**  We're just going to go till we're done.

22         **MR. LEE:**  Yes, your Honor.  Absolutely.

23         And I just want to make sure that we're clear.  You

24 want us -- you want us to notice just the Motion to Dismiss

25 that's been filed by the Trustee --

1          **THE COURT:**  On that date.

2          **MR. LEE:**  -- on that day, as well as the --

3          **THE COURT:**  Well, let's talk about the others.  Let's

4    just -- I'm just picking that date.  Let's just go through what

5    else is here and let's find dates for -- for the others.

6          **MR. LEE:**  Absolutely, your Honor.

7          **THE COURT:**  Twenty-seventh at nine a.m.  Witness and

8    exhibit lists will need to be filed by May 25th at noon.  For

9    exhibits is our local rules that require all exhibits to be

10   filed on the docket.

11         For the parties who -- intend to -- intend to

12   participate by video, I intend to -- the witness is looking at

13   a document, I'm going to put it up on, unless there's some

14   confidentiality issues, but in connection with this Motion to

15   Dismiss, if there's a -- if there's a document that is filed on

16   the -- on the docket, the witness is looking at it.  We're

17   going to put it up on the screen.  Just in case, you know, the

18   party needs to participate, lawyer wants to participate, we're

19   going to do both on that day.

20         Responses.  Let's see when were the motions?  Motions

21   were filed -- why don't we work off of yours --

22         **MR. RUFF:**  Yes, your Honor.

23         **THE COURT:**  -- Mr. Ruff.  Just work off the date.

24   I'm just thinking.  That was filed today, right?

25         **MR. RUFF:**  Yes, your Honor.

46

1          **THE COURT:**  Okay.

2      **(Pause in the proceeding.)**

3          **THE COURT:**  Sounds like -- Mr. Lee why don't you

4   respond to all the Motions to Dismiss.  Give you one -- you

5   could do -- you know, I don't want you --

6          **MR. LEE:**  That is fine, your Honor.

7          **THE COURT:**  -- on May 20th.

8          **MR. LEE:**  That'll be fine, your Honor.

9          **THE COURT:**  If anybody wants to file a reply, you

10  can.  I just ask that the reply get filed by the 25th.

11     **(Pause in the proceeding.)**

12         **THE COURT:**  And that Motion to Dismiss, I'm

13  also -- also teeing up at that same time the -- the -- the

14  designation, the challenge to the designation --

15         **MR. LEE:**  Yes, your Honor.

16         **THE COURT:**  -- of subchapter filing.

17         I'm just making sure that we're all clear.

18  Subchapter V designation and Motion to Dismiss.  So obviously

19  that result of that hearing could result in a couple of

20  other -- couple of other hearings.  It could result in a

21  dismissal of the entire case.  It could result in non-

22  dismissal, but a change to the designation of one or more

23  Debtors, or could result in non-dismissal and continuation of a

24  Subchapter V case.

25         That's --

1        **(Pause in the proceeding.)**

2             **THE COURT:**  And I'll be prepared to address both --

3             **MR. LEE:**  Absolutely, your Honor.

4             **THE COURT:**  -- on that.  I just want to make sure

5    that we have clarity on that.

6             On the motion -- when do you -- when do you want

7    it -- what are you proposing on the Trustee and the CRO motion?

8             **MR. LEE:**  If I may be at liberty to say.  Right are

9    the Motion to Dismiss if I could take it up right then.

10            **THE COURT:**  You want to take it up after?

11            **MR. LEE:**  Yes, your Honor.

12            **THE COURT:**  Okay.

13       **(Pause in the proceeding.)**

14            **THE COURT:**  So then -- well actually, Mr. Lee, would

15   it make sense -- do you want to pencil in a date but maybe we

16   could tweak it?

17            **MR. LEE:**  Yes, your Honor.

18            **THE COURT:**  Why don't we pencil in June 3rd, Friday,

19   June 3rd.

20            **MR. LEE:**  Thank you, your Honor.

21            **THE COURT:**  At 10 a.m.

