## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 22-60020 (SDTX) |
| | ) | |
| INFOW, LLC, *et al.*, | ) | CHAPTER 11 |
| | ) | |
| Debtors. | ) | JOINTLY ADMINISTERED |
| | ) | |
| | ) | |
| HESLIN, *et al.*, | ) | |
|     Plaintiffs, | ) | |
| | ) | ADV. PROC. NO. 22 -01023-hcm |
| v. | ) | |
| | ) | |
| JONES, *et al.*, | ) | |
|     Defendants. | ) | |
| | ) | |

## INFOW, LLC'S RESPONSE TO PLAINTIFFS'
## MOTION FOR ABSTENTION AND REMAND

InfoW, LLC (f/k/a Infowars, LLC), hereby responds to the *Plaintiff's Motion for Abstention and Remand* [Adv. Dkt. No. 7] (the "Motion to Remand") as follows:

### PRELIMINARY STATEMENT[1]

1.    The Plaintiffs attempt to distract the Court from the relevant law and facts with ad hominin attacks on Alex Jones. But Alex Jones has no role in the management of the Debtors or conduct of the Bankruptcy Case. Instead, the Debtors are owned by the Litigation Settlement Trust and managed by an independent CRO who owes a fiduciary duty to all claimants.

2.    First things first: The removal was proper. Even if the mistitled "Notice of Nonsuit" was effective—which is dubious under Tex. R. Civ. P. 163 in light of the resulting prejudice— InfoW remained in the case because of the pending Text Messages Sanctions Motion, the

---

[1] Capitalized terms used but not defined in this section have the meanings ascribed to such terms elsewhere in this Response.

Attorneys' Fee Order, and potential contribution rights of the various parties. And the Joinder by Jones and FSS would have remedied any potential deficiency.

3.      Mandatory abstention simply does not apply. There is complete diversity of citizenship that would have allowed the Removed Litigation to have been commenced in federal district court. Plaintiffs Heslin and Lewis are citizens of Connecticut and assert damages of more than $1.0 million. InfoW and the other defendants are citizens of Texas.

4.      Nor do the permissive abstention factors support remand. Some of the Plaintiffs assertions are just clearly factually false—e.g., that "[t]here are no other proceedings other than the bankruptcy court and the state court case" and "the only jurisdictional basis is section 1334". (Motion to Remand at p.7). Others do not survive even modest scrutiny—e.g., the asserted lack of effect on efficient administration of the Debtors bankruptcy estates (Motion to Remand at p.6). With respect to the rest, either (a) the Plaintiffs will not be able to meet their burden, (b) the reasons such factors might support remand would be resolved by InfoW's contemporaneous Motion to Transfer Venue and the ability to hold a jury trial in the appropriate district court, or (c) do not overcome the substantial reasons for this Court or the Home Court to exercise the jurisdiction conferred by Congress.

5.      The Plaintiffs want this Court to decline to exercise its jurisdiction and decide for the U.S. Bankruptcy Court for the Southern District of Texas that the Bankruptcy Case was filed in bad faith. The Court should decline this improper invitation and abate the Motion to Remand until the pending motions to dismiss in the Bankruptcy Case are determined. Depending on the outcome of the motions to dismiss the Court's consideration of permissive abstention and transfer may be unnecessary. To the extent that the Court decides to rule on the Motion to Remand, however, the Court should deny the motion.

# BACKGROUND

## A. The Bankruptcy Case

6. InfoW, LLC f/k/a Infowars, LLC ("InfoW" and together with its affiliate debtors and debtors-in-possession, the "Debtors"), filed a voluntary petition for chapter 11 bankruptcy relief in the U.S. Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Home Court"), on April 18, 2022 (the "Petition Date"), initiating Case No. 22-60020 in that court (the "Bankruptcy Case").[2] A copy of the voluntary petition is attached hereto as Exhibit 1.

7. On the Petition Date, each of the Debtors filed an emergency motion requesting authority to appoint former bankruptcy judges Russell F. Nelms and Richard S. Schmidt as trustees (upon such appointment, the "Trustees") of the 2022 Litigation Settlement Trust (the "Litigation Settlement Trust") that owns the equity interests of the Debtors [Bankr. Dkt. No. 6] and an application to employ W. Marc Schwartz as chief restructuring officer (in such role, the "CRO") [Bankr. Dkt. No. 7].[3] Copies of the motion to appoint the Trustees and application to employ the CRO are attached respectively as Exhibit 2 and Exhibit 3 hereto.

8. The Home Court held a hearing on the motion to appoint the Trustees and application to employ the CRO on April 22, 2022. The Debtors agreed to continue the hearing on the merits at the request of creditors and presented an outline of the Bankruptcy Case to the Home Court and parties-in-interest. A further status hearing is set for April 29, 2022, at 3:00 p.m.

