# **Exhibit B**

Engagement Agreement



## Parkins Lee & Rubio LLP
Attorneys and Counselors at Law

Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002
Phone: 713-715-1660
www.parkinslee.com

Kyung S. Lee | klee@parkinslee.com | Direct: 713-715-1661

March 25, 2022

**PRIVILEGED AND CONFIDENTIAL**

Alex E. Jones
Managing Member
Infowars, LLC
100 Congress Ave., 22nd Floor
Austin, Texas 78734

Alex E. Jones
Managing Member
Infowars Health, LLC
100 Congress Ave., 22nd Floor
Austin, Texas 78734

Alex E. Jones
Managing Member
Prison Planet TV LLC
100 Congress Ave., 22nd Floor
Austin, Texas 78734

> Re: Attorney Engagement Letter by Infowars, LLC ("Infowars") Infowars Health LLC ("Health") and Prison Planet TV LLC ("Planet")(collectively "you" or "Clients")

Mr. Jones:

Thank you for selecting Parkins Lee & Rubio LLP ("PLR" or the "Firm") as legal counsel for the above referenced entities. We appreciate the trust and confidence that your decision places in us and we look forward to building a close and mutually rewarding relationship.

The purpose of this letter and the attached Terms of Retention (together, the "Engagement Letter") is to set forth the terms of legal representation of the above referenced Clients.

*Scope of Engagement.* PLR shall serve as attorney and legal counsel for the Clients in connection with the following (the "Matter"): Prepare the Clients for and assist the Clients in a restructuring either outside or inside of the United States Bankruptcy Code (the "Bankruptcy Code"). This engagement and our attorney-client relationship will be deemed to have commenced on March 23, 2022 (the "Engagement Commencement Date"), when we had a meeting to discuss the financial condition of the Clients.

Alex E. Jones
March 25, 2022
Page 2 of 11

*Legal Fees and Expenses.* For the work performed by PLR for the Clients, PLR will be entitled to a fee in the amount equal to the time expended by each attorney, paralegal and other staff member multiplied by the hourly rates set forth in the attached Hourly Billing Rate Schedule. The Clients are responsible for reimbursing the Firm for expenses incurred on behalf of the Clients pursuant to the attached Client Expense Policy.

*Retainer.* As a condition to PLR accepting this engagement on your behalf, you have agreed to provide a retainer of $175,000 (the "Retainer") in connection with this Matter. The instructions for remitting the retainer funds to the Firm will be provided in a separate electronic correspondence. The Retainer will serve as a security deposit and will be applied towards your final invoice for this Matter. Any balance will be returned to you. If you do not pay your invoices timely, the Firm may apply the Retainer to an unpaid invoice. The Firm reserves the right to have the Retainer replenished by the Clients if the Firm anticipates that there is a risk in collecting future attorney's fees and/or reimbursement of costs. Prior to filing for bankruptcy, the Firm shall take into income any fees and costs incurred and invoiced such that the Firm and the Clients do not have a debtor-creditor relationship as of the filing date.

*Invoices/Fee Statements.* The Firm's invoices will be issued to you during the month, if not more often, following the month that services are provided. The invoice will include a fee statement providing the details of the legal services performed, and the expenses incurred, for the Clients. The invoices shall be due upon receipt.

*Conflicts.* The Firm has conducted an initial conflicts search based on information you provided. The Firm did not identify any connection that would prevent the Firm from representing you in this Matter. PLR may conduct additional conflicts searches following the commencement of this engagement. If the Firm identifies any conflict, then the Firm and the Clients shall take further actions as may reasonably be required to satisfy the Firm's ethical obligations and duties to the Clients, all as more particularly described in the Terms of Retention.

*General Prospective Waiver and Informed Consent.* The Firm represents many other companies and individuals. It is possible that during the time that we are representing you, some of our present or future clients will have disputes or transactions with you. You agree that we may continue to represent or may undertake in the future to represent existing or new clients in any business or transactional matter that is not substantially related to our work for you, even if the interests of such clients in those other matters are directly averse to you. We are not aware of any such matters at the present time. We agree, however, that your prospective consent to conflicting representations contained in the preceding sentence shall not apply in any instance where, as a result of our representation of you, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such other matter by such client to your material disadvantage. <u>You are not giving the Firm a prospective waiver as to conflicting representation related to a litigation matter against you</u>. We encourage you to seek independent counsel regarding the import of the potential conflicts and prospective waiver discussed and this acknowledgment, waiver and informed consent. We emphasize that you remain completely free to seek independent counsel at any time even if you decide to sign this Engagement Letter agreeing to its terms and the Terms of Retention.

