**<u>Exhibit B</u>**

**April 17, 2022, Email to U.S. Trustee's Office**

| | |
|---|---|
| **Subject:** | FW: Confidential Potential IFW Filing |
| **Date:** | Tuesday, May 31, 2022 at 5:44:48 PM Central Daylight Time |
| **From:** | R.J. Shannon |
| **To:** | rshannon@shannonpllc.com |
| **Attachments:** | IW - 04.17.22 Joint Plan (PLR Proposed Final).docx |

**R. J. Shannon**
Associate
**Parkins & Rubio LLP**
Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002
Direct: (713) 715-1660
Cell: (512) 693-9294
rshannon@parkinsrubio.com
www.parkinsrubio.com

---

**From:** R.J. Shannon
**Sent:** Sunday, April 17, 2022 1:22 PM
**To:** Kyung Lee <klee@parkinslee.com>; 'Sall, Millie (UST)' <Millie.Sall@usdoj.gov>
**Cc:** Adam Rodriguez <ARodriguez@parkinslee.com>; Marc Schwartz <MSchwartz@schwartzassociates.us>
**Subject:** RE: Confidential Potential IFW Filing

Millie,

Attached is PLR's proposed final version of the Joint Plan of Reorganization. Please let us know if there are any comments or necessary changes prior to 8 p.m. Central Time. We have asked for any comments from the Third-Party Funding Contributors by 8:00 p.m. Central.

We understand that you will not be able to look at this today, but wanted to keep you in the loop either way.

Thanks,
R. J.

**R. J. Shannon**
Associate
**Parkins Lee & Rubio LLP**
Direct: (713) 715-1660
Cell: (512) 693-9294

---

**From:** R.J. Shannon
**Sent:** Sunday, April 17, 2022 9:49 AM
**To:** Kyung Lee <klee@parkinslee.com>; 'Sall, Millie (UST)' <Millie.Sall@usdoj.gov>
**Cc:** Adam Rodriguez <ARodriguez@parkinslee.com>; Marc Schwartz <MSchwartz@schwartzassociates.us>
**Subject:** RE: Confidential Potential IFW Filing

Millie,

Nice to meet you by email. For ease of review, I have attached updated versions of the filings with the exhibits compiled as well as Word versions of the Proposed Orders for any changes or comments from the UST.

Documents 1-4 (petition including largest 20, equity holders, 1116 declaration, and resolution; verification of creditor matrix; declaration re largest 20; and corporate ownership statement) will be separate for each Debtor.

Documents 5-7 are the motions and will be the same for each debtor.

Thanks,
R. J.

**R. J. Shannon**
Associate
**Parkins Lee & Rubio LLP**
Direct: (713) 715-1660
Cell: (512) 693-9294

---

**From:** Kyung Lee <klee@parkinslee.com>
**Sent:** Sunday, April 17, 2022 9:17 AM
**To:** 'Sall, Millie (UST)' <Millie.Sall@usdoj.gov>
**Cc:** R.J. Shannon <rshannon@parkinslee.com>; Adam Rodriguez <ARodriguez@parkinslee.com>; Marc Schwartz <MSchwartz@schwartzassociates.us>
**Subject:** Confidential Potential IFW Filing

Millie: Please meet RJ Shannon. He will be the lead associate and do a lot of the courtroom and negotiation work. Adam is our paralegal and keeps us straight. Please send Millie you personal contact information, so she has access to one of us at all times about this case. Also on this email is Marc Schwartz, Debtors' existing CRO and the proposed CRO during the Bankruptcy Cases. Marc, please also email Millie your contact information.

Except for an appointment between 2 and 4 today, we are generally available to talk in person, Zoom, Teams or call about the Debtors and First Day Pleadings.

The next email from me will attach the Plan Support Agreement and the Declaration of Trust.

The final email will have the Plan attached.

Set out below is our substantive introduction to the three Debtors.

---

**From:** Kyung Lee <klee@parkinslee.com>
**Date:** Sunday, April 17, 2022 at 8:22 AM
**To:** Kyung Lee <klee@parkinslee.com>
**Subject:** Confidential Potential IFW Filing

Good morning, Millie. In confidence and in anticipation of filing tonight, I will be providing you key documents and pleadings about the three *subchapter v debtors*.

InfoW, LLC., IWHealth, LLC and Prison Private Ltd are affiliates and holders of intellectual property associated with Alex Jones, Free Speech Systems LLC ("FSS") and its intellectual property including "INFOWARS". Certain of the Debtors, along with Mr. Jones and FSS, have been sued in both Texas and Connecticut over certain statements Mr. Jones made about the shooting that took place at Sandy Hook elementary school on December 14, 2012, in Newton, Connecticut. https://firstamendmentwatch.org/deep-dive/alex-jones-infowars-and-the-sandy-hook-defamation-suits/

Before filing bankruptcy by the three debtors, Mr. Jones assigned his membership interest to these companies to an interim trustee of the 2022 Litigation Settlement Trust (the "Litigation Settlement Trust"), along with an initial contribution of $750,000. The sole job of the interim trustee is to hold the member interests pending the appointment by the Bankruptcy Court of Richard Schmidt and Russell Nelms as the operating Trustees of the Litigation Settlement Trust. Both have agreed to serve. The Trustees will have sole governance rights over the Debtors, not Alex Jones, FSS nor any of his affiliated entities (although Alex Jones and FSS have agreed to continue funding of the Trust to assure no administrative insolvency). We are asking the Court to authorize the appointment of the two Trustees at the First Day Hearing.

To further bolster the fiduciary duty of these Debtors, W. Marc Schwartz, an independent CPA, well known as a fiduciary, and with no prior connection to the Debtors or affiliates of the Debtors or Mr. Jones, will act as CRO of the Debtors who will be the day-to-day decision maker of the Debtors and supervisor with full access to the operations of FSS and Alex Jones. He will do this while in chapter 11, and is anticipated to do so over the 5 years from the Effective Date of the Plan.

On the Petition Date, we intend to file a Joint Plan of Reorganization, which contemplates an allowance of liquidated damages through the Plan process and "Payment in Full" (a Plan defined term) of those claims over a 5-year period. To make this a real deal, we had negotiations with counsel for the "Third-Party Fund Contributors", Alex Jones and his operational business company FSS. Shelby Jordan, in his firm's Austin office, represents Alex Jones. Ray Battaglia in San Antonio represents FSS.

The Third-Party Fund Contributor Alex Jones has not only contributed $725,000 to get the entire process here, but will put up another $2,000,000 on the Effective Date of the Plan, dedicate a good receivable that expected to net about $2M or more over the next five years and agreed to fund the Trusts to pay the Allowed Claims in full with a minimum $250,000 per quarter payments until all the claimants have been paid in full, but without interest.

The Debtors and the other business enterprise affiliated with the Debtors would be cannibalized returning little to no value if a Texas court issued a judgement at the end of this month, with the bulk of the claims not set for trial until early fall of this year (the Connecticut claimants don't go to trial until much later this year). Besides having spent a boat load of money on attorneys' fees, everyone on this side agrees the result would be inequitable and economically unfair to all the claimants. Therefore, we have developed the Plan and filed the Bankruptcy Cases.

The first batch are the three First Day Motions. 1. Joint Administration, 2. Application to Appoint Trustees, 3. Application to Appoint CRO.

More to follow. Ask any questions of us. Notwithstanding weird and wildly inaccurate press you may

hear about the Debtors and their affiliates, we intend to be perfectly above board. Marc can answer any questions about the financial records and information about the companies and their finances or feasibility of the Plan.

---

**From:** Sall, Millie (UST) <Millie.Sall@usdoj.gov>
**Date:** Saturday, April 16, 2022 at 9:25 PM
**To:** Kyung Lee <klee@parkinslee.com>
**Subject:** Re: [EXTERNAL] First Day Hearings

Checking to make sure you know the SubV debt limit went back to its original small amount.

Millie

Sent from my iPhone

> On Apr 16, 2022, at 7:45 PM, Kyung Lee <klee@parkinslee.com> wrote:
>
> Victoria.
>
> **Kyung S. Lee**
> **Parkins Lee & Rubio LLP**
> Cell: 713-301-4751
> klee@parkinslee.com

---

**From:** Sall, Millie (UST) <Millie.Sall@usdoj.gov>
**Date:** Saturday, April 16, 2022 at 7:41 PM
**To:** Kyung Lee <klee@parkinslee.com>
**Subject:** Re: [EXTERNAL] First Day Hearings

Will the cases be filed in Hou or Victoria?

Millie

Sent from my iPhone

> On Apr 16, 2022, at 3:59 PM, Kyung Lee <klee@parkinslee.com> wrote:
>
> 3 subchapter v cases.
>
> Yes, we can talk in AM. I hope to have pleadings to you by then. RJ is going to be lead, Adam is our paralegal on the file.

**Kyung S. Lee**
**Parkins Lee & Rubio LLP**
Cell: 713-301-4751
klee@parkinslee.com

---

**From:** Sall, Millie (UST) <Millie.Sall@usdoj.gov>
**Date:** Saturday, April 16, 2022 at 3:42 PM
**To:** Kyung Lee <klee@parkinslee.com>
**Subject:** Re: [EXTERNAL] First Day Hearings

Will this be filed as a complex or regular Ch 11? If complex, have you secured a hearing with Jones and Isgur? please send me tentative hearing date/time.

To assign a team, can we briefly talk tomorrow morning or afternoon? Typically you tell me number of debtors, type of business and industry, anticipated issues and exit strategy- sale, recap, etc.

Millie

Sent from my iPhone

> On Apr 16, 2022, at 2:55 PM, Kyung Lee <klee@parkinslee.com> wrote:
>
> Millie, I will send you First Day Pleadings tomorrow. Those will explain pieces of the puzzle. There is a Plan, a Plan Support Agreement and a Declaration of Trust. I need to finalize those documents for tomorrow. If done, I will send those to you too. Those will fill in the other parts of the puzzle. Not too complicated. Really straight up.
>
> We would like to go in at 12:01 on Monday AM April 18.
>
> **Kyung S. Lee**
> **Parkins Lee & Rubio LLP**
> Cell: 713-301-4751
> klee@parkinslee.com

---

**From:** Sall, Millie (UST) <Millie.Sall@usdoj.gov>
**Date:** Thursday, April 14, 2022 at 7:00 AM
**To:** Kyung Lee <klee@parkinslee.com>

**Subject:** Re: [EXTERNAL] First Day Hearings

Are you able to send us drafts of first day pleadings? When do you anticipate hearing on FDMs?

Millie

> On Apr 14, 2022, at 12:00 AM, Kyung Lee <klee@parkinslee.com> wrote:
>
> I will track you down Friday afternoon. Working on three new cases. Wanted to share and talk about cases and first days. Should be ready by Friday pm. Thanks
>
> **Kyung S. Lee**
> **Parkins Lee & Rubio LLP**
> Cell: 713-301-4751
> klee@parkinslee.com

---

**From:** Sall, Millie (UST) <Millie.Sall@usdoj.gov>
**Date:** Wednesday, April 13, 2022 at 8:40 PM
**To:** Kyung Lee <klee@parkinslee.com>
**Subject:** Re: [EXTERNAL] First Day Hearings

I am headed to DC tomorrow morning until Sat night but we can find a time to talk. LMK.

Millie

> On Apr 13, 2022, at 7:11 PM, Kyung Lee <klee@parkinslee.com> wrote:
>
> Millie, are you going to be around next two days? Wanted to see if you had planned to be out for Easter? Kyung

Kyung S. Lee
Kyung S. Lee PLLC
Partner
Parkins Lee & Rubio LLP
Pennzoil Place
700 Milam, Suite 1300
Houston, Texas 77002
Mobile (713) 301-4751
Klee@parkinslee.com
www.parkinslee.com

Confidentiality Notice: The information contained in this communication is strictly limited to the recipient intended by the sender of this communication. This email, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments.
***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidentiality Notice: The information contained in this communication is strictly limited to the recipient intended by the sender of this communication. This email, and any attachments, may contain confidential

attorney-client privileged information and attorney work product. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments. ***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidentiality Notice: The information contained in this communication is strictly limited to the recipient intended by the sender of this communication. This email, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments. ***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidentiality Notice: The information contained in this communication is strictly limited to the recipient intended by the sender of this communication. This email, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments. ***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidentiality Notice: The information contained in this communication is strictly limited to the recipient intended by the sender of this communication. This email, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments. ***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidentiality Notice: The information contained in this communication is strictly limited to the recipient intended by the sender of this communication. This email, and any attachments, may contain confidential attorney-client privileged information and attorney work product. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments. ***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

PLR PROPOSED FINAL DRAFT 4/17/2022 1:10 PM

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INFOW, LLC | ) | Case No. 22 - _____ |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |
| In re: | ) | |
| | ) | |
| IWHEALTH, LLC | ) | Case No. 22 - _____ |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |
| In re: | ) | |
| | ) | |
| PRISON PLANET TV, LLC | ) | Case No. 22 - _____ |
| | ) | |
| Debtor. | ) | Chapter 11 (Subchapter V) |

## JOINT PLAN OF REORGANIZATION UNDER SUBCHAPTER V OF THE BANKRUPTCY CODE

## IMPORTANT DATES

Date by which Ballots must be received: **[_____, 2022].**

Date by which Objections to Confirmation must be filed and served: **[_____, 2022].**

Hearing on confirmation of the Plan: **[_____, 2022 at __:00 __.m.** (Central Time)].