22            That could be the date I render a decision.  Could be

23   the day that we take up the CRO motion.  But obviously if I

24   dismiss the case, there's nothing to take up on that day.  But

25   we'll use the date one way or the other.

48

1        We'll take up the CRO motion and we'll take up

2    the -- the Trustee motion.  I have thoughts on the Trustee

3    motion, just not thoughts.  But I want to make sure that I

4    understand what I'm reading.  But let's take this up in a

5    minute.

6        What else do we need to take up?

7            MR. LEE:  The claims bar date motion, your Honor.

8    May we have that on June 3rd as well?

9            THE COURT:  Well why don't you talk to Mr. Ruff about

10   that one.  If you're going to change, I was going to have a

11   502(b)(9) discussion.  But it sounds like that's going to

12   change.  We don't need -- the Government bar date's going to

13   change.

14           MR. LEE:  That's fine, your Honor.  Absolutely.

15       **(Pause in the proceeding.)**

16           MR. LEE:  I give you -- I need to ask you about one

17   matter as to the --

18           THE COURT:  Okay.

19           MR. LEE:  -- other litigation.

20           THE COURT:  What other litigation?  There's a lot of

21   them.

22           MR. LEE:  No.  I apologize.  The -- the litigation

23   relating to the -- the Motion to Dismiss.

24           THE COURT:  Yes.

25           MR. LEE:  To the extent they're going to be most

1  likely some documents and issues that are going to be under

2  seal, cause they're -- they're going to be kind of

3  confidential.

4          THE COURT:  Uh-huh.

5          MR. LEE:  What -- what -- what kind of procedure

6  would you like us to follow?  Just to file things under seal --

7          THE COURT:  Uh-huh.

8          MR. LEE:  -- as you --

9          THE COURT:  Uh-huh.

10          MR. LEE:  -- as we have --

11          THE COURT:  Uh-huh.

12          MR. LEE:  -- done in --

13          THE COURT:  Uh-huh.

14          MR. LEE:  -- the past?

15          THE COURT:  Yeah.

16          MR. LEE:  All right.

17          THE COURT:  That's exactly right.

18          MR. LEE:  Thank you, your Honor.

19      **(Pause in the proceeding.)**

20          THE COURT:  Let me just share some thoughts as well

21  here.

22          We're -- I know we're not taking them up.  But I need

23  to understand.  Who's -- is Mr. Schwartz still going to serve

24  in a capacity on behalf of the Debtor?

25          MR. LEE:  Yes, your Honor.  He is the Chief

50

1    Restructuring Officer.  And we believe that he has the

2    authority to manage the Debtors until the Trustees are

3    appointed.

4              **THE COURT:**  And so who is he taking direction from?

5              **MR. LEE:**  Right now I believe he has innate authority

6    under his letter engagement that we've looked at.  And so

7    that's how we are proceeding at this time.

8              He is, in fact, the de facto manager of the Debtors,

9    your Honor, under the company agreement that we've looked at.

10   Do you feel uncomfortable with that position?

11             **THE COURT:**  No.  I -- I -- I just don't know who's

12   looking out entire for the Debtors as a fiduciary.  That's my

13   concern.

14             So I don't -- I -- I need to understand exactly what

15   role he's serving now.  The way I understood the CRO, the CRO

16   would answer to either the initial Trustee or the Litigation

17   Trustees.

18             **MR. LEE:**  He does.

19             **THE COURT:**  But he's -- but he's proposed under 327.

20   Right?  To be retained under 327.

21        **(Pause in the proceeding.)**

22             **THE COURT:**  Somebody has to act independently for the

23   Debtors.  And I'm not saying that they can't be aligned in

24   certain instances with the Litigation Trustee, I'm not saying

25   that they are.  But he needs to have the freedom to operate as

1    an independent fiduciary.

2            Because somebody has to do so while we get to where

3    we're headed.  And maybe everything is aligned.  But I want to

4    make sure that he is operating -- somebody is here on behalf of

5    these three Debtors.  I've heard a lot about non-Debtors.  I'm

6    focused now on the Debtors.  Somebody has to start operating

7    entirely independent for the Debtors.