9. The purpose of the Bankruptcy Case is to provide a mechanism to efficiently determine and pay *all* claims against the Debtors and joint-tortfeasors in full. To support this, the equity of the Debtors was assigned to the Liquidation Settlement Trust (for the benefit of the

---

[2] The chapter 11 cases of affiliated entities IWHealth, LLC ("IWH") and Prison Planet TV, LLC ("PTV") are being jointly administered in the Bankruptcy Case.

[3] The Litigation Settlement Trust was initially funded in the amount of $725,000 by the proceeds of the sale of Alex Jones's exempt Texas homestead. The funds were and will be used to fund the Bankruptcy Case.

Plaintiffs and others) prior to the Petition Date, and the Debtors, with separate counsel and financial advisors, negotiated the Plan Support Agreement attached hereto as <u>Exhibit 4</u>.[4]

10. Among other things, the Plan Support Agreement obligates Alex Jones ("<u>Jones</u>") and Free Speech Systems, LLC ("<u>FFS</u>" and together with Jones, the "<u>Third-Party Funding Contributors</u>") to fund $7.0 million to pay litigation claimants. This is in addition to the approximately $2.0 million of revenue that will be derived from IWH's royalty rights over a five (5) year period, $725,000 that was funded to the Litigation Settlement Trust from proceeds of Jones' exempt homestead prior to the Petition Date, and the Third-Party Funding Contributors' ongoing obligation to pay the costs of administration of the Bankruptcy Case. The total consideration will be approximately $10.0 million—more than $500,000 per litigation claimant. Additional consideration may be negotiated over the course of the Bankruptcy Case.

11. A critical aspect of the Plan Support Agreement and the feasibility of any resulting plan is that lawsuits in which joint liability has been asserted against the Debtors and the Third-Party Funding Contributors are liquidated in a central forum. Prior to the Petition Date, the Debtors' and the Third-Party Funding Contributors incurred and paid more than $10.0 million in legal expenses. The savings from liquidating the claims in a central forum are essential to the administration of the Debtors' bankruptcy estates and ultimately paying creditors in full. Absent centralized administration—which may include determination by a jury—the funds available will be cannibalized in successive trials over a five-month period. While the Plaintiffs here may receive payment on their claims, the 14 plaintiffs in Connecticut would likely be left with nothing.

---

[4] The proposed Trustees are in the process of negotiating additional creditor protections in the Declaration of Trust, Plan Support Agreement, and related plan of reorganization. InfoW anticipates that final versions of the Declaration of Trust and Plan Support Agreement will be prepared prior to a hearing on the Motion to Remand.

12.     Various parties have indicated that they intend to seek the dismissal of the Bankruptcy Case. A group of Connecticut plaintiffs—who had lost the race to the courthouse and would not have gone to trial until after the Texas cases would have been tried—filed an emergency motion seeking dismissal on April 26, 2022 [Bankr. Dkt. No. 36] (the "Connecticut MTD").[5] Plaintiffs Heslin and Lewis, along with other Texas plaintiffs, filed a motion to dismiss the Bankruptcy Case under ordinary notice the next day [Bankr. Dkt. No. 42] (the "Texas MTD").

**B.  The State Court Lawsuit**

13.     This adversary proceeding involves the action previously pending before the 261st District Court for Travis County, Texas, as Cause No. D-1-GN-18-001835, and removed to this Court as Adversary Proceeding No. 22-01023 (the "Removed Litigation"). On April 16, 2018, plaintiff Neil Heslin brought an action against InfoW, Jones, FSS, and Owen Shroyer, asserting claims for defamation. A copy of Heslin's active petition is attached as Exhibit 5 hereto. Plaintiff Scarlett Lewis brought an action against InfoW, Jones, and FSS on October 31, 2018, in the 98th District Court for Travis County, Texas, asserting a claim for intentional infliction of emotional distress. A copy of Lewis's active petition is attached as Exhibit 6. Lewis's action was consolidated with the State Court Lawsuit on January 24, 2022, as reflected in the order attached hereto as Exhibit 7.

14.     Multiple orders imposing sanctions against InfoW, Jones, FSS, and Shroyer were entered in the Removed Litigation. Although the sanctions were imposed on all of the defendants, they were paid by FSS and FSS arguably has a claim for contribution against InfoW, LLC.

15.     Sanctions were mostly recently imposed on *all of the defendants*, including InfoW, for the failure of *FSS* to properly present a corporate representative for deposition. Attached as

---

[5] The Debtors oppose the motion to dismiss and an emergency hearing on less than 72 hours' notice, as requested by the Connecticut plaintiffs.