Alex E. Jones
March 25, 2022
Page 3 of 11

    Please call me with any questions you have after you complete your review of this Engagement Letter including the Terms of Retention. If the Engagement Letter is acceptable to you in this form, please indicate so by signing, dating, and returning it to me and funding the Retainer.

                        Very truly yours,

                        *Kyung Lee*

                        Kyung S. Lee
                        Kyung S. Lee PLLC

ACCEPTED AND AGREED:

Infowars, LLC

_____[signature]_____
Authorized Officer of Infowars LLC

4, 11, 22
Date

Infowars Health LLC

_____[signature]_____
Authorized Officer of Infowars Health LLC

4, 11, 22
Date

Prison Planet TV LLC

_____[signature]_____
Authorized Officer of Prison Planet TV LLC

_____[signature]_____
Date
4, 11, 22

Alex E. Jones
March 25, 2022
Page 4 of 11

## ADDENDUM TO ENGAGEMENT LETTER

The appropriate Client point of contact to address payment status:

Name:
Title:
Phone:
Work Email:

Invoices are to be delivered as follows:

☐ By email:  _____

   Email:    _____

☐ By regular mail:

Address:   _____

           _____

           _____

Alex E. Jones
March 25, 2022
Page 5 of 11

## TERMS OF RETENTION

These Terms of Retention are part of the Parkins Lee & Rubio LLP Engagement Letter. Because they are an integral part of our agreement to provide legal services, we ask that you review this document carefully. If you have any questions after reading it, please contact us promptly.

*Who Will Provide Legal Services?* In most cases, one attorney will be your principal contact. From time to time, that attorney may delegate parts of your work to other attorneys or to legal assistants or non-legal professionals in the Firm. We do this to involve those with special knowledge or experience in an area and to provide services to you in a timely, efficient, and cost-effective manner. RJ Shannon and I will be the primary attorneys from our Firm who will be representing the Clients.

*Scope of the Representation.* As a law Firm, we undertake to provide representation and advice on the legal matters for which we are engaged, and it is important that we both have a clear understanding of the legal services that the Firm has agreed to provide. In our Engagement Letter with you, we specify the matter in which we will provide representation and the scope of the services we will provide. Please note that we do not provide legal advice regarding any tax issues or effects nor are we responsible for notifying any insurance carrier of any lawsuit. If there are any questions about the terms of engagement, including the scope of the representation that we are to provide in the matter, please raise those questions promptly with your principal contact at the Firm.

*Identity of Clients.* It is our policy to represent only the person or entity identified in our Engagement Letter and not any affiliates. For example, unless otherwise specifically stated in our Engagement Letter, if you are a business organization (corporation, partnership, LLC, etc.), our representation does not include any parents, subsidiaries, employees, officers, owners, or affiliates (including commonly owned companies); if you are an individual, our representation does not include your employer, partners, spouse, siblings, or other family members.

*Your Cooperation.* To enable us to provide effective representation, you agree to: (1) disclose to us, fully and accurately and on a timely basis, all facts and documents that are or might be material or that we may request, (2) keep us apprised on a timely basis of all developments relating to the representation that are or might be material, (3) attend meetings, conferences, and other proceedings when it is reasonable to do so, and (4) otherwise cooperate fully with us.

*Outcomes.* We cannot and do not guarantee the outcome of any matter. Any expression of our professional judgment regarding your matter or the potential outcome is, of course, limited by our knowledge of the facts and based on the law at the time of expression. It is also subject to any unknown or uncertain factors or conditions beyond our control. Any expressions on our part concerning the outcome of the representation, or any other legal matters, are based on our professional judgment and are not guarantees.

*Conflicts of Interest.* We attempt to identify actual and potential conflicts at the outset of any engagement. In some instances, the applicable rules of professional conduct may limit our ability to represent clients with conflicting or potentially conflicting interests. Those rules of conduct often allow us to exercise our independent judgment in determining whether our relationship with one client prevents us from representing another. In other situations, we may be permitted to represent a client only if both or all

Alex E. Jones
March 25, 2022
Page 6 of 11

clients consent to that representation. If a controversy unrelated to the subject matter of the representation develops between you and any other client of the Firm, we will follow the applicable rules of professional responsibility to determine whether we may represent either you or the other client in the unrelated matter. Unfortunately, sometimes conflicts arise or become apparent after work begins on an engagement. If this happens, we will do our best to address and resolve the situation in the manner that best serves the interests of all of our affected clients. Rules concerning conflicts of interest vary with the jurisdiction. In order to avoid any uncertainty, the Texas Disciplinary Rules of Professional Conduct will be applicable to the representation.