**PARKINS LEE & RUBIO LLP**

*/s/ Kyung S. Lee*
Kyung S. Lee, State Bar No. 12128400
RJ Shannon, State Bar No. 24108062
Pennzoil Place – North Tower
711 Louisiana Street Suite 1300
Houston, Texas 77002
Phone: (713) 715-1660
Email: klee@parkinslee.com
          rshannon@parkinslee.com

**PROPOSED COUNSEL FOR THE DEBTORS**

## INTRODUCTION

To assure the equal distribution of a debtor's assets among its creditors, one of the "bedrock" principles of the Bankruptcy Code[1], InfoW, LLC, debtor and debtor-in-possession, along with its affiliated subchapter v debtors IWHealth, LLC and Prison Planet TV LLC, propose this Joint Plan of Reorganization Under Subchapter V of the United States Bankruptcy Code (the "Plan")[2]. The Plan fairly and efficiently fixes for purposes of distribution unliquidated Litigation Claims, for submission as an offer to Free Speech Systems, Inc, ("FSS") and Alex E. Jones ("AEJ" or "Jones") (collectively, the "Third-Party Funding Contributors"). Pursuant to the Plan Support Agreement (the "PSA"), the Third-Party Funding Contributors then have the option to accept and pay through the Litigation Settlement Trust.

Unlike other bankruptcy plans with channeling injunctions, the Plan does not seek to release any third parties under the Plan upon confirmation of the Plan. The Third-Party Funding Contributors are released only when Allowed Claims have been paid in full.

The Plan has a performance period of five (5) years from the date the first quarterly payment is made after the Effective Date of the Plan (the "Support Period"). During the Support Period, it is contemplated that the parties will be engaged in the process of claims allowance and payment of Allowed Claims. Once approved by the Bankruptcy Court, the 2022 Litigation Settlement Trust shall own and govern the Debtors during the Bankruptcy Cases with two independent trustees approved by the Bankruptcy Court. The Debtors will in turn be managed by W. Marc Schwartz, an independent Chief Restructuring Officer, whose appointment will also be approved by the Bankruptcy Court. The PSA is intended to support and fund the payment in full of Allowed Claims submitted and approved.

To assure the optimal outcome for the Plaintiffs, the Debtors submit that negotiations must continue with parties affiliated with the Third-Party Funding Contributors after the Petition Date. Most of these parties have been identified by Plaintiffs in a recently filed lawsuit styled, *Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel Fontaine, Plaintiffs, v. Alex Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited LLC, JLJR Holdings, LLC, PLJR Holdings, LLC, Carol Jones, David Jones, PQPR Holdings LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018, Defendants*, Cause No. D-1-GN-22-001610, District Court, Travis County, Texas, 200th District Court (the "TUFTA Suit"). Based on preliminary discussions with counsel for some of the defendants in the TUFTA Suit, the defendants are prepared to engage in good faith negotiations over this Plan.

**AS REQUIRED BY THE BANKRUPTCY CODE, THE PLAN CLASSIFIES CLAIMS AND INTERESTS IN VARIOUS CLASSES ACCORDING TO THEIR RIGHT TO PRIORITY OF PAYMENTS AS PROVIDED IN THE BANKRUPTCY CODE. THE PLAN STATES WHETHER EACH CLASS OF CLAIMS OR INTERESTS IS IMPAIRED**

---

[1] Even under the Bankruptcy Act, the "purpose…is to bring about equality of division among creditors. For the rule that to the diligent creditor belongs the reward, the [Bankruptcy Act] substitutes the rule that equality is equity." *Canwright v. General Finance Corp.*, 35 F. Supp. 841, 844 (E.D. Ill. 1940), aff'd 123 F.2d 98 (7th Cir. 1941).

[2] Terms not otherwise defined herein are defined in two critical documents related to the Plan: the Plan Support Agreement (the "PSA"), attached hereto as Exhibit "A" and incorporated herein as if fully set forth, and the 2022 Litigation Settlement Trust (the "Litigation Trust"), which is also attached hereto as Exhibit "B".

**OR UNIMPAIRED. THE PLAN PROVIDES THE TREATMENT EACH CLASS WILL RECEIVE UNDER THE PLAN.**

ALL INTERESTED PARTIES SHOULD READ THIS DOCUMENT CAREFULLY AND DISCUSS IT WITH THEIR LEGAL AND FINANCIAL ADVISORS.

THE PLAN MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE PLAN, YOU SHOULD IMMEDIATELY CONTACT THE DEBTORS TO RESOLVE THE DISPUTE. IF YOU AND THE DEBTOR CANNOT AGREE, YOU MUST FILE AND SERVE ANY OBJECTION ON OR BEFORE [_____], **2022**. IF YOU DO NOT FILE A TIMELY RESPONSE, THE PLAN MAY BE APPROVED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE PLAN AND HAVE NOT REACHED AN AGREEMENT WITH THE DEBTOR, YOU MUST ATTEND THE CONFIRMATION HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE BANKRUPTCY COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY CONFIRM THE PLAN AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

## ARTICLE 1

## DEFINITIONS AND RULES OF CONSTRUCTION

1.1. **Definitions.** Applicable definitions contained in the Bankruptcy Code are incorporated into the Plan except as modified in this Article I. The following definitions shall have the meanings as specified herein, and shall be designated, when such special definitions are applicable, with capital letters, and these definitions shall be enforceable as terms of the Plan in conjunction with the respective matters to which they reference or define:

1.1.1. "Administrative Expense Claim" or "Administrative Claim" means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases Allowed pursuant to Sections 503(b) or 507 of the Bankruptcy Code including, without limitation (a) any fees or charges assessed against the Debtors' Estates under 28 U.S.C. § 1930, and (b) other Administrative Expense Claims as may be ordered and Allowed by the Bankruptcy Court.

1.1.2. "AEJ" or "Jones" means Alex E. Jones, an individual residing in the State of Texas.

1.1.3. "Allowed" or "Allowed Claim" means: (a) a Claim that: (i) has been listed by the Debtors in their Schedules as other than disputed, contingent or unliquidated; and (ii) is not otherwise a Disputed Claim; (b) a Claim (i) for which a Proof of Claim or request for payment of Administrative Expense Claim has been filed by the applicable Bar Date, or otherwise has been deemed timely filed under applicable law; and (ii) that is not otherwise a Disputed Claim; or (c) a Claim that is allowed: (i) in any stipulation executed by the Debtors and the Claim holder; (ii) in a Final Order; or (iii) pursuant to the terms of the Plan.

**1.1.4.** "Avoidance Actions" means causes of action arising under chapter 5 of the Bankruptcy Code or under related state or federal statutes or common law, including fraudulent conveyance laws, whether litigation has been commenced to prosecute such causes of action which are expressly preserved for the Estate hereunder.

**1.1.5.** "Ballot" means the form or forms distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan.

**1.1.6.** "Bankruptcy Estate" means the estate created pursuant to 11 U.S.C. § 541 with respect to the Debtors

**1.1.7.** "Bankruptcy Code" or "Code" means Title 11, United States Code, Section 101 *et. seq.*, in effect on the Filing Date, and all amendments thereto and in effect on or before the Confirmation Date, or thereafter to the extent such amendments are retroactive.

**1.1.8.** "Bankruptcy Rules" means collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, in effect on the Filing Date, and all amendments thereto and in effect on or before the Confirmation Date, or thereafter to the extent such amendments are retroactive.

**1.1.9.** "Bar Date" means the applicable bar date by which a Proof of Claim or request for payment of an Administrative Expense Claim must be or must have been filed, as established by an order of the Bankruptcy Court, including the Bar Date Order or the Confirmation Order.

**1.1.10.** "Business Day" means a day other than a Saturday, Sunday, or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

**1.1.11.** "Cash" means legal tender of the United States of America or its equivalent in immediately available funds.

**1.1.12.** "Chapter 11 Case(s)," "Case(s)," or "Bankruptcy Case(s)" means the case under chapter 11 of title 11 jointly administered under *In re InfoW, LLC.*, Case No. 22-[_____], commenced on April 18, 2022, in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division.

**1.1.13.** "Claim(s)" means a "claim" against the Debtors, as defined in Section 101(5) of the Bankruptcy Code.

**1.1.14.** "Claim Objection Deadline" means the later of (a) sixty (60) days after the Effective Date, (b) sixty (60) days after the Bar Date, and (c) such later date as may be ordered by the Bankruptcy Court pursuant to a motion filed prior to the expiration of such sixty (60) day period.

**1.1.15.** "Class" or "Classification" means the class designated in the Plan, pursuant to Sections 1122 and 1129 of the Bankruptcy Code, into which the Claims of all Creditors or Equity Interests have been segregated for purposes of voting and distributions.

**1.1.16.** "Collateral" means any Property or interest in Property of the Estate which is subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code, disallowance under Section 506 of the Bankruptcy Code, or is otherwise invalid under the Bankruptcy Code or applicable state law.

**1.1.17.** "Confirmation" or "Confirmation of the Plan" means the approval of this Plan by the Bankruptcy Court at the Confirmation Hearing.

**1.1.18.** "Confirmation Date" means the date on which the clerk dockets a Confirmation Order determining that the Plan meets the requirements of chapter 11 of the Bankruptcy Code, which order has been previously entered by the Court.

**1.1.19.** "Confirmation Hearing" means the hearing(s) which will be held before the Bankruptcy Court in which the Debtors will seek Confirmation of this Plan.

**1.1.20.** "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

**1.1.21.** "Court" or "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Victoria Division, presiding over the Chapter 11 Cases, or, if necessary, the United States District Court for the District and Division having original jurisdiction over the Chapter 11 Cases.

**1.1.22.** "Creditor(s)" means all creditors of the Debtors holding Claims for debts, liabilities, demands or Claims of any character whatsoever, as defined in Section 101(5) of the Bankruptcy Code.

**1.1.23.** "Cure Claim" means any Claim based upon the Debtors' defaults under any Executory Contract to which the Debtor was a party on the Filing Date which has been or will be assumed under Section 365 of the Bankruptcy Code or pursuant to the Plan.

**1.1.24.** "Debtors" or "Debtors in Possession" means IW, IWH, and PTV, each a Texas limited liability company.

**1.1.25.** "Declaration of Trust" means that declaration of trust establishing the Litigation Settlement Trust executed prior to the Petition Date.

**1.1.26.** "Deficiency Claim" means, with respect to a Secured Claim, the amount by which the Allowed Claim exceeds the sum of (i) any set off rights of the holder of such Claim against the Debtors under Sections 506 and 553 of the Bankruptcy Code and (ii) the net proceeds realized from the disposition of the Collateral securing such Claim or, if such Collateral is not liquidated, the value of the interests of the holder of the Claim in the Debtors' interest in the Collateral securing such Claim, as determined by the Bankruptcy Court in accordance with Section 506 of the Bankruptcy Code; provided, however, that if the holder of such Claim makes the election provided for in Section 1111(b)(2) of the Bankruptcy Code, there shall be no Deficiency Claim in respect of such Claim.

**1.1.27.** "Disallowed" means, with respect to a Claim, Interest, Administrative Expense, or portion thereof, that it is determined by a Final Order that the Claim, Interest, Administrative Expense, or portion thereof is not allowed under Sections 502 or 503 of the Bankruptcy Code.

**1.1.28.** "Disbursing Agent" means the Litigation Settlement Trust and the Trustees thereof.

**1.1.29.** "Disposable Income" means the income that is received by the Debtors that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtors.