8            And maybe that's Mr. Schwartz.  But Mr. Schwartz

9    needs to understand the way I view his role --

10            **MR. LEE:**  Right.

11            **THE COURT:**  -- until we get here to the 27th.

12            And maybe somebody can convince me that Litigation

13    Trustees who are non-Debtors can manage the Debtor.  I don't

14    understand why they're not being appointed as just managing

15    members of the Debtor who are independent fiduciaries.

16            But that's neither here nor there.  That's a

17    discussion for, I guess, June 3rd --

18            **MR. LEE:**  Yes, your Honor.

19            **THE COURT:**  -- if we get there.

20        **(Pause in the proceeding.)**

21            **MR. LEE:**  If -- if --

22            **THE COURT:**  I guess, who are you taking direction

23    from, Mr. Lee?

24            **MR. LEE:**  I'm taking my directions from Mr. Schwartz.

25            And I went back -- I kind of knew that you may raise

1   this issue.  And we've had internal discussions about this.

2   And I went back to the company agreement of both -- all the

3   Debtors and looked at them.

4              And it is clear to me that the manager of the Debtors

5   runs the daily operations.  And the way I can best describe it

6   to you is, based upon the heavily negotiated CRO Engagement

7   Letter, it is my view that Mr. Schwartz is the de facto

8   manager.  Because today the initial Trustee, Mr. Du (phonetic)

9   has no other obligation or responsibilities under the Trust

10  Agreement besides putting this company into Chapter -- these 3

11  companies into Chapter 11.

12             So until there's a Trustee who can run and -- oh

13  supervise Mr. Schwartz as the CRO he is, in fact, the daily

14  manager who is running the -- sort of running the show.

15             And that -- that's the position I've taken.  And

16  that's the -- that's from whom I am taking direction to proceed

17  in this bankruptcy case.

18             **THE COURT:**  Mr. Schwartz just needs to understand

19  that.  If that's not Mr. Schwartz' understanding then somebody

20  needs to get in front of me really quickly.  Okay?

21             **MR. LEE:**  Yes, your Honor.

22             **THE COURT:**  Mr. Schwartz, you're -- you're there.

23  I'm just -- I'm just telling you.  My understanding is that

24  you're seeking to be retained under 327, right, of the

25  Bankruptcy Code?

1          I want to make sure that you understand.  I'm not

2    saying you don't.  I just want to make sure in open court that

3    we are very clear your -- your duty lies with the Debtors.

4          **MR. SCHWARTZ:**  That is my understanding, your Honor.

5          **THE COURT:**  Okay.  And if anything -- all right.

6          I don't know if that's going to cause you to take

7    adverse -- I have no idea.  All right?  I don't -- I

8    don't -- Judge walks out, reads papers.  So I don't know what

9    happens behind the scenes.  I just want to make sure that we're

10   clear about the way I view your role as the Chief Restructuring

11   Officer until we get to the --

12          Obviously, I've got to make some -- I've got to

13   decide some matters the next couple of weeks.  And I -- and

14   I'll be ready to do so.  I just want to make sure that you

15   are -- you and I are clear about kind of the role just for the

16   sake of clarity.

17          Not that I believe that you had a misunderstanding.

18   I just want to make sure that we're all on the same page.

19          **MR. SCHWARTZ:**  I believe we are, your Honor.

20          **THE COURT:**  Okay.  Thank you.

21          **MR. LEE:**  Thank you, your Honor.

22          **THE COURT:**  Okay.

23          **MR. LEE:**  I -- I have nothing else on my end, your

24   Honor.

25          **THE COURT:**  All righty.

54

1          I -- folks, I --

2      **(Pause in the proceeding.)**

3          **THE COURT:**  The Trustees are here.  So let me

4  just -- it's not for -- for today, but I -- I don't see any

5  form of -- the Subchapter V Trustee has a role to do.  And I

6  find it very important.

7          I don't see any funding mechanism to compensate her

8  for her work.  I don't see it anywhere.  I see estate

9  professionals retained by the Debtors.  Subchapter V Trustee

10  isn't retained by the professionals.