Exhibit 8 is the motion for sanctions filed by the Plaintiffs. On April 1, 2022, the state court ruled, among other things, that (a) the "Defendants" were required to pay the expenses of discovery, (b) the Plaintiffs were required to submit evidence setting forth their court costs, expenses, and attorneys' fees relating to discovery, and (c) the "Defendants were authorized to object to the amount within seven (7) days after the Plaintiff's filing." A copy of the April 1 order is attached as Exhibit 9. The Plaintiffs submitted the Notice of Filing of Declaration on Attorney's Fees attached hereto as Exhibit 10 on April 8, 2022. On April 15, 2022, at 3:00 p.m.—prior to the Defendant's response deadline under the April 1 order—the state court entered an order (the "Attorneys' Fees Order") approving the attorneys' fees in full and commanding InfoW and the other defendants to pay the amounts within thirty (30) days. A copy of the Attorneys' Fees Order is attached as Exhibit 11. InfoW and the other defendants timely objected to the requested attorneys' fees and requested a hearing on April 15 as reflected in Exhibits 12 and Exhibit 13.

16.    At the time of removal, another motion was pending for sanctions against InfoW and the other defendants (the "Text Message Sanctions Motion") for failure to produce text messages between former FSS employee Nico Acosta and Rob Dew, Owen Shroyer, and Alex Jones. The Plaintiffs seek sanctions under Tex. R. Civ. P. 215 and under the inherent powers of the state court against all of the defendants, including InfoW. A copy of this motion is attached as Exhibit 14.

17.    At approximately 9:34 a.m. on the Petition Date, Plaintiffs Heslin and Lewis filed the notice of nonsuit with respect to InfoW, attached hereto as Exhibit 15 (the "Nonsuit Notice"). The Nonsuit Notice provided:

> Plaintiffs Neil Heslin and Scarlett Lewis hereby give notice to the Court and all parties that Plaintiffs no longer desire to prosecute their claims against Defendant InfoWars, LLC. As such, Plaintiff hereby nonsuits all claims asserted against Defendant InfoWars, LLC.

The Notice of Nonsuit did not indicate or request (a) withdrawal of the Attorney's Fee Order or the Text Message Sanctions Motion with respect to InfoW; (b) dismissal of the claims against InfoW with prejudice; or (c) nonsuit or dismissal of the entire Removed Litigation. Indeed, in the Texas MTD, Plaintiffs Heslin and Lewis assert that they are creditors in the Bankruptcy Case.

18.     The state court has not entered any order dismissing the action against InfoW that would have terminated that court's authority and jurisdiction over InfoW. The terms of the Attorneys' Fee Order command InfoW to pay the amounts ordered on or before May 16, 2022, and the Text Message Sanctions Motion remains pending.[6]

**C.  The Notice of Removal**

19.     At approximately 2:17 p.m. on the Petition Date, InfoW filed a notice of removal with the U.S. Bankruptcy Court for the Western District of Texas, Austin Division [Adv. Dkt. No. 1]. On April 26, 2022, the notice of removal was joined by Jones and FSS [Adv. Dkt. No. 6].

20.     The notice of removal was served on counsel to Heslin and Lewis at approximately 4:18 p.m. on the Petition Date. A notice was filed with the state court regarding the removal at approximately 9:30 p.m. that day. A copy of the notice filed with the state court is attached as Exhibit 16.

21.     On April 26, 2022, defendants Jones and FSS filed their consent and joinder to the notice of removal with this Court [Adv. Dkt. No. 6] (the "Joinder").

---

[6] Counsel for the Plaintiffs stated at a status hearing before the state court after removal that it was the Plaintiff's "position that when we non-suited InfoWars at that point we have the ability, if we want to, to continue to pursue that sanctions motion." (Transcript 22:14-20, Pls. Ex. 6).

## ARGUMENT

**A. The Notice of Removal Was Procedurally Proper.**

     *i.   InfoW remained a party to the Removed Litigation.*

     22.     The Plaintiffs argue that the Notice of Removal was ineffective because they filed the Nonsuit Notice prior to the removal. The Plaintiff's misunderstand the effect of their Nonsuit Notice. InfoW remained a party to the Removed Litigation sufficient to remove the action under 28 U.S.C. § 1452 and Bankruptcy Rule 9027.

     23.     Although a notice of nonsuit or dismissal is ordinarily effective with respect to the *merits* of a case without order of the court under Texas law, the case remains pending and the trial court retains certain jurisdiction over the parties until an order formally dismissing the matter is entered. *In re Bennett*, 960 S.W.2d 35, 38 (Tex. 1997) ("[T]he signing of an order dismissing a case, not the filing of a notice of nonsuit, is the starting point for determining when a trial court's plenary power expires."); *accord Univ. of Texas Med. Branch at Galveston v. Est. of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 101 (Tex. 2006). This is in line with the plain language of Rule 162 of the Texas Rules of Civil Procedure, which expressly states: "A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court."

     24.     At the time of removal, at a minimum, InfoW remained subject to (a) the Attorney Fee Order commanding it to pay nearly $1.0 million within thirty (30) days of April 15, 2022, and (b) the pending Text Message Sanctions Motion. The Nonsuit Notice did not release InfoW from the sanctions ordered by or requested from the state court. The Plaintiffs even represented as much to the state court in the April 20, 2022 status hearing. (Transcript 22:14-20, Pls. Ex. 6).