Texas law requires that we inform clients of the existence of a grievance process. The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar's Office of Chief Disciplinary Counsel will provide you with information about how to file a complaint. Please call 1-800-932-1900 for more information. Also, the Supreme Court of Texas has promulgated The Texas Lawyer's Creed - A Mandate for Professionalism, which states that an attorney should inform a client of the creed's contents when undertaking a representation. We will send you a copy of the creed upon request. It is also available online at https://www.texasbar.com.

*Fees.* The basis for determining our fee for legal services is set forth in the Engagement Letter itself. If you are unclear about the basis for determining your fee, please contact the attorney responsible for your representation. Clients frequently ask us to estimate the fees and other charges they are likely to incur in connection with a particular matter. We are pleased to respond to such requests, whenever possible, with an estimate based upon our professional judgment. This estimate always carries the understanding that, unless we agree otherwise in writing, it does not represent a maximum, minimum, or fixed-fee quotation.

*Expenses.* Our Firm may incur and pay a variety of charges on your behalf in connection with the engagement. Whenever we incur such charges on your behalf, we will bill them to you as part of your invoice in accordance with the attached Client Expense Policy.

*Delinquent Account and Withdrawal of Engagement.* We will bill you on a periodic basis, for fees and other charges, as described in the Engagement Letter. Should your account become delinquent and satisfactory payment terms are not arranged, as permitted under the rules regulating our profession, we will be required to withdraw from the representation. In most cases, and except as prohibited by ethical considerations, if your account becomes more than 30 days delinquent, we will cease representation until we can arrive at a mutually satisfactory arrangement for payment of the delinquent account and the resumption of services. At such time we may charge interest on the outstanding amount due of one and a half percent per month or the maximum amount allowed under applicable law, whichever is less.

*Additional Retainer.* If the representation will require a concentrated period of activity, such as a trial, arbitration, or hearing, we reserve the right to require the payment of all amounts then owing to us and the payment to us of an additional retainer for the fees and expenses we estimate will be incurred in preparing for and completing the trial, arbitration, or hearing, as well as arbitration fees likely to be assessed. If you fail to timely pay any retainer deposit requested, we will have the right to cease performing further work for you and withdraw from the representation.

Alex E. Jones
March 25, 2022
Page 7 of 11

*Obligation to Pay Fees and Expenses.* Unless your Engagement Letter expressly provides that a third-party is agreeing to pay your attorney's fees and such third-party has agreed in writing, regardless of whether you are insured to cover the particular risk or you are pursuing parties for recovery of attorneys' fees and other charges, it remains your obligation to pay all amounts due to us within the time periods reflected in the Engagement Letter.

*Retention of Complementary Counsel.* From time to time in the course of our engagement it may become prudent to engage additional counsel to work with and complement our representation of you. That complementary representation will only be done with your prior written consent and on terms and conditions which you approve. The engagement of complementary counsel may be done directly with you or through our firm, depending on the nature and extent of the representation involved.

*Conclusion of Engagement.* Because our Firm has been engaged to provide legal services in connection with the representation in the matter as specifically defined in our Engagement Letter, the attorney-client relationship terminates upon our completion of our services related to the representation in the matter. After completion of the representation, upon written notification by the Firm that the matter is terminated, changes may occur in the applicable laws or regulations that could affect your future rights and liabilities in regard to the matter. Unless we are actually engaged after the completion of the representation to provide additional legal services, the Firm has no continuing obligation to give advice with respect to any future legal developments that may relate to the matter. If you later retain us to perform further or additional services, our attorney-client relationship will be subject to the terms of engagement agreed to at that time; in the absence of any specific agreement, these Additional Terms of Engagement shall apply to the further or additional representation.

*Termination.* We look forward to the opportunity to complete our representation of you on the specified matter. You may, however, terminate our representation at any time, with or without cause, by notifying us in writing. We will return your papers and other property to you promptly upon receipt of your request for those materials unless they are appropriately subject to a lien. You agree that we will own and retain our own files pertaining to the matter or case, including, for example, Firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal attorney's work product such as drafts, notes, internal memoranda, and legal and factual research including investigative reports, prepared by or for the internal use of attorneys. Your termination of our services will not affect your responsibility for payment of legal services rendered and other charges incurred before termination and in connection with an orderly transition of the matter.