**1.1.30.** "Disputed Claim" means (i) a Claim, Interest or Administrative Expense that is subject to a pending objection; or (ii) until the Objection Deadline:

**1.1.30.1.** a Claim for which a corresponding Claim has not been listed in the Debtors' Schedules or for which the corresponding Claim is listed in the Debtors' Schedules with a differing amount, with a differing classification, or as a disputed, contingent, or unliquidated Claim;

**1.1.30.2.** a Claim which a Debtors in good faith believes is held by a holder either (i) from which property is recoverable by the applicable Debtors under any of Sections 542, 543, 550 or 553 of the Bankruptcy Code or (ii) that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code unless the holder has paid the amount, or turned over any such property for which such holder is liable under the terms of Sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; and

**1.1.30.3.** an Interest for which a corresponding Interest has not been listed in the Debtors' List of Equity Interests or has been listed in a different number (to the extent of such difference).

**1.1.31.** "Disputed Claim Reserve" means the Cash reserve to be established pursuant to Section 9.1.5 of the Plan, in an amount sufficient to pay Disputed Claims a Pro Rata Share of distributions that were made to Allowed Claims.

**1.1.32.** "Distributable Debtor Funds" means the funds held by the Debtors' Bankruptcy Estate on the Effective Date that can be paid to Allowed Claims after accounting for the Disputed Claim Reserve.

**1.1.33.** "Distributable Trust Funds" means the funds held by the Litigation Settlement Trust paid by pursuant to this Plan, the PSA, and the Declaration of Trust that can be paid to Allowed Claims after accounting for the Disputed Claim Reserve.

**1.1.34.** "Effective Date" means the first Business Day following fourteen (14) days after the Confirmation Date on which all conditions to the effectiveness of this Plan specified in Article 8 have been met or waived.

**1.1.35.** "Effective Date Third-Party Funding" means the amounts required to be paid by the Third-Party Funding Contributors to the Litigation Settlement Trust under this Plan on the Effective Date, as set out in Section 7.2.4 of this Plan.

**1.1.36.** "Equity Interest(s)" or "Interest(s)" means all the membership interest.

**1.1.37.** "Estate" means the estate created pursuant to Section 541 of the Bankruptcy Code by the commencement of the Chapter 11 Cases.

**1.1.38.** "Estimated Amount" means the amount of any Claim or Class of Claims estimated for the purposes of confirmation of a plan of reorganization in these Chapter 11 Cases.

**1.1.39.** "Executory Contract" shall have the meaning assigned in Section 365 of the Bankruptcy Code.

**1.1.40.** "Filing Date" or "Petition Date" means April 18, 2022, the date upon which the Chapter 11 Cases was commenced as a voluntary case under chapter 11 of the Bankruptcy Code.

**1.1.41.** "Final Decree" means the order of the Court entered after the Plan is substantially consummated which closes the Chapter 11 Cases.

**1.1.42.** "Final Order" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to Section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

**1.1.43.** "FSS" means Free Speech Systems, LLC, a Texas limited liability company.

**1.1.44.** "General Unsecured Claim" means an unsecured claim that is not an Administrative Claim, Priority Tax Claim, Priority Unsecured Claim, or an Unsecured Litigation Claim.

**1.1.45.** "Impaired Class" and "Unimpaired Class" shall have the meaning described in Section 1124 of the Bankruptcy Code.

**1.1.46.** "Initial Trust Funding**"** means $725,000 in cash funded to the Litigation Settlement Trust by AEJ from his exempt property upon the effective date of the PSA, prior to the Petition Date, to pay the costs of administration of the Debtors' Bankruptcy Cases and the Litigation Settlement Trust, including retention of the Litigation Settlement Trustees and retention by the Trustees of all professionals deemed necessary to accomplish the purpose of this Trust and the commitment of the Third Party Funding Contributors to maintain for not less than 120 days after the Petition Date a balance of $200,000 after payment of all initial administrative expense retainers to newly appointed Litigation Settlement Trustees and as the only members of the Debtors acting as independent Members, together with the Debtors' professionals from time to time, to be paid directly, or thereafter maintained in the Litigation Settlement Trust for continued payment of the costs of Administration of the Litigation Settlement Trust and the Debtors' Bankruptcy Cases.

**1.1.47.** "IW" means InfoW, Inc. (formerly known as InfoWars, LLC, a Texas limited liability company).

**1.1.48.** "IWH" means IWHealth, LLC (formerly known as InfoWars Health LLC, a Texas limited liability company).

**1.1.49.** "Joint Liability Claim(s)" means (a) a claim against one or more of the Debtors with respect to which on or more of the Protected Parties is jointly liable or (b) a claim asserted against a Protected Party in the Litigation.

**1.1.50.** "Lien" has the meaning set forth in Section 101(37) of the Bankruptcy Code.

**1.1.51.** "Litigation" means all pending civil lawsuits against the Debtors, including but not limited to the following:

- *Neil Heslin, Scarlet Lewis, Leonard Pozner, Veronique De La Rosa, Marcel Fontaine vs. AEJ, Infowars LLC, Free Speech Systems, LLC*, Cause No. D-1-GN-22-001610 in the 200th District Court of Travis County, Texas;

- *Marcel Fontaine vs. Alex E., Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels*, Cause No. D-1-GN-18-001605 in the 459th Judicial District Court of Travis County, Texas;

- *Neil Heslin vs. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001835 in the 261st Judicial District Court of Travis County, Texas;

- *Veronique de la Rosa and Leonard Pozner vs. Alex E. Jones, InfoWars, LLC, and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001842 in the 345th Judicial District Court of Travis County, Texas;

- *Scarlett Lewis vs. Alex E. Jones, InfoWars, LLC, Free Speech Systems, LLC and Owen Shroyer*, Cause No. D-1-GN-18-006623 in the 98th Judicial District Court of Travis County, Texas;

- *Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046437-S in the Superior Court of Connecticut, Waterbury Division;

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046438-S in the Superior Court of Connecticut, Waterbury Division;

- *Larry Klayman v. Infowars, LLC; Free Speech Systems, LLC; Alex E. Jones; David Jones; Owen Shroyer; and Roger Stone*, Cause No. 20-cv-61912-DPG in the United States District Court for the Southern District of Florida, Ft. Lauderdale Division.

**1.1.52.** "Litigation Settlement Trust" means the 2022 Litigation Settlement Trust created on April 14, 2022, for the benefit of the Debtors' as provided therein.

**1.1.53.** "Litigation Settlement Trustees" means two individuals approved by the Bankruptcy Court to serve as Trustees of Litigation Settlement Trust, who will replace the interim trustee of the Litigation Settlement Trust prior to the filing of the Bankruptcy Cases.

**1.1.54.** "Litigation Claims Estimation" means the estimation of the Unsecured Litigation Claims by the Bankruptcy Court in these Bankruptcy Cases pursuant to Sections 502(c) and 105 of the Bankruptcy Code and Rule 3018 of the Bankruptcy Rules of Procedure for purposes of confirmation of this Plan.

**1.1.55.** "Litigation Settlement Trust Beneficiary" means the holder of a Litigation Settlement Trust Claim.

**1.1.56.** "Litigation Trust Expenses" means all costs, expenses and professional fees incurred by the Litigation Settlement Trust and the Litigation Settlement Trustees during the Support Period, specifically including, but not limited to the allowed fees and expenses of the Debtors and their professionals incurred in connection with the prosecution of the Bankruptcy Cases and those incurred after the Plan Effective Date, approved by the Litigation Settlement Trustees.

**1.1.57.** "Objection Deadline" means the deadline for Reorganized Debtors to file objections to Claims with the Bankruptcy Court established in Article 9 of this Plan.

**1.1.58.** "Person" means an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, or entity of whatever nature.

**1.1.59.** "Plan" means the Debtors' Joint Plan of Reorganization in its present form or as it may be amended, modified, or supplemented from time to time, together with all exhibits thereto.

**1.1.60.** "Plan Supplement" means, including without limitation, the forms of the material documents to implement the provisions of the Plan that are to be filed with the Bankruptcy Court as early as is practicable, but in no event later than five (5) Business Days before the Confirmation Hearing, or on such other date as the Bankruptcy Court may determine. The Plan Supplement is incorporated into the Plan as if fully set forth in the Plan and all references to the Plan refer also to the Plan Supplement.

**1.1.61.** "PSA" means that Plan Support Agreement executed by and among the Debtors and the Third-Party Funding Contributors, as may be amended.

**1.1.62.** "PTV" means Prison Planet TV, LLC, a Texas limited liability company.

**1.1.63.** "Priority Claim" means any Claim (or portion of such Claim) entitled to priority under Section 507 of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, or a Secured Claim.

**1.1.64.** "Priority Secured Tax Claim" means a Secured Claim of a governmental entity whose claim would be a Priority Tax Claim under Sections 502(i) or 507(a) of the Bankruptcy Code if it was not a Secured Claim.

**1.1.65.** "Priority Tax Claim" means a Claim that is entitled to priority pursuant to Sections 502(i) or 507(a)(8) of the Bankruptcy Code other than (i) a Secured Tax Claim, or (ii) an ad valorem or other form of state or local authority tax assessed on property which was transferred or foreclosed prior to the Confirmation Date.

**1.1.66.** "Professional" means any professional employed in the Chapter 11 Cases pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code or otherwise, and any professional seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Section 503(b) of the Bankruptcy Code.

**1.1.67.** "Professional Fee Claim" means a Claim of a Professional for compensation for services rendered, and/or reimbursement of costs and expenses incurred, after the Filing Date and prior to and including the Effective Date.

**1.1.68.** "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtors pursuant to Bankruptcy Rules 3001 or 3002.

**1.1.69.** "Property" or "Property of the Estate" means all assets of the Debtors which are property of the Estate pursuant to Section 541 of the Bankruptcy Code.

**1.1.70.** "Pro Rata Share" means with respect to Claims, the proportion that the amount of an Allowed Claim in a particular Class bear to the aggregate amount of all Claims in such Class, exclusive of Disallowed Claims, but including Disputed Claims.

**1.1.71.** "PQPR" means PQPR Holdings Limited LLC.

**1.1.72.** "PQPR Secured Note" means the note held by PQPR in the face amount of $29,588,000, dated as of August 13, 2020, the repayment of which is secured by substantially all assets of FSS.

**1.1.73.** "Protected Parties" means the Third-Party Funding Contributors and PQPR with respect to Claim

**1.1.74.** "Quarterly Third-Party Funding" means the amounts required to be paid by the Third-Party Funding Contributors to the Litigation Settlement Trust under this Plan on a quarterly basis as set out in Section 7.2.4 of this Plan.

**1.1.75.** "Reorganized Debtors" means the Debtors on and after the Effective Date, surviving after confirmation of the Plan.

**1.1.76.** "Schedules" and "Statements" means the Schedules, Statements and Lists filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

**1.1.77.** "Secured Claim" means the Claim of any Creditor which is secured by a valid, duly perfected Lien (whether voluntary or involuntary) on, or a security interest in Collateral, or which is subject to setoff under Bankruptcy Code Section 553, to the extent of the lesser of: (i) the value of the Collateral; or (ii) the amount of such Allowed Claim.

**1.1.78.** "Subchapter V Trustee" means the subchapter v trustee appointed in the Bankruptcy Cases, or such trustee's successor appointed to serve as trustee pursuant to Section 1183 of the Bankruptcy Code.

**1.1.79.** "Support Period" means, with respect to any Party, the period commencing on the later of (a) the Agreement Effective Date and (b) the Petition Date and ending on the date on the earlier of (i) 120 days following the commencement date and (ii) termination of this Agreement, *provided* however that if a Confirmation Order is entered, the Support Period shall remain in effect for not less than five (5) years from the payment of the first Quarterly Third-Party Funding Payment after the Plan Effective Date.

**1.1.80.** "Third-Party Funding Contributors" means "AEJ" and "FSS", together.

**1.1.81.** "Timely Filed" with respect to a Claim, Interest or Administrative Expense, means, that a proof of such Claim or Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court within such applicable period fixed by the Plan, statute, or pursuant to both Bankruptcy rule 3003(c)(3) and a Final Order (e.g., the Bar Date).