11          I just want to make sure that we're all clear.  And

12  the reason I'm saying that is, unlike other Chapter 11 cases,

13  this Debtor, as of right now, has no money.  The Litigation

14  Trust has money.  These Debtors don't.

15          Unless something's happened since I've been gone, and

16  I want to make sure, I don't know what happens.  But I want to

17  make sure everybody's really clear, that administrative

18  expenses must get satisfied in connection with this case.  And

19  there's got to be a mechanism from where it is.

20          And I want to make sure it doesn't get lost in

21  the -- in the docs.  We're not taking that up today.  I

22  understand these have been set up in a particular way.  And

23  we'll have a discussion about that.

24          **MR. OKIN:**  Your Honor?

25          **THE COURT:**  We'll have -- we'll have a discussion

1   about that at the appropriate time.  And if I've missed

2   something, right?  I just missed it.  I want to make sure

3   everybody's really clear about the work, you know.

4          Mr. Schwartz, I just told is going to operate as a

5   fiduciary for the estate, right?  I -- I remain concerned about

6   the ability to fund and not fund, based upon how the judge

7   rules on things.  And sometimes people hit homeruns.  Sometimes

8   people just hit singles.  Sometimes they strike out.

9          And there's got to -- doesn't mean that the case

10  should operate in accordance with what we all know to be

11  ordinary course matters.  These Debtors have no money.  But

12  they're going to incur a lot of expenses in connection with

13  defending a Motion to Dismiss.

14         And I want to make sure that the third-party

15  contributors understand that.  I'm really concerned about

16  people taking the ball and going home without me knowing.  And

17  maybe it's not a concern.

18         I just raising these issues cause we won't see each

19  other again, maybe until the 27th until this all teed up.  And

20  I don't want anyone to -- there are important issues that need

21  to get decided.

22         And I look forward to having a discussion with

23  Debtor's counsel, whoever's going to testify, counsel for

24  Plaintiffs in Connecticut, and also Trustees.  I want everyone

25  to really put on their best case.  Giving everyone appropriate

56

1   time to do so.

2           Because I have tough issues to decide.  And I want to

3   make sure that I have the best presentation from all the

4   parties, and that everybody who wants an opportunity to be

5   heard has that opportunity.  Because I think that's what the

6   bankruptcy process is all about is transparency.

7           And every person who appears in the Court feels like

8   they got -- they got heard.  And that's really, really

9   important to me.  Now we do have process.  We do have Federal

10  Rules of Evidence that we're going to follow.

11          But the opportunity to have your day in Court,

12  whether you have a lot of money or you don't.  Everyone's going

13  to get treated the same.  We're going to take up the evidence.

14  And I'm going to make a decision based upon the evidence and

15  the law.

16          What that answer will be, don't know.  But I want

17  everyone to have that opportunity.  We have some of the best

18  lawyers in the country on the phone, and on video, and in the

19  courtroom.  So I'm confident that I'll be able to reach a

20  decision based upon their presentation and solid presentation.

21          So is there anything else we need to take care of --

22          **MR. OKIN:**  Your Honor, can I address --

23          **THE COURT:**  -- today?

24          **MR. OKIN:**  -- one thing?

25          **THE COURT:**  Just tell me who you are.  There's a lot

1   of boxes.

2           **MR. OKIN:**  Sorry.  Matt Okin, your Honor.

3           **THE COURT:**  Okay.  Mr. Okin, not a problem.

4           **MR. OKIN:**  That you mentioned the Trustees a couple

5   of time and -- couple of times in that.  And I did want to just

6   be clear.

7           The -- Mr. Nelms and Mr. Schmidt do not intend to

8   serve until we have that hearing and we have that order.

9   That's why I had asked for it earlier.  I believe it is part of

10  their role under the renegotiated documents to make sure

11  there's sufficient funds to pay all the costs of -- of the

12  estate and the trust.

13          That will not be something -- we don't intend, and I

14  don't expect, that we would participate at the 27th hearing on

15  the 27th.  And I don't expect that until after the 27th and this

16  Court rules and we start talking about the hearing on the 3rd

17  that we'll be a part of this process the way that this is

18  currently set up.