     25.     Moreover, despite the plaintiffs' claims to the contrary, the right to dismiss certain parties (as opposed to a nonsuit of an entire action) is *not* absolute under Texas law. Texas Rule

8

of Civil Procedure 163 comes into play when a plaintiff seeks dismissal of certain parties. *C/S Sols., Inc. v. Energy Maint. Servs. Grp. LLC*, 274 S.W.3d 299, 304–06 (Tex. App.—Houston [1st] 2008) ("Strictly speaking, a Rule 162 nonsuit applies to a dismissal of the entire case. If a plaintiff wishes to dismiss less than all of the parties, Rule 163 also applies . . . ." The rule provides:

> **_When it will not prejudice another party_**, the plaintiff may dismiss his suit as to one or more of several parties who were served with process, or who have answered, but no such dismissal shall in any case, be allowed as to a principal obligor, except in the cases provided for by statute.

Tex. R. Civ. P. 163 (emphasis added).

26.     A dismissal under the Nonsuit Notice would prejudice InfoW and the Third-Party Funding Contributors and is therefore ineffective. The Nonsuit Notice does not attempt to absolve InfoW of sanctions liability or even release the claims against InfoW. And if InfoW was completely cut out as a party from the Removed Litigation—as the Plaintiffs assert—it would lose the right to appeal the sanctions orders entered or pending against it.[7] And because the plaintiffs still-existing claims against InfoW are entirely based on the actions of the other defendants, as reflected in the Plaintiffs' respective petitions, there is a significant risk of collateral estoppel against InfoW after adjudication against the remaining parties. With respect to Shroyer and Third-Party Funding Contributors, the dismissal would prevent such parties from being able to assert proportionate liability under Tex. Civ. Prac. & Rem. Code § 33.013. And if the state court *did* enter an order releasing InfoW from sanctions liability based on the Nonsuit Notice, these parties would be cut off from obtaining contribution from InfoW.

---

[7] Under Texas law, only a "party" to a lawsuit may bring an appeal to complain of sanctions imposed on it. *City of Houston v. Chambers*, 899 S.W.2d 306, 308 (Tex. App.—Houston [14th] 1995). If the Plaintiffs' position is correct, the Nonsuit Notice would leave InfoW with only the extraordinary remedy of a mandamus to obtain review of the decision on the Attorneys' Fee Order or the Text Message Sanctions Order. This would amount to prejudice from the Nonsuit Notice making the Nonsuit Notice ineffective under Tex. R. Civ. P. 163. This is especially in light of the irregularities of the state court entering the Attorneys' Fee Order prior to the deadline to respond and request a hearing. Depriving a party of an adequate remedy at law is the kind of prejudice that Tex. R. Civ. P. 163 guards against.

27.     InfoW remained a party to the Removed Litigation because of tactical and strategic decisions made by the Plaintiffs. The Plaintiffs chose to request sanctions against *InfoW* for the failure of *FSS* to properly present a corporate representative and produce text messages among its employees. Proper or not, the state court gave the Plaintiffs what they asked for with respect to the sanctions for FSS's corporate representative. The Plaintiffs also declined to withdraw the Text Message Sanctions Motion with respect to InfoW or dismiss their claims against InfoW with prejudice through the Nonsuit Notice. That is of course all within the Plaintiffs' prerogative. But the consequence of their decisions is that InfoW remained subject to the state court's jurisdiction and was a party to matters before the state court at the time of removal.

   ii.   *To the extent that InfoW was not a party to the state court litigation at the time of removal, the deficiency was remedied by the Joinder of the Third-Party Funding Contributors.*

28.     Even if the Nonsuit Notice was effective and state court's remaining plenary jurisdiction, the Attorneys' Fees Order, and the pending Text Message Sanctions Motion was not sufficient for InfoW to remain a party sufficient for removal, the Joinder by Jones and FSS have remedied any defect in the Notice of Removal. As set out in the Joinder, Jones and FSS have consented to and joined in the Notice of Removal.

29.     There is no requirement that a *debtor* be the party to remove an action under 28 U.S.C. § 1452. Removal may be accomplished by any "party" to a lawsuit. 28 U.S.C. § 1452(a). Even under a narrow reading of the statute, someone named in the complaint and served with process is a party.[8] *In re Queen Elizabeth Realty Corp.*, 502 B.R. 17, 22 (Bankr. S.D.N.Y. 2013).

30.     The ability of a non-debtor to remove litigation under section 1452 comports with the purpose of the broad jurisdiction granted to district courts under 28 U.S.C. § 1334, (which is

---

[8] Some courts have held that held that even non-parties to the lawsuit may remove litigation. *See Burns v. Grupo Mexico S.A. De C.V.*, No. 07 CIV. 3496 (WHP), 2007 WL 4046762, at *4 (S.D.N.Y. Nov. 16, 2007) (collecting cases).

described more fully below). One of the purposes of section 1334 "is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate." *In re Zale Corp.*, 62 F.3d 746, 752 (5th Cir. 1995) (quoting *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161–62 (7th Cir. 1994)).