*Document Retention.* You acknowledge and agree that the Firm may maintain all documents related to your matter digitally. The Firm is not required to maintain physical copies of any documents. At the conclusion of our representation of you, it is our firm's policy to return to you any physical documents to you. We will provide you with copies of any other documents you specifically request (such as copies of depositions, court documents, etc.), and you agree to pay for the associated copying costs and any professional time incurred in identifying any such documents you request. You agree that our Firm may elect to keep, at its own expense, copies of any documents related to this matter or otherwise returned to you. Anytime following seven (7) years after the conclusion of our representation of you, the Firm may destroy or delete any files related to your engagement.

Alex E. Jones
March 25, 2022
Page 8 of 11

*Dispute Resolution.* The Engagement Letter is being entered and is to be performed within the State of Texas. The Engagement Letter shall be interpreted in accordance with Texas law (without application of choice of law principles). All parties to the Engagement Letter agree that Houston, Harris County, Texas is the only permitted location (the venue) for the resolution of all disputes that arise under or relate in any way to the Engagement Letter or to any of the services provided by our Firm.

*Binding Arbitration.* Any dispute arising out of or relating to this agreement, our interactions leading to it, or our performance of the agreement or of the representation of you shall be resolved through binding arbitration in Harris County, Texas. First, sixty (60) days before filing any arbitration proceeding, the party requesting relief must demand and attend mandatory mediation before a mutually acceptable mediator to attempt to resolve any dispute. In the event the parties are unable to resolve such dispute, the affected party shall initiate an arbitration proceeding utilizing the rules of (but not employing) the American Arbitration Association ("AAA") for the arbitration of complex commercial cases. In any dispute of less than $250,000, the parties shall jointly appoint a single arbitrator. In any dispute of a greater amount, each party shall appoint his/her or its own party arbitrator, and these two-party arbitrators shall in turn appoint a third, neutral arbitrator. All party arbitrators' conduct and tests for eligibility shall be governed by AAA rules of disinterest. The time limits hereunder shall not apply in the event emergency injunctive relief is required, but only to the extent of such emergency injunctive relief itself. The decision by the arbitration panel will be final and binding.

You should know that for your agreement to arbitrate to be effective under Texas law, you as the client must receive sufficient information about the differences between litigation and arbitration to permit you to make an informed decision about whether to agree to binding arbitration. Under the Texas Rules of Disciplinary Procedure, we can explain the significant advantages and disadvantages of binding arbitration to the extent we reasonably believe is necessary for an informed decision by you. The scope of the explanation will depend on the sophistication, education and experience of the client.

In the case of a highly sophisticated client such as a large business entity that frequently employs outside lawyers, no explanation at all may be necessary. In situations involving clients who are individuals or small businesses, we normally advise the client of the following possible advantages and disadvantages of arbitration as compared to a judicial resolution of disputes: (1) the cost and time savings frequently found in arbitration, (2) the waiver of significant rights, such as the right to a jury trial, (3) the possible reduced level of discovery, (4) the relaxed application of the rules of evidence, and (5) the loss of the right to a judicial appeal because arbitration decisions can be challenged only on very limited grounds.

Additional factors you as the client should consider are: (1) the privacy of the arbitration process compared to a public trial; (2) the method for selecting arbitrators; and (3) the obligation, if any, of the client to pay some or all of the fees and costs of arbitration, if those expenses could be substantial. Although the disclosure can vary from client to client, depending on the circumstances, the overriding concern is that we should provide information necessary for the client to make an informed decision.

Alex E. Jones
March 25, 2022
Page 9 of 11

**By returning the executed Engagement Letter, you acknowledge that you have been provided ample opportunity to have counsel explain to you the advantages and disadvantages of binding arbitration to make an informed decision about agreeing to the provision.**

*Modifications.* The Engagement Letter and these Additional Terms of Engagement reflect our entire agreement on the terms of this engagement. These written terms of engagement are not subject to any oral agreements or understandings, and any change in those terms can only be made in writing signed by you and the Firm.

*Joint Representation Agreement and Waiver.* The Clients have requested that PLR represent the Clients jointly for both strategic and cost reasons. Because joint representations involve unique issues of conflicts of interest and confidentiality, we wanted to clarify the terms of our joint representation as set forth herein. The Firm is willing to undertake this joint representation in the Matter so long as the following terms and conditions are understood and agreed to by each Client. Each Client waives any objection to, or any possible conflict in, our joint representation of each other Client in the Matter, and each consent to our joint representation of each other Client in the Matter. Each Client acknowledges and agree that communications between the Firm and any or all of you concerning the Matter will be treated by us as confidential and not disclosed to anyone other than the Clients without your consent or as otherwise provided by law. The Clients further acknowledge and agree that whatever communications or information the Firm receives from any one or more of you concerning the Matter will be shared with each of you as we deem appropriate. If we receive material information about any one of you from one of the others that we believe any other Client should have to make decisions regarding your interests, we will give you that information. The Clients acknowledge and agree that there exists the possibility that a conflict of interest may arise during the multiple representation by the Firm.