**1.1.82.** "Trustees" mean the Litigation Settlement Trustees.

**1.1.83.** "Unimpaired Class" shall have the meaning described in Section 1124 of the Bankruptcy Code.

**1.1.84.** "United States Trustee" means the United States Trustee for the Southern District of Texas.

**1.1.85.** "Unsecured Claim" means any Claim (regardless of whether such Claim is covered by insurance) that is neither secured nor entitled to priority under the Bankruptcy Code, or by a Final Order of the Bankruptcy Court, including, but not limited to: (a) any claim arising from the rejection of an Executory Contract under Section 365 of the Bankruptcy Code, and (b) any portion of a Claim to the extent the value of the holder's interest in the applicable Estate's interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.1.86.** "Unsecured Creditor" means all holders of Unsecured Claims other than holders of Allowed Deficiency Claims.

**1.1.87.** "Unsecured Litigation Claim" means any Unsecured Claim arising from or related to the Litigation.

**1.2.** **Rules of Construction.**

**1.2.1.** Interpretation. Unless otherwise specified herein, all section, article and exhibit references in the Plan are to the respective section in, article of, and exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. All headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

**1.2.2.** Construction and Application of Bankruptcy Code Definitions. Unless otherwise defined herein, words and terms defined in Section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan. Words or terms used but not defined herein shall have the meanings ascribed to such terms or words, if any, in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**1.2.3.** Other Terms. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any article, section, subsection, or clause contained in the Plan.

**1.2.4.** Time. In computing any period prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE 2

## INFORMATION REGARDING PLAN

**2.1.** **Background.**

**2.1.1.** The Debtors are holdings companies for certain intellectual property assets. Debtor InfoW owns copyrights and domain names related to "Infowars.com." Debtor IWHealth owns cash flow from royalties and/or an agreement with Youngevity. Debtor Prison Planet TV owns copyrights and domain names related to prisonplanet.tv.

**2.1.2.**  "Infowars"—a conspiracy-oriented website and media company—is operated by Free Speech Systems, LLC ("FSS"), which does business under a registered trademark for that name.  InfoW and Prison Planet TV license their intellectual property and domain names to FSS for use in its business but the Debtors do not produce or have any control over the content of Infowars. FSS maintains and operates the website https://www.infowars.com/.

**2.1.3.**  AEJ owns one hundred percent (100%) of the equity in FSS. Prior to the Petition Date, AEJ also owned one hundred percent (100%) of the equity of InfoW, IWHealth and Prison Planet TV. He assigned these equity interests to the Litigation Settlement Trust before the Petition Date.

## 2.2.    Debtors' Involvement with the Sandy Hook Litigation.

**2.2.1.**  The Debtors' financial distress stems primarily from statements of AEJ and other employees of FSS in the wake of the December 14, 2012, mass shooting at Sandy Hook Elementary School in which 20 children and 6 educators were killed by Adam Lanza. Various parents of the deceased victims of the Sandy Hook shooting assert, among other things, that these statements were defamatory and inflicted emotional distress.

**2.2.2.**  The relatives of the Sandy Hook victims and certain other parties (the "Sandy Hook Plaintiffs") assert, among other things, that AEJ and other employees of FSS made defamatory statements and inflicted emotional distress. In 2018, the Sandy Hook Plaintiffs brought actions in Texas and Connecticut (collectively, the "Sandy Hook Lawsuits") against AEJ, FSS, and certain of the Debtors. The crux of the allegations in the Sandy Hook Lawsuits is that AEJ and FSS employees damaged the Sandy Hook Plaintiffs by saying or implying that the Sandy Hook shooting did not occur, and that the entire incident was a "false flag" hoax.

**2.2.3.**  InfoW is also a defendant in other pending litigation unrelated to the events at Sandy Hook elementary school:

- *Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, and Kit Daniels*, Cause No. D-1-GN-18-001605, pending before the 459th District Court for Travis County, Texas—This case involves an article authored by an FSS employee about the shooter at Marjory Stoneman Douglas High School in Parkland, Florida. Iterations of the article included a photograph of the plaintiff, even though the plaintiff was not involved with the shooting or even in Florida at the time.

- *Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, Marcel Fontaine v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, PQPR Holdings Limited LC, JLJR Holdings, LLC, PLJR Holdings, LLC, Carol Jones, David Jones, PQPR Holdings, LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018*, Cause No. D-1-GN-22-001610, pending before the 200th District Court for Travis County, Texas—This lawsuit was brought by the plaintiffs in the other Texas lawsuits under the Texas Uniform Fraudulent Transfer Act ("TUFTA"). The allegations are that AEJ diverted his assets to companies owned by insiders like his parents, his children, and himself. The Plaintiffs seek judgment allowing them to take possession and execute on the assets.

- *Larry Klayman v Infowars, LLC, et al.*, Case No. 20-61912, before the U.S. District Court for the Southern District of Florida, Fort Lauderdale Division—The plaintiff in this case brought claims against InfoW, FSS, AEJ, David Jones, and Owen Shroyer for defamation, Florida Deceptive and Unfair Trade Practices Act, tortious interference, and violation of

the Lanham Act for publishing disparaging statements about the plaintiff. On April 14, 2022, the District Court entered a take-nothing judgment in favor of the InfoW and the other defendants. The plaintiff has appealed to the Eleventh Circuit Court of Appeals.

**2.2.4.**   AEJ, FSS, and the Debtors have spent more than $10.0 million in legal fees and expenses since commencement of the Sandy Hook Lawsuits. Despite the substantial amount spent, both the Texas and Connecticut courts have imposed multiple sanctions and ruled that AEJ, FSS, and the Debtors failed to comply with discovery requirements such that judgment on liability has been entered against them by default. No court has yet to quantify the amount of the damages.[3]

**2.2.5.**   The pending litigation presents a classic "race to the courthouse." The Texas court is scheduled to be the first damages case to go to trial and is set to commence with jury selection on April 25, 2022. The damages trial in the Texas actions is scheduled for months before the damages will be determined in the actions pending in Connecticut.

**2.3.**      **2022 Litigation Settlement Trust.**

**2.3.1.**   To address the Sandy Hook Lawsuits and other litigation, and preserve assets for equal distribution to all creditors, the Debtors, AEJ, and FSS have created the Litigation Settlement Trust to provide a mechanism for the payment in full of the Litigation Claims. A copy of the Declaration of Trust is attached as **Exhibit A** hereto (the "Declaration of Trust").

**2.3.2.**   The Litigation Trust removes control of the Debtors and settlement funds from AEJ and ensures that any settlement of or judgment in the Sandy Hook Lawsuits will be paid according to the terms of the Declaration of Trust and any confirmed Plan in these Chapter 11 Cases. The Litigation Trust has been initially funded pursuant to the funding agreement attached to the Declaration of Trust and the Plan Support Agreement attached hereto as **Exhibit B** (the "PSA"). The "Initial Trust Funding" of $725,000 for administration of these Chapter 11 Cases has been paid to the interim trustee or the Debtors' professionals from exempt personal assets of AEJ.

**2.4.**     **Concept of Plan**

**2.4.1.**   The filing of these Bankruptcy Cases, the Plan, and the Plan Support Agreement is to create a centralized mechanism to maximize the economic returns to the Plaintiffs that can be generated from the commercial enterprise of the Third-Party Funding Contributors over the next five (5) years from the Effective Date.

**2.4.2.**   In addition to the supervision of the Bankruptcy Court, the confirmed Plan provides that two former United States Bankruptcy Judges shall serve as trustees (the "Trustees") over the Litigation Settlement Trust established prior to the Petition Date. Pending approval by the Bankruptcy Court, the Debtors have retained W. Marc Schwartz of Schwartz Associates, as their Chief Restructuring Officer. Debtors intend to seek approval to retain Mr. Schwartz and fully disclose the broad scope of his authority, solely subject to the supervision of the Trustees as soon as it enters the Bankruptcy Cases.

**2.4.3.**   The Debtors and the Third-Party Funding Contributors have reached a written agreement, the PSA, setting out the terms and conditions under which the Third-Party Funding Contributors will (a) fund the Bankruptcy Cases, and (b) fund the confirmed Plan during the

---

[3] The orders implementing default determinations of liability remain subject to appeal in the event that the holders of Class 3 Claims elect to continue litigation.

Support Period to provide for payment in full of all Allowed Claims. Subject in all respects to the more detailed description set forth elsewhere herein, the Plan provides:

2.4.3.1.    Administrative Claims, Priority Tax Claims, Class 1 Claims (Other Priority Claims) and Class 2 (General Unsecured Claims) will be paid in full on or promptly after the Effective Date;

2.4.3.2.    The Litigation Settlement Trust, created pursuant to the Declaration of Trust, attached hereto as Exhibit B, will continue to hold 100% of the member interests of the Debtors for the benefit of the holders of Class 3 Claims (Unsecured Litigation Claims);

2.4.3.3.    The Third-Party Funding Contributors will fund to the Litigation Settlement Trust (i) $2,000,000.00 on the Effective Date, and (ii) quarterly payments in the amount of the $250,000 through twenty (20) equal payments to pay the estimated amount of all claims in full;

2.4.3.4.    Until the Third-Party Funding Contributors declare that they will not pay in full a settlement proffered by the Litigation Settlement Trustees, the Plan shall provide that the Litigation Settlement Trustees shall hold a perfected lien and security interest in and to all of FSS's and all non-exempt AEJ assets to secure their obligations under the Plan;

2.4.3.5.    Final determination of unliquidated Class 3 Claims shall be determined either pursuant to an estimation procedure or, at the election of the holders of such Claims if the underlying Litigation has been removed, through continuation of the pending Litigation within the federal court system;

2.4.3.6.    The Litigation Settlement Trust shall pay Allowed Litigation Claims from assets of the Litigation Settlement Trust as they are determined; and

2.4.3.7.    Holders of Joint Liability Claims shall be enjoined from taking any action to enforce such Joint Liability Claims against the Third-Party Funding Contributors during the Support Period, provided that there is no event of default under the Plan.

**THE CONFIRMATION OF THE PLAN DOES NOT RELEASE ANY THIRD PARTIES. CLAIMS AGAINST THE THIRD-PARTY FUNDING CONTRIBUTORS SHALL REMAIN VALID UNLESS SATISFIED IN FULL PURSUANT TO THIS PLAN.**

2.4.4.   The Debtors submit that they have developed a construct that (a) permits equal opportunity for each holder of a Litigation Claim to realize a fair economic recovery, (b) protects the business enterprise which generates the cash to maximize the recoveries to the Allowed Claims, and (c) assures the protection for the holders of Litigation Claims that the Third-Party Contributors will not hide, secret, or abscond with assets during the Support Period.

2.4.5.   If, on the other hand, the recovery sought by the Plaintiffs is not mere economic damages, the Debtors submit that these Bankruptcy Cases and the attendant myriad of dispute resolution procedures should be employed to bring a global settlement in these Bankruptcy Cases. This Court has potentially available two United States Bankruptcy Judges who may agree to mediate the dispute without costs to the parties. The Debtors submit the filing of these Bankruptcy Cases will bring efficiencies to the judicial system and instant value to all parties.

**2.5.**    **Description of Assets.**

    **2.5.1.**    The Debtors will file Schedules prior to the Confirmation Hearing. Complete copies of the Schedules will be submitted as evidence at such Confirmation Hearing and be available from the Clerk of the Court.

    **2.5.2.**    The primary assets of the Bankruptcy Estates consist of (a) the copyrights and domain names listed below and (b) and the revenue from the Youngevity license or agreement. AEJ is the original creator and owner of the intellectual property below and has assigned them to the Debtors.

    **2.5.3.**    The Debtors do not have an estimated value of the intellectual property assets but believe them to be significantly less than the $2.0 million in Cash that will be delivered to the Litigation Settlement Trust for satisfaction of Class 3 Claims on the Petition Date.[4]  To the best of the Debtors' knowledge, there are no liens or security interests in and to these assets.