19          And that's fine.  But I just wanted to make sure that

20  it's clear that Mr. Nelms and Mr. Schmidt are not taking any

21  responsibility for the operation of this estate or the

22  functioning of the funding under the PSA unless and until

23  they're approved to participate in that role.

24          **THE COURT:**  Okay.  And -- so the -- the question

25  you're going to have to answer for me, Mr. Okin, at the

1  appropriate time, and maybe the Debtor, cause they filed a

2  motion is -- is what am I being asked to approve under the

3  Litigation Trust Settlement?

4          Am I being asked to approve just Mr. Schmidt and

5  Mr. Nelms as just Trustees, but not approving any underlying

6  documents upon which they are going to operate?  Just -- you

7  know, am I going to be asked to provide exculpations as

8  provided in the order?  Am I going to be asked to approve, you

9  know, a lot of covenants in Section Six of the Litigation Trust

10 Agreement?  Am I going to be asked to approve that?

11         I -- and -- and maybe the answer is yes.  But I just

12 want to make sure that there's clarity when -- if -- if we get

13 there.  And I'm not saying we will.  But if we get there, then

14 obviously, I got to -- I got to answer some threshold issues.

15         But if we get there, we're all here today.  And I

16 don't want to blindside anyone.  I don't want -- want to

17 understand what I'm being asked to approve and exactly what the

18 Trustee's expectation of an order approving them and what that

19 looks like, right?

20         And I just want to make sure that we have that -- if

21 we -- if we get there, we have that discussion.  But under

22 no -- that's why I'm looking to Mr. Schwartz today.

23         My understanding is that Mr. Nelms and Mr. Schmidt

24 may not participate in the trust until I decide this threshold

25 issue.  And -- and I understand that.  And they're -- they're

59

1    not fiduciaries of the estate.  So I -- I understand.

2              And so I -- I appreciate the comments.

3              **MR. OKIN:**  I think we can answer those questions,

4    your Honor.

5              And to be clear, it's not may not participate.  They

6    will not participate till they're --

7              **THE COURT:**  Okay.  Thank you.

8              **MR. OKIN:**  -- until that point.

9              **THE COURT:**  Well, got it.  Okay.

10             Folks anything else we need to talk about today?

11             **MR. LEE:**  Thank you, your Honor, for paying

12    particular attention to this case.  And we'll be ready to try

13    the case.

14             **THE COURT:**  Okay.

15             **MR. LEE:**  Thank you, your Honor.

16             **THE COURT:**  I mean -- well I will tell you this.  On

17    the --

18        **(Pause in the proceeding.)**

19             **THE COURT:**  Well, I'll just leave it there.

20             I appreciate everyone's participation today.  I thank

21    everyone who appeared by video and by phone.  This, again, I

22    just say this for everyone.  This is going to be the same dial-

23    in and video platform that will be used for our hearing on May

24    27th.  You are free to dial in and participate by video and by

25    phone.  Folks are also -- certainly there are people in the

60

1    courtroom.  I leave that up to everyone.

2              But I just want to make sure that everybody knows

3    this is the dial in.  And there's no fee.  Nothing associated

4    with that.  You are free to dial in and participate.  I just

5    ask that if you do dial in and participate by video, just

6    remember, you -- we're still in live court.  And I will expect

7    the same conduct from individuals who are in the court and

8    those who are on video.

9              I thank everyone.  And have a good weekend.  Thank

10   you.

11             **MR. LEE:**  Have a good weekend, your Honor.  Thank

12   you.

13             **UNITED STATES MARSHAL:**  All rise.

14       **(This proceeding was adjourned at 04:12 p.m.)**

15

16                         CERTIFICATION

17

18   I certify that the foregoing is a correct transcript from the

19   electronic sound recording of the proceedings in the above-

20   entitled matter.

21

22       /s/Cheryl L. Battaglia                April 30, 2022

23          Transcriber                            Date

24   22-BK-60020-H-11

25   04/29/22 - 04/30/22

                    **TRINITY TRANSCRIPTION SERVICES**