**B. This Court Has Jurisdiction Over the Removed Litigation.**

31.     United States district courts have original jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The district courts "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157. Under the *Order of Reference to Bankruptcy Judges* entered by the U.S. District Court for the Western District of Texas dated October 4, 2013, all proceedings related to any bankruptcy case are automatically referred to the bankruptcy judges of the Western District unless (a) the action was pending before the District Court before the bankruptcy petition was filed, (b) the District Court has withdrawn the reference, and (c) in appeals from the Western District Bankruptcy Court.

32.     A matter is "related to" a bankruptcy case if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Zale Corp.*, 62 F.3d at 752. (emphasis added) (internal quotation marks omitted). There is "related to" jurisdiction "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and in any way impacts upon the handling and administration of the bankrupt estate." *Id.* (internal quotation marks omitted). This broad jurisdiction avoids the inefficiencies of piecemeal adjudication and promotes judicial efficiency by (a) determining all claims against the debtor in the same forum and (b) forcing into bankruptcy court suites to which

the debtor is not a party by which may affect the amount of property in the bankruptcy estate. *Id.*; *accord In re Legal Xtranet, Inc.*, 453 B.R. 699, 706 (Bankr. W.D. Tex. 2011).

    i.    <u>Claims and sanctions against InfoWars are "related to" the Bankruptcy Case.</u>

33.    At a minimum, the Removed Litigation contains pending and ordered sanctions against the debtor InfoW. These sanctions clearly affect administration of InfoW's bankruptcy estate and are related to the Bankruptcy Case.

34.    The Attorneys' Fee Order requires InfoW to pay nearly $1.0 million on or before May 16, 2022. The pending Text Message Sanctions Motion requests that the state court "take appropriate remedial steps under Rule 215 and its inherent powers." Under Tex. R. Civ. P. 215.2, a court may award monetary sanctions in addition to evidentiary sanctions. Monetary sanctions may also be imposed under a Texas trial court's inherent powers. *See, e.g.*, *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 450 (Tex. App.—Austin 2004). These matters are the crux of the bankruptcy claims allowance process and compliance with the Attorneys' Fee Order directly affects the administration of InfoW's bankruptcy estate.

35.    Moreover, to the extent that that the Notice of Nonsuit was not effective under the prejudice exception of Tex. R. Civ. P. 163, the underlying claims of Heslin and Lewis also remain in the Removed Litigation. Liquidation of these claims is the entire point of the bankruptcy claims allowance process. There is no legitimate argument that any surviving claims on the merits are "related to" InfoW's bankruptcy estate and the Bankruptcy Case.

    ii.    <u>The claims against the Third-Party Funding Contributors and Shroyer are "related to" the Bankruptcy Case.</u>

36.    Heslin and Lewis's claims against the Third-Party Funding Contributors would also have a direct and substantial impact on the administration of the Debtors' bankruptcy estates and the Bankruptcy Case sufficient for "related to" jurisdiction under 28 U.S.C. § 1334.

37. As described above, the Debtors' contemplated restructuring involves enforcing the Plan Support Agreement against the Third-Party Funding Contributors to provide more than $7.0 million from the Third-Party Funding Contributors to pay claims against the Debtors. This includes the claims asserted by Heslin and Lewis, who did not purport to *release* their asserted claims against InfoW and claim to be creditors in the Bankruptcy Case. The ability to centralize the adjudication of these claims is essential for the Debtors to obtain the funds to satisfy the claims against them in full.

38. Further, determination of damages against the Third-Party Funding Contributors and Shroyer will liquidate Heslin and Lewis's claims against InfoW as a practical matter. As indicated in their respective petitions in the state court, Heslin and Lewis's claims against InfoW are based entirely on the actions of Jones, FSS, and Shroyer. A judgment against those parties would arguably have the effect of fixing InfoW's liability.

39. The Removed Litigation also affects the Bankruptcy Case with respect to the sanctions ordered against *all* of the defendants, including InfoW. Each of the sanctions orders provide that all of the defendants were obligated to pay sanctions. FSS is the party that actually paid the sanctions that have already been satisfied and will likely be required to pay the Attorneys' Fees Order and any sanctions imposed under the Text Message Sanctions Motion. If the sanctions orders survive through final judgment and any appeal, FSS would arguably be entitled to contribution from InfoW for its share of the imposed sanctions. 14 Tex. Jur. 3d Contribution, Etc. § 3 ("One who pays more than its just proportion of an amount due by way of contribution has a right of action to recover the excess payment.") (citing *Key v. Oates*, 280 S.W. 286 (Tex. Civ. App.—Amarillo 1926). Potential contribution claims are sufficient to create "related to" jurisdiction. *See, e.g.*, *N. Nat. Gas Co. v. Sheerin*, No. SA-03-CA-304-RF, 2003 WL 22594457, at

*5 (W.D. Tex. Oct. 20, 2003); *cf. In re KSRP, Ltd.*, 809 F.3d 263, 268 n.3 (5th Cir. 2015) ("Even unfiled but potential indemnity claims are sufficient to show a conceivable effect on a bankruptcy case and give rise to 'related to' jurisdiction.).