The Clients acknowledge and agree that in the event a conflict of interest arises regarding the joint representation by the Firm, then we may withdraw from the representation of the Client who has created the conflict (the "conflicted Client") and may continue to represent the other Client(s). In such event, the conflicted Client understands that he/she/it would be responsible for obtaining his/her/its own legal representation and for the cost of that representation. The Clients acknowledge and agree that if the Firm withdraws as one or more of their attorneys, we may continue to represent the other remaining Clients, even if such representation is contrary to the interests of the conflicted Client. Moreover, in the unlikely event that you commence litigation against one another regarding the subject of the joint representation, you each understand that our advice to you and our prior communications with each of you during the joint representation may not be shielded from disclosure in such litigation. Finally, in the event a conflict of interest arises regarding the multiple representations by the Firm, a court may nevertheless disqualify us from continuing our representation of any of the Clients, notwithstanding the terms of this Engagement Letter. PLR is advising you of these possibilities solely to comply with our ethical requirements and are not suggesting that you may have claims against one another.

Alex E. Jones
March 25, 2022
Page 10 of 11

## Hourly Billing Rate Schedule

| BILLER | RATE |
|---|---|
| Lenard M. Parkins | $1,075 |
| Kyung S. Lee | $850 |
| Charles M. Rubio | $725 |
| Associate Attorneys | $300 - $650 |
| Paralegals | $180 - $250 |
| Legal Assistants | $50 - $75 |

Alex E. Jones
March 25, 2022
Page 11 of 11

Client Expense Policy

In connection with the representation of a client, the Firm may incur expenses. Unless the Engagement Letter expressly provides to the contrary, the Firm's and the Client's rights and responsibilities related to such expenses are as follows:

*Legal Research and Related Services.* The Firm subscribes to certain online research services. These subscription-based services are part of the Firm's overhead and not charged to the Client. Certain services are charged on a per-transaction including, without limitation, the following examples: UCC searches, lien searches, title searches and other record searches. The Client is responsible for these pre-transaction charges. The Firm will advance the costs for all such services and submit bills to you for reimbursement. The Firm may seek prior approval from you if the anticipated aggregate monthly expense for such services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Document Management and eDiscovery Services.* The Firm subscribes to advanced document management software systems. These subscription-based systems are part of the Firm's overhead and not charged to the Client. The Client is responsible for eDiscovery services. eDiscovery service providers typically charge per gigabyte of information stored. Additional services from the outside vendor may be required other than storage of the information and typically these are separately charged. If the Firm uses an eDiscovery service during the representation, then the Firm will seek the Client's prior approval before incurring expenses for such services. Rather than billing these expenses through the Firm, the Firm reserves the right to have the Client contract directly with the outside vendor to pay for these expenses. For the avoidance of doubt, the Client is responsible to the Firm for the payment of all fees and expenses incident to the firm's review and processing of discovery materials that are not handled by an outside vendor.

*Printing, Shipping, Postage and Related Expenses.* For all printing, shipping, postage, and related services the Firm may handle them in house or use an outside vendor. The Client is responsible for all such printing, shipping, postage, and related services at costs or the prevailing market rate if handled in house. The Firm may seek prior approval from the Client if the anticipated aggregate monthly expense for printing, shipping, postage, and related services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Travel Expenses.* The Client will reimburse the Firm for expenses incurred in connection with out-of-town travel, but only for coach class travel and, where appropriate, the cost of a rental car. All related travel expenses, i.e., lodging and meals, must be reasonable under the circumstances. The Firm will advance all such travel expenses and submit bills to you for reimbursement which will be included in the regular invoices to the Client. The attorney handling your matter will confer with you prior to traveling for your matter. Consistent with local bankruptcy rules, the Firm bills travel at ½ billable hourly rate when the lawyer is not working on the Client matter while travelling. The Firm will endeavor to locate a substitute service agent.

*Court Costs.* If requested by the Firm, the Client will advance court filing fees and all similar expenses prior to the Firm incurring such expenses. Any such expenses incurred by the Firm, will be included in the Firm's invoices to the Client for payment.