IW Assets:

Copyrights

| Title of Work | Description/ Type of Work | If Derivative Work, Title of Original | Author |
|---|---|---|---|
| infowars.com | Website | | Alexander E. Jones |
| infowars.net | Website | | Alexander E. Jones |
| truthnews.us | Website | | Alexander E. Jones |
| whatistheendgame.com | Website | | Alexander E. Jones |

Domain Names

| Domain Name | Country | Domain Registry |
|---|---|---|
| infowars.com | U.S.A. | Epik LLC |
| infowars.net | U.S.A. | Epik LLC |
| truthnews.us | U.S.A. | Epik LLC |
| whatistheendgame.com | U.S.A. | Epik LLC |

PTV Assets:

Copyrights

| Title of Work | Description/ Type of Work | If Derivative Work, Title of Original | Author |
|---|---|---|---|

---

[4] Under this Plan, the equity in IWHealth will remain with the Litigation Settlement Trust and thus the full stream of payments will be made available to the Litigation Settlement Trust.

| Endgame | Film | | Alexander E. Jones |
|---|---|---|---|
| Terrorstorm | Film | | Alexander E. Jones |
| Order of Death/BG | Film | | Alexander E. Jones |
| Martial Law | Film | | Alexander E. Jones |
| 9/11 Road to Tyranny | Film | | Alexander E. Jones |
| PS3 | Film | | Alexander E. Jones |
| PS2 | Film | | Alexander E. Jones |
| PS1 | Film | | Alexander E. Jones |
| ABDB | Film | | Alexander E. Jones |
| Masters of Terror | Film | | Alexander E. Jones |
| Prisonplanet.tv | Website | | Alexander E. Jones |

Domain Names

| Domain Name | Country | Domain Registry |
|---|---|---|
| prisonplanet.tv | U.S.A. | Register.com |

IWHealth Assets:

Rights to payments from Youngevity, which have ranged from $30,000 to $40,000 per month prior to the Petition Date, under an unsigned license/marketing agreement whereby FSS markets Youngevity products. These funds are estimated to total between $1,800,000 and $2,400,000 over the period that payments will be made under the Plan.

## 2.6.    Liabilities

Other than ordinary course taxing authorities and trade vendors, the other creditors of all three Debtors consist of Class 3 holders of Unsecured Litigation Claims, who are holders of unliquidated claims.

## 2.7.    Liquidation Analysis.

**2.7.1.** Under Sections 1191 and 1129(a)(7) of the Bankruptcy Code a plan can be confirmed without the accepting votes of impaired classes of claims if each such class would receive under the plan "not less than" they would receive "if the debtor were liquidated under chapter 7."

**2.7.2.** If these Bankruptcy Cases were converted to chapter 7 and the assets of each Debtor were liquidated, the only resulting proceeds would be from (a) the sale of the domain names (which would be subject to the license to FSS), (b) sale of the PTV domain name and intellectual property (subject to the license to FSS), (c) the revenue earned from the Youngevity Agreement, which would continue only so long as FSS marketed Youngevity products, and (d) the recovery on account of any litigation claims against third parties. While a formal evaluation has not been performed, the Debtors submit that each impaired class would receive not less than they would receive if the Debtors were liquidated under chapter 7. Here, the Plan provides for receipt of

$2,000,000 to be made available on the Effective Date from the Third-Party Funding Contributor, while no such amounts are available to the creditors upon conversion of the three Debtors to a case under chapter 7 of the Bankruptcy Code.[5]

    **2.7.3.**  Because the Plan provides for payment of all creditors' Allowed Claims in full and provides that the member interests in the Debtors will be held by the Litigation Settlement Trust, the Debtors have not retained an outside consultant to appraise the liquidation value of the assets. Based on the information provided about its historical holding company business, the Debtors do not believe that the liquidation of the Debtors would result in unsecured creditors obtaining a return anywhere close to being paid in full as it is provided for under the Plan.

**2.8. <u>Sources of Income</u>.**

    **2.8.1.**  During the Support Period, the confirmed Plan provides for the Trustees to have access to funds made available by the Third-Party Fund Contributors to manage the claims process, to coordinate the monitoring of the Third-Party Fund Contributors and report to the Court, if necessary, the monies to be made available under the PSA, which will serve as the Disposable Income for the Litigation Settlement Trust under the supervision of the Trustees.

    **2.8.2.**  On the Effective Date of the Plan, the Third-Party Fund Contributors will fund the Litigation Settlement Trust with cash in the amount of the $2,000,000. Commencing at the end of the first quarter, beginning after the Effective Date, the Third-Party Fund Contributors will provide quarterly payments of $250,000 to the Litigation Settlement Trust for twenty (20) quarters or until Class 3 Claims are paid in full.

    **2.8.3.**  The Reorganized Debtors will receive funds from the Youngevity Agreement.

**2.9.  <u>Feasibility of Plan</u>.**

    **2.9.1.**  The Third-Party Funding Contributors have committed to pay the Litigation Claims over five years.  This payment will come from personal exempt funds of AEJ and from the operations of FSS.

    **2.9.2.**  Debtors have received the Initial Trust Funding.  In addition, during the Bankruptcy Cases, the Third-Party Funding Contributors will replenish the $200,000 deposit paid to the Litigation Settlement Trust to cover the costs of the administration of the Litigation Settlement Trust.  Also, on the Effective Date of the confirmed Plan, the Third-Party Funding Contributors will contribute $2,000,000 to the Litigation Settlement Trust and will commence making an additional $250,000 contribution per quarter to the Litigation Settlement Trust beginning the first quarter after the Effective Date.  The total consideration to be made available under the Plan is up to $9,432,000.  Attached as **<u>Exhibit C</u>** is a projection showing how the Plan would work upon Confirmation of the Plan.

    **2.9.3.**  The Litigation Settlement Trust also owns, through IWH, the right to receive a royalty that is paid by a company on sales of products sold by FSS.  The royalty is approximately

---

[5] The *minimum* amounts that the Litigation Settlement Trust will be funded to pay unsecured creditors under this Plan is estimated to be $8.8 million—(a) $1.8 million from the Youngevity proceeds, (b) $2.0 million from the Effective Date Third-Party Funding, and (c) $5.0 million from the Quarterly Third-Party Funding. Under the Declaration of Trust, executed prior to the Petition Date, the Third-Party Funding Contributors provided an additional $725,000 of Initial Trust Funding to provide for the administrative expenses of these Chapter 11 Cases. The Initial Trust Funding was derived from the sale of AEJ's exempt homestead.

$38,000 per month.

**2.9.4.**   The minimum amount of money expected to be available to pay the Debtors' liabilities, including the Litigation

| | |
|---|---|
| TPF Contribution on Effective Date | $2,000,000 |
| Quarterly Payments | $5,000,000 |
| Royalty Payments (64 months) | $2,432,000 |
| Total | $9,432,000 |

**2.9.5.**   FSS is the principal entity which generates cash for AEJ and the companies he owns and is affiliated with.  In the past, FSS has generated revenues of $70 to $80 million per year.  The cost and the time it took of AEJ and other employees because of the Litigation adversely affected FSS' sales. In 2021 cash receipts from sales dropped to approximately $56,000,000.

**2.9.6.**   With the cessation of the Litigation and the implementation of a cost reduction plan, FSS is projected to be able to generate $1.1 million of positive cash flow per year going forward. If FSS can increase its revenue to the $70 to $80 million experienced in the past, then it will generate more cash.  FSS can make the payments called for by the Plan at the $1.1 million per year in projected positive cash flow.

# ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1.**   **Claims and Equity Interests Classified.**

To make the Plan easier to understand, to aid in the Plan balloting process and for all confirmation matters, all Claims (except Priority Claims and Priority Tax Claims) and Equity Interests shall be classified as set forth in this Article 3 of the Plan and their treatment set out in Articles 4 and 5 of the Plan.

**3.2.**   **Priority Claims and Priority Tax Claims.**

Section 1123(a)(1) of the Bankruptcy Code provides that Priority Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan. All such Claims are to be treated separately as unclassified Claims on the terms set forth in Article 3 of the Plan.

**3.3.**   **Classes of Claims and Equity Interests.**

The Plan classifies Claims and Equity Interests of each of the Debtors as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| N/A | Administrative Claims | N/A | No |
| N/A | Priority Tax Claims | N/A | No |
| Class 1 | Priority Claims | Unimpaired | No (deemed to accept) Paid in Full |
| Class 2 | General Unsecured Claims | Impaired | Yes( Paid in Full, but without interest) |

| Class 3 | Unsecured Litigation Claims | Impaired | Yes ( Paid in Full, but without interest) |
| Class 4 | Equity | Unimpaired | No (deemed to accept) |

### 3.4.  **Impairment Controversies**.

All controversies as to whether a Class of Claims or Equity Interests are impaired under the Plan and whether they are entitled to vote for or against the Subchapter V Plan shall be resolved by the Bankruptcy Court after notice and hearing.

## ARTICLE 4

## TREATMENT OF UNCLASSIFIED CLAIMS

### 4.1.  **Administrative Expense Claims**.

**4.1.1.**  All Administrative Expense Claims against the Debtors shall be treated as follows:

**4.1.1.1.**  Time for Filing. All holders of Administrative Expense Claims, other than Professional Persons holding Professional Fee Claims, shall file with the Bankruptcy Court a request for payment of such Claims within thirty (30) days after the Effective Date. Any such request must be served on the Debtor, its counsel and all parties requesting notice in the Bankruptcy Cases, and must, at a minimum, set forth (i) the name of the holder of the Administrative Expense Claim; (ii) the amount of the Administrative Expense Claim; and (iii) the basis for the Administrative Expense Claim. A failure to file any such request in a timely fashion will result in the Administrative Expense Claim in question being discharged and its holder forever barred from asserting such Administrative Expense Claim against the Debtors or the Reorganized Debtors.

**4.1.1.2.**  Allowance. An Administrative Expense Claim for which a request for payment has been properly filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is thirty (30) days after a request for payment of such Administrative Expense Claim is filed. If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

**4.1.1.3.**  Payment. Except to the extent (i) that a holder of an Allowed Class 1 Claim and the Debtors agree to a different treatment or (ii) existing agreements between the Debtor and the holder of a Class 1 Claim provide for payment of such Allowed Class 1 Claims on different terms, in which case such Claim shall be satisfied in accordance with those pre-existing agreements or policies, each holder of an Allowed Claim in Class 1 shall receive a Cash payment from the Reorganized Debtors in the amount of the Allowed Class 1 Claim on the later of 15th day after the Effective Date or 15 days after such claim becomes an Allowed Claim.

**4.1.1.4.**  Professional Fee Claims. Every Professional Person holding a Professional Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order shall file a final application for payment of fees and reimbursement of expenses no later than the date that is thirty (30) days after the Effective Date; provided, however, that a Professional Person may supplement its request up to and including the date of the  hearing

on such request to account for fees and expenses incurred following the Effective Date in connection with, among other things, preparation of the request for allowance of such Professional Fee Claim, attendance at the hearing thereon and any other allowable fees or expenses not previously requested. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The last date to object to any final fee application shall be the twenty-first (21st) day after such fee application has been filed with the Bankruptcy Court. Allowed Professional Fee Claims shall be paid in full in Cash by the Reorganized Debtors on the later of 15th day after the Effective Date or 15 days after such claim becomes an Allowed Claim.

**4.2.**   **Priority Tax Claims**.

Except to the extent that a holder of an Allowed Priority Tax Claim and the Debtors agree to a different treatment, each holder of an Allowed Priority Tax Claim will receive in full satisfaction of such Claim, Cash payments from Reorganized Debtors over a period not exceeding five (5) years from the Petition Date. Payments by Reorganized Debtors provided for herein shall be made in equal monthly installments with the first payment due on the tenth Business Day of the first month following the Effective Date. Interest shall accrue on the Priority Tax Claim in accordance with Section 511 of the Bankruptcy Code. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due. If the holder of an Allowed Priority Tax Claim has a Lien on the Debtors' property, such Lien shall remain in place until such Allowed Priority Tax Claim has been paid in full. As of the Petition Date, the Debtors are not aware of any Priority Tax Claims.

**ARTICLE 5**

**TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS UNDER THE PLAN**

**5.1.**   **Class 1 – Priority Claims**.

Except to the extent that a holder of an Allowed Priority Claim and the Debtors agree to a different treatment, each holder of an Allowed Priority Claim will receive in full satisfaction of such Claim, Cash payments from Reorganized Debtors on the later of 15 days after the Effective Date or 15 days after such claim becomes an Allowed Claim. As of the Petition Date, the Debtors are not aware of any Priority Claims.

**5.2.**   **Class 2 – General Unsecured Claims**.

Class 2 consists of General Unsecured Claims against the Debtors. Holders of Allowed Class 2 Claims shall be paid in full from Distributable Debtor Funds upon the later of  (a) thirty 30 days from the Effective Date and (b) thirty (30) days after such Claim becomes an Allowed Claim.

**5.3.**   **Class 3 - Unsecured Litigation Claims**.

Class 3 consists of Unsecured Litigation Claims against the Debtors. Holders of Class 3 Claims shall receive their Pro Rata Share of the Distributable Litigation Settlement Trust Funds until paid in full.