### C. Mandatory Abstention Does Not Apply Because Federal Diversity Jurisdiction Exists.

40.     Mandatory abstention under does not apply. Under 28 U.S.C. § 1334 (c)(2), federal courts must abstain from exercising "related to" jurisdiction where an action (a) could not have been commenced in federal court absent jurisdiction under that section, (b) was commenced in a state court, *and* (c) can be timely adjudicated in state court. Each factor must be present for mandatory abstention to apply. *See Evanston Ins. Co. v. Gabriel*, No. 5-17-CV-00798-FB-RBF, 2018 WL 2728039, at *4 (W.D. Tex. June 6, 2018) ("Because all three factors must be met before abstention is mandatory, the failure of the first factor effectively ends the mandatory abstention inquiry."); *In re Dune Energy, Inc.*, 575 B.R. 716, 729 (Bankr. W.D. Tex. 2017) ("Mandatory abstention applies only when the proceeding has no independent basis for federal jurisdiction.").

41.     The Removed Litigation could have been initiated in federal court under diversity jurisdiction pursuant to 28 U.S.C. § 1332. The statute provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a). The defendants InfoW, Jones, FSS, and Shroyer are citizens of Texas.[9] Plaintiffs Heslin and Lewis are citizens of Connecticut. Heslin and Lewis each claim that their damages will exceed $1.0 million. Therefore, mandatory abstention does not apply.

---

[9] Jones and Shroyer reside in Texas. InfoW and FSS are limited liability companies with citizenship determined by the citizenship of its members. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). When the Removed Litigation was initiated, Jones was the sole member of InfoW and FSS. The interim trustee of the Litigation Settlement Trust, Rob Dew, resides in Texas.

**D. Permissive Abstention Should Be Decided After Resolution of the Bankruptcy Issues and the Motion to Transfer or Denied.**

     i.    *The resolution of the Removed Litigation is central to the Bankruptcy Case and the discretion afforded under 28 U.S.C. § 1334(c)(1) should be exercised by the Home Court.*

42.    The Plaintiffs also argue that the court should remand Removed Litigation under the permissive abstention authorized by 28 U.S.C. § 1334(c)(1). The statute provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

43.    "Whether permissive abstention is appropriate in a given case will, of necessity, be driven by equitable considerations germane to that case." *In re Schlotzsky's, Inc.*, 351 B.R. 430, 434 (Bankr. W.D. Tex. 2006). Courts must balance the importance of bankruptcy policy favoring "a single forum for the adjudication of all matters relating to the bankruptcy case" embodied in section 1334 against any countervailing considerations. *Id.* (quoting *In re Fairchild Aircraft Corp.*, 1990 WL 119650 (Bankr. W.D. Tex. 1990)).

44.    These factors should be considered in the context of the Bankruptcy Case and the Debtors' proposed restructuring. The Debtors' have negotiated a deal in the Plan Support Agreement that they believe will enable *all* of the litigation claimants to be paid in full and centralized resolution of claims is necessary for that outcome. If that prejudices the Plaintiffs, it is only because they won the race to the courthouse and would obtain judgment and execution before the 14 plaintiffs in Connecticut. The thrust of the Plaintiffs' argument both here and in the Bankruptcy Case is that the Debtors' efforts to provide for equal distribution was made in bad faith. The Home Court is in the best position to make that determination.

45.    In light of the pending Motion to Transfer Venue, Connecticut MTD, and Texas MTD, InfoW any ruling on abstention and remand should be held until the Home Court rules on the Motion to Dismiss and this Court decides whether to transfer. If the Home Court grants the Motion to Dismiss without stay, then remand will be appropriate. If the Home Court denies the Motion to Dismiss, InfoW submits that the Motion to Transfer should be granted and remand considered by the Home Court.

ii.    *The permissive abstention factors do not favor remand.*

46.    A party requesting permissive abstention ultimately bears the burden of proving abstention is warranted. *Doe v. Roman Cath. Church of Archdiocese of New Orleans*, No. 21-1238, 2022 WL 621409, at *12 (E.D. La. Mar. 3, 2022). "[A]bstention is not a favored doctrine in the federal system because federal courts have a virtually unflagging obligation to exercise their jurisdiction except in those extraordinary circumstances where the order to the parties to repair to State court would clearly serve an important countervailing interest." *In re Schlotzsky's, Inc.*, 351 B.R. at 434 (quoting *In re Fairchild Aircraft Corp.*, 1990 WL 119650); *accord In re Lorax Corp.*, 295 B.R. 83, 95 (Bankr. N.D. Tex. 2003). Permissive abstention should be used sparingly. *E.g.*, *Tilton v. MBIA Inc.*, 620 B.R. 707, 717 (S.D.N.Y. 2020); *In re Strathmore Grp., LLC*, 522 B.R. 447, 458 (Bankr. E.D.N.Y. 2014); *In re ANC Rental Corp.*, 316 B.R. 153, 158 (Bankr. D. Del. 2004).