**5.4.**   **Class 4 – Equity Interests**.

The Litigation Settlement Trust shall retain its Interest in the Debtors.

## ARTICLE 6

## ACCEPTANCE OR REJECTION OF THE PLAN

**6.1.    Presumed Acceptance of Plan.**

Any Class that is unimpaired under this Plan is conclusively presumed to accept this Plan. Any Class that voted to accept the Plan is presumed to accept this Plan.

**6.2.    Presumed Rejection of Plan.**

Any Class that voted to reject the Plan or who will receive or retain no property under the Plan is presumed to reject this Plan.

## ARTICLE 7

## IMPLEMENTATION AND EXECUTION OF THE PLAN

**7.1.    Means.**

This Plan contemplates the distributions to holders of Allowed Claims by the Reorganized Debtors by cash presently held by the Debtors' Estates or paid to the Litigation Settlement Trust under the confirmed Plan and the PSA from the Third-Party Funding Contributors.

**7.2.    Litigation Settlement Trust.**

**7.2.1.**    Continued Existence. The Litigation Settlement Trust shall continue to exist pursuant to the Declaration of Trust. The Terms of the Declaration of Trust shall continue in force, as modified by this Plan and the Confirmation Order.

**7.2.2.**    Authority of Trustees. The Trustees shall have authority to perform all actions set out in the Declaration of Trust and to direct the actions of the Reorganized Debtors to fulfill their obligations under this Plan.

**7.2.3.**    Funding by the Debtors. On the Effective Date, the Debtors shall deliver all Cash held on the Effective Date to the Litigation Settlement Trust, which funds shall be held in a segregated account for the payment of Class 2 Claims by the Trustees.

**7.2.4.**    Funding by the Third-Party Funding Contributors. On the Effective Date, the Third-Party Funding Contributors shall cause to be paid to the Litigation Settlement Trust Cash in the amount of $2,000,000. In addition, starting on the last day of the first calendar quarter beginning after the Effective Date, the Third-Party Fund Contributors will fund to the Litigation Settlement Trust quarterly payments for a period of twenty (20) quarters in the amount of the greater of (a) $250,000 per quarter and (b) the amount necessary to pay the Estimated Amount of the Class 3 Claims through twenty (20) equal quarterly installments.

**7.2.5.**    Joint Liability Claims. Payment of the Unsecured Litigation Claims from the Litigation Settlement Trust shall be credited to payment of the Joint Liability Claims for which the Protected Parties are jointly liable.

**7.2.6.**    Institution and Maintenance of Legal and Other Proceedings. The Litigation

Settlement Trust shall be empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any asset, liability or responsibility of the Litigation Settlement Trust.

**7.2.7.** <u>U.S. Federal Income Tax Matters Relating to the Litigation Settlement Trust.</u> The Litigation Settlement Trust is intended to be treated, and shall be reported, as a "qualified settlement fund" for U.S. federal income tax purposes and shall be treated consistently for state and local tax purposes, to the extent applicable. All parties shall report consistently with the foregoing. The Trustees may request an expedited determination under Section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Litigation Settlement Trust for all taxable periods through the dissolution of the Litigation Settlement Trust.

**7.2.8.** <u>Distributions to and from the Litigation Settlement Trust Free and Clear.</u> All payments to and distributions form the Litigation Settlement Trust pursuant to this Plan shall be free and clear of all Claims, Liens or other recourse or encumbrances, and shall not be subject to attachment, disgorgement or recoupment by any Person.

**7.2.9.** <u>Dissolution.</u> The Litigation Settlement Trust shall be dissolved and the Trustees shall be discharged from their respective duties with respect to the Litigation Settlement Trust upon completion of their duties as set forth in this Plan and the Declaration Period, which, for the avoidance of doubt, shall be no earlier than the date on which all payments and other distributions required to be made from the Litigation Settlement Trust under the Plan and the Declaration of Trust have been made, including payment in full in Cash of all Allowed Class 3 Claims and Joint Liability Claims, unless dissolution on an earlier date is authorized pursuant to a Final Order of the Bankruptcy Court. Upon dissolution of the Litigation Settlement Trust, any Cash remaining in the Litigation Settlement Trust shall be distributed in accordance with the Declaration of Trust; *provided that*, in the event the Liquidation Settlement Trust is dissolved prior to the payment in full in Cash of all Joint Liability Claims, all outstanding amounts under such Joint Liability Claims shall be deemed due and payable for purposes of the distribution of such remaining Cash.

**7.2.10.** <u>Exculpation and Indemnification of the Trustees.</u> To the maximum extent permitted by applicable law, each of the Trustees shall not have or incur any liability for actions taken or omitted in his or her capacity as a Trustee or on behalf of the Litigation Settlement Trust, except those acts found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification, advancement and reimbursement for reasonable fees and expenses in defending any and all of his or her actions or inactions in his or her capacity as a Trustee or on behalf of the Litigation Settlement Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or the Litigation Settlement Trust, in each case, except for any actions or inactions found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of the Trustees shall be satisfied from the assets of the Litigation Settlement Trust.

**7.3.** **Continued Existence.**

Debtors shall continue to exist as Reorganized Debtors after the Effective Date. The Litigation Settlement Trust shall continue to be the owners of the Reorganized Debtors and the Trustees shall of the Reorganized Debtors during the Support Period. W. Marc Schwartz shall continue to act as the Debtors' Chief Restructuring Officer at a compensation to be agreed to prior to the Effective Date and disclosed to the Court.

**7.4.    Operations of Reorganized Debtors.**

After the Effective Date, the Reorganized Debtors shall continue in business and shall carry on its business affairs, under the supervision of the Trustees and subject to this Plan and the Confirmation Order. The Reorganized Debtors shall be free to use or sell its assets, hire, and compensate the Trustees, CRO and Professionals and otherwise operate free of the restrictions, limitations and constraints existing under the Bankruptcy Code. The Reorganized Debtors shall operate in conformity with the Plan and shall make distributions to Creditors timely and in accordance with the Plan.

**7.5.    Vesting of Assets.**

Unless a plan is confirmed under 1191(b), on the Effective Date, all Property of the Estate of the Debtors, including, but not limited to any rights or causes of action, whether under the Bankruptcy Code or any other applicable law, shall vest in Reorganized Debtors. Claims and causes of action shall include, but not be limited to claims against affiliates and insiders. If a plan is confirmed under 1191(b), all Property shall not vest with the Reorganized Debtors until all plan payments have been made. Upon any conversion of the Bankruptcy Cases to Chapter 7, all assets vesting in Reorganized Debtors shall pass to the Chapter 7 trustee as property of the chapter 7 bankruptcy estate. A determination of which provision of the Bankruptcy Code the Debtors will confirm its Plan will be set forth in the Confirmation Order.

**7.6.    Preservation of the Debtors' Claims.**

All causes of action which the Debtors may have, including, but not limited to Avoidance Actions, or which may be enforceable under any statute, shall be preserved and shall constitute Property of the Estate and shall be conveyed to Reorganized Debtors on the Effective Date. The Court shall retain jurisdiction to determine all such causes of action. The Debtors do not believe they have any Avoidance Actions, and, even if they did, do not intend to pursue them, because the Plan provides that all holders of Allowed Unsecured Claims, including Litigation Claims, shall be paid in full.

**7.7.    Preservation of Insurance.**

Nothing in this Plan, including the discharge or release of the Debtors provided in this Plan, shall diminish, or impair the enforceability of any insurance policies that may cover any Claims against the Debtors, the Reorganized Debtors or any member, officer, director, agent, professional, financial advisor or other Person covered by any insurance policy maintained by the Debtors. The Debtors has not and does not maintain any such policies. The Reorganized Debtors may seek D&O insurance for the Trustees upon request of the Trustees.

**7.8.    Release of Liens.**

Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Plan, all mortgages, deeds of trust, Liens or other security interests against the Property of the Estate shall be released on the Effective Date. The Debtors' assets are not subject to any commercial or judicial liens and the Plan does not seek to release any liens pursuant to the Plan.

**7.9.    Exemption from Stamp or Similar Taxes.**

In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, distribution, transfer or exchange of Reorganized Debtors' equity interests or other property of the Debtors'

Estates; (b) the creation, modification, consolidation or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, on in connection with, this Plan or the Confirmation Order; (c) the making, assignment, modification or recording of any lease or sublease; or (d) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, the Confirmation Order, or any transaction contemplated by any of the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax or stamp act or real estate transfer or mortgage recording tax, or any governmental assessment. The appropriate state or local government officials or agents shall be directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**7.10.    Recordable Order.**

Upon Confirmation of the Plan, the Confirmation Order shall be deemed to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders when certified by the Clerk of the Bankruptcy Court.

**7.11.    Effectuating Documents and Further Transactions.**

The Trustees and the Chief Restructuring Officer of the Debtors and/or Reorganized Debtors, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**ARTICLE 8**

**CONDITIONS PRECEDENT**

**8.1.    Conditions to Confirmation.**

Confirmation of the Plan shall not occur unless the following conditions have been satisfied by the Debtors or waived, in writing, by the Debtors:

a.   The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order;

b.   The Third-Party Funding Contributors delivered the Initial Trust Funding required of them under the PSA, as may be amended, executed the PSA and delivered the PSA and all associated agreements related thereto, that conforms with the Plan;

c.   The Declaration of Trust is executed and delivered such that the Trustees are the rightful owners of the Reorganized Debtors during the Support Period;

d.   The Trustees have agreed to serve, the Bankruptcy Court has approved the Trustees, and the Trustees have approved of the Plan;

e.   W. Marc Schwartz is designated as the Chief Restructuring Officer of the Debtors and such retention is approved by the Bankruptcy Court;

f.   The Confirmation Order provides for an injunction against the continued prosecution of the Litigation against the Third-Party Funding Contributors during the Support Period, as

long as the parties are in compliance with the terms of the Confirmation Order and the Plan; and

**g.** The Bankruptcy Court has estimated for purposes of feasibility the amount of the Allowed Class 3 Claims and the estimated amount of such claims is not greater than the funding dedicated to the Litigation Settlement Trust under this Plan.

**8.2.** **Conditions to the Effective Date**.

Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall not occur unless, and until, each of the following conditions have been satisfied by the Debtors or, if applicable, waived, in writing by the Debtors and the Third-Party Funding Contributors:

**a.** The Confirmation Order, in a form acceptable to the Debtors and the Third-Party Funding Contributors, shall have become a Final Order, provided however, that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the option of the Debtors and the Third-Party Funding Contributors, unless the effectiveness of the Confirmation Order has been stayed or vacated, in which case the Effective Date may be, again at the option of the Debtors and Third-Party Funding Contributors, the first Business Day immediately following the expiration or other termination of any stay of effectiveness of the Confirmation Order;

**b.** The Third-Party Funding Contributors have provided the Effective Date Third-Party Funding to the Litigation Settlement Trust;

**c.** W. Marc Schwartz is designated as the Chief Restructuring Officer of the Reorganized Debtors under substantially the same scope as with the Debtors with the designated powers like the ones he had as the CRO during the Bankruptcy Cases is approved by the Bankruptcy Court; and

**d.** No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code has been made, or, if made, remains pending.

**8.3.** **Notice to Bankruptcy Court**.

Promptly after the Effective Date, Reorganized Debtors shall file with the clerk of the Bankruptcy Court a Notice that the Plan has become effective; provided, however, that failure to file such notice shall not affect the effectiveness of the Plan or the rights and substantive obligations of any entity hereunder.

## ARTICLE 9

## PROCEDURES FOR DISPUTED CLAIMS

**9.1.** **Generally**.

**9.1.1.** Except as otherwise provided in the Plan, all claims against the Debtors that are disputed as of the Effective Date shall be subject to the Claims Resolution procedures set forth in the Plan. The following procedures will be applicable to all disputed Claims:

**9.1.1.1.**   Objections to Claim. Except as is otherwise provided for with respect to Professional Fees or Class 3, or as otherwise ordered by the Bankruptcy Court, objections to Claims and Equity Interests shall be prosecuted as follows:

**9.1.1.2.**   Pre-Effective Date Objections. Prior to the Effective Date, any party entitled to do so under the Bankruptcy Code or order of the Court may file and prosecute objections to Claims. The failure of the Debtors prior to Confirmation to object to a Claim for purposes of voting on the Plan shall in no way be deemed to be a waiver of the right of Reorganized Debtors to object to such Claim in whole or in part.