47.    To the extent that this Court decides the Motion to Remand on the merits, it should be denied. Despite the Plaintiffs' conclusory statements, the weight of the permissive abstention factors do not favor remand.

Factor 1—Effect on the efficient administration of the estate

48.    The cost savings achieved through the centralized liquidation of damages is a critical and necessary element of the Plan Support Agreement which provides the means to pay all

16

claims against the Debtors in full through a plan. The Plan Support Agreement is property of the Debtors' bankruptcy estates and central to the overall administration of those estates. Importantly, Heslin and Lewis chose *not* to dismiss their claims against InfoW with prejudice, so those claims remain against InfoW's bankruptcy estate and will be paid under any plan resulting from the Plan Support Agreement.

Factor 2—Extent to which state law issues predominate over bankruptcy issues

49.     Although the claims are state law claims, liability has already been established. All that remains is to determine the amount of liability. This is in the particular expertise of bankruptcy courts and, if the Plaintiffs elect to liquidate their claims through a jury trial, well within the competency of the district courts.

Factor 3—Difficult or unsettled nature of the applicable law

50.     The Plaintiffs point to the lack of a pattern jury instruction in asserting that this factor supports abstention. However, that is not the kind of difficult or unsettled law that is relevant. The legal questions surrounding liability have been determined and any remaining issue do not involve law that the state court would be more familiar with than a Texas federal court.

Factor 4—Presence of related proceeding started in state court or other non-bankruptcy proceeding

51.     The Plaintiffs' statement that there are no related proceedings in state court is puzzling. There are at least two other active lawsuits in Texas and three active lawsuits in Connecticut related to the Removed Litigation. Paragraph 2 of the Bankston Declaration references the other Texas lawsuits and Page 2 of the Motion to Remand and paragraph 4 of the Bankston Declaration reference the Connecticut lawsuits. Indeed, the fact that execution on even a modest judgment in the Texas lawsuits would leave nothing for the Connecticut plaintiffs is one of the main reasons that the Debtors sought bankruptcy relief.

Factor 5—Jurisdictional basis, if any, other than § 1334

52.    As described above with respect to mandatory abstention, there is federal diversity jurisdiction under 28 U.S.C. § 1332. This favor weighs against remand.

Factor 6—Degree of relatedness or remoteness of lawsuit to main bankruptcy case

53.    The Plaintiffs assert that this factor is irrelevant because the Removed Litigation is not pending before the Home Court. However, the Motion to Transfer Venue would solve that. . The Home Court could then evaluate the relatedness or remoteness of the Removed Litigation to the Bankruptcy Case. As set out in the Motion to Transfer, there is a presumption that the Home Court is the correct venue for adversary proceedings related to a bankruptcy case absent countervailing considerations.

Factor 7—Substance rather than the form of an asserted core proceeding

54.    InfoW agrees that the Removed Litigation is not a core proceeding. However, as described above, the effect of the Removed Litigation will be to liquidate the Plaintiffs' claims against Debtor InfoW, even if the Nonsuit Notice was effective. These claims are proposed to be paid through the Bankruptcy Case pursuant to the Plan Support Agreement. It may also give rise to potential claims of contribution and indemnity. While this is not *technically* the allowance of claims that amount to a core proceeding, the practical effect will be a determination of allowed claims. Therefore, this factor only weakly supports abstention.

Factor 8—The feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court

55.    The Plaintiffs assert that there is no need to consider severance because only the Plaintiffs state-law claims are at issue. InfoW agrees with this position and that the factor cuts neither way.

### Factor 9—The burden on the bankruptcy court's docket

56.     The Plaintiffs reference a decision of this court from nearly a decade ago to support that this adversary proceeding would be a burden on the Court's docket.  But *In re Rosales*, involved a "plethora of defenses and claims" and uncertain jurisdiction. No. 12-30590-RBK, 2012 WL 4343701, at *6 (Bankr. W.D. Tex. Sept. 21, 2012). Here, the only remaining issue is liquidation of damages and related-to jurisdiction is clear.