**9.1.1.3.**   Post Effective Date Objections. After the Effective Date, objections to Claims may be made exclusively by the Reorganized Debtors. It is contemplated that majority of Proofs of Claims will be filed by holders of Litigation Claims. None of the Litigation Claims are liquidated, non-contingent or undisputed. Therefore, the Debtors anticipate the initial Proofs of Claims shall be filed in an unliquidated in amount, potentially contingent, and could be subject to dispute.

**9.1.1.4.**   Time to File Objections to Claim. The Reorganized Debtors shall file an Objection to Claim as soon as practicable, but in no event later than sixty (60) days after the later of (a) the Effective Date, (b) the Bar Date, or (c) other date set by the Court. The filing, prosecution, settlement, or withdrawal of all objections to Claims after the Effective Date are reserved to the sound discretion of Reorganized Debtors under the supervision of the Trustees.

**9.1.1.5.**   Disputed Claim Reserve. From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by a Final Order of the Bankruptcy Court or continuation of the Litigation pursuant to this Plan, the Litigation Settlement Trustees shall, consistent with and subject to Section 1123(a)(4) of the Bankruptcy Code, with respect to each applicable class of Claims against the Debtors, retain in the applicable Disputed Claims Reserve for such Class an aggregate amount equal to the Distributions that would have been made to Holders of Disputed Claims of such Class as if such Disputed Claims were Allowed Claims against the Debtors, in each case in an amount equal to the least of (i) the filed amount of such Disputed Claims, (ii) the amount determined, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, by the Bankruptcy Court for purposes of fixing the amount to be retained for such Disputed Claims and (iii) such other amounts as may be agreed upon by the Holders of such Disputed Claims and the Trustees.

**9.1.1.5.1.**   Interest on Claims. Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

**9.2.**   **Class 1 (Priority) and Class 2 (General Unsecured) Claims**.

**9.2.1.**   Claim Determined by Contested Matter. Except as is otherwise provided for with respect to Professional Fees or Class 3 Claims, or as otherwise ordered by the Bankruptcy Court, disputed claims shall be resolved by an Objection to Claim or estimation of an unliquidated claim.

**9.2.2.**   Disallowance of Penalties and Fines. No distribution shall be made under this Plan on account of, and no Allowed Class 1 or Class 2 Claim shall include, any fine, penalty or exemplary

or punitive damages relating to or arising from any default or breach by the Debtors, and any Claim on account of such fine, penalty, or exemplary or punitive damages shall be deemed disallowed, whether an objection is filed to such Claim.

### 9.3. Class 3 (Litigation) and Joint Liability Claims.

**9.3.1.** <u>Estimation of Claims</u>. Absent election to continue the Litigation pursuant to this Plan, unliquidated Class 3 Claims shall be liquidated pursuant to a motion to estimate such claims for purposes of allowance pursuant to Bankruptcy Code § 502(c). The liquidation of such Class 3 Claims shall also determine the amount of any related Joint Liability Claim. The Debtors shall file a motion to estimate such claims and establish procedures for such estimation within sixty (60) days after the Effective Date.

**9.3.2.** <u>Optional Election to Continue Pending Lawsuits</u>. To the extent that the relevant action underlying a Class 3 Claim was originally initiated in federal court or has been and remains removed pursuant to 28 U.S. Code § 1452 and transferred to this Court, holders of Class 3 Claims shall have the option to elect to liquidate Class 3 Claim through the pending litigation. In the event of such election, the injunctions contained set forth in Article 12 of this Plan shall be modified to allow the continuation of the action solely for purposes of liquidating the relevant Class 3 Claims and any related Joint Liability Claims.

**9.3.3.** <u>Limited Scope of Estimation</u>. Under the estimation procedures to be established pursuant to Section 9.3.1 above, liability shall be deemed established with respect to the Debtors and the Third-Party Funding Contributors to the extent liability was established against such parties prior to the Petition Date, without recourse to appeal or reconsideration by the Bankruptcy Court with respect to such established liability. For the avoidance of doubt, to the extent that the holder of a Class 3 Claim elects to continue the pending Litigation to liquidate the Class 3 and/or Joint Liability Claims, the Debtors and the Third-Party Funding Contributors shall retain all rights with respect to any established liability, including the right to appeal or seek reconsideration of liability.

**9.3.4.** <u>Time for Election</u>. Holders of Class 3 Claims electing to liquidate their claim through continuation of the pending Litigation, shall file with the Court and serve on counsel for the Reorganized Debtors notice of such election not later than thirty (30) days after the Effective Date. For the avoidance of doubt, absent such election, all unliquidated Class 3 Claims shall be determined by estimation pursuant to § 502(c).

### ARTICLE 10

### PROVISIONS GOVERNING DISTRIBUTIONS

### 10.1. Distributions for Claims Allowed as of the Effective Date.

No distributions shall be made upon any Claim or Equity Interest except to Allowed Claims and Equity Interests, whether allowance results from: (i) the provisions of the Code; (ii) the entry of a Final Order on an objection to a Claim or Equity Interest; (iii) the determination of an objection to Claim or Equity Interest contained in an adversary proceeding or other pending litigation which the Court has directed to liquidate the Claim of a Creditor Equity Interest holder; (iv) through stipulation entered into between Reorganized Debtors and a Creditor or holder of an Equity Interest; (v) through estimation pursuant to Bankruptcy Code § 502(c), or (vi) under the

express terms of the Plan. Nothing herein shall preclude the payment of the Debtors' operating expenses without Court order.

**10.2.    Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

**10.2.1.** <u>Delivery of Distributions in General</u>. Distributions to holders of Allowed Claims shall be made at the addresses set forth in the Proofs of Claim; (ii) the Debtors' Schedules; or (iii) other records of Reorganized Debtors at the time of the distribution.

**10.2.2.** <u>Undeliverable and Unclaimed Distributions</u>.

**10.2.2.1.**    Holding and Investment of Undeliverable and Unclaimed Distributions—If the distribution to any holder of an Allowed Claim is returned to Reorganized Debtors or the Litigation Settlement Trust as undeliverable or is otherwise unclaimed, no further distributions shall be made to such holder unless and until the Reorganized Debtors or Trustees are notified in writing of such holder's then-current address. Undeliverable and unclaimed distributions shall be set aside or, in the case of a Cash distribution, deposited in a segregated, interest-bearing account, designated as an "unclaimed distribution reserve" (the "<u>Unclaimed Distribution Reserve</u>"), for the benefit of all such similarly situated Persons until such time as a distribution becomes deliverable or is claimed.

**10.2.2.2.**    After Distributions Become Deliverable—Reorganized Debtors shall make all distributions that have become deliverable or have been claimed after a distribution without interest.

**10.2.2.3.**    Failure to Claim Undeliverable Distributions—Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable or unclaimed distribution within one (1) year after the Confirmation Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against the Debtors and the Estate, Reorganized Debtors, or their property. In such cases, any Cash or other property held in the Unclaimed Distribution Reserve for distribution on account of such claims for undeliverable or unclaimed distributions shall become the property of Reorganized Debtors notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require anyone to attempt to locate any holder of an Allowed Claim.

**10.3.    Withholding and Reporting Requirements**.

In connection with the Plan and all distributions thereunder, Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**10.4.    IRS Form W-9**.

Within ninety (90) days of the Effective Date, an Internal Revenue Service Form W-9 will be mailed to each Creditor to whom a Cash distribution is to be made. No distribution hereunder shall be made to a Creditor until that Creditor prepares, executes, and returns to Reorganized Debtors the Internal Revenue Service Form W-9.

10.5.    <u>Setoffs</u>.

Reorganized Debtors may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever that the Debtors may have against the holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Reorganized Debtors of any such Claim that the Debtors may have against such holder.

10.6.    <u>**Payments and Distributions with Respect to Disputed Claims**</u>.

No payment or distribution under the Plan shall be made on account of any Claim unless and until such Claim becomes an Allowed Claim by Final Order of the Court.

## ARTICLE 11

## <u>EXECUTORY CONTRACTS</u>

11.1.    <u>No Effect</u>.

All Executory Contracts and unexpired leases as of the Petition Date that have not been assumed or rejected by separate order shall not be affected by this Plan or the Confirmation Order. The Executory Contracts and unexpired leases shall "ride through" unaffected to the fullest extent permitted by applicable law.

## ARTICLE 12

## <u>EFFECT OF CONFIRMATION</u>

12.1.    <u>**Binding Effect**</u>.

Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of this Plan shall bind every holder of a Claim against or Interest in any Debtors and inure to the benefit of, and be binding on, any such holder's respective successors and assigns, regardless of whether any Claim or Interest of such holder is Impaired under this Plan or whether such Holder has accepted this Plan.

12.2.    <u>**Discharge of Claims against and Interests in the Debtors**</u>.

Subject to Section 12.3 of this Plan, upon the Effective Date and in consideration of the distributions to be made under this Plan, except as otherwise provided in the Plan or in the Confirmation Order, each Holder (as well as any trustee or agent on behalf of such Holder) of a Claim or Interest and any successor, assign and affiliate of such Holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by Section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities that arose prior to the Effective Date. Except as otherwise provided in this Plan, upon the Effective Date, all such Holders of Claims against or Interests in the Debtors, and their successors, assigns and affiliates, shall be forever precluded and enjoined, pursuant to Sections 105, 524 and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against, or terminated Interest in, any Debtor.

**12.3.** __Limitation on Discharge__.

If the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtors will not be discharged from any debt:

**a.** On which the last payment is due after the first 3 years of the plan, or as otherwise provided in Section 1192 of the Bankruptcy Code; or

**b.** Excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**12.4.** __Pre-Confirmation Injunctions, Stays, Stipulations, and Discovery Orders__.

Unless otherwise provided in this Plan, all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under Sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**12.5.** __Injunction against Interference with Plan__.

Subject to Section 15.4 of the Plan regarding withdrawal and revocation of the Plan, upon entry of the Confirmation Order, all Holders of Claims against or Interests in the Debtors, holders of Joint Liability Claims, and other parties in interests shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan and the Plan Documents.

**12.6.** __Plan Injunction__.

Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting, directly or indirectly, a Debtor or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this clause (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order against a Debtor or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this clause (ii) or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this clause (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Plan; and (v) commencing or continuing, in any manner or in any place, any action that does not comply, or is inconsistent, with the provisions of this Plan; *provided*, *however*, that nothing contained herein shall preclude such Persons who have held, hold or may hold Claims

against or Interests in a Debtor or an Estate from exercising their rights, or obtaining benefits, pursuant to, and consistent with, the terms of this Plan.

**12.7.    Temporary Injunction Regarding Joint Liability Claims**.

In order to supplement the injunction effect of the Plan, the following injunction shall be incorporated in the Confirmation Order and take effect as of the Effective Date:

**12.7.1.** Terms. In order to preserve and promote the settlements contemplated by and provided for in the Plan, and in consideration of the commitments of the Third-Party Funding Contributors despite not obtaining any release under this Plan, and pursuant to the exercise of the equitable jurisdiction of the Bankruptcy Court under Section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Joint Liability Claim shall for the duration of the Support Period be stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, recovery or judgment of any form from or against any Protected Party with respect to any Joint Liability Claims, including:

**12.7.1.1.**    commencing, conducting or continuing, in any manner, whether directly or indirectly, any suit, action or other proceeding, in each case, of any kind, character or nature, in any forum in any jurisdiction with respect to any Litigation Claims, against or affecting any Protected Party, or any property or interests in property of any Protected Party with respect to any Joint Liability Claims;

**12.7.1.2.**    Enforcing, levying, attaching collecting or otherwise recovering, by any means or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Protected Party or against the property of any Protected Party with respect to any Joint Liability Claims;

**12.7.1.3.**    creating, perfecting or enforcing, by any means or in any manner, whether directly or indirectly, any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any Joint Liability Claims;

**12.7.1.4.**    asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, in respect of any obligation due to any Protected Party or against the property of any Protected Party with respect to any Joint Liability Claims; and

**12.7.1.5.**    taking any act, by any means or in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any Joint Liability Claims.

**12.7.2.** Reservations. Notwithstanding anything to the contrary in this Section 12.7, the Channeling Injunction shall not stay, restrain, bar, or enjoin:

**12.7.2.1.**    The rights of Holders of Litigation Claims to the treatment afforded to them under the Plan;

**12.7.2.2.**    The right to pursue any claim against any Protected Parties in the event that any Allowed Litigation Claim is not paid in full pursuant to this Plan at the conclusion of the Support Period; or

**12.7.2.3.**   The right to assert any claim against any Protected Parties in the event that there is a default under this Plan that is not remedied or disputed timely under the procedure set out in Section 15.2 or Section 15.3 of this Plan.