57.     The Plaintiffs quote *In re Dune Energy, Inc.*, 575 B.R. 716 (Bankr. W.D. Tex. 2017), for the proposition that "[t]he U.S. District Court for the Western District of Texas has among the heaviest caseloads in the entire country" and that the matter would "take at least two different federal judges in two federal courts to fully adjudicate the Suit." If that is still accurate, that could be best squared with the duty to exercise federal jurisdiction conveyed by Congress by granting the Motion to Transfer and allowing the Home Court to evaluate whether this factor favors abstention in the Southern District of Texas.[10]

### Factor 10—The likelihood that the removal involves forum shopping by one of the parties

58.     There is no real dispute that venue is proper in the Home Court. As set out in *In re ERG Intermediate Holdings, LLC*, No. 15-31858-HDH11, 2015 WL 6521607 (Bankr. N.D. Tex. Oct. 27, 2015), the Debtors were domiciled in the Southern District of Texas. Additionally, the Debtors—in separating from any control by Jones—chose Victoria as their principal place of business. Victoria is roughly equidistant from the proposed Trustee Richard Schmidt and Alex Jones's bankruptcy counsel (Corpus Christi), the Debtors' attorneys (Houston), the Third-Party

---

[10] Counter to the Plaintiffs contentions, the Western District of Texas has timely adjudicated other matters involving InfoW, Jones, FSS, and Shroyer. *See Corsi v. Infowars, LLC*, No. 1:20-CV-298-LY, 2021 WL 4955914, at *1 (W.D. Tex. June 25, 2021).

Funding Contributors (Austin), and FSS's bankruptcy counsel (San Antonio). The Home Court is the appropriate place to raise the issue if the Plaintiffs believe that venue is improper.

59. Regarding the state court judge's comments at the April 20 status hearing, the Plaintiffs neglect to mention that this statement was made after the Plaintiffs' counsel incorrectly described related-to jurisdiction. The state court judge indicated that she had never heard of related-to jurisdiction. (Transcript 19:21-22, Pls. Ex. 6). Plaintiffs' counsel told the state court judge that related-to jurisdiction did not apply where the debtor is not a party. (Transcript 20:3-7, Pls. Ex. 6).

Factor 11—The existence of a right to jury trial

60. While the Plaintiffs do have a right to a jury trial under their claims against the Third-Party Funding Contributors, there are procedures for this to take place before the appropriate district court. This factor 'tilts in favor of remand, but only to a very minor extent." *In re WP Realty Acquisition III LLC*, 626 B.R. 154, 164 (Bankr. S.D.N.Y. 2021).

Factor 12—The presence in the proceeding of non-debtor parties

61. The proceeding does include non-debtor parties, but they are non-debtor parties that are essential to the ability of the Debtors to pay the claims against them in full. And the basis for the Plaintiffs' claims against InfoW is the same as the claims against the non-debtor defendants. Again, this factor should not weigh heavily with respect to the Removed Litigation.

Factor 13—Comity

62. Comity with state law does not weigh in favor of removal here. The Plaintiff is correct that only the issue of liquidating damages remains in the Removed Litigation (and the other active suits). Liquidation of claims is not something that invokes substantive issues of state law that comity would favor having decided by state courts. Additionally, given how critical the

Removed Litigation is to the Debtors' proposed restructuring, the bankruptcy interests outweigh any countervailing considerations of comity. *Cf. In re Drs. Hosp. 1997, L.P.*, 351 B.R. 813, 853 (Bankr. S.D. Tex. 2006) ("Although the remaining claims are all state law claims, the outcome of this suit could affect the success of the Plan.").

        <u>Factor 14—Possibility of prejudice to other parties in the action.</u>

       63.    The only significant way that the Plaintiffs might be prejudiced is by losing their position as the winners of the race to the courthouse. But this is not the type of prejudice that permissive abstention is meant to prevent. The Plaintiffs will have the ability to hold a jury trial before the appropriate district court if that is what they want.

[<em>Remainder of Page Intentionally Left Blank</em>]

Dated: April 28, 2022

**PARKINS LEE & RUBIO LLP**

*/s/R. J. Shannon*
Kyung S. Lee
TX Bar No. 12128400
R.J. Shannon
TX Bar No. 24108062
Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002
Email: klee@parkinslee.com
      rshannon@parkinslee.com
Phone: 713-715-1660
Fax:    713-715-1699

*Proposed Counsel to InfoW, LLC as Debtor*
*and Debtor-in-Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on the date of this filing, a true and correct copy of the foregoing document was served (a) by the Court's CM/ECF system on all parties registered to receive such notice in this adversary proceeding and (b) by email on the following parties:

Attn: Mark Bankson, William Ogden
Farrar & Ball, LLP
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Attn: Jon Maxwell Beatty
The Beatty Law Firm PC
1127 Eldridge Parkway, Suite 300 #338
Houston, TX 77077
max@beattypc.com

Attn: Avi Moshenberg, Nick Lawson,
Matthew Caldwell
McDowell Hetherington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com
nick.lawson@mhllp.com
matthew.caldwell@mhllp.com

Attn: Cordt Akers
The Akers Firm PLLC
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Attn: F. Andino Reynal
Fertitta & Reynal LLP
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us
Attn: Shelby Jordan
Jordan & Ortiz, P.C.
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Attn: Ray Bataglia
Law Office of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX
rbattaglialaw@outlook.com

*/s/ R. J. Shannon*
R. J. Shannon