**12.7.3.** <u>Tolling of Joint Liability Claims</u>. If applicable law, an order in any proceeding or an agreement fixes a period for commencing or continuing an action or proceeding based on a Joint Liability Claim and such action or proceeding is enjoined by the Temporary Injunction, then such period shall be tolled with respect to claims against the Protected Parties from the Effective Date of this Plan until the termination of the Support Period. For the avoidance of doubt, if a period to commence or continue an action had expired prior to the Effective Date, nothing in this Plan shall revive the period for commencing or continuing the action.

**12.7.4.** <u>Violation of Temporary Injunction</u>. In the event that any Person takes any action that a Protected Person believes violates the Channeling Injunction as it applies to any Protected Party, the Protected Party shall be entitled to make an emergency application to the Bankruptcy Court for relief and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter final orders in connection with any dispute over whether an action violates the Channeling Injunction. Upon determining that a violation of Channeling Injunction has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person, including, but not limited to, (i) disgorgement from the violating Person of any funds, assets or other value received, directly or indirectly, pursuant to the Plan; (ii) the termination of any rights of the violating Person to receive any funds, assets or other value pursuant to the Plan or Plan Documents; (iii) an admonition, reprimand or censure of, or citation of contempt by, the violating Person and its counsel; (iv) a fine or penalty paid into the Bankruptcy Court; (v) a bond or other security in an amount equal to any financial obligation ordered by the Bankruptcy Court in respect of the violation; (vi) an appropriate sanction on any attorney or law firm responsible for the violation; (vii) injunctive relief to prevent future violations by the Person or its counsel; and (viii) attorney and other professional fees incurred by any Protected Party arising from the violation. The provision of any one form of relief shall not preclude the provision of any other form of relief.

**12.7.5.** <u>No Modification</u>. Upon the occurrence of the Effective Date, the Channeling Injunction shall be a permanent injunction and there shall be no modification, dissolution, or termination of the Channeling Injunction.

**12.8.   <u>Exculpation</u>**.

To the maximum extent permitted by applicable law, neither the Debtors, Reorganized Debtors, Trustees nor any of their respective partners, general partners, members, officers, directors, employees, agents, advisors or Professionals have or may incur any liability to any holder of a Claim or Equity Interest, or any other party in interest, or any of their respective members or former members, agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan (the "Chapter 11 Activities"), except for their acts or omissions constituting willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction, and in all respects are entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in connection with the Chapter 11 Activities. No holder of a Claim, Equity Interest or any other party in interest,

including their respective agents, employees, representatives, financial advisors, attorneys or affiliates, have any right of action against the Debtors, Reorganized Debtors, or any of their respective partners, general partners, officers, directors, members, employees, agents, advisors or Professionals for any act or omission in connection with the Chapter 11 Activities, except for their acts or omissions constituting willful misconduct or gross negligence as finally determined by a court of competent jurisdiction.

**12.9.   <u>Injunction Related to Exculpation</u>**.

To the maximum extent permitted under applicable law, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Causes of Action exculpated pursuant to this Plan.

## ARTICLE 13

## <u>JURISDICTION</u>

**13.1.   <u>Retention of Jurisdiction</u>**.

The Bankruptcy Court shall retain and have all the jurisdiction conferred upon it by the Bankruptcy Reform Act of 1978, including all amendments thereof now existing or hereafter arising, and all amendments made to Title 28 of the United States Code after October 1, 1979. Without limiting the foregoing in any way, the Bankruptcy Court shall retain jurisdiction of this Chapter 11 Cases after the Confirmation Date in respect to the following matters to the fullest extent under applicable law:

   **a.**   To enable any party in interest (including the Reorganized Debtors) to consummate all proceedings that it may bring prior to the Confirmation Date to set aside Liens, or to recover any preferences, transfers, assets, Claims or damages to which said party may be entitled, or to reject any contracts and recover any property under the provisions of the Bankruptcy Code or other federal or state law;

   **b.**   To hear and determine all Claims, estimation of claims, and objections to Claims, including Claims arising from the rejection of any Executory Contract and any objections which may be made thereto;

   **c.**   To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

   **d.**   To adjudicate all Claims to any Lien on any Property of the Estate or any proceeds thereof;

   **e.**   To recover all assets and Property of the Estate, wherever located, to the extent necessary for the consummation of the Plan;

   **f.**   To Allow or disallow any Claim;

   **g.**   To resolve any disputes pertaining to the terms and conditions of the sale of any Property of the Estate;

   **h.**   To resolve any disputes pertaining to the business operations of the Debtors during the pendency of the Chapter 11 Cases;

**i.**   To enter any orders which may be necessary or appropriate to modify, carry out or enforce the provisions of the Plan;

**j.**   To determine any defaults under the Plan, and the consequences of such default;

**k.**   To resolve any disputes over the meaning of any provision of the Plan;

**l.**   To make such determinations as are specifically provided in the Plan;

**m.**   To hear and determine all requests for compensation and/or reimbursement of expenses which may be required under the Code, and not otherwise dispensed with under the Plan; and

**n.**   To enter a final decree pursuant to Section 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

**13.2.   <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>**.

If the Bankruptcy Court abstains or exercises discretion not to hear any matter within the scope of its jurisdiction, nothing herein shall prohibit or limit the exercise of jurisdiction by any other tribunal having competent jurisdiction over such matter.

## ARTICLE 14

## <u>MODIFICATION OF PLAN</u>

**14.1.   <u>Pre-Confirmation Modifications</u>**.

The Debtors may propose amendments or modifications to the Plan at any time prior to the Confirmation Date, with leave of the Court and upon notice pursuant to Section 1127(a) of the Bankruptcy Code and Bankruptcy Rules 3019.

**14.2.   <u>Post-Confirmation Modifications</u>**.

After the Confirmation Date, Modification of the Plan is permitted only upon Court order and only as authorized under Section 1193 of the Bankruptcy Code.

## ARTICLE 15

## <u>GENERAL PROVISIONS</u>

**15.1.   <u>The Subchapter V Trustee</u>**.

The trustee appointed under Section 1183(a) of the Bankruptcy Code will have appropriate access to the management, books and records and professionals of the Debtors to evaluate the Plan. The Trustee's term is anticipated to end upon substantial consummation of the Plan. As permitted by Section 1194(b) of the Bankruptcy Code, the Plan provides that the Debtors, and not the Trustee, will make all required payments under the Plan, thus resulting in administrative cost savings. The Trustee shall make its required filings to discharge its duties.

**15.2.   <u>Default in Plan Payments</u>**.

   **15.2.1.** <u>Cure Period</u>. In the event of a non-monetary or monetary default by the Debtors, Reorganized Debtors, or Trustees under this Plan, the affected creditor shall provide written notice

of such default as provided herein. The Debtors, Reorganized Debtors, or Trustees shall have sixty (60) days to cure the default from the earlier to occur of: (i) the date of receipt of the written notice sent by certified mail or overnight delivery service, or (ii) the date of receipt of the written notice sent by first class mail to cure the default. (For the purposes of the written notice by United States first class mail, postage prepaid, such notice will be deemed received five (5) days after depositing the same in the United States mail).

**15.2.2.** Effect of Uncured Default. In the event the Debtors, Reorganized Debtors, or Trustees do not cure the default within the sixty (60) day period provided herein, the affected Creditor or Interest Holder shall be entitled to pursue its state and/or federal law remedies—as limited by the Plan—without further notice or hearing before the Court. In the event the Plan is confirmed pursuant to 11 U.S.C. §1191(b), the following default provisions shall apply: Pursuant to 11 U.S.C. §1191(c)(3), if payments are not made by the Debtors, Reorganized Debtors, Trustee, or Third-Party Funding Contributors as required by the Plan and Confirmation Order, Creditors shall have the right to seek dismissal or conversion of the Bankruptcy Cases. The Bankruptcy Court shall retain jurisdiction to determine all matters related to enforcement of the Plan and Confirmation Order in connection with such default.

**15.3.    Default in Third-Party Funding.**

**15.3.1.** Cure Period. In the event of a non-monetary or monetary default by the Third-Party Funding Contributors under this Plan, the PSA, or the Declaration of Trust, the Trustees shall provide written notice of such default to the Third-Party Funding Contributors. The Third-Party Funding Contributors shall have sixty (60) days to cure the default from the earlier to occur of: (i) the date of receipt of the written notice sent by certified mail or overnight delivery service, or (ii) the date of receipt of the written notice sent by first class mail to cure the default. (For the purposes of the written notice by United States first class mail, postage prepaid, such notice will be deemed received five (5) days after depositing the same in the United States mail).

**15.3.2.** Effect of Uncured Default. In the event the Third-Party Funding Contributors do not cure the default within the sixty (60) day period provided herein, (a) the Trustees shall be entitled to retain all funds received from the Third-Party Funding Contributors as liquidated damages and (b) the temporary channeling injunction imposed by Section 12.7 of this Plan shall expire and Creditors may pursue all remedies under applicable law against the Protected Parties, without further order from the Bankruptcy Court. The Bankruptcy Court shall retain jurisdiction to determine all matters related to enforcement of the Plan and Confirmation Order in connection with such default.

**15.4.    Revocation, Withdrawal or Non-Consummation.**

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file  subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if confirmation or consummation does not occur, then: (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.

**15.5.** **Severability of Plan Provisions**.

If, prior to confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**15.6.** **Successors and Assigns**.

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**15.7.** **Final Decree**.

The Debtors shall file an application for entry of a final decree within one (1) year after the Effective Date.

**15.8.** **Notices**.

Unless otherwise provided herein or in any Plan Supplement document, all notices or demands required or permitted hereunder shall be deemed to have been duly given and served when made in writing and deposited in the United States Mail, certified mail (return receipt requested), in an envelope addressed to the last known address of the noticed party, with postage prepaid. Any notices to be provided to the Reorganized Debtors shall be addressed as follows:

To the Reorganized Debtors:

> W. Marc Schwartz
> Chief Restructuring Officer
> Reorganized InfoW, Inc.
> 712 Main Street, Suite 1830
> Houston, Texas, 77002

With a copy to the attorneys for the Debtors:

> Kyung S. Lee/R. J. Shannon
> Parkins Lee & Rubio LLP
> Pennzoil Place
> 700 Milam-13th Floor
> Houston, Texas 77002

**15.9.** **<u>Governing Laws</u>**.

The Plan shall be governed by the laws of the State of Texas and the laws of the United States, as may be applicable.

**15.10.** **<u>Cramdown</u>**.

**15.10.1.**     The Debtors may request Confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to modify the Plan to the extent, if any, that confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

**15.10.2.**     Subchapter V modifies the rules under which particular classes of claims can be crammed down. Subchapter V permits a court to disregard Section 1129(a)(10) of the Bankruptcy Code and cram down a plan even if no impaired class of claims accepts the plan. Specifically, Section 1191(b) of the Bankruptcy Code provides that if all the applicable requirements of Section 1129(a) of the Bankruptcy Code are met other than Sections 1129(a)(8), (10), and (15), the bankruptcy court can confirm the plan if:

15.10.2.1. The plan does not discriminate unfairly against any impaired, non-consenting class.

15.10.2.2. Is fair and equitable regarding each class of impaired claims or interests that has rejected the plan.

*[Signature Page Follows]*

The Debtors, InfoW, LLC, IWHealth, LLC, and Prison Planet TV, LLC, as debtors in possession in the above-captioned Chapter 11 Cases, submit the Plan in good faith pursuant to all requirements of the Bankruptcy Code, and submits that within its knowledge, information and belief, the Plan is fair and equitable, and is not proposed in violation of Section 1129 of the Bankruptcy Code or by any means forbidden by law, and should be confirmed.

Dated: April __, 2022

Respectfully submitted,

INFOW, LLC

By:_____

Its:_____

-and-

IWHEALTH, LLC

By:_____

Its:_____

-and-

PRISON PLANET TV, LLC

By:_____

Its:_____

-and-

PARKINS LEE & RUBIO LLP

By:_____

Its:_____

PLR PROPOSED FINAL DRAFT 4/17/2022 1:10 PM

# Exhibit A

# Declaration of Trust



PLR PROPOSED FINAL DRAFT 4/17/2022 1:10 PM

# Exhibit B

# Plan Support Agreement



**Exhibit C**

**Plan Feasibility Projection**

